**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:17-cv-2853 |
| | ) | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) | Judge Rebecca R. Pallmeyer |
| | ) | Magistrate Judge Gilbert |
| | ) | |
| *Defendant.* | ) | |

### DECLARATION OF PROFESSOR JACQUELINE STEVENS

I, Jacqueline Stevens, Ph.D., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a Professor of Political Science and Northwestern University and the Director of the Deportation Research Clinic at Northwestern's Buffet Institute for Global Studies. My research based on FOIA responses has been published in scholarly journals and covered by the national media, including the New Yorker, the New York Times, and NPR. *See* http://buffett.northwestern.edu/programs/deportationresearch/clinic-in-the-news.html

2. As part of my work, I regularly make Freedom of Information Act ("FOIA") requests to U.S. Immigration and Customs Enforcement ("ICE") seeking memoranda documenting the facts and analysis that inform ICE's enforcement activities against individuals who may be U.S. Citizens in an effort to document how the agency makes those determinations.

3. Since 2010, I have sought and received these memoranda, commonly referred to as "USC Claims Memos" by sending a FOIA request to ICE for the contents of the USC Claims Email

1

box. I attach hereto as Exhibit A a true and correct copy of my first such FOIA request and ICE's response.

4. I attach hereto as Exhibit B a true, correct, and unredacted copy of the ICE USC Claims policy – Policy No. 16001.2 – that has been filed in unredacted form in several federal district court cases involving ICE's enforcement actions against U.S. Citizens.

5. By analyzing the unredacted portions of USC Claims Memos, my students in the Deportation Research Clinic and I have been able to uncover significant flaws and shortcomings in ICE's process for determining claims to U.S. Citizenship.

6. Unlike in previous FOIA responses, ICE within in their entirety finalized USC Claims Memos.

7. Attached hereto as Exhibit C are examples of the documents released by ICE in this litigation which I believe to be finalized USC Claims Memos.

Respectfully submitted this 8th day of June 2018 by:

/s/Jacqueline Stevens

_____

Jacqueline Stevens, Ph.D.

EXHIBIT A



**U.S. Immigration
and Customs
Enforcement**

May 10, 2010

Ms. Jacqueline Stevens
85 Eighth Avenue, Apartment 4S
New York, NY 10011

Re: **FOIA Case Number 2010FOIA2918**

Dear Ms. Stevens:

This is in response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated February 8, 2010, and received by this office on February 24, 2010. You have requested copies of all correspondence to and from the "USC Claims DRO" email box.

In a telephone conversation on April 21, 2010 with FOIA Analyst Richard Stevens, you modified your request to include only 100 pages of e-mail correspondence to and from the "USC Claims" e-mail box.

Your request has been processed under the FOIA, 5 U.S.C. § 552. A search of the Office of Detention and Removal Operations (DRO) was conducted. Records responsive to your request were forwarded to the ICE FOIA Office for review and processing. One hundred and three pages of emails and related e-mail attachments were processed. After a review of those documents, I have determined that 2 pages will be released in their entirety. Portions of 101 pages will be withheld pursuant to Exemptions 5, 6, and 7(C) of the FOIA.

Portions of 101 pages have been withheld as described below.

**FOIA Exemption 5** protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. After carefully reviewing the responsive documents, I have determined that portions of the responsive documents qualify for protection under all three privileges. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. The attorney work-product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. The attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his client based upon, and thus

reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client privilege is not limited to the context of litigation.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right privacy. The types of documents and/or information that we have withheld may consist of social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

You have a right to appeal the above withholding determination. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to: Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, D.C. 20528, following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[1]

If you need to contact our office about this matter, please refer to case number **2010FOIA2918**. This office can be reached at (202) 732-0300 or (866) 633-1182.

Sincerely,

*[signature]* FoR

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure:     103 pages

---

[1] 6 CFR § 5.11(d)(4).

**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Tuesday, March 30, 2010 11:00 AM |
| **To:** | Maury, Carlos E; USC CLAIMS DRO; OPLA USC Claims [(b)(6), (b)(7)c] |
| **Subject:** | FW: Amended USC memo |
| **Attachments:** | [(b)(6), (b)(7)c] -USC Claim-LOS -Amended.doc |

DRO Field Operations and OPLA agree with your assessment.

---

**From:** Maury, Carlos E
**Sent:** Monday, March 29, 2010 3:04 PM
**To:** OPLA USC Claims
**Cc:** [(b)(6), (b)(7)c]
**Subject:** Amended USC memo [(b)(6), (b)(7)c]

Carlos E. Maury
Deputy Chief Counsel
Department of Homeland Security
U.S. Immigration and Customs Enforcement
45100 60th Street West
Lancaster, CA 93536
Tel: 661-940-3555 ext. [(b)(6), (]
Tel (300N): 213-894-[ ]
Fax: 661-940-3573
[(b)(6), (b)(7)c]

*Attorney/Client Privilege Communication Attorney Work Product*
*This document contains confidential and/or sensitive attorney/client privileged information or attorney work product and is not for release, review, retransmission, dissemination or use by anyone other than the intended recipient. Please notify the sender if this email has been misdirected and immediately destroy all originals and copies. Any disclosure of this document must be approved by the Office of the Principal Legal Advisor, U.S. Immigration & Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY. FOIA exempt under 5 U.S.C. § 552(b)(5).*

ICE.000001.10FOIA2918

5/5/2010



# U.S. Immigration and Customs Enforcement

March 29, 2010

AMENDED MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA

ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:                  George H. Lund III
Field Office Director, Los Angeles, CA

Michelle P. Myers
Assistant Chief Counsel

SUBJECT:          Claim to United States Citizenship
(b)(6), (b)(7)c

## STATEMENT OF THE CASE

### Initial Claim of United States Citizenship (USC):

On March 25, 2010, Los Angeles Fugitive Operation officers detained (b)(6), (b)(7)c (b)(6), (b)(7)c At this time, (b)(6), (b)(7)c verbally claimed to be a naturalized citizen of the United States. (b)(6), (b)(7)c submitted no evidence to substantiate his claim.

## FACTS

(b)(6), (b)(7)c came to the attention of Los Angeles Fugitive Operations officers based on a referral from the Long Beach Police Department's Sex Registrant Unit. A search of the Central Index System indicated that (b)(6), (b)(7)c was a legal permanent resident of the United States. Further investigation into ICE related databases indicated that (b)(6), (b)(7)c had not naturalized and did not have any benefit claims pending. Furthermore, CIS database revealed that (b)(6), (b)(7)c Alien file was listed as missing. The Office of Chief Counsel (OCC) was then contacted for guidance as to whether it was possible to proceed in the absence of the alien file. Assistant Chief Counsel Michelle Myers indicated that it was possible to proceed with the case.

### DRO Investigation:

On March 25, 2010, officers from Los Angeles Fugitive Operations, with the assistance of the Long Beach Police Department, served an administrative arrest warrant on [(b)(6), (b)(7)c] During the initial interview with DRO officers [(b)(6), (b)(7)c] claimed that he is a naturalized U.S. citizen. When asked to produce a naturalization certificate or any other evidence to substantiate this statement [(b)(6), (b)(7)c] could not. He further stated that his naturalization certificate had been lost. The Law Enforcement Support Center (LESC) was contacted telephonically to inquire into [(b)(6), (b)(7)c] claim to citizenship. The LESC stated that there was no evidence [(b)(6), (b)(7)c] had ever naturalized. Supervisory Detention and Deportation Officer (SDDO [(b)(6), (b)(7)c] was then contacted to review the situation. SDDO [(b)(6), (b)(7)c] concurred that there was probable cause to take [(b)(6), (b)(7)c] nto custody.

CIS Supervisor [(b)(6), (b)(7)c] was then contacted in regard to [(b)(6), (b)(7)c] claim to U.S. citizenship. Supervisor [(b)(6), (b)] stated that a complete review of their systems revealed no evidence of naturalization, or any evidence of an application for naturalization. [(b)(6), (b)(7)c] claimed to officers that he has a U.S. passport, so officers contacted Diplomatic Security Service (DSS) Special Agent [(b)(6), (b)(7)c] o inquire if [(b)(6), (b)(7)c] had ever held a U.S. passport. Special Agent [(b)(6), (b)] stated that a review of DSS indices found that [(b)(6), (b)(7)c] had never applied for, or ever held, a U.S. passport. Assistant Chief Counsel (ACC) Michelle Myers was then contacted to inquire as to whether [(b)(6), (b)(7)c] could be placed in proceedings, given the facts of the case. ACC Myers stated it was possible to proceed with removal proceedings.

DRO took a sworn statement from [(b)(6), (b)(7)c] with regard to his claim of U.S. citizenship on March 25, 2010 and on March 29, 2010.

Criminal History:

On June 25, 1996, [(b)(6), (b)(7)c] was convicted of Continuous Sexual Abuse of a Child Under the Age of 14, in violation of California Penal Code section 288.5 PC, in the Superior Court of California, County of Los Angeles. He was sentenced to 6 years in state prison for that crime.

LEGAL ANALYSIS



(b)(5), (b)(6), (b)(7)c

(b)(5), (b)(6), (b)(7)c



## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c

## Law, Ryan A

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 29, 2010 2:03 PM |
| **To:** | O'Hare, Donald C; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: (b)(6), (b)(7)c USC Claim-DEN |
| **Attachments:** | (b)(6), (b)(7)c USC Claim DEN.doc |

DRO Field Operations and OPLA agree with your
assessment.

**From:** O'Hare, Donald C
**Sent:** Friday, March 26, 2010 11:08 AM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc** (b)(6), (b)(7)c                                      Branch, Steven M
**Subject** (b)(6), (b)(7)c                    USC Claim-DEN

Attached is a reporting memo for the above-referenced case. This alien is detained in Salt Lake City, although he expects to post his $10,000 bond. Please contact me if you have any questions or concerns.

Thank you,

Don O'Hare
Deputy Chief Counsel
Immigration and Customs Enforcement
Department of Homeland Security
Denver, Colorado

303-784 (b)(6), (b)
303-210       (BB)



Office of the Chief Counsel
5272 South College Drive, Suite 100
Salt Lake City, Utah 84123

| | |
|---|---|
| MEMORANDUM FOR: | DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA<br>ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO |
| FROM: | Steven M. Branch, Field Office Director, Salt Lake City<br>Matthew R. Hall, Senior Attorney DEN OCC (SLC sub-office) |
| SUBJECT: | Case Analysis—Claim to United States Citizenship<br>(b)(6), (b)(7)c |
| DATE: | March 25, 2010 |

## STATEMENT OF THE CASE

(b)(6), (b)(7)c
came into ICE custody in Utah on March 9, 2010. He was issued a Notice to Appear ("NTA") after admitting to immigration agents that he had illegally entered the United States and was born in Mexico. Although he told agents that his father was a United States Citizen, he stated he was unclear about when his father had resided in the United States and mentioned that his father had recently passed away in Mexico. (b)(6), (b)(7)c also stated that his mother had no legal status in the United States. On March 24, 2010, at (b)(6), (b)(7)c first detained master calendar hearing, his attorney claimed that, although (b)(6), (b)(7)c was born in Mexico, he had acquired citizenship from his United States citizen father based on the presence of the father in the United States. A bond was also issued by the Immigration Judge on the same date in the amount of $10,000, which the respondent stated he plans to post as soon as possible.

## FACTS

(b)(6), (b)(7)c was born in Mexico on (b)(6), (b)(7)c and has never obtained lawful permanent resident status in the United States. The respondent's father was born in San Antonio, Texas on (b)(6), (b)(7)c The respondent says that his father died in Mexico a few months ago. The respondent's mother was born in Mexico and never obtained legal immigration status in the United States. The respondent's attorney has indicated that the respondent's parents were married at the time the respondent was born, but no proof of such marriage has been provided to

date. The respondent has provided copies of documents showing that his father performed seasonal work in the United States from 1968 to 1979. The respondent has also produced a document which shows that his father had reportable taxable income for roughly ten years, between the years of 1980 to 2006.

(b)(6), (b)(7)c was encountered by immigration agents in a Utah jail after being convicted of misdemeanor aggravated battery due to his involvement in a bar fight where he hit another individual with a beer bottle (b)(6), (b)(7)c was served an NTA charging him with being inadmissible to the United States as an alien who is present in the United States without being admitted or paroled under section 212(a)(6)(A)(i) of the Act.

## LEGAL ANALYSIS

(b)(5), (b)(6), (b)(7)c



## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c



# Law, Ryan A

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 29, 2010 1:50 PM |
| **To:** | Orland, David M; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: [(b)(6), (b)(7)c] USC CLAIM SND.pdf |
| **Attachments:** | [(b)(6), (b)(7)c] USC CLAIM SND.pdf |

```
DRO Field Operations and OPLA agree with your
assessment. However, [(b)(5)]
[(b)(5)]
```

**From:** Orland, David M
**Sent:** Friday, March 26, 2010 6:05 PM
**To:** USC CLAIMS DRO; OPLA USC Claims
**Cc:** [(b)(6), (b)(7)c]
**Subject:** [(b)(6), (b)(7)c] USC CLAIM SND.pdf

To Whom it May Concern:

Please see the attached USC Claim Memo from SND.

Thanks,

Dave Orland
Deputy Chief Counsel
SND OCC

ICE.000008.10FOIA2918

5/5/2010

Office of the Principal Legal Advisor

U.S. Department of Homeland Security
880 Front Street, Suite 2246
San Diego, CA 92101-8834



## U.S. Immigration and Customs Enforcement

March 26, 2010

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
                   ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:              David Orland, Deputy Chief Counsel, San Diego

TO:                Robin Baker, Field Office Director, Field Office San Diego, DRO
                   (b)(6), (b)(7)c

SUBJECT:           Case Analysis- Determination of United States Citizenship
                   (b)(6), (b)(7)c

### STATEMENT OF THE CASE

(b)(6), (b)(7)c _____ who born on (b)(6), (b)(7)c _____ came into ICE custody on March 25, 2010. He made a claim to United States Citizenship based on his father's Naturalization in 1992, when he was 15 years old. Officer (b)(6), (b)(7) conducted follow-up interviews and gathered documents from (b)(6), (b)(7)c to further investigate the possibility of citizenship on March 26, 2010.

### FACTS

(b)(6), (b)(7)c was born in Montreal, Canada and he obtained legal permanent resident status in October 21, 1993. On March 25, 2010, (b)(6), (b)(7)c was turned over to ICE custody pursuant to an Immigration Detainer and was served a Notice to Appear charging him under Section 237(a)(2)(A)(i) of the INA. On June 30, 1995, (b)(6), (b)(7)c was convicted for the offense of Assault with Great Bodily injury and sentenced to 74 days in jail and 3 years probation.

On March 26, 2010, Officer (b)(6), (b)(7) conducted a sworn statement with (b)(6), (b)(7)c at the Otay Detention Facility. During the Sworn Statement (b)(6), (b)(7)c stated his mother died at a young age and that he could not provide a phone number for his father in New York. Officer (b)(6), (b)(7) spoke with Officer (b)(6), (b)(7)c who was the processing officer and stated that during the processing of (b)(6), (b)(7)c he spoke to (b)(6), (b)(7)c s father who confirmed the information in his Naturalization Certificate and information about his son. During a review of (b)(6), (b)(7)c A-file, a copy of (b)(6), (b)(7)c father's Naturalization Certificate was revealed. The Naturalization Certificate dated May 29, 1992, shows the father's name as (b)(6), (b)(7)c with a date of birth of (b)(6), (b)(7)c

## LEGAL ANALYSIS

(b)(5), (b)(6), (b)(7)c


## CONCLUSIONS AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c


ICE.000010.10FOIA2918

**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Thursday, March 25, 2010 5:57 PM |
| **To:** | Curry, Margaret; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: [(b)(6), (b)(7)c] Matter of [(b)(6), (b)(7)c] USC Claim |
| **Importance:** | High |
| **Attachments:** | 2010_03_24_18_49_20.pdf |

DRO Field Operations and OPLA agree with your
assessment.

---

**From:** Curry, Margaret
**Sent:** Wednesday, March 24, 2010 6:53 PM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** [(b)(6), (b)(7)c]
**Subject:** [(b)(6), (b)(7)c] Matter of [(b)(6), (b)(7)c] USC Claim
**Importance:** High

Attached please find a memo addressing the citizenship claim made by [(b)(6), (b)(7)c]
[(b)(6), (b)(7)c]

Thank you.

Margaret R. Curry
Deputy Chief Counsel
Office of the Chief Counsel, San Francisco
U.S. Immigration and Customs Enforcement
Office: (415) 70[(b)(6)]
Cell: (415) 71[(b)(6)]
Email: [(b)(6)]

ICE.000011.10FOIA2918

5/5/2010

*Office of the Chief Counsel*

U.S. Department of Homeland Security
P.O. Box 26449
San Francisco, CA 94126



## U.S. Immigration and Customs Enforcement

March 24, 2010

| | |
|---|---|
| MEMORANDUM FOR: | DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA<br>DIRECTOR FOR FIELD OPERATIONS, DRO |
| FROM: | Margaret R. Curry<br>Acting Chief Counsel, San Francisco, OPLA<br><br>Timothy S. Aitken<br>Field Office Director, San Francisco Field Office, DRO |
| SUBJECT: | Case Analysis – Claim to United States Citizenship<br>(b)(6), (b)(7)c |

### STATEMENT OF THE CASE

(b)(6), (b)(7)c (hereinafter the "respondent") appeared at his first master calendar hearing on March 23, 2010. Through *pro bono* counsel the respondent asserted that he may be a United States Citizen (USC) through his two naturalized parents, who respondent claimed had naturalized before he turned eighteen years of age.

### FACTS

The respondent is a thirty-three year old native and citizen of the Philippines. He was admitted to the United States as a lawful permanent resident on March 29, 1983, based upon an approved immigrant visa petition filed by his mother, (b)(6), (b)(7)c

The respondent has sustained several criminal convictions, including, but not limited to, the following:

1. (b)(6), (b)(7)c in the Superior Court of Santa Clara County for violation of California Penal Code section 273.5 (domestic violence);

2. (b)(6), (b)(7)c in the Superior Court of Santa Clara County for violation of California Health & Safety Code section 11357(b) (possession of marijuana on school grounds);

3. [(b)(6), (b)(7)c] in the Superior Court of Santa Clara County for violation of California Health & Safety Code section 11377(a) (possession of a controlled substance);

4. [(b)(6), (b)(7)c] in the Superior Court of Santa Clara County for violation of California Penal Code section 12021(a)(1) (owning. purchasing. receiving and possession of a firearm by a felon).

The respondent was encountered by ICE agents on or about January 19, 2010 while incarcerated at the Santa Clara County Jail. A Notice to Appear was issued on January 21. 2010. charging removability under INA sections 237(a)(2)(E)(i). 237(a)(2)(B)(i), and 237(a)(2)(C).

The respondent appeared at his first master calendar hearing on March 23, 2010. During the master calendar hearing, the respondent claimed he derived citizenship through his parents because his parents had naturalized prior to his eighteenth birthday. The Immigration Judge advised the respondent to speak with his parents about this issue and to retain counsel, and then set the matter over to a master calendar hearing for April 6, 2010 at 9:00 a.m.

Immediately following the master calendar hearing, SFR OCC examined the respondent's A-file to determine the validity of the respondent's claim to U.S. citizenship. The following facts were adduced from a review of the A-file.

The respondent's date of birth is [(b)(6), (b)(7)c] He was admitted to the United States with an immigrant visa on [(b)(6), (b)(7)c] at the age of six.

The immigrant visa application contained relevant biographical information regarding his parents. The respondent's father is [(b)(6), (b)(7)c] The respondent's mother is [(b)(6), (b)(7)c]

The respondent's A-file does not contain a marriage certificate for his parents. However, the A-file does contain the immigrant visa petition filed by the respondent's mother, and the Form I-130 lists a date of marriage for the respondent's parents as [(b)(6), (b)(7)c] which occurred [(b)(6), (] years before the respondent's birth. The respondent's A-file also contains a copy of a joint U.S. tax return for 1981 filed by his parents as "married." This document was used in support of an affidavit of support filed in conjunction with the respondent's immigration visa application.

