UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17 C 2853 ) |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendant. | ) ) |

### ORDER

For the reasons explained here, the government's motion for summary judgment [19] is stricken without prejudice for refiling after completion of an additional *Vaughn* index, to be submitted within 21 days.

### STATEMENT

Plaintiff Jacqueline Stevens is a professor of political science and director of a "Deportation Research Clinic" at Northwestern University. (Compl. [1] ¶ 4.) On February 13, 2017, Stevens submitted, via e-mail, a request "To Whom it May Concern" at U.S. Immigration and Customs Enforcement ("ICE") for "all correspondence on the detention or removal proceedings for people claiming or proving U.S. citizenship since January 1, 2017." (Def.'s 56.1 [20] ¶ 15.) ICE replied on March 16, 2017, explaining in an e-mail that it was "working through" a "backlog" of FOIA requests and had not yet assigned a tracking number to Stevens' request. (FOIA Req., Ex. 1 to Compl.) One month later, on April 14, 2017, Stevens filed this suit, alleging that ICE's delay amounted to a constructive denial of her request. (Compl. ¶ 18.) ICE has admitted in its answer that it failed to comply with the statutory time limits set out in 5 U.S.C. § 552(a)(6), but denies that its delay lacked "legal basis" and asks that the case be dismissed. (Answer [8] ¶¶ 18, 21.)

In the meantime, while the case was pending, ICE began processing Stevens' request. The ICE Office of the Principal Legal Advisor ("OPLA") and Enforcement Removal Operations ("ERO") began to search for and produce responsive records. (Def.'s 56.1 ¶ 17.) In May 2017, OPLA tendered 6,042 pages of responsive documents to ICE's FOIA office. That office determined that the documents contained "sensitive and/or privileged information."[1] (*Id.* ¶¶ 19, 21); (Keenan Decl. ¶ 40, Ex. A to Def.'s 56.1.) The ICE FOIA office redacted portions and began producing the documents to Stevens. (Def.'s 56.1 ¶ 22); (Keenan Decl. ¶ 11.) In its first wave of production, ICE inadvertently excluded a significant number of records that were referenced as "attachments" to the documents it did produce. (Keenan Decl. ¶ 12.) Stevens' attorney requested these records on November 2, 2017, and ICE produced them in an additional wave between January 23, 2018 and April 23, 2018. (*Id.* ¶ 13.) In total, ICE has produced 5,121 pages of records to Stevens, 4,841 of them partially redacted, and 280 of them produced without redactions. (*Id.* ¶ 40.) Additionally, 922 pages of records were withheld, including 158 pages withheld as duplicates and 17 pages that ICE "referred to other agencies for processing and release." (*Id.*)

Evidently deeming this production complete, ICE moved for summary judgment on April 30, 2018, asserting that it had conducted an adequate search for responsive records and that no information was improperly withheld from Stevens. (Mem. Supp. Def. Mot. Summ. J. [21] [hereinafter "Def. MSJ"].) Pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), ICE concurrently filed an index setting out the bases for its redactions in a representative sample of documents. (Keenan Decl. ¶ 37.) By agreement of both parties, the sample includes the first 150 pages of each of the two productions, totaling 300 pages. (*Id.*) Included within this sample are three types of documents: (1) "emails between ICE employees and other federal agency

---

[1] ERO concluded that it did not possess any responsive documents that differed from those collected by OPLA, and did not submit any records to the ICE FOIA office. (Def. 56.1 Statement [20], at ¶ 20.

employees," (2) "draft versions of legal memos created by ICE attorneys, which contain their legal evaluations, write-ups, and commentary on USC [United States citizenship] claims," and (3) "communications via email between ICE attorneys and/or ICE officers and agents." (*Vaughn* Index, Ex. 1 to Keenan Decl.) According to the *Vaughn* index, the contents of these documents were partially withheld in accordance with FOIA exemption b(5), and personal information therein was further redacted in accordance with exemptions b(6) and b(7)(C). (*Id.* at 2-3).

Exemption b(5) applies to inter-agency memoranda that "would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552 (b)(5). This exemption incorporates, inter alia, the attorney work product privilege, the attorney-client privilege, and the deliberative process privilege. *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006). Exemption b(6) applies to files that, if disclosed, "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). And exemption b(7)(C) applies to law enforcement records that, if produced, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7).

ICE contends that every page included in the *Vaughn* index was properly withheld under these exemptions, and Stevens does not contest that assertion. Instead, Stevens argues that ICE improperly withheld the contents of documents that were *not* accounted for in the *Vaughn* index: specifically, "finalized USC Claims Memos." (Mem. Supp. Pl. Mot. Summ. J. [29] [hereinafter "Pl. MSJ"].) Stevens submitted to the court 115 pages of records she believes to be finalized USC Claims Memos, the contents of which are almost entirely withheld, save for the names of the drafters and recipients, and subject lines that read "Claim to United States Citizenship." (Ex. C. to Stevens Decl. [30].) The reason that these documents are not accounted for in the *Vaughn* index, Stevens acknowledges, is that when the parties agreed on a sampling of documents to be used, none of the finalized USC Claims Memos were included. Stevens nevertheless argues that because these documents have not yet been accounted for, the court

3

should deny summary judgment as to them or, in the alternative, order ICE to submit a supplemental *Vaughn* index.

