# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 2853 |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | Judge Pallmeyer |
| SECURITY, IMMIGRATION AND | ) | |
| CUSTOMS ENFORCEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENTAL DECLARATION OF FERNANDO PINERIO TO ACCOMPANY SUPPLEMENTAL *VAUGHN* INDEX

### I.    INTRODUCTION

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am the Deputy Freedom of Information Act ("FOIA") Officer at the United States Immigration and Customs Enforcement ("ICE") FOIA Office.  I have held this position since December 2013.  Prior to this position, I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the United States Department of Homeland Security ("DHS").  The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.     The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("PA"), 5 U.S.C. § 552a, requests received at ICE.

3.     As the Deputy FOIA Officer my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office.  I manage and supervise a staff of ICE FOIA Paralegal Specialists who report to me regarding the processing of FOIA and

PA requests received by ICE. In connection with my official duties and responsibilities, I am familiar with ICE procedures for responding to requests for information made pursuant to the FOIA and the PA. In that respect, I am familiar with ICE's processing of the February 13, 2017 FOIA request plaintiff Jacqueline Stevens submitted to the ICE FOIA office that is the subject of this litigation.

4.     I make this supplemental declaration in my official capacity in support of ICE's motion for summary judgment in the above-captioned action and incorporate by reference the prior two declarations ICE has submitted in this case. Dkts. 20-1, 35-1. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of its business activities, and information provided to me by other ICE employees in the course of my official duties.

5.     In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) and the court's February 20, 2019 order in this case (Dkt. 40), this supplemental declaration describes the 115 pages of records plaintiff Jacqueline Stevens believes to be finalized United States citizenship claims memoranda (Dkt. 30, Stevens Decl. at Ex. C), ICE's withholdings of all or portions of those records, and the bases for ICE's withholdings. ICE has also prepared a supplemental *Vaughn* index relating to those 115 pages of records, which is attached hereto as Exhibit 1.

## II.     ICE'S U.S. CITIZENSHIP CLAIMS PROCEDURES

6.     As previously stated, the ICE procedure for addressing United States citizenship ("USC") claims is set out in ICE Policy Directive 16001.2 "Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE," issued November 10, 2015. The Directive is summarized in the following paragraphs; however, a version of this Directive is available to the public (subject to limited redactions) via the ICE FOIA library, and was attached to my prior

declaration.  Dkt. 20-1 at Ex. 3.

7.      "It is ICE policy to carefully and expeditiously investigate and analyze the potential

U.S. citizenship of individuals encountered by ICE."  *Id.* at 1.  Section 5.1(2)(b)(1) of the ICE

Policy Directive 16001.2 states that if "the evidence in the case strongly suggests that the

individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face," ICE must

cease any removal proceedings, because ICE's mission and/or authority does not include detaining

or removing U.S. citizens.

8.      Section 2 of ICE Policy Directive 16001.2 states that ICE officers, agents, and

attorneys have a responsibility to assess the potential USC of any individual encountered by ICE,

whether that individual makes an affirmative claim to USC or ICE personnel become aware of

certain indicia of USC.  Regardless of the USC claim trigger (affirmative claim or USC indicia),

USC claims are documented via alert emails accompanied by "USC memoranda."  Each USC

memorandum is created by a local ICE Office of the Principal Legal Advisor ("OPLA"), Office of

the Chief Counsel ("OCC") attorney working in conjunction with ICE officers and agents,[1] and

uses a standardized template approved by ICE Headquarters.  The memorandum assesses the USC

claim and recommends a course of action.  Its purpose is to assist ICE personnel from inadvertently

initiating or continuing removal proceedings against a person who is a United States citizen and/or

infringing upon the rights of a U.S. citizen.  As a result, included in each memorandum is a legal

analysis of the USC claim based on the facts available to the agency at that time, as well as a

---

[1] As noted in Directive 16001.2, ICE Enforcement and Removal Operations ("ERO") or the other major ICE office, Homeland Security Investigations ("HSI"), can also be involved in USC claims.  However, due to the non-immigration nature of HSI's work, it is extremely rare for USC claims to arise from and involve HSI.  For the purposes of this declaration, only ERO will be referenced in this process, as they were the only other ICE office involved in the records responsive to Stevens's FOIA request.

recommendation on a course of action regarding removal proceedings, in particular, whether the agency should initiate, continue, or move to terminate the actual or contemplated removal proceedings based on the facts available to the agency at the time.

