UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 2853 |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | Chief Judge Pallmeyer |
| SECURITY, IMMIGRATION AND | ) | |
| CUSTOMS ENFORCEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S LR 56.1 STATEMENT OF
MATERIAL FACTS AND DEFENDANT'S STATEMENT OF ADDITIONAL FACTS**

Defendant U.S. Department of Homeland Security, Immigration and Customs

Enforcement ("ICE"), by John R. Lausch, Jr., United States Attorney for the Northern District of

Illinois, responds pursuant to Local Rule 56.1(b)(3) to plaintiff Jacqueline Stevens's Statement of

Material Facts (Dkt. 56) and submits the following additional material facts:

1.      Based on the records released by U.S. Immigration and Customs Enforcement

("ICE") in this litigation, ICE officials review an average of at least 1.87 and as many as 3.0375

individual claims to U.S. citizenship per day. Declaration of Professor Jacqueline Stevens

("Stevens Decl.") ¶ 3.

**Response:**      Disputed.  The conclusions reached by Stevens regarding daily averages are

incorrect. Ex. A, Dent Decl. ¶¶ 20-21.  No "daily average" exists, nor can one be created.  *Id.*  The

number of United States citizenship ("USC") claims received and for which memoranda are

prepared varies significantly on a daily, weekly, and even monthly basis.  *Id.*  The rate of USC

claims thus is not, as Stevens suggests, consistent throughout the year such that an average of the

number of claims and memoranda prepared over a given time period would correspond to a

different time period. *Id.* Furthermore, the ICE Office of the Principal Legal Advisor ("OPLA"), Immigration Law and Practice Division ("ILPD"), statistics about USC memoranda upon which Stevens relies are aggregate data drawn from OPLA's case-management system (PLAnet), which does not draw a distinction between a new USC claim memorandum and a revision to an existing USC memorandum. *Id.* The statistics Stevens relied upon therefore do not reflect unique or "new" USC claims memoranda elevated to OPLA ILPD; it accounts for all reviews of USC claims memoranda that ILPD performed in that time period, whether it was a new USC claim memorandum or merely a revision to an already-existing memorandum. *Id.* Every one of the USC memoranda would be counted individually under OPLA ILPD's reported PLAnet statistics, whether they are duplicates or not. *Id.*

2.      Individuals who are the subjects of ICE's U.S. Citizenship Claims Memoranda ("USC Claims Memos") can be detained for months and sometimes years before ICE reaches the correct conclusion that they are United States Citizens. Stevens Decl. ¶4.

**Response:**      Disputed. Stevens does not identify or provide evidence of any subjects of citizenship memoranda who were detained for months or years before ICE correctly concluded that they were U.S. citizens, thereby preventing ICE from providing a more specific response to paragraph 2. Instead, she references nothing more than her "experience." Dkt. 57, Stevens Decl. ¶ 4. Furthermore, paragraph 2 is not material to this court's consideration of the parties' cross-motions for summary judgment.

3.      Professor Stevens has published research estimating the United States unlawfully deports hundreds, and potentially thousands, of United States Citizens each year. Stevens Decl. ¶ 5.

**Response:**      ICE does not dispute that Stevens has written publications on the United

States' detainment and/or deportation of individuals, including U.S. citizens. Stevens, however, does not identify the specific publications she is referring to in support of her statement in paragraph 5, thereby preventing ICE from providing a more specific response to paragraph 5. Without knowing the specific publications to which Stevens is referring, ICE takes no position on the quality or accuracy of Stevens's research and estimates. Furthermore, paragraph 3 is not material to this court's consideration of the parties' cross-motions for summary judgment

4.      No publicly available government record exists indicating the total numbers of U.S. Citizens unlawfully detained or deported by ICE. Stevens Decl. ¶ 6.

**Response:**      Do not dispute. Dent Decl. ¶ 23.

5.      Professor Stevens has engaged in extensive, groundbreaking research, documentation, and writing on ICE's unlawful detention and deportation of U.S. Citizens for nearly a decade. Stevens Decl. ¶ 7.

