# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17 C 2853 |
| | ) |
| U.S. DEPARTMENT OF HOMELAND | ) Chief Judge Pallmeyer |
| SECURITY, IMMIGRATION AND | ) |
| CUSTOMS ENFORCEMENT, | ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF RHONDA DENT**

I. **INTRODUCTION**

I, Rhonda Dent, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a Deputy Chief of the Immigration Law & Practice Division (ILPD) within the Office of the Principal Legal Advisor at United States Immigration and Customs Enforcement (ICE), within the Department of Homeland Security (DHS). I have been a Deputy Chief since September 11, 2011. Prior to this position, I was an Associate Legal Advisor with ILPD. The OPLA ILPD office mailing address is 1201 Maryland Avenue, S.W., STOP 5111, Washington, D.C. 20536-5111.

2. OPLA ILPD reviews ICE-initiated appeals filed with the Board of Immigration Appeals (Board), represents DHS before the Board in oral arguments and in supplemental briefing, and coordinates closely with other DHS Office of the General Counsel sub-components and the Department of Justice in deciding whether to pursue further review of adverse federal court immigration decisions. OPLA ILPD provides guidance on a wide range of immigration law issues,

including criminal grounds of removability and eligibility for relief from removal. OPLA ILPD's attorneys also serve as legal experts on immigration fraud prevention and protection-law matters, including refugees, asylum, withholding of removal, protection under the Convention Against Torture and Temporary Protected Status.

3. As a Deputy Chief of OPLA ILPD, my official duties and responsibilities include overseeing the work of ILPD attorneys such as reviewing appeal briefs, drafting legal guidance and drafting briefs for the Board and the Attorney General. In that respect, I am familiar with how OPLA ILPD responded to the February 13, 2017 Freedom of Information Act (FOIA) request that plaintiff Jacqueline Stevens submitted to the ICE FOIA office that is the subject of this litigation.

4. I make this declaration in my official capacity in support of ICE's cross-motion for summary judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of its business activities, and information provided to me by other ICE employees in the course of my official duties. The documents attached hereto are kept by ICE in the ordinary course of its business activities.

5. This declaration describes the process by which OPLA ILPD searched for records in response to Plaintiff's FOIA request and responds to certain statements made by Plaintiff.

## II. ICE'S U.S. CITIZENSHIP CLAIMS PROCEDURES

6. The ICE procedure for addressing United States citizenship ("USC") claims is set out in ICE Policy Directive 16001.2 "Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE," issued November 10, 2015. The Directive is summarized in the following paragraphs; however, a version of this Directive is available to the public (subject to limited

redactions) via the ICE FOIA library, and that version has been attached to this declaration. Ex. 1.

7. "It is ICE policy to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE." Ex. 1 at 1. Sections 5.1(2) and (4) of the ICE Policy Directive 16001.2 state that, if "the evidence in the case strongly suggests that the individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face [or] [s]ome probative evidence indicates that the individual may be a U.S. citizen but the evidence is inconclusive," ICE will not pursue or continue detention of the individual, but may on a case-by-case basis in consultation with counsel proceed with removal proceedings against the individual "to more conclusively resolve his or her immigration and citizenship status if reasons remain to believe that he or she is an alien present in the United States in violation of law."

8. Section 2 of ICE Policy Directive 16001.2 states that ICE officers, agents, and attorneys have a responsibility to assess the potential USC of any individual encountered by ICE, whether that individual makes an affirmative claim to USC or ICE personnel become aware of certain indicia of USC. Regardless of the USC claim trigger (affirmative claim or USC indicia), USC claims are documented via alert emails with memoranda containing a factual examination and legal analysis of the claim, sent to shared email inboxes maintained by ERO and OPLA. Each memorandum is created by an OPLA attorney based in the field working in conjunction with ICE officers and agents,[1] and uses a standardized template approved by ICE Headquarters. The memorandum assesses the USC claim and recommends a course of action. Ex. 1 at 5. Its purpose

---

[1] As noted in Directive 16001.2, ERO or the other major ICE component, Homeland Security Investigations ("HSI"), can also be involved in USC claims. However, due to the non-immigration nature of HSI's work, it is extremely rare for USC claims to arise from and involve HSI. For the purposes of this declaration, only ERO will be referenced in this process, as they were the only other ICE component involved in these claims.

