# **Exhibit B**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,                    )
                                       )
                  Plaintiff,           )
                                       )
        v.                             )    No. 17 C 2853
                                       )
U.S. DEPARTMENT OF HOMELAND            )    Chief Judge Pallmeyer
SECURITY, IMMIGRATION AND              )
CUSTOMS ENFORCEMENT,                   )
                                       )
                  Defendant.           )

## DECLARATION OF FERNANDO PINEIRO

### I.      INTRODUCTION

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Acting Freedom of Information Act ("FOIA") Officer at the United States

Immigration and Customs Enforcement ("ICE") FOIA Office.  I have been Acting FOIA Officer

since April 2019; when not Acting, I am the Deputy FOIA Officer, a position that I have held since

December 2013.  Prior to this position, I was the FOIA Officer for three years at the Office for

Civil Rights and Civil Liberties ("CRCL") at the United States Department of Homeland Security

("DHS").  The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009,

Washington, D.C. 20536-5009.

2.      The ICE FOIA Office is responsible for processing and responding to all Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("PA"), 5 U.S.C. § 552a, requests

received at ICE.

3.      As the Acting and/or Deputy FOIA Officer, my official duties and responsibilities

include the general management, oversight, and supervision of the ICE FOIA Office. I manage and supervise a staff of ICE FOIA Paralegal Specialists who report to me regarding the processing of FOIA and PA requests received by ICE. In connection with my official duties and responsibilities, I am familiar with ICE procedures for responding to requests for information made pursuant to the FOIA and the PA. In that respect, I am familiar with ICE's processing of the February 13, 2017 FOIA request plaintiff Jacqueline Stevens submitted to the ICE FOIA office that is the subject of this litigation.

4.      I make this declaration in my official capacity in support of ICE's summary judgment response and cross-motion for summary judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of its business activities, and information provided to me by other ICE employees in the course of my official duties. The documents attached hereto are kept by ICE in the ordinary course of its business activities.

5.      This declaration describes the process upon which ICE received Stevens's February 2017 FOIA request, the process upon which ICE searched for and processed records located in response to Stevens's FOIA request, and the process upon which ICE disclosed records located in response to Stevens's FOIA request.

6.      Additionally, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration describes portions of records ICE withheld in response to Stevens's FOIA request and the bases for ICE's withholdings. Ex. 1.

## II.    STEVENS'S FOIA REQUEST

7.      In an email dated February 13, 2017, that ICE received that same day, Stevens submitted the following FOIA request:

I write under the Freedom of Information Act to request all correspondence on the detention or removal proceedings for people claiming or proving U.S. citizenship since January 1, 2017.

This request includes, but is not limited to email received by or sent to an email address established by ICE for the purpose of assessing claims of US citizenship.

Please note that on November 19, 2009, then Asst. Sec. of ICE, John Morton wrote in part: "If the individual's claim is credible on its face, or if the investigation results in probative evidence that the detained individual is a USC, the individual should be released from detention. *Any significant change in circumstances should be reported to the "USC Claims DRO" e-mailbox and the "OPLA Field Legal Ops" e-mail box."*
https://www.ice.gov/doclib/detention-reform/pdf/usc_guidance_nov_2009.pdf

I am requesting all correspondence as well as all attachments and referenced reports, notes, text messages, or any other information maintained in any medium associated with the reported cases. I would appreciate it if you contact the relevant personnel at CBP, ICE OGC, ERO, and OPLA for this request.

The time frame for this request is January 1, 2017 to the present.

I will be using this information for my research, teaching, and scholarly as well as popular publications and therefore am requesting a waiver of all fees. For documentation of the public impact of this research, please see http://buffett.northwestern.edu/program/deportationresearch/

Please note that my work on the detention and deportation of U.S. citizens has been published in the NY Times and reported on in the New Yorker magazine.

If you have any questions, please feel free to contact me here or at .
. . .

Ex. 2.

## III.    ICE'S RESPONSE TO THE REQUEST

8.      In an email to Stevens dated March 16, 2017, the ICE FOIA Office acknowledged

receipt of the FOIA request and stated that the ICE FOIA Office was working through a backlog

3

of new FOIA requests. The email did not assign an ICE FOIA case number to Stevens's FOIA request.

9.     On April 14, 2017, Stevens filed a complaint in the United States District Court for the Northern District of Illinois. Dkt. 1, Compl. Specifically, Stevens alleged that ICE constructively denied her FOIA request by not responding within the statutory deadline of 20 business days. *Id.* ¶ 18.