A Central Index System (CIS) database check was conducted to ascertain when his parents became naturalized U.S. citizens. The CIS database check revealed that the respondent's father naturalized on [(b)(6), (b)(7)c] nd that his mother naturalized on [(b)(6), (b)(7)c]

Based upon this information, the respondent was nine years old when his father naturalized and twenty-three years old when his mother naturalized.

To corroborate this information and obtain further biographical information, SF DRO attempted to contact the respondent's parents based on telephone numbers contained in the respondent's A-file. SF DRO was unsuccessful in contacting his parents because the telephone numbers were disconnected.

2

In an abundance of caution, SF DRO has scheduled a follow-up interview of the respondent for March 26, 2010 to obtain current contact information for his parents for the purpose of interviewing his parents to verify the information contained in the respondent's A-file, which was used to assess the validity of the respondent's claim to U.S. citizenship.

## LEGAL ANALYSIS



(b)(5), (b)(6), (b)(7)c

3

ICE.000014.10FOIA2918

(b)(5), (b)(6), (b)(7)c



## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c

4

ICE.000015.10FOIA2918

## Law, Ryan A

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Thursday, March 25, 2010 5:46 PM |
| **To:** | Mcguirk, Erica; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: (b)(6), (b)(7)c - USC Claim HOU |
| **Attachments:** | USC claim memo (b)(6), (b)(7)c |

DRO Field Operations and OPLA concur with your recommendations.

---

**From:** Mcguirk, Erica
**Sent:** Thursday, March 25, 2010 1:38 PM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** (b)(6), (b)(7)c
**Subject:** (b)(6), (b)(7)c - USC Claim HOU

Please find an attached memorandum for your review. This alien is not detained by ICE but may shortly be released to ICE custody from the Texas Department of Criminal Justice.

Thank you.
Erica McGuirk
Senior Attorney
281/931- (b)(6), (b)(7)

ICE.000016.10FOIA2918

5/5/2010



U.S. Immigration
and Customs
Enforcement

March 25, 2010

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:    Chief Counsel, OPLA (through Erica McGuirk, Senior
Attorney)
Field Office Director, HOU, DRO (concurrence by █████████
AFOD)

SUBJECT:    Case Analysis-Claim to United States Citizenship
(b)(6), (b)(7)c

## STATEMENT OF THE CASE

(b)(6), (b)(7)c ███ claim to derivative United States citizenship first arose on November 20, 2008, during an immigration hearing at the Texas Department of Criminal Justice ("TDCJ") in Huntsville, Texas with Immigration Judge Rose and Assistant Chief Counsel John McPhail. The case was reviewed by Deportation Officer (b)(6), (b)(7)c ███ on March 24, 2010 in anticipation of his release from TDCJ. (b)(6), (b)(7)c makes his claim to derivative citizenship through his mother, who was born in Mexico and obtained a certificate of citizenship through her parents on (b)(6), (b)(7)c ███ reflecting that she had been a citizen of the United States since her birth on (b)(6), (b)(7)c ███ He makes no claim to military service and is not represented by counsel.

## FACTS

(b)(6), (b)(7)c ███ is not in ICE custody and has never been, though it is likely that he will be released from TDCJ shortly and will come into ICE custody, which is why this memorandum is not addressed to file. It was believed that his TDCJ release would occur on March 24 or 25, but the latest information is that the release date has been moved and a new date is not known.

On April 21, 2008, (b)(6), (b)(7)c ███████████████████████ was interviewed and placed in removal proceedings by DRO while in custody at TDCJ. (b)(6), (b)(7)c was convicted on February 16, 2006, of Aggravated Assault occurring in Angelina County, Texas, for that offense he was sentenced to eight years incarceration. He was also convicted of two counts of Driving While Intoxicated also arising in Angelina County Texas. DRO issued a Notice to Appear on April 21, 2008 in Huntsville, Texas, charging that he has been convicted of an aggravated felony, crime of violence under INA 237(a)(2)(A)(iii) and 101(a)(43)(F). During court proceedings on November 20, 2008, in Huntsville, Texas, (b)(6), (b)(7) made a claim to United States citizenship before the Immigration Judge. The case was continued to allow (b)(6), (b)(7)c to file an application for a certificate of citizenship (N-600) with CIS. According to the file, the N-600 was received by CIS on January 7, 2010. On January 26, 2010, CIS

requested additional information from ███ and the application is pending at this time. His response was due 30 days later but none was filed.

███ in Mexico. ███ entered the United States on November 18, 1978 (age 16) at Eagle Pass, Texas as a lawful permanent resident (IR-2) through his mother's petition for him as the child of a United States citizen. ███ birth certificate is un-translated and a very poor copy, therefore, his biographical information is taken from the visa petitions (I-130) filed by his mother on November 4, 1977 and May 7, 1973, as well as the Central Index System. ███ mother (now thought to be deceased) was ███ born on ███ in Mexico, and a United States citizen, as reflected by a certificate of citizenship ███ dated August 31, 1972 and history in CIS under ███. His father was ███ (also believed to be deceased), a citizen of Mexico born on ███ who entered the United States as a lawful permanent resident on December 6, 1973 at Eagle Pass, Texas and never naturalized, as reflected in CIS under ███ makes no claim through his father and does not claim that his father ever naturalized. It appears from a notation on the birth certificate and from the I-130s, as well as the N-600 itself, that ███ parents were married at the time of his birth. The I-130s filed for ███ by his mother appear to show the date of the parents' marriage as ███ though no marriage certificate was been found in the file or submitted by ███.

███ also has two brothers and a sister who were born in Mexico. They immigrated to the United States on ███ s children of a United States citizen (IR-2): ███

███ CIS does not reflect any of the siblings either naturalizing or obtaining certificates of citizenship. ███ lso apparently has some siblings born in the United States, though their names are not known at present. ███ himself has a son born in the United States and a grandchild born to that son.

DRO has contacted ███ son, who has no knowledge of his grandmother's physical presence in the United States. Attempts to contact other family members were made via telephone; however, the telephone numbers provided by the Texas Department of Criminal Justice have been disconnected.

## LEGAL ANALYSIS



## CONCLUSION AND RECOMMENDATION



(b)(5), (b)(6), (b)(7)c

ICE.000019.10FOIA2918

## Law, Ryan A

**From:** OPLA USC Claims
**Sent:** Thursday, March 25, 2010 4:17 PM
**To:** Lopez, Carlos; USC CLAIMS DRO; OPLA USC Claims
**Subject:** FW [(b)(6), (b)(7)c] - USC Claim MIA
**Attachments:** Richard Gonzalez A040 015 483.doc

DRO Field Operations and OPLA agree with your assessment.

---

**From:** Lopez, Carlos
**Sent:** Thursday, March 25, 2010 10:20 AM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** Celaya, Gracian A; 'Ripa, Garrett J'; Vigilance, Michele; Farquhar, Darryl J
**Subject:** [(b)(6), (b)(7)c] USC Claim MIA

All,

Pursuant to the Superseding Guidance on Reporting and Investigating Claims to United States Citizenship, attached please find a Memorandum analyzing the claim to citizenship advanced by [(b)(6), (b)(7)c] who is detained at the Krome Service Processing Center in Miami, Florida.

[(b)(6), (b)(7)c] claims he acquired U.S. citizenship at birth from his father. However, [(b)(6), (b)(7)c] has been unable to show that his father was physically present in the U.S. for 10 years (at least 5 after the age of 14) prior to his birth. Additionally, [(b)(6), (b)(7)c] claim was examined to see if he could have derived from his father at the time he was admitted to the U.S. as a lawful permanent resident. The Child Citizenship Act was not applicable because [(b)(6), (b)(7)c] turned 18 prior to the effective date of Feb. 27, 2001. [(b)(6), (b)(7)c] could not derive under former INA §321 because he was born in wedlock and his mother did not naturalize until he was 28 years-old. As such, it appears [(b)(6), (b)(7)c] did not acquire U.S. citizenship at birth or through derivation from his U.S. citizen father.

*Carlos López, Esg.*
Senior Attorney
U.S. Department of Homeland Security
Immigration & Customs Enforcement
Office of the Chief Counsel

FMI - Senior Executive Office | 865 SW 78th Ave Suite A101 | Plantation, FL 33324 | Office: (954) 236-[(b)(6), (b)(7)]

ICE.000020.10FOIA2918

5/5/2010



**U.S. Immigration and
Customs Enforcement**

March 23, 2010

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:    Chief Counsel, Miami, OPLA
Field Office Director, Miami, DRO

SUBJECT:    Case Analysis – Claim to United States Citizenship
(b)(6), (b)(7)c

## STATEMENT OF THE CASE

(b)(6), (b)(7)c
is presently detained at the Krome Service Processing Center in Miami, Florida. (b)(6), (b)(7)c claim to USC is based on a claim of birth abroad to a U.S. citizen parent. See Citizenship Chart #1 in Immigration Law handbook. This memo will also consider if (b)(6), (b)(7)c could have derived under former INA §321.

(b)(6), (b)(7)c attorney, Zareefa Khan, claims that he falls under "old INA §309" and that she needs to show that (b)(6), (b)(7)c father resided in the U.S. for 10 years prior to (b)(6), (b)(7)c birth.

## FACTS

(b)(6), (b)(7)c in the Dominican Republic (DR) and entered the U.S. as a lawful permanent resident (LPR) (IR2 – Child of a United States Citizen) on June 29, 1985 at or near New York City, New York.

(b)(6), (b)(7)c father (b)(6), (b)(7)c entered the U.S. as an LPR (O1M – Native of Certain Western Hemisphere Countries) on April 11, 1962 at or near San Juan, Puerto Rico. (b)(6), (b)(7)c father became USC at an unknown date. CIS printout shows a status change after entry however no date has been recorded. (b)(6), (b) (b)(6), (b)(7)c mother, (b)(6), (b)(7)c naturalized on August 23, 1999, when (b)(6), (b)(7)c was 28 years-old (b)(6), (b)(7)c admits that his parents were married at the time of his birth and that his father naturalized at some time thereafter.

ICE.000021.10FOIA2918

IEA  (b)(6), (b)(7) spoke with (b)(6), (b)(7)c attorney on March 23, 2010 and she stated that at this time she is unable to show that (b)(6), (b)(7)c father resided in the U.S. for 10 years prior to subject's birth. She stated that she found out that (b)(6), (b)(7)c father was issued social security in 1962.

## LEGAL ANALYSIS

(b)(6), (b)(7)c, (b)(5)

ICE.000022.10FOIA2918

## CONCLUSION AND RECOMMENDATION



(b)(6), (b)(7)c, (b)(5)

ICE.000023.10FOIA2918

**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Wednesday, March 24, 2010 6:43 PM |
| **To:** | Gastelo, Elias S Jr; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: (b)(6), (b)(7)c USC Claim ELP |
| **Importance:** | High |
| **Attachments:** | (b)(6), (b)(7)c 3 24 2010 memo.pdf |

DRO Field Operations and OPLA agree with your recommendations.

---

**From:** Gastelo, Elias S Jr
**Sent:** Wednesday, March 24, 2010 2:17 PM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** (b)(6), (b)(7)c
(b)(6), (b)(7)c
**Subject:** (b)(6), (b)(7)c USC Claim ELP
**Importance:** High

I attached a joint ELP OCC/DRO memo recommending continuing with (b)(6), (b)(7)c removal proceedings and that he remain detained in ICE custody. (b)(6), (b)(7)c alleged he acquired U.S. Citizenship at birth on account of his father being born in the United States. However, he failed to submit evidentiary proof that his father was born in the U.S. and that his father continuously lived in the U.S. for 10 years prior to (b)(6), (b)(7)c birth. OCC will work with (b)(6), (b)(7)c and ask that he provide proof, if any, of his father's citizenship and continuous residence in the U.S. If he is unable to produce credible evidence, (b)(6), (b)(7)c ather can testify at the removal hearing.

Should you have questions, please contact me.

Thanks,

*Elias Gastelo*
Deputy Chief Counsel
DHS/ICE/OPLA
Office of the Chief Counsel
El Paso, Texas
(915) 782-(b)(6), (b) Phone
(915) 774-0957 Fax

ICE.000024.10FOIA2918

5/5/2010

**U.S. Department of Homeland Security**
1545 Hawkins Boulevard
El Paso, TX 79925



**U.S. Immigration
and Customs
Enforcement**

*March 24, 2010*

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
                   ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:              Elias Gastelo, Deputy Chief Counsel, OPLA-OCC,
                   El Paso, Texas
                   (b)(6), (b)(7)c
                                              Acting Field Office Director,
                   El Paso Field Office

SUBJECT:           Case Analysis – Claim to United States Citizenship
                   (b)(6), (b)(7)c

## STATEMENT OF THE CASE

(b)(6), (b)(7)c                    is currently detained at the Otero Service Processing Center. (b)(6), (b)(7)c is classified as a citizen and national of Mexico by virtue of his birth in Coahuila, Mexico on (b)(6), (b)(7)c              is claiming he acquired United States Citizenship through his father. (b)(6), (b)(7)c           Deportation Officer (b)(6), (b)(7)c          completed a sworn statement regarding (b)(6), (b)(7)c claim to acquired United States Citizenship.

## FACTS

(b)(6), (b)(7)c          was granted lawful permanent resident status on March 3, 1992 at the age of eight. was encountered at the Reeves County Detention Center in Pecos, Texas, during routine jail checks. (b)(6), (b)(7)c   was convicted on January 23, 2006 for the offense of conspiracy to possess with intent to distribute heroin. (b)(6), (b)(7)c   was issued a Notice To Appear on September 15, 2009 and placed into removal proceedings and charged as being removable pursuant to Immigration and Nationality Act (INA)§ 237(a)(2)(A)(iii).

## LEGAL ANALYSIS



(b)(5)

ICE.000025.10FOIA2918

SUBJECT: Case Analysis – Claim to United States Citizenship
(b)(6), (b)(7)c

Page 2

(b)(5), (b)(6), (b)(7)c



## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c



## Law, Ryan A

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 22, 2010 6:59 PM |
| **To:** | [(b)(6), (b)(7)c] USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: USC Claim |
| **Attachments:** | USC Claim [(b)(6), (b)(7)c] pdf |

DRO Field Operations and OPLA agree with your
conclusion and recommendation.

------------------------------------------------
**From:** [(b)(6), (b)(7)c]
**Sent:** Monday, March 22, 2010 5:08:27 PM
**To:** USC CLAIMS DRO; OPLA Field Legal OPS
**Cc:** [(b)(6), (b)(7)c]
**Subject:** FW: USC Claim
**Importance:** High
**Auto forwarded by a Rule**


Attached please find a case analysis regarding an **unfavorable** claim to U.S. citizenship. We plan to assume
custody and continue with removal proceedings.

Thanks


[(b)(6), (b)(7)c]

Acting Deputy Field Office Director
New Orleans Field Office
BlackBerry: 318.491.[(b)(6), (b]

ICE.000027.10FOIA2918

5/5/2010

*Office of the Principal Legal Advisor*

U.S. Department of Homeland Security
500 12th Street, S.W., 11th Floor
Washington, DC 20024

**U.S. Immigration and
Customs Enforcement**

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:    Carl E. Perry
Chief Counsel New Orleans OPLA

Philip T. Miller, Field Office Director
New Orleans Field Office, DRO

SUBJECT:    Case Analysis – Claim to United States Citizenship
[b)(6), (b)(7)c]

## STATEMENT OF THE CASE

[b)(6), (b)(7)c] is presently serving a federal sentence at the FCI, Memphis, TN. [b)(6), (b)(7)] was convicted on July 18, 2003, in the United States District Court, Eastern District of Virginia, for the offense of conspiracy to distribute 3, 4 methylenedioxymethamphetamine (MDMA) and marijuana. [b)(6), (b)] was sentenced to 97 months of imprisonment for this offense. His projected release date is April 16, 2010. In written correspondence received by Oakdale DRO on November 2, 2009 [b)(6), (b)] asserted a claim to United States (US) citizenship based upon his father's naturalization.

## FACTS

[b)(6), (b)(7)c] in Binh Long, Vietnam to the marriage o [b)(6), (b)(7] [b)(6), (b)(7)c] (father), a Vietnamese citizen and national, and [b)(6), (b)(7)c] (mother), a Vietnamese citizen and national. On October 26, 1984, [b)(6), (b)] entered the US with his mother and father at New York, NY as an immigrant. On July 18, 2003 [b)(6), (b)(7)c] was convicted in the United States District Court, Eastern District of Virginia for the offense of Conspiracy to distribute 3, 4 Methylenedioxymethamphetamine (MDMA) and marijuana (Felony) in violation of Title 21, United States Code, Sections 841(a) (1) and 846. He was sentenced to 97 months. He is presently serving his sentence at FCI Memphis.

On November 2, 2009, a written claim to US citizenship was received at the DRO office in Oakdale, LA. A telephonic interview was arranged and conducted by Deportation Officer [b)(6), (b)]

1

ICE.000028.10FOIA2918

(b)(6), (b)(7)c During that interview (b)(6), (b)(7) stated that his father (b)(6), (b)(7)c became a naturalized United States citizen on November 21, 1991. At that time, (b)(6), (b)(7)c was fifteen years of age. (b)(6), (b)(7)c mother, (b)(6), (b)(7)c has not naturalized and remains a lawful permanent resident. (b)(6), (b)(7 stated his parents were married prior to his birth. He stated his parents remain married and have not legally separated or divorced.

<u>LEGAL ANALYSIS</u>



2

ICE.000029.10FOIA2918



(b)(6), (b)(7)c, (b)(5)

## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c

3

**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 22, 2010 5:15 PM |
| **To:** | Feller, Adam P; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: ▓(b)(6), (b)(7)c▓ USC Claim NYC |
| **Attachments:** | USC Memo ▓(b)(6), (b)(7)c▓ doc |

DRO Field Operations and OPLA concur with your recommendations.

---

**From:** Feller, Adam P
**Sent:** Monday, March 22, 2010 1:17 PM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc** ▓(b)(6), (b)(7)c▓
**Subject:** ▓(b)(6), (b)(7)c▓ -USC Claim NYC

Enclosed please find a case analysis memorandum relating to detained subject ▓(b)(6), (b)(7)c▓ who claimed to be a U.S. citizen through derivation via his mother and/or father. For the reasons set forth in the memorandum, OCC and DRO recommend that the removal case proceed as there was no credible evidence that he derived U.S. citizenship through either parent.

Adam Feller
Senior Attorney
ICE
NYC-Varick St SPC
212 863 ▓(b)(6), (b)(7)▓

ICE.000031.10FOIA2918

5/5/2010



# U.S. Immigration and Customs Enforcement

May 5, 2010

MEMORANDUM FOR:     DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
                                  ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:                    Susan Beschta, Assistant Chief Counsel, New York, OPLA

THROUGH:           Adam Feller, Senior Attorney, New York, OPLA
                        (b)(6), (b)(7)c
                                          New York, DRO

SUBJECT:           Case Analysis – Claim to United States Citizenship
                    (b)(6), (b)(7)c

## STATEMENT OF THE CASE

On March 15, 2010, ICE detainee (b)(6), (b)(7)c a citizen of Jamaica claimed that he is a U.S. citizen. (b)(6), (b)(7)c claims he acquired citizenship at birth, under section 301(g) of the Immigration and Nationality Act (INA or Act), based on the allegation that his mother (b)(6), (b)(7)c (b)(6), (b)(7)c was born in the U.S. Virgin Islands – St. Thomas.

## FACTS

(b)(6), (b)(7)c was born in Jamaica on (b)(6), (b)(7)c o (b)(6), (b)(7)c and (b)(6), (b)(7)c His parents were living together but never married. (b)(6), (b)(7)c claims his mother was born in the U.S. Virgin Islands – St. Thomas and that she died there in 1995. (b)(6), (b)(7)c lived with his parents until he was seven years old. In about 1990, (b)(6), (b)(7)c ther immigrated to the United States. (b)(6), (b)(7)c claims that his father is a naturalized USC.