In its Reply, ICE argues that two of the exemptions it relied on in withholding the contents of *draft* memoranda—the attorney work product privilege and the attorney-client privilege—apply with equal force to finalized memoranda. But ICE does not meaningfully engage with Stevens' request for a supplemental *Vaughn* index. It mentions the index only once in its Reply, concluding at the end of one paragraph that "the *Vaughn* index that ICE prepared in this case . . . fully explains the withholdings made to the 'finalized' citizenship memoranda Stevens references in her response." (Reply Supp. Def. Mot. Summ. J. [35] [hereinafter "Def. Reply"] at 4.) This conclusion, to the extent that it responds to Stevens' request for supplemental index, does not flow logically from the rest of the paragraph, which argues only the merits of ICE's withholdings rather than the requirements of *Vaughn*.

The purpose of a *Vaughn* index is to assist the court in reviewing a defendant's claim that certain documents are exempt from disclosure under FOIA. *Vaughn*, 484 F.2d at 827. It typically takes the form of a detailed, cross-referenced index to specific withheld documents or portions of documents, and the specific exemption claims associated with those documents. *Id*. The production of a *Vaughn* index is essential not only to the court's understanding of the defendant's claims, but also to the plaintiff's ability to meaningfully contest those claims. *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). Moreover, the practice of requiring a *Vaughn* index is intended to counteract the tendency of federal agencies to claim the broadest possible grounds for exemption for the greatest amount of information. *Vaughn*, 484 F.2d at 826. It has been described as "critical to effective enforcement of FOIA." *Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 947 (1979).

On this record, it appears that ICE's index does not describe or identify finalized USC Claims memos with sufficient specificity to accord with *Vaughn*. "Specificity is the defining requirement of the *Vaughn* index and affidavit." *King*, 830 F.2d at 219. The D.C. Circuit has held

4

that, at minimum, an agency must "provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Id*. (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). This justification must be sufficient to "enable 'the District Court to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves, as well as to produce a record that will render the District Court's decision capable of meaningful review on appeal.'" *Id.* (quoting *Dellums v. Powell*, 642 F.2d 1351, 1360 (D.C. Cir. 1980)). "Although the Court does not expect an exhaustive, line-by-line description of the requested file, it must have a sufficient sense of what kinds of documents are contained in the file in order to evaluate the application of the enumerated exemptions." *Santos v. DEA*, 357 F. Supp. 2d 33, 38 (D.D.C. 2004). A government agency thus cannot meet its burden if its supporting affidavit "neither gives a functional description of the contents of the file nor an identification of any document or group of documents." *Id*.

ICE's production does not meet this standard with regard to finalized USC Claims memos. Its index refers only to "draft versions of legal memos," making no reference at all to finalized memoranda. (*Vaughn* Index at 3.) Its supporting affidavits, meanwhile, also do not directly extend the index's justifications to finalized memoranda. Instead, the first declaration refers only briefly to the existence of finalized memoranda, noting that "[o]nce a final decision is rendered [regarding a citizenship claim], a copy of the memorandum is finalized." (Keenan Decl. ¶ 25); *see also* (Def. MSJ at 2.) It does not explain how, if at all, "finalizing" a memorandum affects the characteristics relevant to determining whether the documents are exempt under FOIA. ICE's second declaration includes a paragraph that reads, in its entirety, "The *Vaughn* index prepared in this case to describe the redactions and applicable exemptions in the records released to Stevens fully explains the withholdings in the 'finalized' citizenship memoranda Stevens identifies in her response." (Pineiro Decl. ¶ 17, Ex. A. to Def. Reply.) This contention is not substantiated by any meaningful discussion of the finalized memoranda as distinct from their draft counterparts. ICE

5

has not even clarified how many pages of finalized memoranda have been withheld or identified those memoranda in any way. These omissions prevent the court from "determin[ing] whether nondisclosure is justified or whether any of the information is segregable." *Santos*, 357 F. Supp 2d. at 33.

ICE's Reply brief has not addressed its withholdings from the finalized memos. Though the government may view it as a formality, the requirement of a *Vaughn* index is not excused by the argument that withholdings are proper, because the court requires a *Vaughn* index in order to evaluate those arguments. The court therefore directs that within 21 days, ICE prepare a supplemental *Vaughn* index and affidavit that specifically address finalized USC claims memos. Following that submission, both parties will be free to submit supplemental briefing on the adequacy of the justifications asserted therein.

ENTER:

Dated: February 20, 2019

_____
REBECCA R. PALLMEYER
United States District Judge