9.      The memorandum is then submitted by the local OPLA attorney to ICE Headquarters ERO and OPLA Immigration Law and Practice Division ("ILPD") for review. Since the memorandum is almost entirely attorney work product and contains recommendations for courses of action between attorneys and clients, it is marked draft, pre-decisional and deliberative, privileged attorney-client communication, attorney work product, and as containing sensitive personally identifiable information ("PII").

10.     Headquarters ERO and OPLA ILPD review the memorandum and either concur or dissent with the recommended course of action. If more information or further analysis is required, the local OPLA attorney and an attorney from ILPD will work together to address all concerns.

11.     Once ERO Headquarters and OPLA ILPD have reached a decision, a copy of the memorandum is finalized. The memorandum is then sent via email to the shared email inboxes maintained by ERO and OPLA. It is also saved to OPLA's case management database PLAnet and marked in that database as pre-decisional, attorney work product, privileged attorney-client communication, and containing sensitive PII. Because ICE Policy requires that each USC claims memorandum be submitted within one business day from the time ICE first becomes aware of the claim to citizenship, *id.* at section 5.1(2)(a), the memorandum is never considered final even after being sent to the shared email inboxes and saved to PLAnet and is subject to updates. Specifically, each memorandum may be revised and re-elevated if new information is developed, either through subsequent ICE investigation or based on information or documents received from the individual claiming USC or his/her attorney. *Id.* at section 5.1(2)(e). ICE officers and agents make a notation

4

in their appropriate case management system and/or database of the findings on citizenship and recommendation and will update these notations if findings or recommendations change.

### III. ROLE OF USC MEMORANDA IN LITIGATION

12.     As previously stated, USC memoranda are created in anticipation of foreseeable immigration and/or federal court proceedings.  Specifically, each memorandum is prepared by an OPLA attorney and reviewed by attorneys at ICE HQ in order to advise their clients (ERO personnel) about the best course of action based on the information available to the agency at the time, both with respect to that particular respondent's immigration proceeding and with an eye to minimizing potential future litigation by the respondent against the agency.

13.     Section 3.2 of ICE Policy Directive 16001.2 lays out the three categories of individuals encountered by ICE for which USC memoranda apply: (1) individuals currently in removal proceedings (either before ICE or the Department of Justice Executive Office for Immigration Review); (2) individuals arrested and taken into ICE custody pursuant to the agency's civil immigration authorities; and (3) individuals subject to ICE immigration detainers following their release from criminal custody of another law enforcement agency.

14.     In all three situations, the individuals for which USC memoranda are created will currently be, or are reasonably anticipated to be, respondents in removal proceedings in immigration court at the time the memoranda are prepared.  Therefore, every USC memorandum is prepared specifically in anticipation of immigration court proceedings.

15.     Beyond immigration court proceedings, there are also federal litigation issues that ICE anticipates.  For example, ICE can be sued under federal tort law for having unlawfully detained a U.S. citizen.  A USC claimant can file a habeas petition challenging detention by ICE on the basis of a U.S. citizenship claim.  If a USC claimant raises the citizenship issue in a petition

for review challenging the removal order of the Board of Immigration Appeals, the circuit court can remand to the district court for a trial under 8 U.S.C. § 1252(b)(5) to resolve the citizenship issue. These examples do not constitute an exhaustive list but rather illustrate just a few of the many federal litigation consequences associated with ICE's analysis of USC claims.

## IV.    ICE MEMORANDA ARE FOR INTERNAL AGENCY USE ONLY

16.    USC memoranda are strictly for internal use and solely created for OPLA and ERO personnel. As these USC memoranda are documents only used internally, they are not filed in immigration court, nor shared with any other agency or federal, state, or local court. The analysis reflected in a memorandum may be discussed with DOJ attorneys in a federal immigration litigation related to that particular respondent during deliberations regarding litigation strategy. However, the document itself is not generally released.

17.    Additionally, ICE does not have the authority to grant U.S. citizenship. U.S. citizenship can only be conferred by U.S. Citizenship and Immigration Services or the U.S. Department of State. The USC memoranda play no role in those citizenship decisions; they simply are internal documents that reflect an agency attorney's analysis of the best course of action with respect to a particular respondent's USC claim at a particular point in time.

18.    Lastly, the USC claims memoranda produced to Stevens in this litigation in response to her FOIA request originate from OPLA email accounts within a set period of time and reflect only the information known and analysis conducted in those USC claims for that specific time period. As noted above, additional information ICE received subsequent to the time period in Stevens's FOIA request may have resulted in changes to the factual findings, legal analysis and recommended courses of action in one or more memoranda.