**Response:**      ICE does not dispute that Stevens has written publications on the United States' detainment and/or deportation of individuals, including U.S. citizens. ICE takes no position on the quality or accuracy of Stevens's research and publications. Furthermore, paragraph 5 is not material to this court's consideration of the parties' cross-motions for summary judgment.

6.      Based in part on the exposure by Professor Stevens of U.S. Citizens detained and deported first in articles in *The Nation* magazine and then on her blog, States Without Nations (https://stateswithoutnations.blogspot.com), that produced real-time reports of endemic and widespread pattern of ICE unlawfully detaining and deporting U.S. Citizens as "aliens", ICE formalized a reporting and review process for evaluating whether those in ICE custody had indicia of U.S. citizenship. Stevens. Decl. ¶ 9. Ex. A to Stevens Decl.

**Response:**      ICE does not dispute that it codified a procedure in November 2015 that

requires its officers, agents, and attorneys to carefully and expeditiously assess the potential U.S. citizenship of any individual encountered by ICE, whether that individual makes an affirmative claim of citizenship or ICE personnel become aware of certain indicia of citizenship, because the agency's mission and authority does not include detaining or removing U.S. citizens. Dent Decl. ¶¶ 6-8. Stevens does not identify or provide any evidence demonstrating that ICE's process was formulated in response to her publications (as she claims), thereby preventing ICE from providing a more specific response to paragraph 6.

7.      Over the course of her work documenting the illegal treatment of U.S. Citizens by immigration authorities, Professor Stevens has documented scores of previously unknown cases of U.S. Citizens being detained or deported by ICE. As a result, she is regularly contacted by immigration lawyers, civil litigators, and individuals who have been detained or deported by ICE and believe themselves to be U.S. Citizens to discuss ICE's USC Claims process. Stevens Decl. ¶ 9.

**Response:**     Disputed.  Stevens does not identify any of the "previously unknown cases of U.S. citizens being detained or deported by ICE" referenced in paragraph 7, thereby preventing ICE from providing a more specific response to that statement.  Stevens similarly does not identify any of the lawyers or individuals who she has been regularly contacted by to discuss the USC claims process, thereby preventing ICE from providing a more response to that statement as well. Furthermore, paragraph 7 is not material to this court's consideration of the parties' cross-motions for summary judgment.

8.      In 2010, Professor Stevens filed a FOIA request seeking information regarding ICE's USC Claims Process. ECF No. 30, Decl. of Professor Stevens., at ¶ 3.

**Response:**     Do not dispute.  Ex. B, Pineiro Decl. ¶ 62.

9.      "On March 4, 2017, ICE's FOIA office determined that the Office of Principal Legal Advisor ("OPLA") and ICE Enforcement and Removal Operations ("ERO") were the offices reasonably likely to have records responsive to the request and that no other ICE program offices were likely to have responsive records." ECF No. 20-1 Pavlik-Keenan Decl. ¶ 19.

       **Response:**      Do not dispute. Pineiro Decl. ¶ 19.

10.     On March 22, 2017, the ICE FOIA Office tasked OPLA to search for records responsive to Prof. Stevens' requests. ECF No. 20-1 Pavlik-Keenan Decl. ¶ 27.

       **Response:**      Do not dispute. Pineiro Decl. ¶ 21.

11.     An OPLA point-of-contact determined that the Field Legal Office ("FLO") and the Immigration Law and Practice Division ("ILPD") were the only offices within OPLA likely to have responsive records and tasked these offices with the searches. ECF No. 20- 1 Pavlik-Keenan Decl. ¶¶ 11, 27.

       **Response:**      Do not dispute. Pineiro Decl. ¶ 21.

12.     IPLD tasked all line attorneys and FLO tasked all 26 ICE Office of Chief Counsel ("OCC") locations with conducting searches for records responsive to Plaintiff's FOIA request. ECF No. 20-1 Pavlik-Keenan Decl. ¶ 28.

       **Response:**      Do not dispute. Pineiro Decl. ¶¶ 22-23; Dent Decl. ¶ 22.

13.     On March 22, 2017, the ICE FOIA Office tasked ERO's Information Disclosure Unit ("IDU") with responding to Plaintiff's request. ECF No. 20-1 Pavlik-Keenan Decl. ¶¶ 31- 32.