3

is to prevent ICE personnel from inadvertently detaining a person who is a U.S. citizen and/or initiating or continuing removal proceedings against a person who is a U.S. citizen. As a result, included in each memorandum is a legal analysis of the USC claim based on facts available to the agency at the time of drafting, as well as a recommendation on a course of action regarding removal proceedings, in particular whether the agency should initiate, continue, or move to terminate the actual or contemplated removal proceedings based on the facts available to the agency at the time.

9. Since the memorandum is almost entirely attorney work product and contains recommendations for courses of action between attorneys and clients, it is marked draft, pre-decisional and deliberative, privileged attorney-client communication, attorney work product, and as containing sensitive personally identifiable information ("PII").

10. The memorandum is submitted by the local OPLA field office to ICE Headquarters ERO and OPLA ILPD[2] for review, which either concur with the conclusion(s) and recommendation(s) in the memorandum or decline to concur and request alternate courses of action. If more information or further analysis is required, the local field attorney and an attorney from OPLA ILPD will work together to address all concerns.

11. Once ERO Headquarters and OPLA ILPD have reached a decision, a copy of the memorandum is finalized. The final copy is sent via email to the shared email inboxes maintained by ERO and OPLA. As a best practice, this version of the memorandum should be saved to OPLA's case management database (PLAnet) along with the email signaling OPLA ILPD and ERO Headquarters concurrence (or lack thereof) with the field's recommendation, marked in that

---

[2] Pursuant to a realignment of duties at OPLA Headquarters on September 2, 2019, the OPLA Enforcement and Removal Operations Law Division took over primary responsibility for the USC claims review process, with assistance from ILPD. For all periods relevant to this litigation, ILPD was responsible for OPLA Headquarters review of USC claims.

database as pre-decisional, attorney work product, privileged attorney-client communication, and containing sensitive PII. Because ICE Policy requires that each USC claim memorandum be submitted within one business day from the time ICE first becomes aware of a claim to citizenship for detained individuals, *id.* at section 5.1(2)(a), and such memoranda are always subject to updates as new facts are gathered or the law evolves, they are never considered final even after being sent to the shared email inboxes and saved to PLAnet. Specifically, each memorandum will be revised and re-elevated for review if new information is developed, either through subsequent ICE investigation or based on information or documents received from the individual claiming to be a U.S. citizen or from that individual's attorney. *Id.* at section 5.1(2)(e). As a best practice, ICE officers and agents are expected to make a notation in the appropriate case management system and/or database of the findings on USC and recommendation and to update the notation(s) if findings or recommendations change.

### III. ROLE OF USC MEMORANDA IN LITIGATION

12. USC memoranda are created in anticipation of foreseeable immigration and/or federal court proceedings. Specifically, each memorandum is prepared by an OPLA field attorney and reviewed by attorneys at OPLA Headquarters in order to advise their clients (ERO personnel) about the best course of action based on the information available to the agency at the time, both with respect to that particular respondent's immigration proceedings and with an eye to minimizing potential future litigation by the respondent against the agency.

13. Section 3.2 of ICE Policy Directive 16001.2 lays out the three categories of individuals encountered by ICE for which USC memoranda apply: (1) individuals currently in removal proceedings (either before ICE or the Department of Justice Executive Office for Immigration Review); (2) individuals arrested and taken into ICE custody pursuant to the agency's

civil immigration authorities; and (3) individuals subject to ICE immigration detainers.

14. In all three situations, the individuals for which USC memoranda are created will currently be, or are reasonably anticipated to be, respondents in removal proceedings at the time the memoranda are prepared. Therefore, every USC memorandum is prepared specifically in anticipation of formal, adversarial immigration proceedings conducted under 8 U.S.C. § 1229a.

15. Beyond such immigration court proceedings, there are also federal litigation issues that ICE reasonably tries to anticipate in its USC memoranda, including claims alleging the unlawful detention of a U.S. citizen.