10.     On May 24, 2017, ICE filed an answer to the complaint. Dkt. 8.

11.     On July 20, 2017, the ICE FOIA Office began rolling productions of responsive documents to Stevens's attorney. The responsive documents consisted of correspondence and accompanying attachments to and from attorneys in ICE's Office of the Principal Legal Advisor ("OPLA"), Immigration Law and Practice Division ("ILPD") and Field Legal Operations ("FLO"). The ICE FOIA Office produced five productions of approximately 500 documents each for five months, resulting in a total of 2,347 responsive pages that were produced to Stevens.

12.     On November 2, 2017, Stevens's attorney requested the attachments referenced in the correspondence being produced by the ICE FOIA Office, which had inadvertently been excluded from the rolling productions.

13.     On January 23, 2018, the ICE FOIA Office began rolling productions of approximately 3,695 pages of documents, consisting of the attachments referenced in the correspondence. The final set of these documents was produced to Stevens on April 23, 2018.

## IV.     ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

14.     Each program office within ICE has a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of their

particular program office. When the ICE FOIA Office receives a FOIA request, its first step is to identify which program offices, based on their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request (if any) and to initiate searches within those program offices. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment and based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness.

15. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, or USB storage devices. The determination as to how to conduct searches in response to a

particular FOIA tasking is necessarily based on the manner in which each employee maintains his or her files.

16. Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system. Each ICE employee stores their files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook email files: some archive their files monthly, without separating by subject; others archive their email by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

17. Individual employees archive their own emails according to their individual work-related needs. Individual archives of emails are searched by the individual employees where those employees have identified individual archives containing potentially responsive documents.

## V. PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO STEVENS'S FOIA REQUEST

18. ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries.

19. On March 4, 2017, upon receipt and review of Stevens's FOIA request, the ICE FOIA Office determined that OPLA and Enforcement Removal Operations ("ERO") were the offices reasonably likely to have records responsive to the request and that no other ICE program offices were likely to have responsive records. The ICE FOIA Office instructed OPLA and ERO to conduct a comprehensive search for records and to provide all records located during that search

6

to the ICE FOIA Office for review and processing.

### A.    OPLA'S SEARCH FOR RESPONSIVE RECORDS

20.    OPLA provides a full range of legal counsel and services to all ICE offices and programs. OPLA's primary responsibilities include, among other things, representing the Department in all exclusion, deportation, and removal proceedings; arguing administrative appeals before the Board of Immigration Appeals; providing direction and support to U.S. Attorney's Offices nationwide; counseling ICE clients on removal order reinstatements, administrative removal orders, and expedited removals; reviewing legislative and regulatory proposals; and providing legal training and ethics guidance to all ICE personnel. OPLA is the largest legal program in the Department of Homeland Security, providing legal advice, training, and services in cases related to the ICE mission.

21.    On March 22, 2017, the ICE FOIA Office tasked OPLA to search for records responsive to Stevens's FOIA request. The ICE FOIA Office instructed OPLA to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing. Upon receipt of Stevens's FOIA request from the ICE FOIA Office, a POC within OPLA reviewed the request and, based on the POC's experience and knowledge of the office's practices and activities, the POC instructed FLO (which supervises all local OPLA Offices of the Chief Counsel), and ILPD to conduct searches for records responsive to Stevens's FOIA request, as they are the only OPLA divisions involved in United States citizenship ("USC") claims.

22.    ILPD tasked all their line attorneys with Stevens's FOIA request. FLO tasked all 26 Offices of the Chief Counsel, which are OPLA's field offices throughout the country, with the FOIA request.

23.     Both FLO and ILPD searched shared drives and e-mails to collect correspondence from attorneys who drafted USC-claims memoranda from January 1, 2017, until approximately mid-May 2017, as requested in Stevens's FOIA request. These emails and attachments came directly from ILPD and OCC attorneys, as well as from the OPLA USC Claims inbox. On May 22, 2017, OPLA responded to the FOIA tasking by providing the documents it collected to the ICE FOIA Office for review and processing.

**B.      ERO'S SEARCH FOR RESPONSIVE RECORDS**

24.     The mission of ERO is to identify, arrest, and remove aliens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of immigration laws and border control efforts. ERO upholds federal immigration laws at, within, and beyond our borders, through efficient enforcement and removal operations. ERO prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, and recent border entrants. Individuals seeking asylum also work with ERO. ERO transports removable aliens from point to point, manages aliens in custody or in an alternative to detention program, and removes individuals from the United States who have been ordered deported.

25.     When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit ("IDU"). POCs in IDU review the substance of the request. Based on subject matter expertise and knowledge of the program offices' activities within ERO, IDU forwards the FOIA request to specific individuals and component offices, and directs specific employees to conduct searches of their file systems (including both paper files and electronic files) which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any. The

8

employees exercise discretion, based on their operational knowledge and subject matter expertise, in choosing the specific search terms utilized to ascertain whether or not potentially responsive documentation exists. Once searches are completed, the individuals and component offices provide any potentially responsive records to the IDU POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness.