On June 22, 2006, the respondent entered the U.S. and was admitted as a nonimmigrant H-2 temporary worker with authorization to remain in the United States for a temporary period not to exceed October 31, 2006. On September 24, 2009, (b)(6), (b)(7)c was convicted of the crime of Attempted Assault in the Third Degree in violation of sections 110/120.00 of the New York Penal Law. On March 15, 2009, (b)(6), (b)(7)c was arrested pursuant to a warrant and detained by ICE, and he was served a Notice to Appear charging him with removability under section 237(a)(1)(B) of the Act.

On October 26, 2009, (b)(6), (b)(7)c laimed that he was a US citizen and that he was born in St. Vincent and the Grenadines. After subsequent checks revealed that (b)(6), (b)(7)c s in fact a Jamaican

citizen who entered the U.S. as a nonimmigrant H-2, he changed his story and alleged the facts outlined above.

There is no evidence that  mother was a U.S. citizen at birth or from the U.S. Virgin Islands.

A Sworn Affidavit was taken by DRO wherein [redacted] set forth his claim that he is a United States citizen. DRO promptly telephonically interviewed [redacted] wife [redacted] nd conducted checks of various databases, including the CIS database and determined that, aside from [redacted] allegations, the evidence is inconclusive regarding whether his father is a naturalized USC. This is so because [redacted] did not know his father's date of birth making it practically impossible to determine which, if any, of about 25 persons named [redacted] in the CIS database is truly his father.

## LEGAL ANALYSIS

(b)(5), (b)(6), (b)(7)c

## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c

**Law, Ryan A**

---

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 22, 2010 4:35 PM |
| **To:** | Hengerer, Carla J; OPLA USC Claims; USC CLAIMS DRO |
| **Subject:** | FW: (b)(6), (b)(7)c - USC Claim BUF |
| **Importance:** | High |
| **Attachments:** | (b)(6), (b)(7)c USC Claim Memo.pdf |

DRO Field Operations and OPLA agree with your assessment and recommendations.

---

**From:** Hengerer, Carla J
**Sent:** Monday, March 22, 2010 11:20 AM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** (b)(6), (b)(7)c
**Subject:** (b)(6), (b)(7)c - USC Claim BUF
**Importance:** High

Attached please find USC Claim memo relating to (b)(6), (b)(7)c

(b)(6), (b)(7)c is claiming to be a derivative United States citizen through the naturalization of his father. No probative evidence has been supplied. His parents were divorced and there is no evidence that he was residing in the legal custody of his father at the time of his father's naturalization. He is the subject of multiple denied N-600's and dismissed appeals. He has recently presented a nunc pro tunc custody decree from the Dominican Republic which is currently under review by Buffalo USCIS.

Recommend continued detention.

**Carla J. Hengerer**
**Deputy Chief Counsel**
**Buffalo Office of Chief Counsel**
**716-855-**(b)(6), (b)(7)c
**Blackberry: 716-888-0370**

*** *Attorney/Client Privilege Communication* *** *Attorney Work Product* ***

*This document contains confidential and/or sensitive attorney/client privileged information or attorney work product and is not for release, review, retransmission, dissemination or use by anyone other than the intended recipient. Please notify the sender if this email has been misdirected and immediately destroy all originals and copies. Any disclosure of this document must be approved by the Office of the Principal Legal Advisor, U.S. Immigration & Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY. FOIA exempt under 5 U.S.C. § 552(b)(5).*

ICE.000034.10FOIA2918

5/5/2010



**U.S. Immigration
and Customs
Enforcement**

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
                             ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:                Chief Counsel, AOR, OPLA *Cala J Hengerer*
                Field Office Director, Buffalo Field Office, DRO *Michael Phillips*

SUBJECT:         Case Analysis – Claim to United States Citizenship
                  (b)(6), (b)(7)c

## STATEMENT OF THE CASE:

(b)(6), (b)(7)c COB: Dominican Republic) was admitted to the United States as a lawful permanent resident (P2-2, unmarried son of a lawful permanent resident) on January 21, 1984 (b)(6), (b)(7)c was ordered removed by an Immigration Judge (IJ) in absentia on November 14, 2003 in accordance with sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act (INA). On September 28, 2004, (b)(6), (b)(7)c filed a Motion to Reopen his case with the Immigration Judge. The Immigration Judge denied the Motion to Reopen on November 19, 2004. (b)(6), (b)(7)c s claiming to be a derivative United States citizen through the naturalization of his father on April 20, 1996 when he was 17 years old (b)(6), (b)(7)c has submitted Forms N-600 Application for Certificate of Citizenship to U.S. Citizenship and Immigration Services (USCIS) on several occasions. All applications have been denied.

On March 12, 2010 (b)(6), (b)(7)c forwarded additional information that he states supports his previously denied N-600 applications, claiming derivation of citizenship through (b)(6), (b)(7)c (b)(6), (b)(7)c his naturalized United States citizen father. Subject claims that his parents divorced in November 1988 and that he resided in the custody of his father.

## FACTS:

ICE.000035.10FOIA2918

[b)(6), (b)(7)c] biological father was admitted to the United States as a lawful permanent resident (P2-1, unmarried son of a lawful permanent resident) on July 26, 1978, approximately five months before [b)(6), (b)(7)c] birth in the Dominican Republic. His father was admitted following the approval of a Form I-130 Petition for Alien Relative filed in his behalf by his lawful permanent resident mother.

[b)(6), (b)(7)c] was born in Bisono, Dominican Republic, on [b)(6), (b)(7)c] A Birth Registration Extract dated [b)(6), (b)(7)c] contains an annotation indicating that [b)(6), (b)(7)c] parents [b)(6), (b)(7)c] were married on February [b)(6), (b)(7)c] thereby legitimating [b)(6), (b)(7)c]

On the basis of a Form I-130 Petition for Alien Relative filed in her behalf, [b)(6), (b)(7)c] mother, [b)(6), (b)(7)c] was admitted to the United States as a lawful permanent resident (P2-1, spouse of a lawful permanent resident) on January 24, 1980. At that time [b)(6), (b)(7)c] was 13 months old. He apparently remained behind in the Dominican Republic, along with several siblings. There is no record of [b)(6), (b)(7)c] mother ever becoming a naturalized United States citizen.

[b)(6), (b)(7)c] father [b)(6), (b)(7)c] filed an I-130 Petition for Alien Relative in his behalf on February 17, 1983. The petition was approved August 31, 1983 [b)(6), (b)(7)c] was admitted to the United States as a lawful permanent resident (P2-2, son of a lawful permanent resident) on January 21, 1984. At that time, he was five years old.

[b)(6), (b)(7)c] parents were divorced in the Dominican Republic on November 16, 1988. The divorce decree contained no reference to legal custody of [b)(6), (b)(7)c] being awarded to his father. At the time, [b)(6), (b)(7)c] was nine years old.

[b)(6), (b)(7)c] father naturalized on [b)(6), (b)(7)c] at New York, New York (certificate # [b)(6), (b)(7)c] At that time [b)(6), (b)(7)c] was 17 years old.

[b)(6), (b)(7)c] has filed multiple N-600 applications and appeals, all of which have been denied or dismissed [b)(6), (b)(7)c]

The new evidence presented by [b)(6), (b)(7)c] consists of a Dominican court document, supported by affidavits provided by both of his now-divorced biological parents, purporting to grant legal custody to his father nunc pro tunc to the date of their divorce on November 16, 1988.

## LEGAL ANALYSIS


(b)(6), (b)(7)c, (b)(5)

(b)(6), (b)(7)c, (b)(5)



(b)(5), (b)(6), (b)(7)c



## CONCLUSION AND RECOMMENDATION

(b)(6), (b)(7)c, (b)(5)



ICE.000038.10FOIA2918

**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 22, 2010 2:45 PM |
| **To:** | Kaufman, Matthew W; OPLA USC Claims; USC CLAIMS DRO |
| **Subject:** | FW: (b)(5), (b)(7)c ▮▮▮▮ USC Claim PHO |
| **Attachments:** | USC Analysis (b)(6), (b)(7)c ▮▮▮▮ 3-22-10.doc |

DRO Field Operations and OPLA agree with your recommendations.

---

**From:** Kaufman, Matthew W
**Sent:** Monday, March 22, 2010 11:04 AM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** (b)(6), (b)(7)c
(b)(6), (b)(7)c
**Subject:** (b)(6), (b)(7)c ▮▮▮▮ USC Claim PHO

OPLA USC Claims and USC Claims DRO:

On March 15, 2010, at his initial master calendar hearing the respondent stated that his step-father was a United States citizen. The respondent claims that he derived United States citizenship through his stepfather, who naturalized prior to his eighteenth birthday. Thereafter, the court continued his case in order to allow the respondent to obtain additional evidence.

There is no probative evidence that would establish the respondent's claim to United States citizenship. While the respondent claims his step-father was born in the United States, the respondent has offer no evidence that his step-father legally adopted him. Insofar as the respondent was not an adopted child of a United States citizen, and he does not meet the definition of the child under INA 101(b), he cannot derive United States citizenship through his step-father. Likewise, there is no probative evidence that either one of the respondent's biological parents are or ever became United States citizens. Thus, it is not possible for the respondent to have acquired United State citizenship through his biological parents.

Matthew W. Kaufman
Senior Attorney
Office of the Chief Counsel
U.S. Immigration and Customs Enforcement
6431 S. Country Club Rd.
Tucson, AZ 8570▮ (b)(6), (b)
Phone: (520) 670-▮
Blackberry: (520)▮ (b)(6), (b)(7)c
Fax: (520) 670-4891

This document may contain confidential and/or sensitive attorney-client privileged, attorney work-product, and/or U.S. Government information. It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient. Any release, retransmission or dissemination is considered to be an unauthorized disclosure of confidential information.

ICE.000039.10FOIA2918

5/5/2010

Office of the Chief Counsel - Arizona
U.S. Department of Homeland Security
2035 N. Central Avenue
Phoenix, AZ 85004



**U.S. Immigration and Customs Enforcement**

March 22, 2010

MEMORANDUM FOR:     DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:     Patricia M. Vroom, Chief Counsel, Phoenix, OPLA
Katrina S. Kane, Field Office Director, Phoenix Field Office, DRO

Reviewed by:     Senior Attorney Matthew W. Kaufman, Tucson, Arizona

Author:     Victoria Levin, Assistant Chief Counsel, Florence, Arizona

SUBJECT:     Case Analysis - Claim to United States Citizenship
(b)(6), (b)(7)c

I.

STATEMENT OF THE CASE

On January 13, 2010, the Department placed the respondent in removal proceedings through the issuance of a Notice to Appear ("NTA"). On February 12, 2010, the Department of Homeland Security (the "Department") took custody of (b)(6), (b)(7)c (b)(6), (b)(7)c who was serving a sentence of two and a half years in the Arizona State Prison Complex—Alhambra. On March 15, 2010, at his initial master calendar hearing the respondent stated that his step-father was a United States citizen. The respondent claims that he derived United States citizenship through his stepfather, who naturalized prior to his eighteenth birthday.

ICE.000040.10FOIA2918

## II.

## FACTS

According to the Mexican birth certificate contained in the A-file, the respondent was born on <span>(b)(6), (b)(7)c</span> n Guaymas, Sonora, Mexico. His birth certificate identifies his parents as <span>(b)(6), (b)(7)c</span>

On April 1, 1994, the respondent's stepfather, <span>(b)(6), (b)(7)c</span> a naturalized United States citizen, filed a Form I-130, "Petition for Alien Relative" on behalf of the respondent.

On September 22, 1994, the former Immigration and Naturalization Service ("Service" or "INS") admitted the respondent to the United States as a lawful permanent resident under classification symbol CR2, Stepchild of a U.S. Citizen—conditional.

On December 10, 2004, the Superior Court, State of Arizona, County of Maricopa, convicted the respondent of Trafficking in Stolen Property in the Second Degree, a class three felony, in violation of sections 13-2301, 13-2307, 13-301, 13-302, 13-303, 13-304, 13-501(B), 13-701, 13-702, 13-702.01, and 13-801 of the Arizona Revised Statutes. As a result, the court sentenced him to three years' probation.

On May 11, 2009, the respondent's probation was revoked and he was sentenced to two and a half years' confinement.

On January 13, 2010, the Department placed the respondent in removal proceedings through the issuance of an NTA and charged him with removability under section 237(a)(2)(iii) of the Immigration and Nationality Act ("Act" or "INA"), alien who at any time after admission is convicted of an aggravated felony as defined in section 101(a)(43)(G) of the Act, an law relating to a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year was imposed.

On March 15, 2010, the respondent appeared before the immigration court in Florence, Arizona for a hearing in removal proceedings. The respondent admitted the allegations, and the immigration judge sustained the aggravated felony charge. During questioning by the immigration judge in regard to the respondent's parentage, the respondent claimed his stepfather, who filed the Form I-130, Petition for Alien Relative, on his behalf, was a naturalized United States citizen, and that the respondent may have derived citizenship from his stepfather.

On March 17, 2010, Deportation and Removal Operations ("DRO") took the respondent's sworn statement, during which the respondent stated he never knew his biological father, or whether his biological father was married to his mother. He also stated did not believe his stepfather ever legally adopted him.

## III.

## LEGAL ANALYSIS

(b)(5), (b)(6), (b)(7)c



ICE.000042.10FOIA2918

(b)(5), (b)(6), (b)(7)c



ICE.000043.10FOIA2918

(b)(5), (b)(6), (b)(7)c

## IV.

## CONCLUSION AND RECOMMENDATION

(b)(5)



**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 22, 2010 1:54 PM |
| **To:** | Furlong, John M; OPLA USC Claims; USC CLAIMS DRO |
| **Subject:** | FW: (b)(6), (b)(7)c - USC Claim |
| **Attachments** | (b)(6), (b)(7)c USC Claim BOS.doc |

DRO Field Operations and FLO agree with your recommendations.

---

**From:** Furlong, John M
**Sent:** Friday, March 19, 2010 3:41 PM
**To:** USC CLAIMS DRO; OPLA USC Claims
**Cc:** (b)(6), (b)(7)c
(b)(6), (b)(7)c

**Subject:** (b)(6), (b)(7)c - USC Claim

(b)(5), (b)(6), (b)(7)c

John

\*\*\* Warning \*\*\* Attorney/Client Privilege \*\*\* Attorney Work Product \*\*\* This document contains confidential and/or sensitive attorney/client privileged information or attorney work product and is not for release, review, retransmission, dissemination or use by anyone other than the intended recipient. Please notify the sender if this email has been misdirected and immediately destroy all originals and copies. Any disclosure of this document must be approved by the Office of the Principal Legal Advisor, U.S. Immigration & Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY. FOIA exempt under 5 U.S.C. § 552(b)(5).
John M. Furlong, Jr.
Deputy Chief Counsel
DHS/ICE/OPLA
Boston, MA
617-565-(b)(6), (b)(7)c (P)
617-565-4921 (F)

5/5/2010



**U.S. Immigration and
Customs Enforcement**

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:    Frederick J. McGrath
Chief Counsel, BOSTON, OPLA
Field Office Director, Field Office, DRO

SUBJECT:    Case Analysis – Claim to United States Citizenship
(b)(6), (b)(7)c

## STATEMENT OF THE CASE

(b)(6), (b)(7)c                                         claims to be a United States citizen through the naturalization of
his father under section 320 of the Immigration and Nationality Act, (8 U.S.C. §1431).

## FACTS

(b)(6), (b)(7)c                                 in Thailand. (b)(6), (b) was admitted to the United States as a refugee
on May 15, 1986. On August 25, 1989, he adjusted his status to that of lawful permanent
resident, retroactive to May 15, 1986. (b)(6), (b) alleges that his father is (b)(6), (b)(7)c (formerly
known as (b)(6), (b)(7)c who naturalized on August 27, 1992. (b)(6), (b)(7) mother naturalized in 2006.
(b)(6) was placed into removal proceedings through the issuance of a Notice to Appear filed with
EOIR on January 13, 2010, charging that (b)(6), (b) was removable pursuant to INA §237(a)(2)(C) for
his conviction in the Middlesex Superior Court for the offense of carrying a firearm without a
license, in violation of Massachusetts General Laws Chapter 269, Section 10J. (b)(6), (b) through
counsel, admitted that he was not a citizen of the United States. (b)(6), (b)(7)c counsel subsequently
filed a N-600 application with USCIS. On March 5, 2010, (b)(6), (b) was interviewed by USCIS.
USCIS has requested additional information from (b)(6), (b) by April 5, 2010, including evidence he
was in the legal custody of his father. The administrative file does not identify ▮▮▮ father.
However (b)(6), (b)(7)c counsel provided as part of the initial N600 application a UNHCR document
and a Fresno County (CA) Department of Social Services document which purport to identify
(b)(6), (b)(7) father as (b)(6), (b)(7)c (b)(6), (b)(7) s currently detained by ICE. His next hearing is scheduled for
April 13, 2010, to determine the status of the N600 application.

## LEGAL ANALYSIS



## CONCLUSION AND RECOMMENDATION



ICE.000047.10FOIA2918

**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 22, 2010 12:42 PM |
| **To:** | Ball, Gregory J; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: N-600 (b)(6), (b)(7)c |
| **Attachments:** | USC claim mem (b)(5), (b)(7)c pdf |

DRO Field Operations and OPLA agree with your recommendations.

---

**From:** Ball, Gregory J
**Sent:** Saturday, March 20, 2010 9:10 AM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** (b)(6), (b)(7)c
**Subject:** FW: N-600 (b)(6), (b)(7)c

I have reviewed the respondent's claim to US citizenship (b)(5), (b)(6), (b)(7)c

(b)(5), (b)(6), (b)(7)c

Greg Ball
Chief Counsel
ICE
San Antonio, TX

---

**From:** Martinez, Anibal D
**Sent:** Friday, March 19, 2010 6:37 PM
**To:** Ball, Gregory J
**Subject:** Fw: N-600 (b)(6), (b)(7)c

Greg:

If you are still at the office, please elevate for me. If not, I will tonight.

Anibal

-----------

Sent from My Blackberry Wireless

---

**From:** Adams, Justin F
**To:** Benson, James M
**Cc:** Martinez, Anibal D; Adams, Justin F < (b)(6), (b)(7)c
**Sent:** Fri Mar 19 17:56:24 2010
**Subject:** RE: N-600 (b)(6), (b)(7)c

Here is the USC claim memo for (b)(6), (b)(7)c Based on my discussion with USCIS, my review of the

ICE.000048.10FOIA2918

5/5/2010

N-600 and supporting documents, and my discussion with Greg Ball, I have concluded that the alien has failed to meet his burden of establishing that he is a U.S. citizen.

I am leaving the office now, so if you need to reach my please do so on my cell phone: 617-970- [(b)(6), (b)]
Thank you.


V/r
Justin

**JUSTIN F. ADAMS**
Assistant Chief Counsel
Department of Homeland Security
Office of the Chief Counsel
P.O. Box 1939
San Antonio, Texas 78297-1939
210-967- [(b)(6), (b)] (main)
210-967- [redacted] (direct)
210-967-7118 (fax)

---

**From:** Benson, James M
**Sent:** Friday, March 19, 2010 4:15 PM
**To:** Adams, Justin F
**Cc:** Martinez, Anibal D
**Subject:** FW: N-600 [(b)(6), (b)(7)c]
**Importance:** High

Here is the USC memo from LRD DRO for [(b)(6), (b)(7)c]

---

**From:** [(b)(6), (b)(7)c]
**Sent:** Friday, March 19, 2010 3:41 PM
**To:** Benson, James M
**Subject:** RE: N-600 [(b)(6), (b)(7)c]
**Importance:** High

Jim - please review attachment and advise if we need to make any changes or add additional information.

[(b)(6), (b)(7)c]

---

**From:** Benson, James M
**Sent:** Friday, March 19, 2010 3:27 PM
**To:** [(b)(6), (b)(7)c]
**Subject:** RE: N-600 [(b)(6), (b)(7)c]

10-4

**From:** [(b)(6), (b)(7)c]
**Sent:** Friday, March 19, 2010 3:27 PM
**To:** Benson, James M
**Subject:** RE: N-600 [(b)(6), (b)(7)c]
**Importance:** High

ALMOST, should be ready in about 5 minutes.