## V.    ORGANIZATION OF ICE'S SUPPLEMENTAL *VAUGHN* INDEX

19.    Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a supplemental *Vaughn* index accompanies this declaration, providing a description of each redaction and applicable exemption in 115 pages of records ICE produced to Stevens, as set out by Stevens in her June 8, 2018 Declaration.  Dkt. 30 at Ex. C.  The redactions and applicable exemptions described in the supplemental index are indicative and representative of redactions and applicable exemptions made in other documents ICE produced to Stevens in response to her FOIA request.

20.    The supplemental *Vaughn* index is in a table format.  The first row contains the titles of four columns that provide a brief description of the information contained within the corresponding columns below.  The heading titles, from the left to the right side of the page, are: Page Number, Withholding: Full/Partial, Description of Records and Redactions, and Reasons for Redactions, and Exemption(s) Applied.

21.    The first heading, Page Number, refers to the page number on each of the responsive documents.  The second heading, Full/Partial Withholding, refers to the level of withholdings taken on the documents.  The information below the third heading, Description of Records and Redactions, and Reasons for Redactions, describes the redacted information and the justification for redaction.  The fourth heading, Exemption(s) Applied, describes the exemptions applied to the redactions in the documents.

22.    A complete description of the 115 pages of documents, and the bases for the withholding of information in said documents, is detailed in ICE's supplemental *Vaughn* Index. In this case, the records produced to Stevens included email attachments containing USC claims memoranda created by OPLA attorneys.  A complete description of the previously agreed-upon

300 pages of documents, and the bases for the withholding of information in said documents, is detailed in ICE's first *Vaughn* Index, which included email correspondence between ICE OPLA attorneys and/or ICE officers and agents (such as ERO officers), and any accompanying attachments. The email attachments included USC claims memoranda drafted by OPLA attorneys as well as supporting materials for the USC claim (such as birth certificates, ancestry data from online databases, relevant legal codes, case management print-outs, etc.). All responsive records pertain to correspondence and attachments regarding USC claims relating to persons in ICE custody during the timeframe specified in the FOIA request.

## VI.  APPLICABLE FREEDOM OF INFORMATION ACT WITHHOLDINGS

### FOIA Exemption (b)(5)

23.    Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption (b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

24.    ICE applied FOIA Exemption (b)(5) to protect from disclosure, documentation subject to the deliberative process privilege, attorney work-product privilege, and attorney-client privilege.

25.    ICE withheld internal discussions, deliberations, and recommendations between and amongst attorneys and personnel in OPLA and ERO regarding all USC claims made during the FOIA request's stated timeframe. Specifically, these communications contemplate the appropriate response to U.S. citizenship claims for individuals encountered by ICE, and require vigorous research and multidivisional concurrence. Thus, the contents of these discussions and deliberations are pre-decisional in nature because they were prepared in order to assist a decisionmaker in making a final decision, and deliberative because they are consultative processes

given that the facts and options discussed in the communications are selective in nature and highlight the portions of the record that were deemed pertinent to the ultimate recommendation and decision on the citizenship claim. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda, letters, or emails. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action freely.

26. Exemption 5 was also applied to draft documents that discussed the legal analysis and basis for USC claims relating to persons in ICE custody. By their very nature, draft documents are pre-decisional, preliminary versions of what may later become a final document in whole or in part, or they remain drafts that never mature into final form as the material may be withdrawn or discarded during the decision making process. In fact, the process by which a draft evolves into a final document is itself a deliberative process. Some draft documents within the responsive document set contain edits, marginal suggestions and comments, and/or embedded questions regarding content; other draft materials include emails with proposed changes to the draft memoranda. If draft responses to inquiries and agency policies in actions were released, the public could potentially become confused regarding ICE's mission and activities. Disclosure of such material could mislead the public as the comments and text of draft documents often differ, sometimes significantly, from final agency positions. Disclosure of such material could also cause the same chilling effect noted in paragraph 25.

27.     ICE also applied Exemption (b)(5) to protect from disclosure documentation subject to the attorney work product privilege.  This privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.  Its purpose is to protect the adversarial trial process by insulating the attorney's preparation from scrutiny.

28.     Given the extremely sensitive nature of the rights involved in USC claims and/or the inadvertent detention of a U.S. citizen, the potential for litigation is heightened and ICE attorneys are constantly aware of this possibility.   Thus, ICE withheld information in records (Word documents, PDFs, emails, and case management system entries) that were prepared by agency attorneys - specifically, attorney memos, notes, questions, thoughts, strategy, and legal analysis -  as well as an intra-agency communications discussing the information in these records, because the information constitutes attorney insight about the citizenship status of individuals encountered by ICE, which may be and has been subject to future litigation in immigration and federal court.  This information is protected from disclosure because it was prepared by an attorney in contemplation of any such litigation.