       **Response:**      Do not dispute. Pineiro Decl. ¶ 26.

14.     The IDU point of contact, in turn, determined that ERO's search should be conducted at the headquarters level and tasked the Unit Chief of Domestic Operations Division who monitors the USC Claims Inbox. ECF No. 20-1 Pavlik-Keenan Decl. ¶ 32.

**Response:**     Do not dispute.  Pineiro Decl. ¶ 26.

15.     The Unit Chief of Domestic Operations informed the ICE FOIA Office on May 7, 2017 that because OPLA shares monitoring of the USC Claims inbox, separate review and production by ERO would be "an unnecessarily duplicative effort." ECF No. 20-1 Pavlik- Keenan Decl. ¶¶ 34-45.

**Response:**     Do not dispute, other than the day was May 8, 2017, not May 7, 2017. Pineiro Decl. ¶¶ 24-29.

16.     ICE ERO operates a Law Enforcement Support Center ("LESC") that employs deportation officers who "help coordinate law enforcement actions, create actionable leads for field offices **and investigate U.S. citizenship claims,** serving as checks and balances for the agency." ICE News Release, ICE Law Enforcement Support Center key component of immigration action, (Jul. 18, 2017) *available at* https://www.ice.gov/news/releases/ice-law-enforcement-support-center-key-component-immigration-action).

**Response:**     Do not dispute.  Pineiro Decl. ¶ 30.

17.     Based in Williston, Vermont, the LESC serves as a "central point of contact for a number of special information requests," including "investigation of ICE detainee claims to U.S. citizenship." Law Enforcement Support Center, ICE.Gov *available at* www.ice.gov/lesc (last updated January 3, 2018).

**Response:**     Do not dispute.  Pineiro Decl. ¶ 30.

18.     ICE and the LESC have created a hotline for detained individuals to call if they believe they are U.S. citizens. Law Enforcement Support Center Standard Operating Procedures (SOP) for Handling Telephonic Inquiries from Individuals Subject to a Detainer, (Jan. 12, 2012) *available at*

http://www.immigrantjustice.org/sites/immigrantjustice.org/files/Miller%20Deposition_E

   xhibit%2011.pdf (last visited August 13, 2019).

      **Response:**    Do not dispute. Pineiro Decl. ¶ 30.

      19.    The LESC's SOP dictate that if "a caller made a United States citizen claim . . . the caller's information must immediately be forwarded to the ERO field office victim/witness email inbox with the specific subject heading of 'Immediate review needed: USC claim.'" SOP at 7.

      **Response:**    Do not dispute. Pineiro Decl. ¶ 30.

      20.    The LESC's victim/witness email inbox list provides separate email addresses for 24 separate ICE field offices. SOP at 8.

      **Response:**    Do not dispute. Pineiro Decl. ¶ 30.

      21.    In May 2017, ICE received 6,042 pages of responsive documents from the agency. ECF No. 40, Order, at 2 (Feb. 20, 2019). After conferral, ICE subsequently released an additional waiver of attachments that were not previously produced between January 23, 2018 and April 23, 2018. *Id.* In total, ICE released 5,121 pages of records to Professor Stevens. An additional 922 of pages have been withheld in full, including 158 pages identified as "duplicates" and 17 pages ICE referred to other agencies. *Id.*

      **Response:**    Do not dispute. Pineiro Decl. ¶¶ 11-13, 23, 35.

      22.    The responsive records consist primarily of draft and finalized U.S. Citizenship Claims Memoranda ("USC Claims Memos"), email correspondence between OPLA attorneys and other unknown recipients, and attachments to email correspondence. ECF No. 20-1, Pavlik-Keenan Decl., ¶ 40.