## IV. ICE MEMORANDA ARE FOR INTERNAL AGENCY USE ONLY

16. USC memoranda are strictly for internal use and solely created for OPLA and ERO personnel. As these USC memoranda are documents only used internally, they are not filed in immigration court, nor shared with any other agency or federal, state, or local court. The analysis reflected in the memorandum may be discussed with U.S. Citizenship and Immigration Services ("USCIS") or Department of Justice attorneys in federal immigration litigation related to that particular individual during deliberations regarding litigation strategy.[3] However, the document itself is not generally released.

17. Therefore, contrary to the claims in Plaintiff's summary judgment motion, ICE *does not* "frequently" release USC claims memoranda in the context of litigation. Dkt. 55 at 16. In fact, PLAnet, the database where USC claims memoranda and resulting decisions are placed (*see supra* paragraph 11), is limited to internal agency use and restricts external access to the

---

[3] Sharing between different DHS components constitutes internal agency use, as the legal authorities delegated to these components originate from the creation of the position of the DHS General Counsel. *See* 6 U.S.C. § 113(a)(1)(j). Pursuant to a delegation from the Secretary of Homeland Security, all DHS attorneys are subject to the supervision and oversight of the General Counsel.

memoranda once they are uploaded to the database, contrary to Plaintiff's assertion otherwise. Dkt. 55 at 16.

18. Additionally, ICE does not have the authority to grant U.S. citizenship. U.S. citizenship can only be formally recognized by USCIS (e.g., through issuance of a Certificate of Citizenship) or the U.S. Department of State (e.g., through issuance of a U.S. passport). The USC memoranda play no role in those citizenship decisions; they simply are internal documents that reflect an agency attorney's analysis of the best course of action with respect to a particular respondent's USC claim at a particular point in time, as is the concurrence (or lack thereof) of OPLA ILPD and ERO Headquarters with that analysis and recommended course of action in each memorandum.

19. The USC claims memoranda produced to Plaintiff in response to her FOIA request originate from OPLA email accounts within a set period of time and reflect only the memoranda received based on information known and analysis conducted for those USC claims for that specific time period. As noted above, additional information ICE received subsequent to the time period in Plaintiff's FOIA request may have resulted in changes to the factual findings, legal analysis and recommended courses of action in one or more memoranda that were produced in response to a specific FOIA request.

## V.  RESPONSE TO FACTUAL ASSERTIONS MADE IN PLAINTIFF'S SUMMARY JUDGMENT MOTION

20. The conclusions reached by Plaintiff regarding daily averages and missing or duplicative memos are incorrect. First, no "daily average" exists, nor can one be created. The number of USC claims received and for which memoranda are prepared varies significantly on a daily, weekly, and even monthly basis. OPLA ILPD does not track USC memos processed by day or by week; all statistics are reported on a monthly, quarterly, or annual basis. The rate of USC

7

claims is not, as Plaintiff suggests, consistent throughout the year such that an average of the number of claims and memoranda prepared over a given time period would correspond to a different time period. Furthermore, the OPLA ILPD statistics about USC memoranda upon which Plaintiff relies are aggregate data drawn from PLAnet, which does not draw a distinction between a new USC claim memorandum and a revision to an existing USC memorandum. The statistics relied upon therefore do not reflect unique or "new" USC claims memoranda elevated to OPLA ILPD; it accounts for all reviews of USC claims memoranda that ILPD performed in that time period, whether it was a new USC claim memorandum or merely a revision to an already-existing memorandum.

21. Secondly, the list of cases identified by Plaintiff as duplicates is not accurate. In Exhibit B to Plaintiff's declaration, she claims that 148 memoranda represent a mere 40 unique alien cases. Dkt. 57-2. However, those 148 memoranda represent 94 unique alien cases. The memoranda to which she refers were withheld almost entirely in full, and whatever purported analysis she performed to de-duplicate was clearly flawed. Moreover, every one of those 148 memoranda would be counted individually under OPLA ILPD's reported PLAnet statistics, whether they are duplicates or not.