26.     On March 22, 2017, the ICE FOIA Office tasked ERO with responding to Stevens's FOIA request. A POC in ERO IDU received and reviewed the request. Based upon subject matter expertise and knowledge of the program offices' activities within ERO, IDU determined searches at the headquarters level for responsive documentation should be conducted. Accordingly, IDU tasked the Unit Chief of the Domestic Operations Division, who monitors the ERO USC Claims inbox.

27.     The ERO USC claims inbox is the email account that ERO uses for initial USC claims alerts, for review and concurrence on USC claims memoranda, and for documentation of USC claims memoranda. It is also the only place where ERO stores USC claims memo.

28.     The Unit Chief of the Domestic Operations Division reviewed the ERO USC Claims mailbox and determined that providing the contents of the ERO USC Claims inbox would be an unnecessarily duplicative effort because OPLA would be providing the exact same emails and accompanying attachments from its USC Claims inbox and ILPD/OCC attorneys to the ICE FOIA Office. ERO concluded that it would not have unique responsive emails and accompanying attachments in its USC Claims inbox that were different from the responsive emails from OPLA's USC Claims inbox and/or ILPD attorneys.

29.     On May 8, 2017, ICE ERO informed the ICE FOIA Office that it deferred to OPLA

to provide all responsive correspondence regarding USC claims during the stated timeframe.

30.    Furthermore, ERO IDU did not task the Law Enforcement Support Center ("LESC") with responding to Stevens's FOIA request because LESC was unlikely to have any unique, responsive documents.  The LESC runs a hotline that the public can call with concerns.  If the LESC receives an inquiry regarding a USC claim, the LESC emails the inquiry to the appropriate ERO field office, who sends it to the ERO and OPLA USC claims inboxes.  Thus, any LESC information is captured by ILPD.  Additionally, the LESC only received four calls during the timeframe in question, all of which ended up triggering USC claim memos.

### C.    ICE FOIA'S REVIEW OF RESPONSIVE DOCUMENTS

31.    After receiving and reviewing the responsive documents gathered by OPLA, the ICE FOIA Office determined that the documents contained PII and sensitive and/or privileged materials protected by numerous FOIA exemptions, applied redactions to the documents under the FOIA exemptions outlined below, and released the documents to Stevens.

## VI.    ORGANIZATION OF ICE'S *VAUGHN* INDEX

32.    Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* index accompanies this declaration providing a description of each redaction and applicable exemption in the first 150 pages of two productions ICE made to Stevens, as agreed to by the parties, as well as the 115 pages of records Stevens previously claimed as finalized United States citizenship claims memoranda that did not fall within the two sampled productions.  Dkt. 30, Stevens Dec. at Ex. C.  The redactions and applicable exemptions described in the index are indicative and representative of the redactions and applicable exemptions for the remainder of the documents ICE produced to Stevens in response to her FOIA request.

33.     The *Vaughn* index is in a table format.  The first row contains the titles of four columns that provide a brief description of the information contained within the corresponding columns below.  The heading titles, from the left to the right side of the page, are: Page Number, Withholding: Full/Partial, Description of Records and Redactions, and Reasons for Redactions, and Exemption(s) Applied.

34.     The first heading, Page Number, refers to the page number on each of the responsive documents.  The second heading, Full/Partial Withholding, refers to the level of withholdings taken on the documents.  The information below the third heading, Description of Records and Redactions, and Reasons for Redactions, describes the redacted information and the justification for redaction.  The fourth heading, Exemption(s) Applied, describes the exemptions applied to the redactions in the documents.

### A.     DESCRIPTION OF RECORDS RELEASED TO STEVENS BY ICE

35.     The 6,042 pages of records responsive to Stevens's FOIA request originated from OPLA.  Of the 6,042 pages, 4,841 pages were released subject to partial FOIA withholdings; 746 pages were withheld in full; 280 pages were released in full; 158 pages were withheld as duplicates; and 17 pages were referred to other agencies for processing and release.  A complete description of the agreed-upon 300 pages of documents as well as the 115 pages identified by Stevens, and the bases for the withholding of information in said documents, is detailed in ICE's *Vaughn* Index.  In this case, the records produced to Stevens included email correspondence between ICE OPLA attorneys and/or ICE officers and agents (such as ERO officers), and any accompanying attachments.  The email attachments included USC claims memoranda drafted by OPLA attorneys and supporting materials for the USC claim (such as birth certificates, ancestry data from online databases, relevant legal codes, case management print-outs, etc.).  All responsive records pertain

to correspondence and attachments regarding USC claims relating to persons in ICE custody during the timeframe specified in the FOIA request.