---

**From:** Benson, James M
**Sent:** Friday, March 19, 2010 3:25 PM
**To:** Cortez, Rick
**Subject:** RE: N-600 [(b)(6), (b)(7)c]

Is the memo ready?

---

**From:** [(b)(6), (b)(7)c]
**Sent:** Friday, March 19, 2010 3:16 PM
**To:** Benson, James M
**Subject:** FW: N-600 [(b)(6), (b)(7)c]
**Importance:** High

Jim – [(b)(5)]

---

**From:** [(b)(6), (b)(7)c]
**Sent:** Friday, March 19, 2010 3:06 PM
**To:** [(b)(6), (b)(7)c]
**Cc:** [(b)(6), (b)(7)c]
**Subject:** N-600 [(b)(6), (b)(7)c]
**Importance:** High

Mr. [(b)(6), (b)(7)c]

[(b)(5), (b)(6), (b)(7)c]

Sincerely
[(b)(6), (b)(7)c]
ISO II
USCIS
San Antonio, TX

ICE.000050.10FOIA2918

5/5/2010

*Office of Principal Legal Advisor*

U.S. Department of Homeland Security
500 12ᵗʰ Street. S.W., 11ᵗʰ Floor
Washington, DC 20024



**U.S. Immigration and
Customs Enforcement**

DATE: March 19, 2010

MEMORANDUM FOR: DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM: Chief Counsel, SNA, OPLA
Field Office Director, SNA, DRO

SUBJECT: Case Analysis – Claim to United States Citizenship
(b)(6), (b)(7)c

## STATEMENT OF THE CASE

(b)(6), (b)(7)c ("the respondent"), (b)(6), (b)(7)c through his attorney, has made a claim to United States citizenship during his removal proceedings before an Immigration Judge.

## FACTS

The respondent was born in Mexico on July 16, 1977. He is a citizen and native of Mexico by birth. On July 12, 1985, he became a lawful permanent resident of the United States. The respondent's father is a citizen of the United States by birth. The respondent's mother is a native and citizen of Mexico. As of today, the respondent's mother has not become a naturalized United States citizen. The respondent's A-file contains a copy of his father's birth certificate. Respondent's mother and father are still married.

The respondent does not have a prior removal and is scheduled for a removal hearing before an Immigration Judge on March 26, 2010. Respondent's attorney filed an N-600 on February 24, 2010 with the Immigration Service in San Antonio, Texas. The respondent entered ICE custody on December 20, 2009 and is still in custody pending his removal proceedings.

## LEGAL ANALYSIS



(b)(5)

1

ICE.000051.10FOIA2918



(b)(5), (b)(6), (b)(7)c

## CONCLUSION AND RECOMMENDATION



(b)(6), (b)(7)c

2

ICE.000052.10FOIA2918

**Nationality Chart #1**

**Children Born Outside U.S. in Wedlock**

| PERIOD STEP 1 | PARENTS STEP 2 | USC PARENT STEP 3 | CHILD STEP 4 |
|---|---|---|---|
| Period in which child was born. | Citizenship of the parents at time of child's birth. | Determine if residence requirement was met prior to the birth of the child. If yes, the child was a USC at birth. | Determine if child has lost U.S. citizenship. The child lost on the date it became impossible to meet the retention requirements. |
| Prior to 5/24/34 | Either parent a USC* | U.S. citizen had resided in the U.S. | NONE |
| On/after 5/24/34 and prior to 1/13/41 | Both USCs | One parent had resided in the U.S. | NONE |
| | One USC and one alien | USC parent had resided in the U.S. | ** 5 years residence in the U.S. or its OLP between ages 13 and 21. (Must start before age 16.) |
| On/after 1/13/41 and prior to 12/24/52 | One USC and one alien | USC had resided in the U.S. or OLP for 10 years, at least 5 of which were after age 16. *EXCEPTIONS* for honorable service in U.S. Armed Forces: 1.    Between 12/7/41 & 12/31/46, 5 of the required 10 years must have been after age 12. 2. Between 1/1/47 & 12/24/52, 10 years physical presence, at least 5 of which were after age 14. Note 3 | OR ** 2 years continuous physical presence in U.S. between ages of 14 and 28. (Must start before age 26.) OR ** NONE, if at time of child's birth, USC parent was employed by the *U.S. Government or a specified U.S. organization* . does not apply if parent used an exception. Notes 1, 2, 4 |
| | Both USCs | One had resided in the U.S. or OLP Note 3 | NONE |
| On/after 12/24/52 and prior to 11/14/86 | Both USCs | One had resided in the U.S. or OLP Note 3 | NONE |
| | One USC and one alien | USC physically present in U.S. or OLP 10 years at least 5 after age 14, Note 3 | NONE |
| On/after 11/14/86 | Both USCs | One had resided in the U.S. or OLP N ote 3 | NONE |
| | One USC and one alien | USC physically present in U.S. or OLP 5 years, at least 2 after the age of 14. Note 3 | NONE |

1.    Absence of less than 12 months in the aggregate will not break residence; absence of less than 60 days in the aggregate will not break continuity of physical presence. Honorable service in the U.S. Armed Forces counts as residence or physical presence.

2.    A child is relieved from the retention requirements if, prior to his 18th birthday, the child begins to reside permanently in the U.S. and the alien parent naturalizes.

3

ICE.000053.10FOIA2918

3.   Includes periods spent abroad while employed by the U.S. government or an international organization OR as the dependent unmarried son or daughter member of the household of such employee.

4.   Public Law 95-432 of October 10, 1978 repealed retention requirements prospectively only. Anyone born on or after 10/11/52 (i.e., not age 26 on 10/10/78) no longer had retention requirements.
* Mother added because of Technical Amendments of 1994.
** Retention requirements were repealed because of Technical Amendments of 1994, which made a process available for restoration.

4

ICE.000054.10FOIA2918

## Law, Ryan A

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Monday, March 22, 2010 11:44 AM |
| **To:** | Falcone, Michael; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW [(b)(6), (b)(7)c] -USC Claim WAS |
| **Attachments:** | USC Analysis [(b)(6), (b)(7)c] 2).doc |

DRO Field Operations and OPLA agree with your assessment.

---

**From:** Falcone, Michael
**Sent:** Monday, March 22, 2010 7:26 AM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** [(b)(6), (b)(7)c]
**Subject:** [(b)(6), (b)(7)c] USC Claim WAS

FYI

Michael A. Falcone
Deputy Chief Counsel
Washington AOR/ Arlington, VA
Office of the Principal Legal Advisor
Department of Homeland Security/ ICE
(703) 235 [(b)(6), (b)(] (Office)
(646) 221 [redacted] (BlackBerry)
(703) 235-2777 (Fax)

ICE.000055.10FOIA2918

5/5/2010

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:    Scarlett Grose, ACC/ Arlington
Leonard DeSanti, DFOD DRO-WAS

SUBJECT:    Case Analysis – Claim to United States Citizenship
(b)(6), (b)(7)c

## STATEMENT OF THE CASE

(b)(6), (b)(7)c represented by counsel, appeared at a detained master calendar hearing in Arlington, VA on March 18, 2010 and claimed that he is a U.S. Citizen. (b)(6), (b)(7)c did not state the basis for this claim, but requested time to have blood tests conducted. (b)(6), (b)(7)c mother is a Lawful Permanent Resident (LPR). (b)(6), (b)(7)c biological father's identity is unknown.

## FACTS

(b)(6), (b)(7)c was born on (b)(6), (b)(7)c in Cavite City, Philippines. He entered the United States on October 28, 1986 as a Lawful Permanent Resident (IR2). On September 12, 2000, (b)(6), (b)(7)c was convicted in Norfolk Circuit Court at Norfolk, Virginia for Statutory Burglary in violation of Virginia Code §18.2-91. He was sentenced to three years incarceration. On September 12, 2000, (b)(6), (b)(7)c was convicted in Virginia Beach Circuit Court at Virginia Beach, Virginia for Grand Larceny in violation of Virginia Code §18.2-95, Statutory Burglary in violation of Virginia Code §§18.2-90 and 18.2-91 and Conspiracy in violation of Virginia Code §18.2-22. He was sentenced to three years incarceration on each charge.

On February 2, 2010, (b)(6), (b)(7)c came into DHS custody and was served a Notice to Appear (NTA) for being removable under §237(a)(2)(iii) and §237(a)(2)(A)(ii) of the Immigration and Nationality Act (INA), as an aggravated felon as defined in §101(a)(43)(G) and for committing two crimes involving moral turpitude, not arising out of the same offense, respectively. The Record of Deportable/Inadmissible Alien (I-213) indicates that (b)(6), (b)(7)c did not make a claim to U.S. Citizenship when taken into DHS custody. Further, the bond motion filed on his behalf on March 10, 2010, did not make a claim of U.S. Citizenship. His attorney stated at the master hearing on March 18, 2010, that (b)(6), (b)(7)c is a U.S. Citizen, and denied the first two allegations of fact in the NTA. The attorney requested a continuance long enough to have blood tests taken and analyzed. The Immigration Judge (IJ) set the case for a merits hearing on June 14, 2010. (b)(6), (b)(7)c was offered earlier hearing dates, but his attorney was unavailable on those dates. He requested release from detention on bond, but the IJ denied the motion on the basis that at he is a mandatory detainee based on his criminal convictions.

(b)(6), (b)(7)c birth certificate does not include the name of his father. There is no documentation in his A file that indicates the identity of his biological father. On March 19, 2010, Deportation Officer (b)(6), (b)(7)c took a sworn statement from (b)(6), (b)(7)c (b)(6), (b)(7)c statement will be forwarded today for him to review and sign. Under oath, (b)(6), (b)(7)c stated that has not spoken with his mother since he was eleven years old. He further stated that he found out who his biological father might be when his mother told his sister three weeks ago that his father was in the Navy. (b)(6), (b)(7)c presumes that his father is a U.S. citizen because he was in the Navy and he is a white man. (b)(6), (b)(7)c stated that his sister was somehow able to locate the man that they believe to be his biological father, and that his sister has spoken with this individual. (b)(6), (b)(7)c does not have any information about the man that he now believes to be his biological father, other than that his first name is (b)(6), (b)(7)c he is white, he lives in Wisconsin and that he was born in the U.S. According to (b)(6), (b)(7)c his sister spoke with his purported biological father, who confirmed that he had been in the Navy, that he was in the Philippines in 1977, that he had a relationship with (b)(6), (b)(7)c mother, and that he is willing to take a DNA test. (b)(6), (b)(7)c confirmed that he had never met his biological father, nor did he financially support (b)(6), (b)(7)c while he was growing up, and that he believes his father was unaware of (b)(6), (b)(7)c existence and their possible relationship until the recent contact by (b)(6), (b)(7)c sister. (b)(6), (b)(7)c has no documents, such as a birth certificate, for his purported biological father to establish that he is a U.S. citizen. In addition, (b)(6), (b)(7)c stated that he lived with another family after he had a falling out with his mother when he was eleven years old, and that he was never adopted by that family nor his U.S. stepfather.

## LEGAL ANALYSIS



(b)(6), (b)(7)c, (b)(5)

## CONCLUSION AND RECOMMENDATION



(b)(6), (b)(7)c, (b)(5)

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Thursday, March 18, 2010 4:51 PM |
| **To:** | Ellington, John; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: (b)(6), (b)(7)c, (b)(5)     USC claim, PHI |

**Attachments:**     9903726_1.DOC

  DRO Field Operations and OPLA agree with your recommendations.

---

**From:** Ellington, John
**Sent:** Thursday, March 18, 2010 12:51 PM
**To:** USC CLAIMS DRO; OPLA USC Claims
**Cc:** (b)(6), (b)(7)c
**Subject:** (b)(6), (b)(7)c     USC claim, PHI



9903726_1.DOC
(379 KB)

On behalf of CC Frederick, please find a new USC memo. This alien is in removal proceedings and will be filing an N-600. (b)(5)             He is in ICE custody.

Vr

John Ellington

ICE.000058.10FOIA2918

*Office of the Chief Counsel*
U.S. Department of Homeland Security
1600 Callowhill Street, 4th Floor
Philadelphia, Pennsylvania 19130



**U.S. Immigration and
Customs Enforcement**

## INTEROFFICE MEMORANDUM

DATE:     March 18, 2010

TO:        Director, Field Legal Operations, OPLA
              Assistant Director, Field Operations, DRO

FROM:    Kent Frederick, Chief Counsel, Philadelphia, OCC
              Thomas Decker, Field Office Director, Philadelphia, DRO

SUBJECT:  Case Analysis – Claim to United States Citizenship
              (b)(6), (b)(7)c

## STATEMENT OF THE CASE

The individual identified above claims U.S. citizenship based on the naturalization of his mother and stepfather. The claim was raised for the first time today, March 18, 2010.

## FACTS

(b)(6), (b)(7)c , in Jamaica, out of wedlock. He first came to the United States on December 17, 1997, as a B-2 visitor. On the petition of his stepfather, who became a naturalized citizen on May 28, 1997, (b)(6), (b)(7)c status was adjusted to that of a lawful permanent resident on March 2, 2000. He turned 18 on September 24, 2000, and his mother became a naturalized citizen on September 16, 2003. Although (b)(6), (b)(7)c calls his stepfather his adoptive father, he has produced no document showing any qualifying adoption, and the I-130 petition filed by his stepfather identifies (b)(6), (b)(7)c as his "stepchild."

(b)(6), (b)(7)c has been convicted of several crimes, including controlled substance trafficking. A notice to appear charging deportability on that basis has recently been filed with the Immigration Court in York, but his first court date is less than a week away. (b)(6), (b)(7)c has expressed the belief that he derived U.S. citizenship through his mother and "adoptive" father.

## LEGAL ANALYSIS

(b)(5), (b)(6), (b)(7)c

Attorney Work Product – Do Not Disclose Under FOIA

1

(b)(5). (b)(6). (b)(7)c



Attorney Work Product – Do Not Disclose Under FOIA

2

ICE.000060.10FOIA2918

**U.S. Immigration and
Customs Enforcement**

MEMORANDUM FOR:     DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS,
DRO

FROM:     Aaron W. Todd, Chief Counsel, DET, OPLA
Rebecca J. Adducci, Field Office Director, DET, DRO

SUBJECT:     Case Analysis – Claim to United States Citizenship


## STATEMENT OF THE CASE

(b)(6), (b)(7)c     was ordered deported in absentia on January 6, 1986. On March 5, 1986, a Warrant of Deportation was issued but never executed. On September 17, 2009 (b)(6), (b)(7)c was encountered by DRO. During the encounter, (b)(6), (b)(7)c claimed he was born in Donna, Texas (b)(6), (b)(7)c was placed on an order of supervision. Subsequently (b)(6), (b)(7)c provided a Texas delayed certificate of birth indicating that he was born in Hidalgo, Texas. Because this birth certificate seemed to establish United States citizenship, DRO cancelled the order of supervision. The Texas Health and Human Services Commission Office of the Inspector General, Vital Statistics Fraud Unit, have since issued a finding that the delayed birth certificate was obtained fraudulently.

Although (b)(6), (b)(7)c is not presently in ICE custody, this analysis is being raised now as once (b)(6), (b)(7)c is located he will be placed in ICE custody and removed to Mexico.

## FACTS

On April 15, 1980, an I-130 petition was filed on (b)(6), (b)(7)c behalf by (b)(6), (b)(7)c The I-130 petition indicates that (b)(6), (b)(7)c was born in Mexico. The marriage license filed along with the I-130 petition indicates that (b)(6), (b)(7)c (b)(6), (b)(7)c was born in Reynosa, Tamaulipas, Mexico. This I-130 petition was withdrawn on September 22, 1981.

# Law, Ryan A

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Thursday, March 18, 2010 4:35 PM |
| **To:** | Todd, Aaron W; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW: ▓▓▓ (b)(6), (b)(7)c ▓▓▓ - USC Claim - DET ▓▓▓ (b)(6), (b)(7)c ▓▓▓ |
| **Attachments:** | ▓▓▓ (b)(6), (b)(7)c ▓▓▓ USC Claim - DET. ▓▓▓ Texas Fraud Finding - iManage Acrobat Integration.pdf |

    DRO Field Operations and OPLA agree with your
recommendations.

---

**From:** Todd, Aaron W
**Sent:** Thursday, March 18, 2010 12:34 PM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc** (b)(6), (b)(7)c
**Subject:** (b)(6), (b)(7)c - USC Claim - DET

Attached please find a USC claim analysis prepared by Detroit OCC.

(b)(6), (b)(7)c was ordered deported in absentia on January 6, 1986. On March 5, 1986, a Warrant of Deportation was issued but never executed. On September 17, 2009 (b)(6), (b)(7)c was encountered by DRO. During the encounter (b)(6), (b)(7)c claimed he was born in Donna, Texas. (b)(6), (b)(7)c was placed on an order of supervision. Subsequently, (b)(6), (b)(7)c provided a Texas delayed certificate of birth indicating that he was born in Hidalgo, Texas. Because this birth certificate seemed to establish United States citizenship, DRO cancelled the order of supervision. The Texas Health and Human Services Commission Office of the Inspector General, Vital Statistics Fraud Unit, have since issued a finding that the delayed birth certificate was obtained fraudulently. Due to the unique circumstances of this case, the finding of fraud by the Texas Health and Human Services Commission is also attached for your review.

Although (b)(6), (b)(7)c s not presently in ICE custody, this analysis is being raised now as once (b)(6), (b)(7)c is located he will be placed in ICE custody and removed to Mexico.

Aaron W. Todd
Chief Counsel
DHS/ICE - Detroit
313-446 (b)(6), (b)(7)c (phone)
313-220 (cell)
313-568-6035 (fax)

ICE.000065.10FOIA2918

5/5/2010

entered the United States illegally in December 2007. He is subject to reinstatement of his prior removal order pursuant to section 241(a)(5) of the INA, and 8 C.F.R. §241.8.

## DRO INVESTIGATION

(b)(6), (b)(7)c indicated that a visa may have been issued by the immigration service; however, he is unaware of what type of visa it was or why he would need it since he believes he is a United States Citizen by birth. The ICE database indicates that (b)(6), (b)(7)c had obtained a visa through the Family Unity Program on September 17, 1991. A vital records search was conducted based upon (b)(6), (b)(7)c name and date of birth. The search yielded no records. In addition, a search has been requested and is pending concerning whether a foreign birth certificate is in (b)(6), (b)(7)c A-file located with the National Records Center.

(b)(6), (b)(7)c was previously encountered in 2007 and placed into removal proceedings by issuance of a Notice to Appear pursuant to INA §240. (b)(6), (b)(7)c made a claim to citizenship by birth during this encounter, however, on November 15, 2007, (b)(6), (b)(7)c was ordered removed by an Immigration Judge in Imperial, California. Mr (b)(6), (b)(7)c father's name is (b)(6), (b)(7)c date of birth is (b)(6), (b)(7)c On December 10, 1998, (b)(6), (b)(7)c application for Temporary Permanent Residency pursuant to INA §245A was denied. (b)(6), (b)(7)c mother's name is (b)(6), (b)(7)c date of birth (b)(6), (b)(7)c and alien number (b)(6), (b)(7)c became a Legal Permanent Resident pursuant to INA §245A, amnesty.

## CRIMINAL HISTORY

On May 16, 2006, (b)(6), (b)(7)c was convicted of a Controlled Substance Possession for Sale in violation of California Health and Safety Code (Cal. H&S §11378 and sentenced to 16 months in state prison. On May 24, 2006, he was also convicted for Controlled Substance Possession in violation of Cal. H&S §11377(A) and sentenced to 16 months in state prison. On this same date, he was convicted of Controlled Substance Paraphernalia in violation of Cal. H&S §11364 and sentenced to 90 days in Los Angeles county jail (b)(6), (b)(7)c was also convicted on January 30, 2007 for Use/Under Influence of a Controlled Substance and sentenced to 36 months probation and 90 days jail (b)(6), (b)(7)c was also convicted for a violation of California Vehicle Code (VC) §21200.5, driving under the influence on a bicycle, Cal. H&S §11550(a) Use/Under Influence of a Controlled Substance and VC §40508(a) Failed to Appear on July 27, 2007 in Los Angeles County.