29.     Finally, ICE applied Exemption (b)(5) to protect from disclosure documentation subject to the attorney-client privilege.

30.     The attorney-client privilege protects confidential communications between an attorney and his or her client relating to a legal matter for which the client has sought professional advice.  It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his or her client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information.  The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the records contain confidential communications

between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel) relating to the citizenship status of individuals encountered by ICE. The client seeks the professional advice of OPLA attorneys on USC claims, specifically from ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts. These communications provide advice to the client about recommended actions and legal decisions. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

## FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold

31. 5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

32. The information for which the ICE FOIA Office asserted Exemption (b)(7) satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and is responsible for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the

11

people, money, and materials that support illegal enterprises.

33.     The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, including records of interviews, arrests, bookings, detentions, removals, other related investigations, and investigations of allegations of misconduct. Therefore, all of the ICE records responsive to Stevens's FOIA request were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption (b)(7).

**FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)**

34.     FOIA Exemption 6 allows the withholding of information found in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6) ("Exemption 6").  Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical" or "similar files" under Exemption 6.  When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

35.     FOIA Exemption 7(C) similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").

36.     When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in shedding light on ICE's performance of its statutory duties.

37.     Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from

12

disclosure the names, signatures, contact information, biometric information, immigration status, and case history of third party individuals and ICE employees.

38.     Such information, if disclosed to the public or to a third-party requester without the permission of the individual, could expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual.

39.     Furthermore, third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes.  The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files.  The individuals' privacy interest in the information contained in the record outweighs any minimal public interest in the disclosure of the information.  Stevens has not articulated a sufficient public interest or public need to justify release of this information.  The disclosure of this PII serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities.  Finally, the third parties mentioned in the law enforcement records did not consent to the disclosure of their PII.

40.     In many of the redactions, much of the information pertaining to a claimant was redacted as PII because it could reasonably be used to determine the identity of the USC claimant.   Even without specific names, there are numerous websites and oftentimes news articles that contain enough information for a person like the plaintiff in this case to piece together and identify the claimants.  For example, the location or date of arrest or prior immigration history could be used to identify those claiming USC status.  This indirect disclosure of claimants' identities would violate the spirit of Exemptions 6 and 7(C).

13

41.     The fact patterns in the produced USC memoranda at issue in this case were withheld under FOIA Exemptions 5 U.S.C. § 552(b)(5), (6) & (7)(C).  With the increase in information available online about criminal histories, genealogy databases, and other sensitive details of USC claimants' backgrounds, ICE now limits the information that is disseminated in response to FOIA requests because the detailed histories drafted by ERO and OPLA personnel in USC memoranda can be used to determine the identity of U.S. citizenship claimants in ICE custody, which would constitute an invasion of their personal privacy.

42.     ICE determined that the disclosure of the information described in Paragraphs 37 and 40 would constitute a clearly unwarranted invasion of personal privacy and thus Exemption 6 applied.  In addition, ICE determined that disclosure of the information described in Paragraphs 37 and 40, which was compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus Exemption 7(C) applied.

43.     Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in shedding light on the operations and activities of ICE in the performance of its statutory duties.  Exemptions 6 and 7(C) were applied to prevent disclosure of USC claimant identities and immigration status as well as the identities of ICE personnel.  In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual and all other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE.   In some redactions, the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records; however, in other cases, more extensive redactions were necessary, as explained in

14

paragraph 40.

44.     Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third-party information identified in law enforcement records is appropriate.  Moreover, the third parties identified in these records have not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a) & 5.21(d).

## VII.    SEGREGABILITY

45.     5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

46.     A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

47.     With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.  ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

## VIII. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my

knowledge and belief.  Signed this ___13th__ day of March, 2019.