      **Response:**    Disputed. The records produced to Stevens included email correspondence between ICE OPLA attorneys and/or ICE officers and agents (such as ERO officers), and any

accompanying attachments.  Pineiro Decl. ¶ 35.  The email attachments included USC claims

memoranda drafted by OPLA attorneys and supporting materials for the USC claim (such as birth

certificates, ancestry data from online databases, relevant legal codes, case management print-outs,

etc).  *Id.*  All responsive records pertain to correspondence and attachments regarding USC claims

relating to persons in ICE custody during the timeframe specified in the FOIA request.  *Id.*

23.     Professor Stevens endeavored to identify duplicate versions of USC Claims Memos

based on details such as dates, locations, and document appearance. Stevens Decl. ¶ 10.

**Response:**  Do not dispute.

24.     Within this dataset, 31 dated USC Claims Memos when de-duplicated, appear to

represent the cases of 14 separate, unique individuals. Stevens Decl. ¶11.

**Response:**     Disputed.   Stevens's calculations regarding the number of unique USC

claims memoranda are incorrect.  Pineiro Decl. ¶ 63; Dent Decl. ¶ 21.

25.     After de-duplication, Professor Stevens identified 14 dated and 26 undated memos,

encompassing a total of 40 unique cases for which ICE released a total of 148 USC Claims Memos.

Stevens Decl. ¶ 12.

**Response:**     Disputed.   Stevens's calculations regarding the number of unique USC

claims memoranda are incorrect.  Pineiro Decl. ¶ 63; Dent Decl. ¶ 21.  The 148 USC claims

memoranda Stevens references in paragraph 25 relate to 94 unique cases, not 40 as she claims.  *Id.*

26.     Because the remaining 200 USC Claims Memos in the 348-Memo dataset do not

appear to be duplicates, Professor Stevens believes ICE's release involves the cases of 240 separate

individuals whose U.S. Citizenship Claims OPLA analyzed from the period specified in her

request, which begins on January 1, 2017 or January 17, 2017, depending on how ICE construed

her request. Stevens Decl. ¶ 13.

**Response:**     Disputed.   Stevens's calculations regarding the number of unique USC claims memoranda are incorrect.  Pineiro Decl. ¶ 63; Dent Decl. ¶ 21.  ICE produced at least 294 unique citizenship memoranda in response to Stevens's FOIA request, not the 240 she claims (there were 200 additional citizenship memoranda that ICE produced in response to the FOIA request that Stevens acknowledges relate to unique cases; 200 + 94 = 294).  *Id.*; Stevens Decl. ¶ 13.

28.     It is unclear at this point how many of the released Memos are drafts and how many are finalized and approved versions. Stevens Decl. ¶14.

**Response:**     ICE does not dispute that Stevens may be unclear as to how many of the citizenship memoranda are drafts and how many are finalized (though still subject to possible update) due to the information ICE properly withheld under FOIA exemptions 5, 6, and 7(C). Dent Decl. ¶ 21.

28.     After the Court issued its February 2019 Order in this case, Professor Stevens obtained records from ILPD through a separate FOIA request and litigation that she believes reflect a significant volume of responsive records are that are missing from ICE's production. Stevens Decl. ¶ 15.

**Response:**     Disputed.  The OPLA ILPD statistics about USC memoranda upon which Stevens relies are aggregate data drawn from PLAnet, which does not draw a distinction between a new USC claim memorandum and a revision to an existing USC memorandum.  Dent Decl. ¶ 20.  The statistics relied upon therefore do not reflect unique or "new" USC claims memoranda elevated to OPLA ILPD; it accounts for all reviews of USC claims memoranda that ILPD performed in that time period, whether it was a new USC claim memorandum or merely a revision to an already-existing memorandum.  *Id.*  Every one of the USC memoranda would be counted

individually under OPLA ILPD's reported PLAnet statistics, whether they are duplicates or not. *Id.* ¶ 21.

29.     Specifically, ICE provided professor Stevens documents reflecting ILPD's analysis of the time it takes government lawyers to review USC Claims Memos. Stevens Decl. ¶16.

**Response:**     Disputed.  See response to paragraph 28.

30.     These records indicate that according to ILPD's analysis, between January 1, 2017 and March 31, 2017, ILPD reviewed a total of 243 individual cases of potential US Citizens. Ex. E to Stevens Decl.

**Response:**  Disputed.  There is nothing in the records that states that 243 individual or unique cases were reviewed between January 2017 and March 2017, and Stevens points to no language stating otherwise.  See response to paragraph 28.

31.     Elsewhere in the ILPD FOIA documents, government officials report reviewing the claims of 675 individuals between October 1, 2016 and June 30, 2017 – a total of 273 per day. Ex. E to Stevens Decl.

**Response:**  Disputed.  There is nothing in the records that states that 675 individual or unique cases were reviewed between October 2016 and June 2017, and Stevens points to no language stating otherwise.  See response to paragraph 28.

32.     Based on the data in the ILPD production and the average number of daily claims ILPD reviewed during the 80-day period from January 1, 2017 – March 30, 2017, Professor Stevens extrapolates that a total of roughly 388.8 individual cases would be expected during the 128-day period from January 17, 2017 through May 24, 2017 encapsulated in her request. Stevens Decl. ¶ 17.

**Response:** Disputed. The ILPD data Stevens relies on was not limited to *unique* citizenship-claim cases, as she believes, and nothing in the ILPD document she cites and attaches to her motion states otherwise. Dent Decl. ¶ 20. To the contrary, that data did not draw a distinction between a new or unique citizenship claim and a revision or update to an existing citizenship claim; instead, it included *all* citizenship memoranda reviewed by the agency during a specified time period. *Id.* Thus, every one of the 348 citizenship memoranda Stevens admits ICE produced in response to her FOIA request (Stevens Summ. J. Mem. at 8) would have been counted by the agency when aggregating citizenship memoranda data, not just the 294 unique citizenship memoranda ICE produced to Stevens. Dent Decl. ¶¶ 20-21.

### ICE's Statement of Additional Material Facts

33.     This is an action brought under the Freedom of Information Act ("FOIA"), and the court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552 and 28 U.S.C. § 1331. Dkt. 8, Answer ¶¶ 1, 3.

34.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) because plaintiff Jacqueline Stevens resides within this district. *Id.* ¶ 3.

35.     Plaintiff Jacqueline Stevens is a Professor of Political Science and the Director of the Deportation Research Clinic at Northwestern University in Cook County, Illinois. *Id.* ¶ 4.

36.     ICE is a component of the U.S. Department of Homeland Security and an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1). *Id.* ¶ 5.

37.     The U.S. Department of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. Pineiro Decl. ¶ 45.

38.     ICE is the principal investigative arm of DHS and is tasked with preventing any

11

activities that threaten national security and public safety by, among other things, investigating individuals who may be present in the United States illegally. *Id.* ¶¶ 18, 45-46.

39.     Regardless of the citizenship-claim trigger (affirmative claim or indicia), ICE documents these citizenship claims via alert emails to shared inboxes maintained by two ICE program offices: the Office of the Principal Legal Advisor ("OPLA") and Enforcement Removal Operations ("ERO"). Dent Decl. ¶ 8.

40.     A citizenship claim also prompts the creation of a memorandum containing a factual examination and legal analysis of the claim. *Id.*

41.     Each memorandum is prepared by an OPLA attorney working in conjunction with ICE officers and agents, and its purpose is to prevent ICE personnel from inadvertently detaining a U.S. citizen and/or initiating or continuing removal proceedings against a citizen. *Id.*

42.     As a result, included in each memorandum is a legal analysis of the citizenship claim based on facts available to the agency at that time, as well as a recommended course of action regarding removal proceedings, in particular whether the agency should initiate, continue, or move to terminate the actual or contemplated removal proceedings based on the facts available to the agency at the time. *Id.*

43.     Because the memorandum is almost entirely attorney work product and contains legal analysis and an attorney recommendation regarding a citizenship claim, it is marked draft, pre-decisional and deliberative, privileged attorney-client communication, attorney work product, and as containing sensitive personally identifiable information. *Id.* ¶ 9.

44.     The OPLA attorney then submits the memorandum for review to ERO and the Immigration Law and Practice Division ("ILPD") of OPLA, who decide either to concur with the attorney's conclusion and recommendation in the memorandum or to decline to concur and request

alternate courses of action. *Id.* ¶ 10. In the event ERO or IPLD require more information or further analysis, the OPLA attorney and an ILPD attorney work together to address those concerns. *Id.*

45.     Once ERO and ILPD reach a decision, the memorandum is finalized and sent by email to the shared inboxes maintained by ERO and OPLA. *Id.* ¶ 11. As a best practice, the memorandum should also be saved to OPLA's case-management system (PLAnet) along with a notation of the resulting decision and marked as attorney work product, attorney-client communication, pre-decisional, and as containing sensitive PII. *Id.* ICE officers and agents similarly are expected to make a notation of the decision and attorney recommendation in the appropriate case management system and/or databases and to update that notation or recommendation if anything changes. *Id.*

46.     Because the agency's policy requires that each memorandum be submitted within one business day from the time ICE first becomes aware of a citizenship claim, the memorandum is never considered final even after being sent to the shared email inboxes and saved to the appropriate case management system and/or databases and is subject to updates. *Id.* As a result, each memorandum may be revised and re-elevated if new information is developed, either through subsequent ICE investigation or based on information or documents received from the individual claiming citizenship. *Id*.

47.     Each citizenship-claim memorandum is created in anticipation of foreseeable immigration and/or federal court proceedings. *Id.* ¶ 12. Specifically, each memorandum is prepared by an OPLA attorney and reviewed by attorneys at ICE headquarters in order to advise their clients (ERO personnel) about the best course of action based on the information available to the agency at the time, both with respect to that particular respondent's immigration proceedings and with an eye to minimizing potential future litigation by the respondent against the agency. *Id.*

48.     Citizenship-claim memoranda thus are prepared for the following three categories of individuals encountered by ICE: (1) individuals currently in removal proceedings (either before ICE or the Department of Justice Executive Office for Immigration Review); (2) individuals arrested and taken into ICE custody pursuant to the agency's civil immigration authorities; and (3) individuals subject to ICE immigration detainers following their release from criminal custody of another law enforcement agency.  *Id.* ¶ 13.

49.     In all three situations, the individuals for which memoranda are created will currently be, or are reasonably anticipated to be, respondents in removal proceedings in immigration court at the time the memoranda are prepared.  *Id.* ¶ 14.

50.     Beyond immigration court proceedings, the OPLA attorneys also prepare the memoranda to help minimize future federal court litigation against the agency, including claims alleging the unlawful detention of a U.S. citizen.  *Id.* ¶ 15.

51.     Citizenship-claim memoranda are solely created for OPLA and ERO personnel and for internal agency use.  *Id.* ¶¶ 16-17.  As a result, the memoranda are not filed in immigration court, nor shared with any other agency or federal, state, or local court.  *Id.*

52.     While the analysis reflected in a memorandum may sometimes be discussed with other U.S. government attorneys during the course of federal immigration litigation related to a particular respondent, the memorandum itself is generally not provided to the those attorneys.  *Id.* The memoranda also are not accessible to officials outside of the agency after they have been saved to OPLA's case-management system.  *Id.*

53.     Stevens submitted a FOIA request to ICE in February 2017 seeking "all correspondence on the detention or removal proceedings for people claiming or providing U.S. citizenship since January 1, 2017.  This request includes, but is not limited to email received by or

sent to an email address established by ICE for the purpose of assessing claims of US citizenship."
Pineiro Decl. ¶ 7. The request further stated that Stevens was "requesting all correspondence as
well as all attachments and referenced reports, notes, text messages, or any other information
maintained in any medium associated with the reported cases." *Id.* The time frame of the request
was January 1, 2017, to the present. *Id.*

54.     Stevens subsequently filed this lawsuit in April 2017. *Id.* ¶ 9.

55.     In response to Stevens's FOIA request, OPLA collected correspondence and any
accompanying attachments from the attorneys who drafted citizenship-claim memoranda from
January 1, 2017, to about mid-May 2017, as requested in Stevens's FOIA request, as well as
correspondence and accompanying attachments to and from attorneys that was sent to the OPLA
shared-email inbox for U.S. citizenship claims. *Id.* ¶¶ 20-23. OPLA then provided these
documents to the ICE FOIA office in May 2017. *Id.*

56.     The ICE FOIA office reviewed the responsive documents provided by OPLA and
determined that the documents contained sensitive and/or privileged information as well as
personally identifiable information. *Id.* ¶ 31.

57.     As a result, the ICE FOIA office conducted a line-by-line review of each responsive
document, applied redactions to the documents in accordance with FOIA exemptions 5, 6, 7(C),
and 7(E), and released the documents to Stevens over multiple productions between July 2017 and
April 2018. *Id.* ¶¶ 11-13, 35-61.

58.     ICE also confirmed that all information not exempted from disclosure by FOIA
exemptions 5, 6, 7(C), and 7(E) was correctly segregated and released to Stevens. *Id.* ¶¶ 59-61.
ICE did not withhold any non-exempt information on the grounds it was non-segregable. *Id.*

59.     ICE in total collected 6,042 pages of records that were responsive to Stevens's

15

FOIA request. *Id.* ¶ 35. Of the 6,042 pages, ICE released 4,841 pages subject to partial FOIA withholdings, withheld 746 pages in full, released 280 pages in full, withheld 158 pages as duplicates, and referred 17 pages to other agencies for processing and release. *Id.*

60.     The records ICE produced to Stevens included email correspondence between ICE OPLA attorneys and/or ICE officers and agents (such as ERO officers), and any accompanying attachments. *Id.* The email attachments included citizenship-claim memoranda drafted by OPLA attorneys and supporting materials for the claim, such as birth certificates, ancestry data from online databases, relevant legal codes, and case management print-outs. *Id.* All responsive records pertained to correspondence and attachments regarding citizenship claims relating to persons in ICE custody during the timeframe specified in the FOIA request. *Id.*

61.     For purposes of its cross motion for summary judgment, ICE has prepared a *Vaughn* index describing each redaction and applicable exemption in the first 150 pages of two productions ICE made to Stevens, as agreed to by the parties, as well as the 115 pages of records Stevens previously identified as "finalized" citizenship memoranda that did not fall within the two sampled productions. *Id.* ¶¶ 32-35. The redactions and applicable exemptions described in the *Vaughn* index ICE has prepared are representative of those in the remaining documents ICE produced to Stevens in response to her FOIA request. *Id.*

62.     The Law Enforcement Support Center ("LESC") was not tasked with responding to Stevens's FOIA request because it was unlikely to have unique, responsive documents. *Id.* ¶ 30. The LESC runs a hotline that the public can call with concerns. *Id.* If the LESC receives an inquiry regarding a USC claim, the LESC emails the inquiry to the appropriate ERO filed office, which sends it to the ERO and OPLA USC claims inboxes. *Id.* Thus, any LESC information is captured by ILPD. *Id.*

63.     ICE plays *no* part in conferring U.S. citizenship; that final decision is handled exclusively by the U.S. Citizenship and Immigration Services or U.S. Department of State.  Dent Decl. ¶ 18.

64.     Stevens's claim that the agency's withholding of email domain names (*e.g.*, @ice.dhs.gov) may be evidence that ICE shares citizenship memoranda with individuals outside the agency is incorrect.  Pineiro Decl. ¶ 64.  A review of every email produced to Stevens in response to her FOIA request confirmed that citizenship memoranda were never shared or produced to anyone outside the agency.  *Id.*

65.     In fact, the review revealed that only seven email chains existed with people outside the agency.  *Id.*  In six of those chains, the emails from people outside the agency included a signature block that identified their organizations, which were the U.S. Department of Justice, a public defender, a legal aid society, and two media outlets.  *Id.*  The seventh chain was a short exchange between an agency attorney and a Justice Department attorney about a civil citizenship-claim case, but that exchange did not include the sharing of a citizenship memorandum.  *Id.*

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Prashant Kolluri
    PRASHANT KOLLURI
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-9085
    prashant.kolluri@usdoj.gov

17