22. When assigned this FOIA request in 2017, OPLA ILPD tasked eight associate legal advisors, a deputy division chief, and a division chief to search for responsive records, in addition to pulling the contents of the OPLA USC Claims email inbox. PLAnet cannot be reliably searched for USC claims memoranda, as the memoranda lack a common naming convention, and PLAnet lacks the capability to search for anything but file names. OPLA ILPD provided to the ICE FOIA office all USC memoranda that turned up in a reasonable search for the time period of January 1, 2017, until the date of the search by an OPLA ILPD attorney.

23. OPLA ILPD does not track the number of U.S. citizens detained or removed by ICE.

## VI. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 16th day of October, 2019.

Rhonda Dent, Deputy Chief
Immigration Law & Practice Division
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

# Exhibit 1

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**16001.2:** **Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

**Issue Date:** November 10, 2015
**Effective Date:** November 10, 2015
**Superseded:** ICE Policy No. 16001.1: Superseding Guidance on Reporting and Investigating Claims to United States Citizenship (Nov. 19, 2009).
**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** This Directive establishes ICE policy and procedures for ensuring that the potential U.S. citizenship of individuals encountered by U.S. Immigration and Customs Enforcement (ICE) officers, agents, and attorneys is immediately and carefully investigated and analyzed. The Immigration and Nationality Act of 1952, as amended (INA), sets forth the parameters for U.S. citizenship by virtue of birth in the United States. Additionally, the INA and various related statutes codify numerous avenues by which an individual may derive, acquire, or otherwise obtain U.S. citizenship other than through birth in the United States. As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S. citizen. While performing their civil immigration enforcement duties, ICE officers, agents, and attorneys may encounter individuals who are not certain of their citizenship status, who claim to be U.S. citizens, and/or for whom there are indicia warranting further examination to determine whether they may be U.S. citizens.

2. **Policy.** It is ICE policy to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE. ICE officers, agents, and attorneys should handle these matters with the utmost care and highest priority, recognizing that, while some cases may be easily resolved, many may require additional investigation and substantial legal analysis, particularly in light of the complexity of U.S. citizenship and nationality law.

   ICE personnel must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship, as well as when certain indicia of potential U.S. citizenship, as identified in this Directive, are present in a case even if the individual does not affirmatively make a claim to U.S. citizenship. In all situations where an individual's potential U.S. citizenship requires further investigation, Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI) personnel must consult with the Office of the Principal Legal Advisor's (OPLA) local Office of the Chief Counsel (OCC), as prescribed in this Directive.

2

3. **Definitions.** The following definitions apply for purposes of this Directive only.

3.1. **Indicia of Potential U.S. Citizenship.** Circumstances that tend to indicate that an individual may be a U.S. citizen. Indicia are not conclusive evidence that the individual is a U.S. citizen but factors that trigger the need for further investigation. With respect to individuals encountered by ICE, the existence of any of the following factors should lead to further investigation of the individual's U.S. citizenship:

1) ███████████████████████
2) ███████████████████████
3) ███████████████████████
4) ███████████████████████
5) ███████████████████████
6) ███████████████████████
7) ███████████████████████
8) ███████████████████████
9) ███████████████████████
10) ███████████████████████

3

3.2  **Individual Encountered by ICE.** An individual who is:

1) Arrested and taken into ICE custody pursuant to the agency's civil immigration authorities, including those released from such custody pending a decision on removal or execution of a removal order;

2) Subject to, or may become subject to, a request made by ICE that another law enforcement agency continue to hold the individual for up to 48 hours following the completion of his or her criminal custody, i.e., an "immigration detainer;"[1] and/or

3) In proceedings before the Executive Office for Immigration Review (EOIR) or administrative removal proceedings before ICE, including but not limited to pursuant to sections 217, 235, 238(b), or 241(a)(5) of the INA.

3.2.  **Probative Evidence of U.S. Citizenship.** A unique policy standard adopted by ICE meaning that the evidence before the agency tends to show that the individual may, in fact, be a U.S. citizen. U.S. citizenship need not be shown by a preponderance of the evidence for the agency to find that there is some probative evidence of U.S. citizenship.

4.  **Responsibilities.**

4.1.  **ERO Officers, HSI Agents, and OCC Attorneys** have responsibilities under Section 5.1 of this Directive.

4.2.  **ERO Field Office Directors (FODs), HSI Special Agents in Charge (SACs), and OPLA Chief Counsels** are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) prescribed in this Directive.

4.3.  FODs are responsible for ensuring that all state and local officers with delegated immigration authority pursuant to INA § 287(g) within their area of responsibility have the training and oversight necessary to understand and adhere to this Directive, and thoroughly investigate all U.S. citizenship claims made by individuals encountered by 287(g)-designated officers.

4.4.  **Headquarters (HQ) OPLA, ERO, and HSI** have responsibilities under section 5.1(3). (Headquarters Review).

4.5.  **The Executive Associate Directors for ERO and HSI, and the Principal Legal Advisor**, or their designees, are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) of this Directive.

---

[1] This includes individuals subject to the former Form I-247 (Immigration Detainer – Notice of Action), Form I-247D (Immigration Detainer – Request for Voluntary Action), Form I-247X (Request for Voluntary Transfer) when this form requests detention rather than simply notification, and/or any successor form serving the same or substantially similar process.

---

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

4

5.  **Procedures/Requirements.** An ICE officer, agent or attorney must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship or, even in the absence of such a claim, when indicia of potential U.S. citizenship are present in a case. The ICE Directorate that first encounters the individual is generally responsible for identifying indicia of potential U.S. citizenship.

5.1. **Procedures for Investigating and Assessing Potential U.S. Citizenship.**

   1) **Factual Examination.** The assessment of potential U.S. citizenship under this Directive must include a factual examination and a legal analysis and shall include a check of all available DHS data systems and any other reasonable means available to the officer. In general, the factual examination should be conducted by the ICE operational Directorate (ERO or HSI) that first encountered the individual. In cases where the OCC first encounters the individual, ERO should generally conduct the factual examination in coordination with the OCC.

   a) ███████████████████████████████████
   ███████████████████████████████████
   ███████████████████████████████████

   b) ███████████████████████████████████
   ███████████████████████████████████
   ███████████████████████████████████
   ███████████████████████████████████
   ███████████████████████████████████

   c) ███████████████████████████████████
   ███████████████████████████████████

   d) ███████████████████████████████████
   ███████████████████████████████████
   ███████████████████████████████████

   e) ███████████████████████████████████
   ███████████████████████████████████

Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

5

f) ███████████████████████████

g) ███████████████████████████

2) **Preparing and Submitting Memorandum.** After the factual examination is completed, ERO or HSI (whichever conducted the factual examination) and the relevant OCC must jointly prepare and submit a memorandum for HQ review, using as a guide the attached HQ-approved template, which assesses the claim and recommends a course of action.

   a) Absent extraordinary circumstances, this memorandum must be submitted no more than one business day from the time ERO, HSI, or OPLA first becomes aware of a claim or indicia of potential U.S. citizenship if the individual is subject to an immigration detainer or is detained in ICE custody. In all other cases, the memorandum must be submitted as promptly as practicable.

   b) For purposes of such memoranda, the legal analysis must indicate whether, in the OCC's view:

      1) The evidence in the case strongly suggests that the individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face;

      2) Some probative evidence indicates that the individual may be a U.S. citizen but the evidence is inconclusive; or

      3) No probative evidence indicates that the individual is a U.S. citizen.

   c) The memorandum must be clearly annotated as containing pre-decisional, privileged attorney-client communication, attorney work product, and sensitive personally identifiable information.

   d) Upon completion, the memorandum must be elevated via e-mail to the HQ OPLA Immigration Law and Practice Division at ███████████████████ and either the HQ ERO Assistant Director for Field Operations at ███████████████████ or to the HQ HSI Domestic Operations Manager assigned responsibility for the relevant SAC office, as appropriate.

   e) Any significant change in circumstances in a case elevated to HQ should be reported in the same manner as outlined in the preceding subparagraph, as well as

6

to any previously assigned HQ points of contact, as an update to the original memorandum.

3) **Headquarters (HQ) Review.**

   a) HQ OPLA and either HQ ERO or HQ HSI will respond to the field with a decision on the recommendation within one business day of receipt of the memorandum by detained claimants and individuals subject to an immigration detainer. In all other cases a decision will be made as promptly as practicable.

4) **Detainer/Custody Determination.**

   a) In those cases involving individuals who fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive (cases involving strong/facially credible or probative evidence of U.S. citizenship):

      1) ICE should not lodge an immigration detainer against or arrest the individual.

      2) If ICE has already lodged an immigration detainer against the individual, it should be immediately cancelled.

      3) If the individual is already in ICE custody, he or she should be immediately released.

      4) If the individual has been released from ICE custody on conditions, those conditions should be re-evaluated in consultation with OPLA.

   b) Where the field's initial recommendation to HQ is that an individual falls within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive, it is not necessary to await HQ concurrence before cancelling an immigration detainer, releasing the individual from custody, or terminating conditions of release.

   c) On a case-by-case basis and in consultation with OPLA, an individual determined by ICE to fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive may be placed in removal proceedings on EOIR's non-detained docket to more conclusively resolve his or her immigration and citizenship status if reasons remain to believe that he or she is an alien present in the United States in violation of law.

   d) Where no probative evidence of U.S. citizenship exists (section 5.1(2)(b)(3) of this Directive) and probable cause exists that the individual is a removable alien, it is permissible to lodge an immigration detainer in the case, arrest the individual, and/or process the individual for removal.

   e) In any case in which there is uncertainty about whether the evidence is probative of U.S. citizenship, ICE should not detain, arrest, or lodge an immigration

7

> detainer against the individual and should cancel any immigration detainer already lodged by ICE.
>
> f) Where ICE determines that it will not proceed further with an enforcement action due to the U.S. citizenship claim, the individual should be informed that he or she may attempt to obtain proof of U.S. citizenship by submitting a passport application to the Department of State (http://travel.state.gov/passport) or filing an Application for Certificate of Citizenship, Form N-600, with U.S. Citizenship and Immigration Services (www.uscis.gov/n-600).
>
> 5) **Case Management.**
>
>    a) ICE officers and agents will make a notation in the appropriate database(s) (e.g., ENFORCE Alien Booking Module and/or Alien Removal Module), and place a copy of the memorandum and resulting decision, properly marked as containing attorney work product, attorney-client communication, and sensitive personally identifiable information in the individual's A-file, if one already exists.
>
>    b) ICE attorneys will save the memorandum in the PLAnet case management system and document the resulting HQ decision and other information about the claim by completing the "USC Claims" section in PLAnet.

6. **Recordkeeping.** Records generated pursuant to this directive are maintained in the Alien File, Index, and National File Tracking System of Records, 76 Fed. Reg. 34233 (June 13, 2011), the General Counsel Electronic Management System (GEMS), 74 Fed. Reg. 41914 (August 19, 2009), the Immigration and Enforcement Operational Records (ENFORCE), 75 Fed. Reg. 23274 (May 3, 2010), and any other applicable system. The memorandum and resulting HQ decision will be also be saved in PLAnet.

7. **Authorities/References.**

7.1. Immigration and Nationality Act (INA) § 101(b) and (c).

7.2. INA §§ 301 - 303.

7.3. INA §§ 306 - 309.

7.4. INA § 316.

7.5. INA §§ 319 - 320.

7.6. INA § 322.

7.7. INA §§ 328 - 329.

8

7.8. Section 303 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub. L. No. 94-241, 90 Stat. 263, 266 (set out as a note to 48 U.S.C. § 1801).

8. **Attachments.**

8.1. Sample – USC Claims Memorandum Template.[2]

9. **No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create or diminish any rights, substantive or procedural, enforceable at law or equity by any party in any criminal, civil, or administrative matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of the Department of Homeland Security.

Sarah R. Saldaña
Director
U.S. Immigration and Customs Enforcement

---

[2] This template may be periodically updated by OPLA, as new legal and policy developments warrant. In such circumstances, OPLA will work with the Office of Policy to have the updated template posted to the ICE Policy Manual online environment.

---