## VII.   APPLICABLE FREEDOM OF INFORMATION ACT WITHHOLDINGS

### FOIA Exemption (b)(5)

36.     Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context.  Pursuant to Exemption (b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

37.     ICE applied FOIA Exemption (b)(5) to protect from disclosure, documentation subject to the deliberative process privilege, attorney work-product privilege, and attorney-client privilege.

38.     ICE withheld internal discussions, deliberations, and recommendations between and amongst attorneys and personnel in OPLA and ERO regarding all USC claims made during the FOIA request's stated timeframe.   Specifically, these communications contemplate the appropriate response to U.S. citizenship claims for individuals encountered by ICE, and require vigorous research and multidivisional concurrence.  Thus, the contents of these discussions and deliberations are pre-decisional in nature because they were prepared in order to assist a decisionmaker in making a final decision, and deliberative because they are consultative processes given that the facts and options discussed in the communications are selective in nature and highlight the portions of the record that were deemed pertinent to the ultimate recommendation and decision on the citizenship claim.   The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-

agency memoranda, letters, or emails. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action freely.

39. Exemption 5 was also applied to draft documents that discussed the legal analysis and basis for USC claims relating to persons in ICE custody. By their very nature, draft documents are pre-decisional, preliminary versions of what may later become a final document in whole or in part, or they remain drafts that never mature into final form as the material may be withdrawn or discarded during the decision making process. In fact, the process by which a draft evolves into a final document is itself a deliberative process. Some draft documents within the responsive document set contain edits, marginal suggestions and comments, and/or embedded questions regarding content, in which case the document is withheld in full. Other draft materials include emails with proposed changes to the draft memos. If draft responses to inquiries and agency policies in actions were released, the public could potentially become confused regarding ICE's mission and activities. Disclosure of such material could mislead the public as the comments and text of draft documents often differ, sometimes significantly, from final agency positions. Disclosure of such material could also cause the same chilling effect noted in paragraph 38.

40. ICE also applied Exemption (b)(5) to protect from disclosure documentation subject to the attorney work product privilege. This privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Its purpose is to protect the adversarial trial process by insulating the attorney's preparation from scrutiny.

41. Given the extremely sensitive nature of the rights involved in USC claims and/or the inadvertent detention of a U.S. citizen, the potential for litigation is heightened and ICE

attorneys are constantly aware of this possibility. Thus, ICE withheld information in records (Word documents, PDFs, emails, and case management system entries) that was prepared by agency attorneys—specifically, attorney memos, notes, questions, thoughts, strategy, and legal analysis, as well as an intra-agency communications discussing the information in these records— because the information constitutes attorney insight about the citizenship status of individuals encountered by ICE, which may be and has been subject to future litigation in immigration and federal court. This information is protected from disclosure because it was prepared by an attorney in contemplation of any such litigation.

42.     Finally, ICE applied Exemption (b)(5) to protect from disclosure documentation subject to the attorney-client privilege.

43.     The attorney-client privilege protects confidential communications between an attorney and his or her client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his or her client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the records contain confidential communications between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel) relating to the citizenship status of individuals encountered by ICE. The client seeks the professional advice of OPLA attorneys on USC claims, specifically from ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts. These communications provide advice to the client about recommended actions and legal decisions.

14

Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

### FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold

44.    5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

45.    The information for which the ICE FOIA Office asserted Exemption (b)(7) satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and is responsible for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises.

46.    The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, including records of interviews, arrests, bookings, detentions, removals, other related investigations, and investigations of allegations of misconduct. Therefore, all of the ICE records responsive to Stevens's FOIA request were compiled for law

enforcement purposes and meet the threshold requirement of FOIA Exemption (b)(7).

### FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)

47.     FOIA Exemption 6 allows the withholding of information found in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6"). Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical" or "similar files" under Exemption 6. When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

48.     FOIA Exemption 7(C) similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").

49.     When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in shedding light on ICE's performance of its statutory duties.

50.     Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, signatures, contact information, biometric information, immigration status, and case history of third party individuals and ICE employees.

51.     Such information, if disclosed to the public or to a third party requester without the permission of the individual, could expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual.

52.     Furthermore, third party individuals have a recognized privacy interest in not being

publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. The individuals' privacy interest in the information contained in the record outweighs any minimal public interest in the disclosure of the information. Stevens has not articulated a sufficient public interest or public need to justify release of the specific information sought in her February 2017 FOIA request. The disclosure of PII from documents responsive to her February 2017 FOIA request serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities. Finally, the third parties mentioned in the law enforcement records did not consent to the disclosure of their PII.

53.     In many of the redactions, much of the information pertaining to a claimant was redacted as PII because it could reasonably be used to determine the identity of the USC claimant. Even without specific names, there are numerous websites and oftentimes news articles that contain enough information for a person like the plaintiff in this case to piece together and identify the claimants. With the increase in information available online about criminal histories, ancestral/genealogy databases, and other sensitive details of USC claimants' backgrounds, ICE now limits the information that is disseminated in response to FOIA requests because the detailed histories drafted by ERO and OPLA personnel in USC memoranda can be used to determine the identity of U.S. citizenship claimants in ICE custody, which would constitute an invasion of their personal privacy. For example, the location or date of arrest or prior immigration history could be used to identify those claiming USC status. This indirect disclosure of claimants' identities would

violate the spirit of Exemptions 6 and 7(C).

54.     ICE determined that the disclosure of the information described in Paragraph 50 would constitute a clearly unwarranted invasion of personal privacy and thus Exemption 6 applied. In addition, ICE determined that disclosure of the information described in Paragraph 50, which was compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus Exemption 7(C) applied.

55.     Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in shedding light on the operations and activities of ICE in the performance of its statutory duties.  Exemptions 6 and 7(C) were applied to prevent disclosure of USC claimant identities and immigration status as well as the identities of ICE personnel.  In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual and all other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE.    In some redactions, the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records; however, in other cases, more extensive redactions were necessary, as explained in paragraph 53.

56.     Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third party information identified in law enforcement records is appropriate.  Moreover, the third parties identified in these records have not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a) & 5.21(d).

18

**FOIA Exemption (b)(7)(E)**

57.     FOIA Exemption (b)(7)(E), 5 U.S.C. § 552(b)(7)(E), protects from disclosure records complied for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. It also protects from disclosure techniques and procedures that are not well known to the public.

58.     ICE applied FOIA Exemption (b)(7)(E) in a limited number of instances to protect from disclosure law enforcement sensitive Uniform Resource Locators ("URLs") for the OPLA case management system and other state and federal databases, as well as internal identification numbers and codes. ICE has included in the accompanying *Vaughn* index page numbers from productions it made to Stevens in this case in which it withheld information pursuant to Exemption 7(E). Those page numbers are a representative sample of the Exemption 7(E) withholdings; they are not meant to be exhaustive. The information ICE withheld under Exemption 7(E), which points to the system that OPLA and other law enforcement agencies use to store, index, and communicate information on legal cases, could be used by persons seeking improper access to ICE legal and law enforcement sensitive data to navigate the case management system and compromise the integrity of the data either by deleting or altering information. The release of this information could also reasonably be expected to allow a person to breach into sensitive legal/ law enforcement sensitive systems and potentially circumvent detection or manipulate law enforcement sensitive information, in an attempt to sabotage ICE legal proceedings. Disclosure of internal codes and identification numbers could assist third parties in deciphering the meanings of the codes and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases, were

they to gain access to the system. The disclosure of this information, which is not readily known by the public, would serve no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities.

## VIII.  SEGREGABILITY

59.     5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

60.     A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

61.     With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.  ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

## IX.     RESPONSE TO STEVENS'S SUMMARY JUDGMENT MOTION

62.     ICE has no record of FOIA requests from Stevens for correspondence relating to U.S. citizenship claims sent to the "USC Claims DRO" and/or "OPLA Field Legal Ops" shared e-mail inboxes, other than the FOIA request that is the basis of this litigation and the 2010 FOIA request attached as Exhibit A to her prior declaration.  Dkt. 30.

63.     Stevens' calculations regarding the number of USC memos released to her are not based on fact.  In Exhibit B to her declaration, Stevens provides her evidence that 148 memos represent a mere 40 unique alien cases.  However, those 148 memos actually represent 94 unique alien cases.  Furthermore, calculating an average from aggregate numbers does not constitute a valid statistical analysis.  As ILPD has stated, the number of USC claims received per day, week,

20

or month varies considerably, and cannot be accurately extrapolated from aggregate statistics gathered from PLAnet. ILPD performed a reasonable search to uncover responsive documents for the given timeframe and produced all records to Stevens.

64. Stevens also incorrectly asserts that the withholdings of domain names in email addresses is evidence that ICE shares USC claims memos outside the agency. A manual review of every email produced to Stevens found that USC memos were never shared or produced to anyone outside of ICE. In fact, this manual review revealed that only seven email chains existed with people outside of ICE; in six of those email chains, emails from people not within ICE were accompanied by a signature block on every single email response that identified their organizations, which were the Department of Justice ("DOJ"), a public defender, a legal aid society, and two news media outlets. The single non-signature line email was a short exchange between a DOJ and an ICE attorney regarding a civil USC claim case. In analyzing every email between ICE and a non-ICE party (again, easily identified by these signature blocks), not a single email contained an attachment from ICE, and none contained large blocks of text that would indicate parts of the USC memos were cut and pasted into an email.

## X.    JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my

knowledge and belief.  Signed this 11th day of October, 2019.

_____
Fernando Pineiro, Acting FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

# Exhibit 1

*Stevens v. **DHS-ICE***
Case No. 17 C 2853 (N.D. Ill.)

U.S. Immigration and Customs Enforcement *Vaughn* Index

1

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 1020-1029, 1032-1049, 1051-1156, 1158-1163, 1165-1169, 1526-1565, 1566-1567, 1569-1582, 1584-1590, 1592-1624, 1626-1675 | Partial | Redactions: These pages contain emails between Immigration and Customs Enforcement (ICE) employees and/or other federal agency employees; therefore, most of these pages contain personally identifiable information (PII) of federal employees, including their names and contact information, such as phone number and/or email address. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>Reason: Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of ICE personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting ICE personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |
| 1024, 1032, 1034-1035, 1038-1041, 1043-1045, 1046-1049, 1087-1090, 1094-1100, 1104-1105, 1109-1110, 1113-1114, 1116, 1121-1122, 1125-1129, 1131-1134, 1136, 1138-1139, 1149, 1156, 1160, 1163, 1526-1536, 1543-1559, 1569-1582, 1584-1590, 1592-1594, 1596, 1598-1607, 1609-1616, 1626-1642, 1650-1657, 1665-1671 | Partial | Redactions: These pages contain personally identifiable information (PII), including the names, biometric information, contact information, immigration history, and/or other identifying information, of third-party individuals. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C). Additionally, contextual information around the PII that could be used to identify a third party was withheld, as that information could be used in conjunction with information found online, news stories, and other forms of media and internet information to breach personal privacy.<br><br>Reason: Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

2

Stevens v. ICE - *Vaughn* Index (October 17, 2019)

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII. | |
| 1024, 1032, 1034-1035, 1038-1041, 1043-1045, 1046-1049, 1087-1090, 1094-1100, 1104-1105, 1109-1110, 1113-1114, 1116, 1121-1122, 1125-1129, 1131-1134, 1136, 1138-1139, 1149, 1156, 1160, 1163, 1569-1575, 1584-1587, 1589, 1592-1594, 1596, 1598-1607, 1627 | Partial | Redactions: These pages contain attorney work product regarding U.S. citizenship claims ("USC claims") made by persons in ICE custody. Specifically, they contain draft versions of legal memos created by ICE attorneys, which contains their legal evaluations, write-ups, and commentary on USC claims. Each USC claim memo follows a set template, which sets forth the facts of the relevant case, the relevant legal standards for USC claims, the attorney's evaluation of evidence and data against the relevant USC law, a suggested conclusion on the matter of law, and a recommendation for agency action. All memos, whether put into the body of an email or attached as a Word document, begin and conclude with the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL **ATTORNEY WORK PRODUCT." The draft memos and/or any proposed edits to legal language are deliberative attorney work products meant for providing legal advice and recommendations to other ICE attorneys and ICE officers and agents. This information was withheld throughout the document set under FOIA exemption (b)(5).

Reason: The information in these pages was properly withheld under FOIA exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney work product and attorney-client privileged.

First, these documents are deliberative draft documents from ICE attorneys about USC claims made by persons in ICE custody; they are subject to edits by other attorneys and/or ERO agents or officials. For example, while no pages in this sample contain edited documents (such as Word documents with tracked changes and comments), many other pages with the productions contained edited documents, edits which, in some cases, change the legal analysis. Additionally, many of the deliberative documents are | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | marked as draft. These documents also contain pre-decisional and deliberative information. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, these documents are protected from disclosure because they were prepared by attorneys in anticipation of any such litigation regarding USC Claims, either in immigration proceedings or any other proceedings. The information withheld was prepared by an agency attorney – specifically, attorney memos, notes, questions, thoughts, strategy, and legal analysis – in contemplation of litigation both in immigration and in federal court.

Finally, the attorney-client privilege is also applicable to the portions of these records. Communications between ICE attorneys and their clients (ICE agents and officers) were made for the purpose of securing legal advice or service regarding USC claims made by persons in ICE custody. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 1022-1023, 1025-1029, 1033, 1036-1037, 1042, 1051-1086, 1091-1093, 1101-1103, 1105-1108, 1111-1112, 1114-1115, 1117-1121, 1123-1124, 1137, 1141-1148, 1151-1155, 1158-1159, 1161-1162, 1165-1169, 1526-1565, 1567, 1576-1582, 1588 | Partial | Redactions: These pages contain communications via email between ICE attorneys and/or ICE officers and agents, specifically regarding USC claims made by persons in ICE custody and/or the USC claims memos drafted by OPLA attorneys. This information was withheld throughout the document set under FOIA exemption (b)(5).

Reason: The information in these pages was properly withheld under FOIA exemption (b)(5) because it is deliberative, draft and pre-decisional, attorney work product, and protected attorney-client privilege.

First, these draft documents contain pre-decisional, draft, and deliberative information. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos and discussions. In this case, the discussions between ICE attorneys and/or ICE officers and agents about draft legal documents drafted in preparation for potential litigations were withheld. These discussions were directly tied to the USC claims, and thus the release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, these documents are protected from disclosure because they were prepared by ICE attorneys in anticipation of any such litigation. The information withheld was prepared by an agency attorney - specifically, attorney memos, notes, questions, thoughts, strategy, and legal analysis - because the information constitutes attorney insight about the citizenship status of individuals encountered by ICE, which may be and has been subject to future litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the portions of these records. Communications between ICE attorneys and their clients (ICE agents and officers) were made for the purpose of securing legal advice or service regarding USC claims made by persons in ICE custody. These communications involved issues of law and questions about evidence and/or data about a person making a USC claim. Attorney-client | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel, and would hamper the agency's ability to efficiently and effectively formulate its final positions on issues of public significance. | |
| 4545-4567, 4576-4592, 4599-4614, 4625-4659 | Partial | Redactions: These pages contain personally identifiable information (PII), including the names, biometric information, contact information, immigration history, and/or other identifying information, of third-party individuals. This information was withheld throughout the document set under FOIA exemptions (b)(6) and (b)(7)(C). Additionally, contextual information around the PII that could be used to identify a third party was withheld, as that information could be used in conjunction with information found online, news stories, and other forms of media and internet information to breach personal privacy.<br><br>Reason: Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names, biometric information, contact information, immigration history, and/or other identifying information of third-party individuals could reasonably be expected to constitute an unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 4545-4567, 4576-4592, 4599-4614, 4625-4659 | Partial | Redactions: These pages contain attorney work product regarding U.S. citizenship claims ("USC claims") made by persons in ICE custody. Specifically, they contain versions of legal memos created by ICE attorneys, which contains their legal evaluations, write-ups, and commentary on USC claims. Each USC claim memo follows a set template, which sets forth the facts of the individual case, the relevant legal standards for USC claims, the attorney's evaluation of evidence and data against the relevant USC law, a suggested conclusion on the matter of law, and a recommendation for agency action. All memos, whether put into the body of an email or attached as a Word document, begin and conclude with the markings: "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT". The versions of the memos and/or any proposed edits to legal language are deliberative attorney work products meant for providing legal advice and recommendations to other ICE attorneys and ICE officers and agents, and are subject to constant changes and edits at any point in the USC adjudication process. This information was withheld throughout the document set under FOIA exemption (b)(5).<br><br>Reason: The information in these pages was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative, as well as attorney work product and attorney-client privileged.<br><br>First, these documents contain pre-decisional and deliberative information. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. The memos are also always subject to edits by other attorneys and/or ERO agents or officials at any point in the citizenship evaluation process, as information (for example, new birth records, information presented by a subject regarding their parents) is constantly being collected and evaluated to determine if the validity of the citizenship claim should be adjusted. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, these documents are protected from disclosure because they were prepared by attorneys in anticipation of any such litigation regarding USC Claims, either in immigration proceedings or any other proceedings. The information withheld was prepared by an agency attorney - specifically, attorney memos, notes, questions, thoughts, strategy, and legal analysis – in contemplation of litigation both in immigration and in federal court. | |
| | | Finally, the attorney-client privilege is also applicable to the portions of these records. Communications between ICE attorneys and their clients (ICE agents and officers) were made for the purpose of securing legal advice or service regarding USC claims made by persons in ICE custody. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4568-4575, 4593-4598, 4615-4624 | Full | Redactions: These pages contain attorney work product regarding USC claims made by persons in ICE custody. Specifically, they contain draft Word versions of legal memos created by ICE attorneys that reflect tracked changes via redline edits and contain comments in the margins by other attorney reviewers. These legal memos express legal evaluations, write-ups, and commentary on USC claims. Each USC claim memo follows a set template, which sets forth the facts of the individual case, the relevant legal standards for USC claims, the attorney's evaluation of evidence and data against the relevant USC law, a suggested conclusion on the matter of law, and a recommendation for agency action. All memos, whether put into the body of an email or attached as a Word document, begin and conclude with the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT." The draft memos and/or any proposed edits to legal language are deliberative attorney work products meant for providing legal advice and recommendations to other ICE attorneys and ICE officers and agents. This information was withheld throughout the document set under FOIA exemption (b)(5). | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

8

| Page Numbers | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | Reason: The information in these pages was properly withheld under FOIA exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney work product and attorney-client privileged.<br><br>First, these documents are deliberative draft documents from ICE attorneys about USC claims made by persons in ICE custody. As in any USC memo, information (for example, new birth records, information presented by a subject regarding their parents) is constantly being collected and evaluated to determine if the validity of the citizenship claim should be adjusted. Therefore, these USC memos are marked as drafts, especially when conveyed by email for editing and/or concurrence purposes (as opposed to memorialized in the OPLA PLAnet database to reflect the agency decision at a particular point in time). Moreover, these particular memos contain direct edits by other attorneys and/or ERO agents or officials, shown via redline edits and/or comments in a Word document, which in some cases, change the legal analysis of the USC claim. The documents thus contain pre-decisional and deliberative information. FOIA Exemption (b)(5) was applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, these documents are protected from disclosure because they were prepared by attorneys in anticipation of any such litigation regarding USC Claims, either in immigration proceedings or any other proceedings. The information withheld was prepared by an agency attorney - specifically, attorney memos, notes, questions, thoughts, strategy, and legal analysis – in contemplation of litigation both in immigration and in federal court.<br><br>Finally, the attorney-client privilege is also applicable to the portions of these records. Communications between ICE attorneys and their clients (ICE agents and officers) were made for the purpose of securing legal advice or service regarding USC claims made by | |

9

| Page Numbers | Witholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | persons in ICE custody. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 106, 321, 982, 1007, 1116, 1189, 1204, 1233, 1846, 1853-54, 1856, 1858, 1871, 2033, 2059, 2074, 2097, 2145, 2159, 2162, 2175, 2344 2347, 2349-55, 2728-35, 2791 | Partial | Redactions: Where necessary in emails and/or memos, partial redactions pursuant to FOIA (b)(7)(E) were used on PLAnet URLs, state and federal database URLs, FBI numbers, and ICE internal codes.<br><br>Reason: FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of this type of information could permit people seeking to interfere with law enforcement investigations and/or operations to take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. The release of URL addresses and internal codes could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the codes and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases, were they to gain access to the system. Disclosure of these techniques and practices in navigating the databases could assist those people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations. Further, how law enforcement officers access databases is a law enforcement technique and procedure that is not commonly known. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

# Exhibit 2

| | |
|---|---|
| **From:** | Jacqueline Stevens |
| **To:** | ICE-FOIA@dhs.gov |
| **Cc:** | ███████████████████████ |
| **Subject:** | request for correspondence associated with USC CLaims DRO/ERO e-mail box |
| **Date:** | Monday, February 13, 2017 4:13:53 PM |

To Whom It May Concern:

I write under the Freedom of Information Act to request all correspondence on the detention or removal proceedings for people claiming or proving US citizenship since January 1, 2017. This request includes but is not limited to email received by or sent to an email address established by ICE for the purpose of assessing claims of US citizenship.

Please note that on November 19 , 2009, then Asst. Sec. of ICE, John Morton wrote in part:

"If the individual's claim is credible on its face, or if the investigation results in probative evidence
that the detained individual is a USC, the individual should be released from detention. *Any significant change in circumstances should be reported to the "USC Claims DRO" e-mailbox and
the "OPLA Field Legal Ops" e-mail box."*
https://www.ice.gov/doclib/detention-reform/pdf/usc_guidance_nov_2009.pdf

I am requesting all correspondence as well as all attachments and referenced reports, notes, text messages, or any other information maintained in any medium associated with the reported cases. I would appreciate it if you contact the relevant personnel at CBP, ICE OGC, ERO and OPLA for this request.

The time frame for this request is January 1, 2017 to the present.

I will be using this information for my research, teaching, and scholarly as well as popular publications and therefore am requesting a waiver of all fees. For documentation of the public impact of this research, please see
http://buffett.northwestern.edu/programs/deportationresearch/
Please note that my work on the detention and deportation of U.S. citizens has been published in the NY Times and reported on in the New Yorker magazine.
If you have any questions, please feel free to contact me here or at ████████████ .
Thank you,
Jacqueline Stevens


Professor

Political Science and Legal Studies
Northwestern University
Director
Deportation Research Clinic
Buffett Institute
http://buffett.northwestern.edu/programs/deportationresearch/

office phone: ███████████
mail
████████████████
████████████████████████

http://jacquelinestevens.org
http://stateswithoutnations.blogspot.com