## CONCLUSION AND RECOMMENDATION



March 18, 2010

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
                             ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:                George H. Lund III
                Field Office Director, Los Angeles, CA

                Michelle P. Myers
                Assistant Chief Counsel

SUBJECT:          Claim to United States Citizenship
                (b)(6), (b)(7)c
                (b)(6), (b)(7)c

## STATEMENT OF THE CASE

Initial Claim of United States Citizenship (USC):

On March 18, 2010, the respondent was encountered at Los Angeles County Jail after being referred by Secure Communities for reinstatement of removal pursuant to 8 C.F.R. §241.8. An ICE detainer was placed on [(b)(6), (b)(7)c] however, he has now claimed to be a United States Citizen by birth in Pomona, California.

## FACTS

On March 18, 2010, Supervisory Immigration Enforcement Agent [(b)(6), (b)(7)c] interviewed [(b)(6), (b)(7)c] at Los Angeles County Jail as a referral from Secure Communities. SIEA [(b)(6), (b)(7)c] assigned to the Criminal Alien Program at Los Angeles County Jail conducted an additional interview and took a sworn statement from [(b)(6), (b)(7)c] after he made a claim to US citizenship. On February 5, 2010, [(b)(6), (b)(7)c] was convicted for Possession of a Controlled Substance in violation of California Health and Safety Code 11377(A).

In the sworn statement [(b)(6), (b)(7)c] stated that he was born in Pomona, California on [(b)(6), (b)(7)c] When asked for proof of United States Citizenship such as a birth certificate or United States passport, [(b)(6), (b)(7)c] stated that he did not know where it was, but he had paperwork from the United States Treasury Department or FBI stating that he is a United States Citizen. [(b)(6), (b)(7)c] parents were born in Mexico. His father's name is [(b)(6), (b)(7)c] and his mother's name is [(b)(6), (b)(7)c] states that his parents live somewhere in California.

[(b)(6), (b)(7)c] was ordered removed by the Immigration Judge in Imperial, CA on November 15, 2007. This final order of removal was executed on November 17, 2007. [(b)(6), (b)(7)c] re-

**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Thursday, March 18, 2010 4:49 PM |
| **To:** | Maury, Carlos E; OPLA USC Claims; USC CLAIMS DRO |
| **Subject:** | FW: ▓▓▓▓ USC Claim- |
| **Attachments:** | ▓▓▓▓ USC Claim-LOS .doc |

DRO Field Operations and OPLA agree with your assessment.

---

**From:** Maury, Carlos E
**Sent:** Thursday, March 18, 2010 1:04 PM
**To:** OPLA USC Claims
**Cc:** ▓▓▓▓
**Subject:** ▓▓▓▓ USC Claim- LOS - ▓▓▓▓

Carlos E. Maury
Deputy Chief Counsel
Department of Homeland Security
U.S. Immigration and Customs Enforcement
45100 60th Street West
Lancaster, CA 93536
Tel: 661-940▓▓▓▓
Fax: 661-940-3573
▓▓▓▓

*Attorney/Client Privilege Communication Attorney Work Product*
*This document contains confidential and/or sensitive attorney/client privileged information or attorney work product and is not for release, review, retransmission, dissemination or use by anyone other than the intended recipient. Please notify the sender if this email has been misdirected and immediately destroy all originals and copies. Any disclosure of this document must be approved by the Office of the Principal Legal Advisor, U.S. Immigration & Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY. FOIA exempt under 5 U.S.C. § 552(b)(5).*

ICE.000062.10FOIA2918

5/5/2010



(b)(5), (b)(6), (b)(7)c

## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c

Attorney Work Product – Do Not Disclose Under FOIA

ICE.000061.10FOIA2918

An Order to Show Cause (OSC) was issued for (b)(6), (b)(7)c under (b)(6), (b)(7)c on April 1, 1985, pursuant to 241(a)(2) of the INA, in that, he entered the United States without inspection. On the same day (b)(6), (b)(7)c gave a sworn statement in affidavit form on form I-215C stating he was born (b)(6), (b)(7)c in Reynosa, Mexico. On January 6, 1986, (b)(6), (b)(7)c was ordered deported in absentia by an Immigration Judge under (b)(6), (b)(7)c

(b)(6), (b)(7)c subsequently divorced and married (b)(6), (b)(7)c The certificate of marriage indicates that (b)(6), (b)(7)c was born in Reynosa, Tamaulipas, Mexico. (b)(6), (b)(7)c filed an I-130 on (b)(6), (b)(7)c behalf on March 20, 1986, under (b)(6), (b)(7)c It appears this I-130 was not adjudicated. However, attached to the I-130 is (b)(6), (b)(7)c Mexican birth certificate. The birth certificate indicates that (b)(6), (b)(7)c was born in Tamaulipas, Mexico to (b)(5), (b)(7)c and (b)(6), (b)(7)c both Mexican nationals. (b)(6), (b)(7)c Mexican birth certificate gives a registration date of (b)(6), (b)(7)c

On February 28, 1988, (b)(6), (b)(7)c filed an I-867 Application for Status as Temporary Resident under (b)(6), (b)(7)c (b)(6), (b)(7)c I-867 was denied on January 27, 1989 and again on August 9, 1990. (b)(6), (b)(7)c was consolidated into (b)(6), (b)(7)c in 1991.

(b)(6), (b)(7)c has multiple criminal arrest and convictions in the United States. For instance, (b)(6), (b)(7)c was convicted on January 31, 1997, of Attempted Murder and sentenced to five years incarceration. (b)(6), (b)(7)c most recent significant conviction occurred on April 25, 2007, in Ohio for Tampering with Records and he received a sentence of three years community control.

On September 17, 2009, (b)(6), (b)(7)c was encountered by DRO at the Lucas County Probation Department. A sworn statement was obtained from (b)(6), (b)(7)c in which (b)(6), (b)(7)c claimed he was born in Donna, Texas. (b)(6), (b)(7)c was questioned about the citizenship of his parents. (b)(6), (b)(7)c claimed that his father was born in Mexico, died when (b)(6), (b)(7)c was six and a half year old and never legally entered the United States. (b)(6), (b)(7)c stated that his mother was born in Texas, but went to Mexico when she was a child. (b)(6), (b)(7)c stated that his mother does not have a United States passport, but she does have a Mexican birth certificate along with a border crossing card (b)(6), (b)(7)c conceded that his mother has always presented herself as a Mexican citizen to the United States government. (b)(6), (b)(7)c was then placed on an order of supervision.

Subsequently, (b)(6), (b)(7)c provided a Texas delayed certificate of birth filed on June 28, 1991, indicating that he was born in Hidalgo, Texas. DRO cancelled the order of supervision finding that the delayed birth certificate was evidence of United States citizenship. On October 7, 2009, Office of Chief Counsel (OCC) filed a Motion to Reopen and Terminate Proceedings. The Cleveland Immigration Court was

ICE.000067.10FOIA2918

contacted by OCC on March 16, 2010, to determine the status of the motion and OCC was informed that the court has no record of this alien and no record of the motion. Because the court has no record of this alien, the court apparently rejected the Motion to Reopen and Terminate.

Before the Motion to Reopen and Terminate were filed, DRO contacted the Texas Health and Human Services Commission (HHSC), Office of the Inspector General, to determine whether the delayed birth certificate was authentic. The HHSC verified the authenticity of the delayed birth certificate and referred DRO to the Vital Statistics Fraud Unit of HHSC. The Vital Statistics Fraud Unit requested information from ICE regarding citizenship. DRO forwarded the HHSC, along with other information, (b)(6), (b)(7)c (b)(6), (b)(7)c delayed birth certificate, Mexican birth certificate, and sworn statement dated April 1, 1985.

After conducting an investigation, on February 23, 2010, the HHSC Vital Statistics Fraud Unit issued a finding that (b)(6), (b)(7)c delayed birth certificate was obtained fraudulently. HHSC was contacted by OCC to determine what consequences the fraud finding has and was informed that the HHSC does not formally revoke birth certificates; however, another birth certificate cannot be obtained once the fraudulent finding has been issued. According to HHSC the only possibility (b)(6), (b)(7)c (b)(6), (b)(7)c would have of obtaining another delayed birth certificate is to appeal the decision. Based on the evidence of fraud in this case, OCC was informed that it is highly unlikely an appeal would be sustained were (b)(6), (b)(7)c appeal the decision.

## LEGAL ANALYSIS



3

ICE.000068.10FOIA2918

(b)(5), (b)(6), (b)(7)c



## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c



4



# TEXAS HEALTH AND HUMAN SERVICES COMMISSION
## OFFICE OF THE INSPECTOR GENERAL
## INTERNAL AFFAIRS SECTION

**Thomas Suehs**
**Executive Commissioner**

February 23, 2010

Immigration and Customs Enforcement
Attn: (b)(6), (b)(7)c
1240 E. 9ᵗʰ, Rm# (b)(6), (b)
Cleveland, Ohio 44199
Re: OIG Case (b)(6), (b)(7)c

Dear Mr. (b)(6), (b)(7)c

The Office of the Inspector General, Vital Statistics Fraud Unit of the Texas Health and Human Services Commission has conducted an investigation regarding allegations that the person identified has committed violations against the Texas Health & Safety Code and/or other penal offenses. In the course of the investigation evidence reflects this individual is in the United States illegally or without the proper permission or authority. Furthermore we are forwarding this information to your office for review, to take whatever action you deem appropriate.

**Identifiers:**



Please find attached documents, and if you need further information in regards to this case, do not hesitate to call.

Sincerely,
(b)(6), (b)(7)c

Office of the Inspector General/ Vital Statistics Fraud
2520 S. Veteran's Memorial
Edinburg, Texas 78539
956-316- (b)(6), (b)
(b)(6), (b)(7)c

ICE.000070.10FOIA2918


| Investigation Category: **Health & Safety Code, Chapter 195.003. False Records** | | OIG Case #: (b)(6), (b)(7)c |
|---|---|---|
| Results: **Substantiated** | Referred To: **Marc Connelly, Deputy General Counsel, Department of State Health Services; Immigration and Customs Enforcement; Social Security Administration; Ohio Department of Public Safety** | Loss: **$0** |
| Location of Offense (City, Co., State) **Austin, Travis County, Texas** | Referred to OIG by: (b)(6), (b)(7)c **U. S. Immigration and Customs Enforcement – Office of Detention and Removal, Cleveland, Ohio** | |
| Suspect Name (last-first-middle) (b)(6), (b)(7)c | Telephone (work) **Unknown** | Telephone (home) **Unknown** |

| Address (b)(6), (b)(7)c | | DOB: (b)(6), (b)(7)c | Race: **Mexican** | Sex: **Male** |
|---|---|---|---|---|

| Height: **5'7** | Weight: **187** | Hair **Black** | Eyes: **Brown** | SS#: (b)(6), (b)(7)c | DL# or other ID: **Ohio** (b)(6), (b)(7)c |
|---|---|---|---|---|---|

**Synopsis:**

On September 28, 2009 a referral was received from (b)(6), (b)(7)c , U S Immigration and Customs Enforcement, Cleveland, Ohio providing information alleging that:

- On February 4, 1991 (b)(6), (b)(7)c filed a Delayed Certificate of Birth indicating he was born (b)(6), (b)(7)c (b)(6), ( in Donna, Hidalgo County, Texas; however, a sworn statement was given by (b)(6), (b)(7)c to Immigration and Naturalization Service in Cleveland, Ohio, dated 04/01/1985, during an Administrative Proceeding for unlawful entry, that he was born (b)(6), (b)(7)c in Reynosa, Mexico and has lived in the United States since Dec. 20, 1971. A Mexican Birth Record was also located indicating (b)(6), (b)(7 was born (b)(6), (b)(7)c Reynosa, Tamaulipas, Mexico and the U.S. birth record is fraudulent.

The allegation that on February 4, 1991 (b)(6), (b)(7)c fraudulently filed a Delayed Birth Record is substantiated. This information is based on the following.

On September 28, 2009, (b)(6), (b)(7)c U.S. Immigration & Customs Enforcement, Cleveland, Ohio provided the following documentation:

- A copy of State of Texas Delayed Birth Record (b)(6), (b)(7)c issued to (b)(6), (b)(7)c Date of Birth (b)(6), (b)(7)c Place of birth: Donna, Hidalgo County, Texas, Parents: (b)(6), (b)(7)c 1991.
- A copy of a Mexican Birth Record filed (b)(6), (b)(7)c in Reynosa, Tamaulipas for (b)(6), (b)(7)c DOB: (b)(6), (b)(7)c Parents: (b)(6), (b)(7)c
- A copy of an Sworn Affidavit in an Administrative Proceeding, taken by Immigration and Naturalization Services in Cleveland, Ohio, signed by (b)(6), (b)(7)c dated 04/01/1985. (Exhibit 1)
- An "Addendum" letter issued to (b)(6), (b)(7)c Hidalgo County Clerk, notifying (b)(6), (b)(7)c of the "Flag" being placed on the Birth Record (b)(6), (b)(7)c ND, issued to (b)(6), (b)(7)c for "Conflicting Information". (Exhibit 2)
- A database check, revealing that (b)(6), (b)(7)c last received HHSC benefits for Food Stamps in 1995. (Exhibit 3)
- A copy of the Texas Department of Public Safety Driver's License search for (b)(6), (b)(7)c , meeting negative results.
- A copy of Texas Workforce Commission wage search, meeting with negative results for SSN# (b)(6), (b)(7)c issued to (b)(6), (b)(7)c
- A copy of a background check indicating that (b)(6), (b)(7)c is residing in Northwood, Ohio, where he recently registered (3) vehicles.

| Investigator/Phone Number/Date | Lead Investigator Approval/ Date | Director Completion Date | Director Closure Signature/Date |
|---|---|---|---|
| (b)(6), (b)(7)c (956) 316- (b)(6), February 23, 2010 | | | |

ICE.000071.10FOIA2918


- A copy of Ohio Driver's License (b)(6), (b)(7)c , issued for (b)(6), (b)(7)c SSN# (b)(6), (b)(7)c (Exhibit 4)

**Risk Findings:**

- A fraudulent Texas Vital Record may be on file with State and /or Local Registrars.
- By utilizing a fraudulent Texas Vital Record, an individual may have the ability to fraudulently obtain:
  - A secondary source of identification
  - Residency in this country;
  - Public Assistance and other benefits.

**State Statute's**
**Health & Safety Code**
**Chapter 195, § 195.003. FALSE RECORDS.**
(d) A person commits an offense if the person, for purposes of deception, intentionally or knowingly obtains, possesses, uses, sells, or furnishes, or attempts or directs another person to attempt to obtain, possess, use, sell, or furnish a certificate, record, or report required under this title, or a certified copy of a certificate, record, or report required under this title, if the document:
  - (1) is made, counterfeited, altered, amended, or mutilated without lawful authority and with intent to deceive;
  - (2) is false in whole or in part; or
  - (3) relates to the birth of another individual.

(f) An offense under this section is a felony of the third degree.

**Details:**
On September 28, 2009 a referral was received from (b)(6), (b)(7)c U S Immigration and Customs Enforcement, Cleveland, Ohio providing information alleging that:

- On February 4, 1991 (b)(6), (b)(7)c filed a Delayed Certificate of Birth indicating he was born (b)(6), (b)(7)c in Donna, Hidalgo County, Texas; however, a sworn statement was given by (b)(6), (b)(7)c to Immigration and Naturalization Service in Cleveland, Ohio, dated 04/01/1985, during an Administrative Proceeding for unlawful entry, that he was born (b)(6), (b)(7)c in Reynosa, Mexico and has lived in the United States since Dec. 20, 1971. A Mexican Birth Record was also located indicating (b)(6), (b)(7) was born (b)(6), (b)(7)c Reynosa, Tamaulipas, Mexico and the U.S. birth record is fraudulent.

On September 28, 2009, (b)(6), (b)(7)c U.S. Immigration & Customs Enforcement, Cleveland, Ohio provided the following documentation:

- A copy of State of Texas Delayed Birth Record # (b)(6), (b)(7) issued t (b)(6), (b)(7)c Date of Birth: (b)(6), (b)(7)c Place of birth: Donna, Hidalgo County, Texas, Parents: (b)(6), (b)(7)c filed (b)(6), (b)(7)c
- A copy of a Mexican Birth Record filed (b)(6), (b)(7)c in Reynosa, Tamaulipas for (b)(6), (b)(7)c DOB: (b)(6), (b)(7)c Parents: (b)(6), (b)(7)c
- A copy of an Sworn Affidavit in an Administrative Proceeding, taken by Immigration and Naturalization Services in Cleveland, Ohio, signed by (b)(6), (b)(7)c dated 04/01/1985.

(Exhibit 1)

ICE.000072.10FOIA2918

**HHSC**
**OFFICE OF THE INSPECTOR GENERAL**

CASE NO. (b)(6), (b)(7)c

On September 30, 2009, (b)(6), (b)(7)c Texas State Registrar and Custodian of Records, sent an "Addendum" letter to (b)(6), (b)(7)c Hidalgo County Clerk notifying that a "Flag" is being placed on the Birth Record (b)(6), (b)(7)c ND, issued to (b)(6), (b)(7)c , for "Conflicting Information". (Exhibit 2)

On October 8, 2009 this case was assigned to Investigator (b)(6), (b)(7)c

A Vital Statistic Fraud database search for HHSC Benefits (Food Stamp or Medicaid) indicated that (b)(6), (b)(7)c had last received Food Stamp Benefits in 1995, and all the case files have been purged. (Exhibit 3)

On February 22, 2010, background information indicates that (b)(6), (b)(7)c is currently living at (b)(6), (b)(7)c (b)(6), (b)(7)c The information indicates that (b)(6), (b)( recently registered (3) vehicles in Ohio indicating this same address.

On February 23, 2010, Manuela Bianco, Ohio Attorney General Office, Criminal Intelligence Analyst sent a copy of Ohio State Driver's License (b)(6), (b)(7)c issued to (b)(6), (b)(7)c (Exhibit 4)

Based on the facts gathered in this case, the Delayed Texas Birth Record (b)(6), (b)(7) ND is fraudulent. This is based on the predated Mexican Birth Record found for (b)(6), (b)(7)c in Reynosa, Tamaulipas, Mexico filed (b)(6), (b)(7)c . Criminal charges will not be filed in Travis County due to the fact the Statute of Limitations has expired, although the following referrals will be made to other affected agencies. This case is closed with no further action.

This case will be referred to Immigration and Customs Enforcement, the Social Security Administration and Ohio Department of Public for whatever action they deem necessary.

This case is being referred to the Marc Connelly, Deputy General Counsel, Texas Department of State Health Services who will handle any administrative action in this case, (512) 458 (b)(6), (b)(

ICE.000073.10FOIA2918

## Exhibit 1

On September 28, 2009 a referral was received from (b)(6), (b)(7)c U S Immigration and Customs Enforcement, Cleveland, Ohio providing information alleging that:

- On February 4, 1991 (b)(6), (b)(7)c filed a Delayed Certificate of Birth indicating he was born (b)(6), (b)(7)c in Donna, Hidalgo County, Texas; however, a sworn statement was given by (b)(6), (b)(7)c to Immigration and Naturalization Service in Cleveland, Ohio, dated 04/01/1985, during an Administrative Proceeding for unlawful entry, that he was born (b)(6), (b)(7)c in Reynosa, Mexico and has lived in the United States since Dec. 20, 1971. A Mexican Birth Record was also located indicating (b)(6), (b)(7) was born (b)(6), (b)(7)c Reynosa, Tamaulipas, Mexico and the U.S. birth record is fraudulent.

On September 28, 2009, (b)(6), (b)(7)c , U.S. Immigration & Customs Enforcement, Cleveland, Ohio provided the following documentation:

- A copy of State of Texas Delayed Birth Record (b)(6), (b)(7)c issued to (b)(6), (b)(7)c Date of Birth: (b)(6), (b)(7)c Place of birth: Donna, Hidalgo County, Texas, Parents: (b)(6), (b)(7)c filed (b)(6), (b)(7)c .
- A copy of a Mexican Birth Record filed (b)(6), (b)(7)c in Reynosa, Tamaulipas for (b)(6), (b)(7)c DOB: (b)(6), (b)(7)c Parents (b)(6), (b)(7)c
- A copy of an Sworn Affidavit in an Administrative Proceeding, taken by Immigration and Naturalization Services in Cleveland, Ohio, signed by (b)(6), (b)(7)c dated 04/01/1985.

## Exhibit 2

An "Addendum" letter issued to (b)(6), (b)(7)c Hidalgo County Clerk, notifying (b)(6), (b)(7)c of the "Flag" being placed on the Birth Record (b)(6), (b)(7) ND, issued to (b)(6), (b)(7)c for "Conflicting Information"

## Exhibit 3

A database check, revealing tha (b)(6), (b)(7)c last received HHSC benefits for Food Stamps in 1995

## Exhibit 4

A copy of the Texas Department of Public Safety Driver's License search for (b)(6), (b)(7)c meeting negative results

A copy of Texas Workforce Commission wage search, meeting with negative results for SSN# (b)(6), (b)(7)c issued to (b)(6), (b) (b)(6), (b)(7)c

A copy of a background check indicating that (b)(6), (b)(7)c is residing in Northwood, Ohio, where he recently registered (3) vehicles

A copy of Ohio Driver's License (b)(6), (b)(7)c issued for (b)(6), (b)(7)c SSN# (b)(6), (b)(7)c

HHSC
OFFICE OF THE INSPECTOR GENERAL

CASE NO. <span style="background:#555;color:#555">(b)(6), (b)(7)c</span>

## Witness List:

**Complainant**
<span style="background:#555;color:#555">(b)(6), (b)(7)c</span>

Immigration and Customs Enforcement
1240 E. 9th
Cleveland, Ohio 44199
216-214 <span style="background:#555;color:#555">(b)(6), (b</span>
Agent <span style="background:#555;color:#555">(b)(6), (b)(7)c</span> can testify to the documents provided and the deportation process.

**Suspect**
<span style="background:#555;color:#555">(b)(6), (b)(7)c</span>

**Witness**
<span style="background:#555;color:#555">(b)(6), (b)(7)c</span>

Vital Statistics Coordinator
HHSC-OIG
1100 W. 49th St
Austin, Texas 78756
512-45 <span style="background:#555;color:#555">(b)(6), (b)(7</span>
<span style="background:#555;color:#555">(b)(6), (b)(7)c</span> can testify that she provided a copy of the Birth Records on file with the State of Texas.

**Witness**
<span style="background:#555;color:#555">(b)(6), (b)(7)c</span>

Texas State Registrar
1100 W. 49th St
Austin, Texas 78756
512-458 <span style="background:#555;color:#555">(b)(6), (b)</span>
<span style="background:#555;color:#555">(b)(6), (b)(7)c</span> can testify as custodian of records for Vital Statistics and the application process.

**Witness**
Bianco, Manuela
Ohio Attorney General
Criminal Intelligence Analyst
<span style="background:#555;color:#555">(b)(6), (b)(7)c</span>
740-845 <span style="background:#555;color:#555">(b)(6), (b</span>
Ms. Bianco can testify to the copy of the Ohio Driver's License provided.

**Witness**
<span style="background:#555;color:#555">(b)(6), (b)(7)c</span>

Health and Human Services Commission-OIG-Vital Statistics Fraud
Investigator
2520 S. I Road
Edinburg, Texas 78539
956-316 <span style="background:#555;color:#555">(b)(6), (b)</span>
Investigator <span style="background:#555;color:#555">(b)(6), (b)</span> can testify to the investigation conducted.

ICE.000075.10FOIA2918

Internal Affairs Case File Data Form Reference #

| Intake Date: | 10/01/2009 | Intake Staff: | (b)(6), (b)(7)c | Agency: | DSHS | Case Number: | (b)(6), (b)(7)c |

**SUSPECT DATA**

(b)(6), (b)(7)c

, Donna,   SSN: 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   DOB:   Home:   Work:   Sex: Male   Title:   Race: Hispanic   n/a

**COMPLAINANT DATA**

(b)(6), (b)(7)c   Title:   Work:

US Customs, ,   Home:

**ALLEGATION** — Vital Statistics fraud

On September 28, 2009, (b)(6), (b)(7)c U.S. Immigration & Customs Enforcement, provided information alleging that:

• On February 4, 1991, (b)(6), (b)(7)c filed a Delayed Certificate of Birth indicating he was born (b)(6), (b)(7)c in Donna, Hidalgo County, Texas and provided supporting documentation; however, a birth record was located in Mexico indicating (b)(6), (b)(7) was actually born (b)(6), (b)(7)c Reynosa, Tamaulipas, Mexico and the U.S. birth record is fraudulent.

I recommend a formal investigation.

**Forensics Results**

**Suspect's History of Allegations**

| Case# | Allegations | Disposition | Related Case Number |
|---|---|---|---|
| (b)(6), (b)(7)c | Vital Statistics fraud | Pending | na |

**STATUS DATA**

| Current Status: | Under Investigation | StatusDate: | 10/02/2009 | County: | Hidalgo |

**REFERRAL DATA**

| Referred to DA: | No | Date: 10/02/2009 | DA's Action: | n/a | DA Action Date: | 10/02/2009 |
| Referred to RA: | n/a | Date: 10/02/2009 | RA's Action: | n/a | RA Action Date: | 10/02/2009 |
| Referred to MGT: | No | Date: 10/02/2009 | MGT's Action: | n/a | MGT Action Date: | 10/02/2009 |

**SENTENCING DATA**   Months of Jail Time: 0   Months of Probation: 0   Community Serv Hrs 0

**FINANCIAL DATA**

| Amt of Loss: | Cost Avoidance: | Other Loss: | Restitution Amt: | Settlement Amount: |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**DISPOSITION DATA**

| Disposition: | Pending | Disposition Date: | 10/02/2009 |

| Investigator: | DataEntryDate: | Director's Case Completion Date: | Case Closed | Director's Case Closure Date: | Manager's Audit Signature/Date: |
|---|---|---|---|---|---|
| Intake | 10/02/2009 | 10/02/2009 | No | 10/02/2009 | |

(b)(6), (b)(7)c

**From:** (b)(6), (b)(7)c
**Sent:** Thursday, October 01, 2009 8:59 AM
**To:** (b)(6), (b)(7)c
**Cc:** (b)(6), (b)(7)c
**Subject:** Approval Memo - (b)(6), (b)(7)c
**Attachments:** October 1 2009 (b)(6), (b)(7)c doc

(b)(6), (b)(7)

Can you please process the attached case approval memo? I have supporting documentation as well as an Addendum from the State Registrar. I will bring everything over to your office this morning.

Thank you!

(b)(6), (b)(7)c

Vital Statistics Fraud Unit
Internal Affairs Section
Office of Inspector General
Office - (512) 458- (b)(6), (b)(
Fax - (512) 458-7481

ICE.000078.10FOIA2918

U.S. Department of Homeland Security
1240 E 9ᵗʰ Street. Rm 535
Cleveland, Ohio 44199



**U.S. Immigration
and Customs
Enforcement**

Office of Detention and Removal
Fugitive Operations Division

# Facsimile Transmission

September 22, 2009

To: (b)(6), (b)(7)c  Fraud Coordinator

Fax: (512) 458-7481

From: (b)(6), (b)(7)c  Deportation Officer/Fugitive Operations

Phone: (216) 214-(b)(6),
Fax :   (216) 479-6898

☐ Urgent  ☐ Action  ☐ Concurrence  ☒ FYI

Number of pages including cover: 5

Comments:

CERTIFICATION OF VITAL RECORD

(b)(6), (b)(7)c



## ESTADOS UNIDOS MEXICANOS
### GOBIERNO DEL ESTADO DE TAMAULIPAS
## REGISTRO CIVIL

No. DE CONTROL

(b)(6), (b)(7)c

FOLIO

(b)(6), (b)(7)c

ICE.000080.10FOIA2918

# AFFIDAVIT
## IN AN ADMINISTRATIVE PROCEEDING

(b)(6), (b)(7)c, (b)(5)



Form I—215C (9-1-82)

ICE.000081.10FOIA2918



# TEXAS DEPARTMENT OF STATE HEALTH SERVICES

DAVID L. LAKEY, M.D.
COMMISSIONER

1100 West 49th Street • Austin, Texas 78756
P.O. Box 149347 • Austin, Texas 78714-9347
1-888-963-7111 • www.dshs.state.tx.us
TDD: 1-800-735-2989

- ADDENDUM -

September 30, 2009

ARTURO GUAJARDO
COUNTY CLERK
P O BOX 58
EDINBURG TEXAS 78540

ATTN: Vital Statistics Division

Dear Mr. Guajardo:

The original of this Addendum has been attached to the delayed birth record of [(b)(6), (b)(7)c] [(b)(6), (b)(7)c] n accordance with the provisions of, §191.033 of the Texas Health & Safety Code. This duplicate is to be attached to the duplicate record in your custody. If an application for a certified copy of this record is received, it shall be sent immediately to the State Registrar.

IDENTIFICATIION: [(b)(6), (b)(7)c]

CONFLICTING INFORMATION: VS has received a copy of a Mexican birth record and a sworn statement by above subject provided by US Immigration and Customs Enforcement on 09-22-2009 stating that above subject was born in Reynosa, Mexico.

Sincerely,

Geraldine R. Harris
State Registrar

(b)(6); (b)(7)(c)

ICE.000083.10FOIA2




# TEXAS DEPARTMENT OF PUBLIC SAFETY



5805 N. LAMAR BLVD • BOX 4087 • AUSTIN, TEXAS 78773-0001
512/424-2000
www.txdps.state.tx.us

STEVEN C. McCRAW
DIRECTOR
LAMAR BECKWORTH
DRAD HAILE
DEPUTY DIRECTORS

COMMISSION
ALLAN B. POLUNSKY, CHAIR
C. TOM CLOWE, JR.
ADA BROWN
JOHN STEEN
CAROL MARCY RAUCH

February 22, 2010

Dear (b)(6), (b)(7)c

We are unable to furnish a DL/ID photo on the following subject(s) for the reason shown below.

| Name | DOB | DL/ID# |
|------|-----|--------|
| (b)(6), (b)(7)c | | |

☐ Photo not available. DL or ID numbers could not be found for above named subjects.

X Insufficient data.

☐ Photo not available. Photo too old.

Thank you for your cooperation.

Please contact our office if you need further assistance. Thank you.

Sincerely,

(b)(6), (b)(7)c

Criminal Investigations Division
512-454- (b)(6), (b)(7)c

EQUAL OPPORTUNITY EMPLOYER
COURTESY • SERVICE • PROTECTION



ICE.000084.10FOIA2918

HHSC
WS-ID: 11-1081
Time: 12:17:40

TWC Wa(   )and Benefits      © 1998-2(   ) DCS v4.1.5
UserID: (b)(6), (b)(7)c
Case#: (b)(2)High          DPPA:01          Date: 02/22/2010

SSN: (b)(6), (b)(7)c          DATE FILTER: YYYY,-20

ICE.000085.10FOIA2918



People | Businesses | Assets | Licenses · Phones | Courts

| Last Name | First Name | Middle Name | SSN (b)(6), (b)(7)b | Link ID™ |

Reference Code:

| Street Address | City | State | Zip |

Click for Search Tips:
Subject/Relative Search
Multiple Name Search
Previous State Search
Previous City Search
Name / SSN4 Search
Initials Search
Partial Address Search

| Phone | DOB | Age Range |

**Additional Subject Information**

| Other Last Name | Other City | Other State | Other State |

| Relative First Name | Other Relative First Name |

Phonetic Search: ☐    Strict Search: ☐

Output Type:   ⦿ Formatted HTML    ⦾ Cut and Paste / Printer Friendly Text (No Reports)

Important: The Public Records and commercially available data sources used in this system have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents. the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

Accurint does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA). Accordingly, Accurint may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA.

**Search completed**                    **Records:  1 to 2 of 2**





(b)(6), (b)(7)c

SEARCH: arch | New Se

Your DPPA Permissible Use: Court, Law Enforcement or Government Agencies
Your GLBA Permissible Use: Law Enforcement Purposes
*View Sources: The number of source documents used is approximate.

ICE.000087.10FOIA2918



People | Businesses | Assets | Licenses | Phones | Courts

**Last Name**          **First Name**          **Middle Name**          **Company Name**

**Reference Code:**

**Street Address**          **City**          **State**    **Zip**    **SSN**

**VIN**          **Tag Number**    **License Number**    (Florida Only)

Phonetic Search: ☐

Output Type:    ⦿ Formatted HTML    ○ Cut and Paste / Printer Friendly Text (No Reports)

Important: The Public Records and commercially available data sources used in this system have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

Accurint does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA). Accordingly, Accurint may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA.

Note: Not all of the information contained in these search results is derived from governmental agencies. Some information may have been enhanced by additional sources.

**Search completed**          **Records: 1 to 25 of 47**          **Result Page:  1 2**

☐ Export to Excel    ☐ Icon Legend          Click Icons Below To Run a Report

All          Vehicle Information



(b)(6), (b)(7)c



Registrant(s):

(b)(6), (b)(7)c



ICE.000090 10FOIA6918

2/23/2010

(b)(6), (b)(7)c



**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Thursday, March 18, 2010 1:21 PM |
| **To:** | Halliday-Roberts, Catherine E; USC CLAIMS DRO; OPLA USC Claims |
| **Cc:** | (b)(6), (b)(7)c |
| **Subject:** | FW: (b)(6), (b)(7)c USC Claim IMP |
| **Attachments:** | (b)(6), (b)(7)c - USC Claim IMP.pdf |

```
DRO Field Operations and OPLA concur with your
assessment.
```

**From:** Halliday-Roberts, Catherine E
**Sent:** Wednesday, March 17, 2010 4:55 PM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** (b)(6), (b)(7)c
**Subject:** (b)(6), (b)(7)c USC Claim IMP

All,

Attached is a Joint Memorandum of a USC Claim.

## STATEMENT OF THE CASE

On March 5, 2010, during an interview before Immigration Enforcement Agent (IEA) (b)(6), (b)(7)c at the Calipatria State Prison (CLP), (b)(6), (b)(7)c was asked if he believed he was a United States Citizen (USC). (b)(6), (b)(7)c said he was a United States citizen.

(b)(6), (b)(7)c is currently serving a three-year sentence at CLP for a conviction of Possession of a Firearm by a Felon and is scheduled for release on March 25, 2010. Immigration and Customs Enforcement (ICE) has placed a hold and will assume custodial responsibilities upon his release.

## FACTS

(b)(6), (b)(7)c was born in the Philippines on (b)(6), (b)(7)c to alien parents. He legally entered the United States (US) as an immigrant (IR2) through Honolulu, Hawaii on April 28, 1981, when he was approximately 12 years old. His stepfather, (b)(6), (b)(7)c petitioned for him by submitting Form I-130 on June 17, 1980. (b)(6), (b)(7)c stated that his mother, (b)(6), (b)(7)c became a United States citizen by naturalization sometime in 1985, in Sacramento, California. Nonetheless, the Central Index System (CIS) revealed that (b)(6), (b)(7)c did not naturalize until August 19, 1988. (b)(6), (b)(7)c biological father (b)(6), (b)(7)c is now deceased but never immigrated to the United States.

On September 8, 2004, (b)(6), (b)(7)c was convicted in the Superior Court of California, Alameda County for Possession of a Firearm by a Felon, in violation of section 12021(a)(1) of the California Penal Code and was sentenced to serve three years in state prison.

## LEGAL ANALYSIS

ICE.000092.10FOIA2918

5/5/2010

(b)(5), (b)(6), (b)(7)c



## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c



*Catherine E. Halliday-Roberts*
Deputy Chief Counsel, ICE
1115 North Imperial Avenue
El Centro, CA 92243
(760) 336- (b)(6), (b)(
(b)(6), (b)(7)c

*This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance for distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.*

ICE.000093.10FOIA2918

5/5/2010

*Office of Chief Counsel*
U.S. Department of Homeland Security
880 Front Street, Suite 2246
San Diego, CA 92101



**U.S. Immigration
and Customs
Enforcement**

MAR 17 2010

| | |
|---|---|
| MEMORANDUM FOR: | DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA<br>ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO |
| FROM: | Catherine E. Halliday-Roberts, Deputy Chief Counsel, San Diego<br>Office of the Principal Legal Advisor<br><br>Robin F. Baker, Field Office Director<br>Field Office San Diego, DRO |
| SUBJECT: | Case Analysis – Claim to United States Citizenship<br>(b)(6), (b)(7)c |

## STATEMENT OF THE CASE

On March 5, 2010, during an interview before Immigration Enforcement Agent (IEA) (b)(6), (b)(7)c at the Calipatria State Prison (CLP), (b)(6), (b)(7)c was asked if he believed he was a United States Citizen (USC). (b)(6), (b)(7)c responded that he was a USC.

(b)(6), (b)(7)c is currently serving a three-year sentence at CLP for a conviction of possession of a firearm by a felon and is scheduled for release on March 25, 2010. Immigration and Customs Enforcement (ICE) has placed a hold and will assume custodial responsibilities upon his release.

## FACTS

(b)(6), (b)(7)c was born in the Philippines on (b)(6), (b)(7)c o alien parents. He legally entered the United States (US) as an immigrant (IR2) through Honolulu, Hawaii on April 28, 1981, when he was approximately 12 years old. His stepfather, (b)(6), (b)(7)c petitioned for him by submitting Form I-130 on June 17, 1980. (b)(6), (b)(7)c stated that his mother, (b)(6), (b)(7)c became a USC by naturalization sometime in 1985 in Sacramento, California. Nonetheless, the Central Index System (CIS) revealed that (b)(6), (b)(7)c did not naturalize until August 19, 1988. (b)(6), (b)(7)c biological father, (b)(6), (b)(7)c is now deceased, but never immigrated to the United States.

ICE.000094.10FOIA2918

On September 8, 2004, (b)(6), (b)(7)c was convicted in the Superior Court of California, Alameda County for possession of a firearm by a felon, in violation of Section 12021(a)(1) of the California Penal Code and was sentenced to serve three years in state prison.

## LEGAL ANALYSIS

(b)(5), (b)(6), (b)(7)c

## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c

ICE.000095.10FOIA2918

## Law, Ryan A

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Thursday, March 18, 2010 1:18 PM |
| **To:** | Gastelo, Elias S Jr; OPLA USC Claims; USC CLAIMS DRO |
| **Subject:** | FW: (b)(6), (b)(7)c - USC Claim ELP |
| **Importance:** | High |
| **Attachments:** | (b)(6), (b)(7)c 3 16 2010 memo.pdf |

DRO Field Operations and OPLA agree with your
recommendations.

---

**From:** Gastelo, Elias S Jr
**Sent:** Wednesday, March 17, 2010 4:12 PM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** (b)(6), (b)(7)c
(b)(6), (b)(7)c
**Subject:** (b)(6), (b)(7)c - USC Claim ELP
**Importance:** High



(b)(5), (b)(5), (b)(7)c

Should you have questions, please contact me.

Thanks,

*Elias Gastelo*
Deputy Chief Counsel
DHS/ICE/OPLA
Office of the Chief Counsel
El Paso, Texas
(915) 782- (b)(6), (b) Phone
(915) 774-0957 Fax

ICE.000096.10FOIA2918

5/5/2010



**U.S. Immigration
and Customs
Enforcement**

*March 17, 2010*

| | |
|---|---|
| MEMORANDUM FOR: | Director of Field Legal Operations, OPLA |
| | Assistant Director for Field Operations, DRO |
| FROM: | Elias Gastelo |
| | Deputy Chief Counsel |
| | El Paso, Texas |

(b)(6), (b)(7)c

Acting Field Office Director
El Paso Field Office

SUBJECT: Case Analysis – Claim to United States Citizenship
(b)(6), (b)(7)c

## STATEMENT OF THE CASE

(b)(6), (b)(7)c is currently in DHS custody. On October 24, 2000, (b)(6), (b)(7)c was convicted for the offense of Criminal Sexual Penetration of a Minor (six counts), a second degree felony, in violation of Section 30-9-11, NMSA 1978, of the New Mexico Penal Code. As a result, ICE placed him in removal proceedings and charged him with removability under violation of the INA section 237(a)(2)(A)(iii) (aggravated felon convicted of a crime of violence). On May 6, 2005, (b)(6), (b)(7)c initially appeared at his Master Calendar Hearing before an Immigration Judge (IJ) and made an oral declaration to United States Citizenship. (b)(6), (b)(7)c claimed that his biological father is a naturalized United States Citizen therefore deriving citizenship from him. (b)(6), (b)(7)c is currently detained at the El Paso Processing Center to complete his USC claim before an IJ that was initiated in 2005.

## FACTS

(b)(6), (b)(7)c was born on (b)(6), (b)(7)c in Ojinaga, Chihuahua, Mexico. He was admitted into the United States on or about December 6, 1973, at El Paso, Texas as a lawful permanent resident (IR2). At the time of (b)(6), (b)(7)c entry into the United States, both of his parents claimed to be citizens and nationals of Mexico by virtue of their birth in Ojinaga,

Case Analysis – Claim to United States Citizenship –  (b)(6), (b)(7)c
Page 2

Chihuahua, Mexico. On June 3, 1973, (b)(6), (b)(7)c father submitted a Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa, form I-130. In the petition (b)(6), (b)(7)c father claimed he acquired U.S. Citizenship through his parents under alien registration number (b)(6), (b)(7)c

On October 24, 2000, (b)(6), (b)(7)c was convicted in the District Court of Lea County State of New Mexico for the offense of Criminal Sexual Penetration of a Minor (six counts), a second degree felony, contrary to Section 30-9-11, NMSA 1978. This conviction was a result of acts committed on different dates for which he was sentenced to nine year in prison and two years parole.

On March 19, 2001, United States Immigration and Customs Enforcement (ICE) special agents encountered (b)(6), (b)(7)c at the Central New Mexico Correctional Facility located in Los Lunas, New Mexico and processed him for removal proceedings and charged him as being in violation of Section 237(a)(2)(A)(iii) of the INA. On May 6, 2005, during a master hearing before an Immigration Judge it was discovered that (b)(6), (b)(7)c father was a United States citizen. At the time of the hearing, the IJ gave (b)(6), (b)(7)c an opportunity to have his father come and testify on his behalf. Due to security reasons, (b)(6), (b)(7)c father was not able to attend an immigration hearing. On August 9, 2005, the IJ administratively closed the case until (b)(6), (b)(7)c father could be allowed to testify on his behalf, which would be upon his release from jail in 2010.

On February 17, 2010, (b)(6), (b)(7)c was encountered again by United States ICE agents in Albuquerque, New Mexico. Another Notice To Appear (NTA) was served on (b)(6), (b)(7)c and on February 17, 2010 he was transferred to the El Paso Processing Center (EPC) to await removal proceedings. While at the EPC it was discovered that (b)(6), (b)(7)c case had previously been administratively closed so a request to re-calendar the hearings was sought.

On March 16, 2010, (b)(6), (b)(7)c provided a Record of Sworn Statement in Affidavit Form to ICE Officers and he elected not to have an attorney present at the time of interview. In the sworn statement, (b)(6), (b)(7)c claimed he could possibly be a United States Citizen because of his USC father. He also stated that when he was a minor his family filed an application to have him adjust his status to that of a US citizen, but he stated that it was rejected and he was told to resubmit his application when he is an adult.

## LEGAL ANALYSIS

(b)(5), (b)(6), (b)(7)c

ICE.000098.10FOIA2918

Case Analysis – Claim to United States Citizenship – (b)(6), (b)(7)c
Page 2

(b)(5), (b)(6), (b)(7)c



## CONCLUSION AND RECOMMENDATION

(b)(6), (b)(7)c, (b)(5)



ICE.000099.10FOIA2918

**Law, Ryan A**

| | |
|---|---|
| **From:** | OPLA USC Claims |
| **Sent:** | Thursday, March 18, 2010 1:16 PM |
| **To:** | Halliday-Roberts, Catherine E; USC CLAIMS DRO; OPLA USC Claims |
| **Subject:** | FW ████(b)(6), (b)(7)c████ USC Claim IMP |
| **Attachments:** | ████(b)(6), (b)(7)c████ USC Claim IMP.pdf |

```
DRO Field Operations and OPLA agree with your
assessment
```

**From:** Halliday-Roberts, Catherine E
**Sent:** Wednesday, March 17, 2010 3:52 PM
**To:** OPLA USC Claims; USC CLAIMS DRO
**Cc:** ████(b)(6), (b)(7)c████
**Subject:** ████(b)(6), (b)(7)c████ USC Claim IMP

All,

Attached is a Joint Memorandum of a USC Claim.

STATEMENT OF THE CASE

████(b)(6), (b)(7)c████ is currently in the custody of the California Department of Corrections and due to be paroled into the custody of Immigration and Customs Enforcement (ICE) on April 3, 2010. On March 1, 2010, ████(b)(6), (b)(7)c████ was interviewed at Centinela State Prison. During the interview, ████(b)(6), (b)(7)c████ did not make a claim to being a United States Citizen (USC); however, he stated that his father ████(b)(6), (b)(7)c████ was a United States Citizen via birth in the United States. Thus, DRO-Imperial commenced an investigation to determine whether ████(b)(6), (b)(7)c████ acquired citizenship at birth through his father.

FACTS

████(b)(6), (b)(7)c████ was born on ████(b)(6), (b)(7)c████ in Colotan Jalisco, Mexico to an alien mother and USC father. ████(b)(6), (b)(7)c████ father, ████(b)(6), (b)(7)c████ was born on ████(b)(6), (b)(7)c████ in San Bernardino, CA and passed away on March 13, 2007. Although ████(b)(6), (b)(7)c████ mother was born in Mexico, she became a naturalized USC on October 24, 2007.

On March 28, 1990, well after his 18th birthday, ████(b)(6), (b)(7)c████ was admitted into the United States as a lawful permanent resident (W16) in Los Angeles, California. He submitted an application for Naturalization (Form N-400) to Legacy Immigration and Naturalization Service (INS) on May 19, 1995 but failed to appear for his interview. Consequently, on October 31, 1996, INS administratively closed his Form N-400.

On November 12, 1998, ████(b)(6), (b)(7)c████ was convicted in the Superior Court of California, County of San Bernardino, for Infliction of Corporal Injury Upon Spouse or Cohabitant, in violation of section 273.5(a) of the California Penal Code. He was sentenced to serve 30 days in county jail. Subsequently, on November 10, 2004, ████(b)(6), (b)(7)c████ was convicted in the Superior Court of California, County of San

ICE.000100.10FOIA2918

5/5/2010

Bernardino, for Making Criminal Threats, in violation of section 422 of the California Penal Code, and sentenced to serve 16 days in county jail. On November 13, 2006, <span style="background:black">(b)(6), (b)(7)c</span> was again convicted in the Superior Court of California, County of San Bernardino, for Making Criminal Threats, in violation of section 422 of the California Penal Code. He was initially sentenced to serve 365 days in jail; however, after violating probation, he received an additional sentence of 1 year and 4 months in state prison on August 17, 2009.

On March 1, 2010, DRO-Imperial interviewed <span style="background:black">(b)(6), (b)(7)c</span> at Centinela State Prison. During the interview, <span style="background:black">(b)(6), (b)(7)c</span> did not make a claim to being a United States Citizen (USC), but he stated that his father <span style="background:black">(b)(6), (b)(7)c</span> was a United States Citizen via birth in the United States. Thus, DRO-Imperial commenced an investigation to determine whether <span style="background:black">(b)(6), (b)(7)c</span> acquired citizenship at birth through his father. <span style="background:black">(b)(6), (b)(7)c</span> mother was contacted on March 9, 2010. She stated that she could not recall how long <span style="background:black">(b)(6), (b)(7)c</span> father had resided in the United States prior to <span style="background:black">(b)(6), (b)(7)c</span> birth and could not provide documentation regarding his presence.

## LEGAL ANALYSIS



(b)(5), (b)(6), (b)(7)c

## CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c

*Catherine E. Halliday-Roberts*
Deputy Chief Counsel, ICE
1115 North Imperial Avenue
El Centro, CA 92243
(760) 336 <span style="background:black">(b)(6), (b)(7)c</span>
(b)(6), (b)(7)c

*This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance for distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.*

ICE.000101.10FOIA2918

5/5/2010

*Office of Chief Counsel*
U.S. Department of Homeland Security
880 Front Street, Suite 2246
San Diego, CA 92101



**U.S. Immigration
and Customs
Enforcement**

MAR 17 2010

MEMORANDUM FOR:    DIRECTOR OF FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, DRO

FROM:    Catherine E. Halliday-Roberts, Deputy Chief Counsel, San Diego
Office of the Principal Legal Advisor

Robin F. Baker, Field Office Director
Field Office San Diego, DRO

SUBJECT:    Case Analysis – Claim to United States Citizenship
(b)(6), (b)(7)c

## STATEMENT OF THE CASE

(b)(6), (b)(7)c is currently in the custody of the California Department of Corrections and due to be paroled into the custody of Immigration and Customs Enforcement (ICE) on April 3, 2010. On March 1, 2010, (b)(6), (b)(7)c was interviewed at Centinela State Prison. During the interview, (b)(6), (b)(7)c did not make a claim to being a United States Citizen (USC); however, he stated that his father, (b)(6), (b)(7)c was a USC via birth in the United States. As a result, Imperial DRO commenced an investigation to determine whether (b)(6), (b)(7)c acquired citizenship at birth through his father.

## FACTS

(b)(6), (b)(7)c in Colotan Jalisco, Mexico to an alien mother and USC father. (b)(6), (b)(7)c father, (b)(6), (b)(7)c was born on (b)(6), (b)(7)c in San Bernardino, CA and passed away on March 13, 2007. Although (b)(6), (b)(7)c mother was born in Mexico, she became a naturalized USC on October 24, 2007.

On March 28, 1990, well after his 18th birthday, (b)(6), (b)(7)c was admitted into the United States as a lawful permanent resident (W16) in Los Angeles, California. He submitted an application for Naturalization (Form N-400) to Legacy Immigration and Naturalization Service (INS) on May 19, 1995, but failed to appear for his interview. Consequently, on October 31, 1996, INS administratively closed his Form N-400.

On November 12, 1998, (b)(6), (b)(7)c was convicted in the Superior Court of California, County of San Bernardino, for infliction of corporal injury upon spouse or cohabitant; in violation of Section 273.5(a) of the California Penal Code. He was sentenced to serve 30 days in county jail. Subsequently, on November 10, 2004, (b)(6), (b)(7)c was convicted in the Superior Court of

ICE.000102.10FOIA2918

SUBJECT: Case Analysis – Claim to United States Citizenship, (b)(6), (b)(7)c
(b)(6), (b)(7)c
Page 2

California, County of San Bernardino, for making criminal threats, in violation of Section 422 of the California Penal Code, and sentenced to serve 16 days in county jail. On November 13, 2006, (b)(6), (b)(7)c was again convicted in the Superior Court of California, County of San Bernardino, for making criminal threats, in violation of Section 422 of the California Penal Code. He was initially sentenced to serve 365 days in jail; however, after violating probation, he received an additional sentence of 1 year and 4 months in state prison on August 17, 2009.

On March 9, 2010 (b)(6), (b)(7)c mother was contacted. She stated that she could not recall how long (b)(6), (b)(7)c father had resided in the United States prior to (b)(6), (b)(7)c birth and could not provide documentation regarding his presence.

LEGAL ANALYSIS

(b)(5), (b)(6), (b)(7)c

CONCLUSION AND RECOMMENDATION

(b)(5), (b)(6), (b)(7)c

ICE.000103.10FOIA2918

EXHIBIT B

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

16001.2: **Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

| | |
|---|---|
| **Issue Date:** | November 10, 2015 |
| **Effective Date:** | November 10, 2015 |
| **Superseded:** | ICE Policy No. 16001.1: Superseding Guidance on Reporting and Investigating Claims to United States Citizenship (Nov. 19, 2009). |

**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** This Directive establishes ICE policy and procedures for ensuring that the potential U.S. citizenship of individuals encountered by U.S. Immigration and Customs Enforcement (ICE) officers, agents, and attorneys is immediately and carefully investigated and analyzed. The Immigration and Nationality Act of 1952, as amended (INA), sets forth the parameters for U.S. citizenship by virtue of birth in the United States. Additionally, the INA and various related statutes codify numerous avenues by which an individual may derive, acquire, or otherwise obtain U.S. citizenship other than through birth in the United States. As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S. citizen. While performing their civil immigration enforcement duties, ICE officers, agents, and attorneys may encounter individuals who are not certain of their citizenship status, who claim to be U.S. citizens, and/or for whom there are indicia warranting further examination to determine whether they may be U.S. citizens.

2. **Policy.** It is ICE policy to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE. ICE officers, agents, and attorneys should handle these matters with the utmost care and highest priority, recognizing that, while some cases may be easily resolved, many may require additional investigation and substantial legal analysis, particularly in light of the complexity of U.S. citizenship and nationality law.

   ICE personnel must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship, as well as when certain indicia of potential U.S. citizenship, as identified in this Directive, are present in a case even if the individual does not affirmatively make a claim to U.S. citizenship. In all situations where an individual's potential U.S. citizenship requires further investigation, Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI) personnel must consult with the Office of the Principal Legal Advisor's (OPLA) local Office of the Chief Counsel (OCC), as prescribed in this Directive.

2

3. **Definitions.** The following definitions apply for purposes of this Directive only.

3.1. **Indicia of Potential U.S. Citizenship.** Circumstances that tend to indicate that an individual may be a U.S. citizen. Indicia are not conclusive evidence that the individual is a U.S. citizen but factors that trigger the need for further investigation. With respect to individuals encountered by ICE, the existence of any of the following factors should lead to further investigation of the individual's U.S. citizenship:

   1) An immigration judge, legal representative, or purported family member indicates to ICE that the individual is or may be a U.S. citizen;

   2) There is some information suggesting that the individual was born in the United States, as defined in INA § 101(a)(38), or a past or present U.S. territorial possession, such as the Panama Canal Zone;

   3) There is some information suggesting that one or more of the individual's parents, grandparents, or foreign-born siblings are or were U.S. citizens, particularly when the timeline for the physical presence of these family members in the United States is incomplete;

   4) The individual entered the United States as a lawful permanent resident when he or she was a minor and has at least one parent who is a U.S. citizen;

   5) There is some information suggesting that the individual was adopted by a U.S. citizen;

   6) An application for naturalization, a U.S. passport, or a certificate of citizenship has been filed by the individual or on the individual's behalf, and remains pending;

   7) The individual has served in the U.S. Armed Forces;

   8) The individual equivocates (or is unsure) about his or her date and/or place of birth and appears to be under the age of 21 years old;

   9) The individual has been present in the United States since before his or her fifth birthday and does not know who his or her parents are; and/or

   10) The individual was born abroad out of wedlock and there is some information suggesting that one or both of his or her parents may have been U.S. citizens, but the initially available information is inconclusive regarding physical and legal custody and/or legitimation.

---

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

3

**3.2    Individual Encountered by ICE.** An individual who is:

1) Arrested and taken into ICE custody pursuant to the agency's civil immigration authorities, including those released from such custody pending a decision on removal or execution of a removal order;

2) Subject to, or may become subject to, a request made by ICE that another law enforcement agency continue to hold the individual for up to 48 hours following the completion of his or her criminal custody, i.e., an "immigration detainer;"[1] and/or

3) In proceedings before the Executive Office for Immigration Review (EOIR) or administrative removal proceedings before ICE, including but not limited to pursuant to sections 217, 235, 238(b), or 241(a)(5) of the INA.

**3.2.    Probative Evidence of U.S. Citizenship.** A unique policy standard adopted by ICE meaning that the evidence before the agency tends to show that the individual may, in fact, be a U.S. citizen. U.S. citizenship need not be shown by a preponderance of the evidence for the agency to find that there is some probative evidence of U.S. citizenship.

**4.    Responsibilities.**

**4.1.    ERO Officers, HSI Agents, and OCC Attorneys** have responsibilities under Section 5.1 of this Directive.

**4.2.    ERO Field Office Directors (FODs), HSI Special Agents in Charge (SACs), and OPLA Chief Counsels** are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) prescribed in this Directive.

**4.3.    FODs** are responsible for ensuring that all state and local officers with delegated immigration authority pursuant to INA § 287(g) within their area of responsibility have the training and oversight necessary to understand and adhere to this Directive, and thoroughly investigate all U.S. citizenship claims made by individuals encountered by 287(g)-designated officers.

**4.4.    Headquarters (HQ) OPLA, ERO, and HSI** have responsibilities under section 5.1(3). (Headquarters Review).

**4.5.    The Executive Associate Directors for ERO and HSI, and the Principal Legal Advisor,** or their designees, are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) of this Directive.

---

[1] This includes individuals subject to the former Form I-247 (Immigration Detainer – Notice of Action), Form I-247D (Immigration Detainer – Request for Voluntary Action), Form I-247X (Request for Voluntary Transfer) when this form requests detention rather than simply notification, and/or any successor form serving the same or substantially similar process.

---

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

4

5.  **Procedures/Requirements.** An ICE officer, agent or attorney must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship or, even in the absence of such a claim, when indicia of potential U.S. citizenship are present in a case. The ICE Directorate that first encounters the individual is generally responsible for identifying indicia of potential U.S. citizenship.

5.1.  **Procedures for Investigating and Assessing Potential U.S. Citizenship.**

1)  **Factual Examination.** The assessment of potential U.S. citizenship under this Directive must include a factual examination and a legal analysis and shall include a check of all available DHS data systems and any other reasonable means available to the officer. In general, the factual examination should be conducted by the ICE operational Directorate (ERO or HSI) that first encountered the individual. In cases where the OCC first encounters the individual, ERO should generally conduct the factual examination in coordination with the OCC.

    a)  Depending on the nature of the claim, the factual examination may include a review of the A-file and other pertinent documents, an interview of the individual, searches of vital records databases, interviews of family members and other individuals in possession of relevant information, and other appropriate investigation.

    b)  If the claim to U.S. citizenship cannot be verified, the claimant will be advised of the penalties of perjury and will be placed under oath and allowed to make a sworn statement about his or her claim to U.S. citizenship. Because a willful false claim to U.S. citizenship may be criminally prosecuted by the United States Attorney's Office (USAO), immigration officers and HSI agents should also ensure that the proper criminal procedural warnings are provided, *see Miranda v. Arizona*, 384 U.S. 436 (1966), and work with their local OCC and USAO in appropriate cases to ensure that any additional statements include information sufficient to use in future criminal prosecutions under 18 U.S.C. § 911.

    c)  Interviews with individuals making U.S. citizenship claims or for whom there are indicia of potential U.S. citizenship must be conducted by an officer or agent in the presence of and/or in consultation with a supervisor.

    d)  If the individual does not have a legal representative, prior to conducting an interview of the individual, an ICE officer or agent must arrange for the individual to be provided with the EOIR list of free legal services providers described in 8 C.F.R. § 1003.61, even if this list was previously provided.

    e)  Such interviews must be documented as sworn statements and must include all questions needed to complete all fields on a Record of Deportable/Inadmissible Alien, Form I-213.

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

5

f) The sworn statement must also include any additional questions designed to elicit information sufficient to allow a thorough investigation of the individual's claim to citizenship.

g) While ICE's access to, and information about, an individual detained in the custody of another law enforcement agency may be limited, ICE officers and agents should, to the extent feasible, conduct necessary and appropriate interviews to aid in assessing the potential U.S. citizenship of individuals against whom ICE has lodged, or is contemplating lodging, an immigration detainer.

2) **Preparing and Submitting Memorandum.** After the factual examination is completed, ERO or HSI (whichever conducted the factual examination) and the relevant OCC must jointly prepare and submit a memorandum for HQ review, using as a guide the attached HQ-approved template, which assesses the claim and recommends a course of action.

a) Absent extraordinary circumstances, this memorandum must be submitted no more than one business day from the time ERO, HSI, or OPLA first becomes aware of a claim or indicia of potential U.S. citizenship if the individual is subject to an immigration detainer or is detained in ICE custody. In all other cases, the memorandum must be submitted as promptly as practicable.

b) For purposes of such memoranda, the legal analysis must indicate whether, in the OCC's view:

1) The evidence in the case strongly suggests that the individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face;

2) Some probative evidence indicates that the individual may be a U.S. citizen but the evidence is inconclusive; or

3) No probative evidence indicates that the individual is a U.S. citizen.

c) The memorandum must be clearly annotated as containing pre-decisional, privileged attorney-client communication, attorney work product, and sensitive personally identifiable information.

d) Upon completion, the memorandum must be elevated via e-mail to the HQ OPLA Immigration Law and Practice Division at OPLAUSC.Claims@ice.dhs.gov and either the HQ ERO Assistant Director for Field Operations at USCCLAIMSERO@ice.dhs.gov or to the HQ HSI Domestic Operations Manager assigned responsibility for the relevant SAC office, as appropriate.

e) Any significant change in circumstances in a case elevated to HQ should be reported in the same manner as outlined in the preceding subparagraph, as well as

---

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

6

to any previously assigned HQ points of contact, as an update to the original memorandum.

3) **Headquarters (HQ) Review.**

   a) HQ OPLA and either HQ ERO or HQ HSI will respond to the field with a decision on the recommendation within one business day of receipt of the memorandum by detained claimants and individuals subject to an immigration detainer. In all other cases a decision will be made as promptly as practicable.

4) **Detainer/Custody Determination.**

   a) In those cases involving individuals who fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive (cases involving strong/facially credible or probative evidence of U.S. citizenship):

      1) ICE should not lodge an immigration detainer against or arrest the individual.

      2) If ICE has already lodged an immigration detainer against the individual, it should be immediately cancelled.

      3) If the individual is already in ICE custody, he or she should be immediately released.

      4) If the individual has been released from ICE custody on conditions, those conditions should be re-evaluated in consultation with OPLA.

   b) Where the field's initial recommendation to HQ is that an individual falls within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive, it is not necessary to await HQ concurrence before cancelling an immigration detainer, releasing the individual from custody, or terminating conditions of release.

   c) On a case-by-case basis and in consultation with OPLA, an individual determined by ICE to fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive may be placed in removal proceedings on EOIR's non-detained docket to more conclusively resolve his or her immigration and citizenship status if reasons remain to believe that he or she is an alien present in the United States in violation of law.

   d) Where no probative evidence of U.S. citizenship exists (section 5.1(2)(b)(3) of this Directive) and probable cause exists that the individual is a removable alien, it is permissible to lodge an immigration detainer in the case, arrest the individual, and/or process the individual for removal.

   e) In any case in which there is uncertainty about whether the evidence is probative of U.S. citizenship, ICE should not detain, arrest, or lodge an immigration

---

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

7

detainer against the individual and should cancel any immigration detainer already lodged by ICE.

f) Where ICE determines that it will not proceed further with an enforcement action due to the U.S. citizenship claim, the individual should be informed that he or she may attempt to obtain proof of U.S. citizenship by submitting a passport application to the Department of State (http://travel.state.gov/passport) or filing an Application for Certificate of Citizenship, Form N-600, with U.S. Citizenship and Immigration Services (www.uscis.gov/n-600).

5) **Case Management.**

a) ICE officers and agents will make a notation in the appropriate database(s) (e.g., ENFORCE Alien Booking Module and/or Alien Removal Module), and place a copy of the memorandum and resulting decision, properly marked as containing attorney work product, attorney-client communication, and sensitive personally identifiable information in the individual's A-file, if one already exists.

b) ICE attorneys will save the memorandum in the PLAnet case management system and document the resulting HQ decision and other information about the claim by completing the "USC Claims" section in PLAnet.

6. **Recordkeeping.** Records generated pursuant to this directive are maintained in the Alien File, Index, and National File Tracking System of Records, 76 Fed. Reg. 34233 (June 13, 2011), the General Counsel Electronic Management System (GEMS), 74 Fed. Reg. 41914 (August 19, 2009), the Immigration and Enforcement Operational Records (ENFORCE), 75 Fed. Reg. 23274 (May 3, 2010), and any other applicable system. The memorandum and resulting HQ decision will be also be saved in PLAnet.

7. **Authorities/References.**

7.1. Immigration and Nationality Act (INA) § 101(b) and (c).

7.2. INA §§ 301 - 303.

7.3. INA §§ 306 - 309.

7.4. INA § 316.

7.5. INA §§ 319 - 320.

7.6. INA § 322.

7.7. INA §§ 328 - 329.

---

**Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

8

**7.8.** Section 303 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub. L. No. 94-241, 90 Stat. 263, 266 (set out as a note to 48 U.S.C. § 1801).

**8.    Attachments.**

**8.1.** Sample – USC Claims Memorandum Template.[2]

**9.    No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create or diminish any rights, substantive or procedural, enforceable at law or equity by any party in any criminal, civil, or administrative matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of the Department of Homeland Security.

**Sarah R. Saldaña**
**Director**
**U.S. Immigration and Customs Enforcement**

---

[2] This template may be periodically updated by OPLA, as new legal and policy developments warrant. In such circumstances, OPLA will work with the Office of Policy to have the updated template posted to the ICE Policy Manual online environment.

---

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

DHS002758

EXHIBIT C



**U.S. Immigration and
Customs Enforcement**

MEMORANDUM FOR:     Director of Field Operations, OPLA
                    Assistant Director for Field Operations, ERO

FROM:               Jane Minichiello, Chief Counsel
                    Office of Chief Counsel, Newark

                    John Tsoukaris, Field Office Director
                    Enforcement and Removal Operations, Field Office Newark

SUBJECT:            Claim to United States Citizenship
                    (b)(6);(b)(7)(C)

## STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

1

(b)(6);(b)(7)(C);(b)(5)



2017-ICLI-00012   4546

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012  4547

(b)(6);(b)(7)(C);(b)(5)

4

(b)(6);(b)(7)(C);(b)(5)

5

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**



*Office of the Chief Counsel*

**U.S. Department of Homeland Security**
26 Federal Plaza, Rm. (b)(6)
New York, NY 10278

**U.S. Immigration and Customs Enforcement**

March 22, 2017

| | |
|---|---|
| MEMORANDUM FOR: | Director of Field Operations, OPLA |
| | Assistant Director for Field Operations, ERO |
| FROM: | (b)(6);(b)(7)(C) Assistant Chief Counsel |
| | Office of the Chief Counsel, New York City |
| THROUGH: | (b)(6);(b)(7)(C) Senior Attorney |
| | Office of the Chief Counsel, New York City |
| | (b)(6);(b)(7)(C) Assistant Field Office Director |
| | Enforcement and Removal Operations, Field Office New York City |
| SUBJECT: | Claim to United States Citizenship |
| | (b)(6);(b)(7)(C) |

### STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4551

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

4

2017-ICLI-00012   4553

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4554



**U.S. Immigration and
Customs Enforcement**

MEMORANDUM FOR:    Director of Field Operations, OPLA
                                Assistant Director for Field Operations, ERO

FROM:                    Jane Minichiello, Chief Counsel
                                Office of Chief Counsel, Newark

                                John Tsoukaris, Field Office Director
                                Enforcement and Removal Operations, Field Office Newark

SUBJECT:            Claim to United States Citizenship
(b)(6);(b)(7)(C)

<u>STATEMENT OF THE CASE</u>

(b)(6);(b)(7)(C);(b)(5)

1

(b)(6);(b)(7)(C);(b)(5)



2017-ICLI-00012   4556

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4557

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4558

(b)(6);(b)(7)(C);(b)(5)

5

(b)(6);(b)(7)(C);(b)(5)

6

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**



*Office of the Chief Counsel*
**U.S. Department of Homeland Security**

18201 S.W. 12th Street
Miami, Florida 33194

## U.S. Immigration and Customs Enforcement

May 11, 2017

MEMORANDUM FOR:  DPLA for FIELD LEGAL OPERATIONS, OPLA
ASSISTANT DIRECTOR FOR FIELD OPERATIONS, ERO

FROM:  Nelson Perez
Chief Counsel
Office of Chief Counsel, Miami

Marc J. Moore
Field Office Director
Enforcement and Removal Operations, Field Office Miami

SUBJECT:  Claim to United States Citizenship
(b)(6);(b)(7)(C)

## STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

(b)(6);(b)(7)(C);(b)(5)

<u>LEGAL ANALYSIS</u>

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

Page 4568

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4569

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4570

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4571

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4572

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4573

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4574

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4575

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

| | |
|---|---|
| MEMORANDUM FOR: | Director of Field Operations, OPLA<br>Assistant Director for Field Operations, ERO |
| FROM: | Jane Minichiello, Chief Counsel<br>Office of Chief Counsel, Newark<br><br>John Tsoukaris, Field Office Director<br>Enforcement and Removal Operations, Field Office<br>Newark |
| SUBJECT: | Claim to United States Citizenship<br>(b)(6);(b)(7)(C) |

STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

2

2017-ICLI-00012   4577

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4579

(b)(6);(b)(7)(C);(b)(5)

| | |
|---|---|
| DATE: | January 27, 2017 |
| MEMORANDUM FOR: | Director of Field Operations, OPLA<br>Assistant Director for Field Operations, ERO |
| FROM: | Raphael Choi, Chief Counsel,<br>Office of Chief Counsel, Arlington<br><br>M. Yvonne Evans, Field Office Director<br>Enforcement and Removal Operations, Field Office, Washington |
| SUBJECT: | Claim to United States Citizenship<br>(b)(6);(b)(7)(C) |

## STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4582

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4583

(b)(6);(b)(7)(C);(b)(5)

4

2017-ICLI-00012   4584

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4585

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4586



## U.S. Immigration and Customs Enforcement

**\*\*SENSITIVE/PRIVILEGED\*\*PRE-DECISIONAL\*\*ATTORNEY WORK PRODUCT\*\***

April 6, 2017

| | |
|---|---|
| MEMORANDUM FOR: | Director of Field Operations, OPLA<br>Assistant Director for Field Operations, ERO |
| FROM: | Karen E. Lundgren, Chief Counsel<br>Office of Chief Counsel, Chicago<br><br>Ricardo Wong, Field Office Director<br>Enforcement and Removal Operations, Field Office Chicago |
| SUBJECT: | Claim to United States Citizenship<br>(b)(6);(b)(7)(C) |

STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

**\*\*SENSITIVE/PRIVILEGED\*\*PRE-DECISIONAL\*\*ATTORNEY WORK PRODUCT\*\***

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4588

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4590

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4592

Page 4593

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4594

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4595

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4596

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4597

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

Page 4598

Withheld pursuant to exemption

(b)(5);WIF Draft

of the Freedom of Information and Privacy Act

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

# USC CLAIMS MEMORANDUM TEMPLATE

MEMORANDUM FOR:     Director of Field Operations, OPLA
                    Assistant Director for Field Operations, ERO

FROM:               (b)(6);(b)(7)(C)     Interim Chief Counsel
                    Office of Chief Counsel, Phoenix

                    Enrique Lucero, Field Office Director
                    Enforcement and Removal Operations, Field Office
                    Phoenix

SUBJECT:            Claim to United States Citizenship
                    (b)(6);(b)(7)(C)

STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

(b)(6);(b)(7)(C)

2017-ICLI-00012   4600

(b)(6);(b)(7)(C);(b)(5)

3

2017-ICLI-00012   4601

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4602

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4603

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

## USC CLAIM MEMORANDUM

MEMORANDUM FOR:    Director of Field Operations, OPLA
    Assistant Director for Field Operations, ERO

FROM:    Jason B. Aguilar, Chief Counsel
    (b)(6);(b)(7)(C) Deputy Chief Counsel
    , Assistant Chief Counsel
    Office of Chief Counsel, San Diego

    Gregory Archambeault, Field Office Director
    Enforcement and Removal Operations, Field Office San Diego

CLAIMANT:    Claim to United States Citizenship
    (b)(6);(b)(7)(C)

### STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4605

(b)(6);(b)(7)(C);(b)(5)

3

2017-ICLI-00012   4606

(b)(6);(b)(7)(C)

4

2017-ICLI-00012   4607

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4608

(b)(6);(b)(7)(C);(b)(5)

6

(b)(6);(b)(7)(C);(b)(5)



**U.S. Immigration
and Customs
Enforcement**

**\*\*SENSITIVE/PRIVILEGED\*\*PRE-DECISIONAL\*\*ATTORNEY WORK PRODUCT\*\***

March 28, 2017

MEMORANDUM FOR:  Director of Field Operations, OPLA
Assistance Director for Field Operations, ERO

FROM:              Karen E. Lundgren, Chief Counsel
Office of the Chief Counsel, Chicago

Ricardo Wong, Field Office Director
Enforcement and Removal Operations, Field Office Chicago

SUBJECT:         Claim to United States Citizenship
(b)(6);(b)(7)(C)

<u>STATEMENT OF THE CASE</u>

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4612

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4613

(b)(6);(b)(7)(C)

2017-ICLI-00012   4614

Page 4615

Withheld pursuant to exemption

WIF Draft:(b)(5)

of the Freedom of Information and Privacy Act

Page 4616

Withheld pursuant to exemption

WIF Draft:(b)(5)

of the Freedom of Information and Privacy Act

Page 4617

Withheld pursuant to exemption

WIF Draft:(b)(5)

of the Freedom of Information and Privacy Act

Page 4618

Withheld pursuant to exemption

WIF Draft:(b)(5)

of the Freedom of Information and Privacy Act

Page 4619

Withheld pursuant to exemption

WIF Draft; (b)(5)

of the Freedom of Information and Privacy Act

Page 4620

Withheld pursuant to exemption

WIF Draft:(b)(5)

of the Freedom of Information and Privacy Act

Page 4621

Withheld pursuant to exemption

WIF Draft:(b)(5)

of the Freedom of Information and Privacy Act

Page 4622

Withheld pursuant to exemption

WIF Draft:(b)(5)

of the Freedom of Information and Privacy Act

Page 4623

Withheld pursuant to exemption

WIF Draft; (b)(5)

of the Freedom of Information and Privacy Act

Page 4624

Withheld pursuant to exemption

WIF Draft:(b)(5)

of the Freedom of Information and Privacy Act

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

MEMORANDUM FOR:    Director of Field Operations, OPLA
                   Assistant Director for Field Operations, ERO

FROM:              Sarah L. Hartnett, Chief Counsel
                   Office of Chief Counsel, Houston, Texas

                   Patrick D. Contreras, Field Office Director
                   Enforcement and Removal Operations, Field Office Houston,
                   Texas

SUBJECT:           Claim to United States Citizenship
                   (b)(6);(b)(7)(C)

## STATEMENT OF THE CASE

(b)(7)(C);(b)(6);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT***

(b)(7)(C);(b)(6);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

**\*\*SENSITIVE/PRIVILEGED\*\*PRE-DECISIONAL\*\*ATTORNEY WORK PRODUCT\*\***



*Office of the Chief Counsel*
**U.S. Department of Homeland Security**

18201 S.W. 12th Street
Miami, Florida 33194

## U.S. Immigration and Customs Enforcement

January 27, 2017

MEMORANDUM FOR:     DPLA for FIELD LEGAL OPERATIONS, OPLA
                         ASSISTANT DIRECTOR FOR FIELD OPERATIONS, ERO

FROM:                 Nelson Perez
                Chief Counsel
                Office of Chief Counsel, Miami

                Marc J. Moore,
                Field Office Director
                Enforcement and Removal Operations, Field Office Miami

SUBJECT:           Claim to United States Citizenship
          (b)(6);(b)(7)(C)

## STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

**\*\*SENSITIVE/PRIVILEGED\*\*PRE-DECISIONAL\*\*ATTORNEY WORK PRODUCT\*\***

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4634

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4635

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4636

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

MEMORANDUM FOR:    Director of Field Operations, OPLA
    Assistant Director for Field Operations, DRO

FROM:    Sarah L. Hartnett, Chief Counsel
    Office of Chief Counsel, Houston, Texas

    Bret A. Bradford, (A) Field Office Director
    Enforcement and Removal Operations, Field Office Houston, Texas

SUBJECT:    Claim to United States Citizenship
    (b)(6);(b)(7)(C)

## STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)



2017-ICLI-00012   4638

(b)(6);(b)(7)(C);(b)(5)

3

(b)(6);(b)(7)(C);(b)(5)

4

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4641

(b)(6);(b)(7)(C);(b)(5)

6

MEMORANDUM FOR:    DPLA for FIELD LEGAL OPERATIONS, OPLA
Assistant Director for Field Operations, ERO

FROM:    Nelson Perez, Chief Counsel
Office of Chief Counsel, Miami

Marc J. Moore, Field Office Director
Enforcement and Removal Operations, Field Office Miami

SUBJECT:    Claim to United States Citizenship
(b)(6);(b)(7)(C)

STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4643

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4644

(b)(6);(b)(7)(C)

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4646

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4648

(b)(6);(b)(7)(C);(b)(5)

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

# USC CLAIMS MEMORANDUM

MEMORANDUM FOR:    Director of Field Operations, OPLA
Assistant Director for Field Operations, ERO

FROM:    (b)(6);(b)(7)(C) , Senior Attorney
Office of Chief Counsel, New York City

(b)(6);(b)(7)(C)  Acting Assistant Field Office Director
Enforcement and Removal Operations, New York City

SUBJECT:    Claim to United States Citizenship
(b)(6);(b)(7)(C)

## STATEMENT OF THE CASE

(b)(6);(b)(7)(C);(b)(5)

**SENSITIVE/PRIVILEGED**PRE-DECISIONAL**ATTORNEY WORK PRODUCT**

(b)(6);(b)(7)(C);(b)(5)

(b)(6);(b)(7)(C);(b)(5)

3

2017-ICLI-00012   4652

(b)(6);(b)(7)(C);(b)(5)

4

2017-ICLI-00012   4653

(b)(6);(b)(7)(C);(b)(5)

2017-ICLI-00012   4654

(b)(6);(b)(7)(C);(b)(5)

6

2017-ICLI-00012   4655

(b)(6);(b)(7)(C);(b)(5)

7

2017-ICLI-00012   4656

(b)(6);(b)(7)(C);(b)(5)



**U.S. Department of Homeland Security**
U.S. Immigration and Customs Enforcement
15 Governor Drive
Newburgh, New York 12550
*Phone: (845) 831-1576, ext. 2148/2149*

Office of the Chief Counsel

June 1, 2017

The Honorable Roger Sagerman
EOIR – Immigration Court
c/o Ulster Correctional Facility
P.O. Box 800, Berme Road
Napanoch, New York 12458

Re:   (b)(6);(b)(7)(C)
      (IHP) Ulster Correctional Facility

Dear Judge Sagerman:

The enclosed documents are being offered by the U.S. Department of Homeland Security, Immigration and Customs Enforcement, as evidence in the above referenced removal proceedings to be held at the Ulster Correctional Facility in Napanoch, New York on June 16, 2017.

1)   Form G-166C, Investigative Statement
2)   Respondent's Birth Certificate
3)   Marriage Certificate pertaining to respondent's father
4)   N-400, Application to File Petition for Naturalization pertaining to respondent's father

Respectfully submitted,

(b)(6);(b)(7)(C)

Assistant Chief Counsel

# CERTIFICATE OF SERVICE

**CASE NAME**: <span>(b)(6);(b)(7)(C)</span>
**A Number**:

I HEREBY CERTIFY that on June 1, 2017, I caused to be served the foregoing document(s):

_X_    by placing a true and correct copy thereof in a sealed envelope, with postage thereon to be fully prepaid by normal government process, and causing the same to be mailed by first class mail to the person at the address set forth below:

_____    by causing to be personally delivered a true and correct copy thereof to the person at the address set forth below:

_____    by causing to be personally delivered a true and correct copy thereof by Federal Express / United Parcel Service to the person at the address set forth below:

_____    by telefaxing, with acknowledgment of receipt requested, a true and correct copy thereof to the person at the address set forth below:

Prisoners' Legal Services of New York
Attn: (b)(6);(b)(7)(C) Esq.
41 State Street, Suite (b)(6);(b)(7)(C)
Albany, NY 12207

(b)(6);(b)(7)(C)

Assistant Chief Counsel