_____
Fernando Pineiro Jr., Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

# Exhibit 1

***Stevens v. DHS-ICE***
Case No. 17 C 2853 (N.D. Ill.)

U.S. Immigration and Customs Enforcement Supplemental *Vaughn* Index

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 4545-4567, 4576-4592, 4599-4614, 4625-4659 | Partial | Redactions:  These pages contain personally identifiable information (PII), including the names, biometric information, contact information, immigration history, and/or other identifying information, of third-party individuals.  This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C). Additionally, contextual information around the PII that could be used to identify a third party was withheld, as that information could be used in conjunction with information found online, news stories, and other forms of media and internet information to breach personal privacy.<br><br>Reason: Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 4545-4567, 4576-4592, 4599-4614, 4625-4659 | Partial | Redactions:  These pages contain attorney work product regarding U.S. citizenship claims ("USC claims") made by persons in ICE custody.  Specifically, they contain versions of legal memos created by ICE attorneys, which contains their legal evaluations, write-ups, and commentary on USC claims.  Each USC claim memo follows a set template, which sets forth the facts of the individual case, the relevant legal standards for USC claims, the attorney's evaluation of evidence and data against the relevant USC law, a suggested conclusion on the matter of law, and a recommendation for agency action.  All memos, whether put into the body of an email or attached as a Word document, begin and conclude with the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT."  The versions of the memos and/or any proposed edits to legal language are deliberative attorney work products meant for providing legal advice and recommendations to other ICE attorneys and ICE officers and agents, and are subject to constant changes and edits at any point | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | in the USC adjudication process.   This information was withheld throughout the document set under FOIA exemption (b)(5).<br><br>Reason:  The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative, as well as attorney work product and attorney-client privileged.<br><br>First, these documents contain pre-decisional and deliberative information.  FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.  The memos are also always subject to edits by other attorneys and/or ERO agents or officials at any point in the citizenship evaluation process, as information (for example, new birth records, information presented by a subject regarding their parents) is constantly being collected and evaluated to determine if the validity of the citizenship claim should be adjusted.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.  Here, these documents are protected from disclosure because they were prepared by attorneys in anticipation of any such litigation regarding USC Claims, either in immigration proceedings or any other proceedings.   The information withheld was prepared by an agency attorney - specifically, attorney memos, notes, questions, thoughts, strategy, and legal analysis – in contemplation of litigation both in immigration and in federal court.<br><br>Finally, the attorney-client privilege is also applicable to the portions of these records.  Communications between ICE attorneys and their clients (ICE agents and officers) were made for the purpose of securing legal advice or service regarding USC claims made by persons in ICE custody.  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client.  If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling | |

Stevens v. ICE - Supplemental *Vaughn* Index                                                                 3

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | effect on interactions and communications between agency employees and their legal counsel. | |
| 4568-4575, 4593-4598, 4615-4624 | Full | Redactions:  These pages contain attorney work product regarding USC claims made by persons in ICE custody.  Specifically, they contain draft Word versions of legal memos created by ICE attorneys that reflect tracked changes via redline edits and contain comments in the margins by other attorney reviewers.  These legal memos express legal evaluations, write-ups, and commentary on USC claims.  Each USC claim memo follows a set template, which sets forth the facts of the individual case, the relevant legal standards for USC claims, the attorney's evaluation of evidence and data against the relevant USC law, a suggested conclusion on the matter of law, and a recommendation for agency action.  All memos, whether put into the body of an email or attached as a Word document, begin and conclude with the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT."  The draft memos and/or any proposed edits to legal language are deliberative attorney work products meant for providing legal advice and recommendations to other ICE attorneys and ICE officers and agents.   This information was withheld throughout the document set under FOIA exemption (b)(5).  Reason:  The information in these pages was properly withheld under FOIA exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney work product and attorney-client privileged.  First, these documents are deliberative draft documents from ICE attorneys about USC claims made by persons in ICE custody.  As in any USC memo, information (for example, new birth records, information presented by a subject regarding their parents) is constantly being collected and evaluated to determine if the validity of the citizenship claim should be adjusted.  Therefore, these USC memos are marked as drafts, especially when conveyed by email for editing and/or concurrence purposes (as opposed to memorialized in the OPLA PLAnet database to reflect the agency decision at a particular point in time).  Moreover, these particular memos contain direct edits by other attorneys and/or ERO agents or officials, shown via redline edits and/or comments in a Word document, which in some cases, change the legal analysis of the USC claim. The documents thus contain pre-decisional and deliberative information.  FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos.  The | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.  Here, these documents are protected from disclosure because they were prepared by attorneys in anticipation of any such litigation regarding USC Claims, either in immigration proceedings or any other proceedings.  The information withheld was prepared by an agency attorney - specifically, attorney memos, notes, questions, thoughts, strategy, and legal analysis – in contemplation of litigation both in immigration and in federal court.<br><br>Finally, the attorney-client privilege is also applicable to the portions of these records. Communications between ICE attorneys and their clients (ICE agents and officers) were made for the purpose of securing legal advice or service regarding USC claims made by persons in ICE custody.  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client.  If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |