UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 2853 |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | Chief Judge Pallmeyer |
| SECURITY, IMMIGRATION AND | ) | |
| CUSTOMS ENFORCEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

Introduction...........................................................................................................1

Background...........................................................................................................1

    A.    ICE and U.S. Citizenship Claims..................................................1

    B.    Role of Citizenship Claim Memoranda in Litigation ................3

    C.    Stevens's FOIA Request ...............................................................4

    D.    ICE's Response to the FOIA Request.........................................5

Legal Standard .....................................................................................................7

Argument .............................................................................................................8

I.    ICE Conducted an Adequate Search for Responsive Records………..........................8

II.    No Information Was Improperly Withheld under the FOIA ...........................................11

    A.    ICE Properly Withheld Privileged Information Under Exemption 5 ...................12

        1.    Attorney-Client Privilege................................................12

        2.    Attorney Work-Product Privilege .................................14

        3.    Deliberative-Process Privilege.......................................16

    B.    ICE Properly Withheld Information under Exemption 6.......................................19

    C.    ICE Also Properly Withheld Personally Identifiable Information under Exemption 7(C) ......................................................................................................21

    D.    The Public Interest Does Not Warrant Disclosure of the Personally Identifiable Information Withheld under Exemptions 6 and 7(C) .............................22

    E.    ICE Properly Relied on Exemption 7(E) to Withhold Law Enforcement Information ...................................................................................25

III.    ICE Reasonably Segregated All Exempted Information ..................................27

Conclusion ..........................................................................................................29

# Table of Authorities

## Cases

*ACLU of N. Cal. v. U.S. Dep't of Justice*, No. 04 C 4447, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ................................................................................................................... 24

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Justice*, 503 F. Supp. 2d 373 (D.D.C. 2007) ................................................................................................................... 23

*Alvirez v. N.L.R.B.*, 676 F.2d 423 (10th Cir. 1982) ............................................................... 25

*Am. Immigration Counsel v. U.S. Dep't of Homeland Security*, 950 F. Supp. 2d 221 (D.D.C. 2013) ................................................................................................................... 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 7

*Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62 (2d Cir. 2008) ...................................... 20

*Banks v. U.S. Dep't of Justice*, 813 F. Supp. 2d 132 (D.D.C. 2011) ........................................ 20

*Barmes v. I.R.S.*, 60 F. Supp. 2d 896 (S.D. Ind. 1998) ...................................................... 12, 14

*Bassiouni v. C.I.A.*, No. 02 C, 4049, 2004 WL 1125919 (N.D. Ill. Mar. 31, 2004) ................... 7

*Bennington v. Caterpillar Inc.*, 275 F.3d 654 (7th Cir. 2001) .................................................. 7

*Bibles v. Natural Or. Desert Ass'n*, 519 U.S. 355 (1997) ....................................................... 24

*Campaign for Family Farms v. Veneman,* No. 99 C, 1165, 2001 WL 1631459 (D. Minn. July 19, 2001) ................................................................................................................... 25

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) ................................................. 7, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................... 7

*Chem. Manufacturers Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114 (D.D.C. 1984) ................................................................................................................... 17

*Common Cause v. I.R.S.*, 646 F.2d 656 (D.C. Cir. 1981) ..................................................... 18

*Conservation Force v. Jewell*, 66 F. Supp. 3d 46 (D.D.C. 2014) ............................................. 15

*Demma v. U.S. Dep't of Justice*, No. 93 C 7296, 1996 WL 11932 (N.D. Ill. Jan. 10, 1996) ......... 8

*Enviro Tech Int'l, Inc. v. E.P.A.*, 371 F.3d 370 (7th Cir. 2004) ............................................. 12

*Fitzgibbon v. C.I.A.*, 911 F.2d 755 (D.C. Cir. 1990) ........................................................... 23

*Hammouda v. U.S. Dep't of Justice*, 920 F. Supp. 2d 16 (D.D.C. 2013) ................................. 26

*Hart v. F.B.I.*, No. 95 C 2110, 1996 WL 403016 (7th Cir. July 16, 1996) ..................................... 8

*Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131 (D.D.C. 2013) ........................................... 22

*Hodge v. F.B.I.*, 703 F.3d 575 (D.C. Cir. 2013) ........................................................................... 22

*Hopkins v. U.S. Dep't of Hous. and Urban Dev.*, 929 F.2d 81 (2d Cir. 1991) ............................ 23

*In re Grand Jury*, 475 F.3d 1299 (D.C. Cir. 2007) ........................................................................ 13

*In re Sealed Case*, 146 F.3d 881 (D.C. Cir. 1998) ......................................................................... 14

*Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214 (D.D.C. 2017) ............................................ 13

*Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 802 F. Supp. 2d 185 (D.D.C. 2011) ................. 13

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ........................... 7

*Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70 (2d Cir. 1979)... 27

*Lepelletier v. F.D.I.C.*, 164 F.3d 37 (D.C. Cir. 1999) .............................................................. 19, 20

*100Reporters LLC v. U.S. Dep't of Justice*, 248 F. Supp. 3d 115 (D.D.C. 2017) .................. 21, 22

*Loving v. U.S. Dep't of Defense*, 550 F.3d 32 (D.C. Cir. 2008) .................................................... 16

*Matter of Wade*, 969 F.2d 241 (7th Cir. 1992) .............................................................................. 27

*Maydak v. U.S. Dep't of Justice*, 362 F. Supp. 2d 316 (D.D.C. 2005) ......................................... 19

*Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190 (D.C. Cir. 2009) ...................................................... 26

*Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12 (D.D.C. 2012) .............................................. 26

*Miscavige v. I.R.S.*, 2 F.3d 366 (11th Cir. 1993) ............................................................................. 7

*Muttitt v. Dep't of State*, 926 F. Supp. 2d 284 (D.D.C. 2013) ...................................................... 13

*N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) .................................................... 12, 16, 17

*Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157 (2004) .............................. 21, 23, 24

*Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Executive Office for U.S. Attorneys*, 844 F.3d 246 (D.C. Cir. 2016) ................................................................................. 14

*Nat'l Sec. Counselors v. C.I.A.*, 206 F. Supp. 3d 241 (D.D.C. 2016) ........................................... 17

*Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180 (D.C. Cir. 2000) ................................................................................................................................................ 12

iii

*Patterson v. I.R.S.*, 56 F.3d 832 (7th Cir. 1995) ...................................................................... 8, 27

*Petroleum Information Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992)........... 18

*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982) ...................................................................... 22

*Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015) ................................................ 21

*Privacy Info. Ctr. v. U.S. Dep't of Defense*, 355 F. Supp. 2d 98 (D.D.C. 2004) ......................... 24

*Pub. Employees for Envtl. Responsibility v. E.P.A.*, 213 F. Supp. 3d 1 (D.D.C. 2016) .............. 12

*Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195 (D.C. Cir. 2014).................................................................................... 21

*Reilly v. U.S. Dep't of Energy*, No. 07 C 995, 2007 WL 4548300 (N.D. Ill. Dec. 18, 2007)....... 16

*Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598 (D.C. Cir. 2001) ............................ 18

*Roseberry-Andrews v. U.S. Dep't of Homeland Sec.*, No. 16 C 63, 2018 WL 1307635 (D.D.C. Mar. 13, 2018) ....................................................................................................................... 26

*S.E.C. v. Goldstone*, 301 F.R.D. 593 (D.N.M. 2014) .................................................................. 15

*Schiller v. N.L.R.B.*, 964 F.2d 1205 (D.C. Cir. 1992) .................................................................. 14

*Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574 (D.C. Cir. 1987)...................................................................................................................................... 15

*Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 3882, 2014 WL 5796429 (N.D. Ill. Nov. 4, 2014)........................................................................................................................ 7, 8, 27

*Tax Analysts v. I.R.S.*, 117 F.3d 607 (D.C. Cir. 1997) ................................................................ 17

*U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487 (1994) ......................... 20, 22

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989)......... 21

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ....................................................... 12

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982) .............................................. 19

*Upjohn Co. v. United States*, 449 U.S. 383 (1981)..................................................................... 13

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ........................................................................ 6

*Wilber v. C.I.A.*, 355 F.3d 675 (D.C. Cir. 2004)........................................................................ 11

**Statutes**

5 U.S.C. § 552 ............................................................................................................. 1

5 U.S.C. § 552(a)(4)(B) ............................................................................................. 12

5 U.S.C. § 552(b) .............................................................................................. 12, 27

5 U.S.C. § 552(b)(5) ................................................................................................. 12

5 U.S.C. § 552(b)(6) ................................................................................................. 19

5 U.S.C. § 552(b)(7)(C) ............................................................................................ 21

5 U.S.C. § 552(b)(7)(E) ............................................................................................ 25

U.S.C. § 552(a)(2)(A) ............................................................................................... 18

## Introduction

This is an action for the release of records under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiff Jacqueline Stevens asserts that the United States Immigration and Customs Enforcement ("ICE") failed to adequately search for records and improperly withheld information in response to her February 2017 FOIA request for correspondence relating to United States citizenship claims. Dkt. 55, Stevens Summ. J. Mem. at 3. Stevens's FOIA request, however, sought communications to and from agency attorneys that contain both privileged information and the personally identifiable information of third parties and ICE employees. ICE thus conducted a search for records responsive to Stevens's request and released all information to Stevens that is not exempt from disclosure under FOIA exemptions 5, 6, 7(C), and 7(E). Because ICE conducted a reasonable search and did not improperly withhold any information from Stevens, it is entitled to summary judgment in this case, and Stevens's motion for summary judgment should be denied.

## Background

### A.     ICE and U.S. Citizenship Claims

The U.S. Department of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. ICE Response to Stevens's Statement of Material Facts and Statement of Additional Material Facts ("ICE SOF") ¶ 37. ICE is the principal investigative arm of DHS and is tasked with preventing any activities that threaten national security and public safety by, among other things, investigating individuals who may be present in the United States illegally. *Id.* ¶ 38.

In November 2015, ICE codified a procedure that requires its officers, agents, and attorneys to carefully and expeditiously assess the potential U.S. citizenship of any individual encountered

by ICE, whether that individual makes an affirmative claim of citizenship or ICE personnel become aware of certain indicia of citizenship, because the agency's mission and authority of course does not include detaining or removing U.S. citizens. *Id.* ¶ 6. Regardless of the citizenship-claim trigger (affirmative claim or indicia), ICE documents these citizenship claims via alert emails to shared inboxes maintained by two ICE program offices: the Office of the Principal Legal Advisor ("OPLA") and Enforcement Removal Operations ("ERO"). *Id.* ¶ 39. A citizenship claim also prompts the creation of a memorandum containing a factual examination and legal analysis of the claim. *Id.* ¶ 40. Each memorandum is prepared by an OPLA attorney working in conjunction with ICE officers and agents, and its purpose is to prevent ICE personnel from inadvertently detaining a U.S. citizen and/or initiating or continuing removal proceedings against a citizen. *Id.* ¶ 41. As a result, included in each memorandum is a legal analysis of the citizenship claim based on facts available to the agency at that time, as well as a recommended course of action regarding removal proceedings, in particular whether the agency should initiate, continue, or move to terminate the actual or contemplated removal proceedings based on the facts available to the agency at the time. *Id.* ¶ 42.

Because the memorandum is almost entirely attorney work product and contains legal analysis and an attorney recommendation regarding a citizenship claim, it is marked draft, pre-decisional and deliberative, privileged attorney-client communication, attorney work product, and as containing sensitive personally identifiable information. *Id.* ¶ 43. The OPLA attorney then submits the memorandum for review to ERO and the Immigration Law and Practice Division ("ILPD") of OPLA, who decide either to concur with the attorney's conclusion and recommendation in the memorandum or to decline to concur and request alternate courses of action. *Id.* ¶ 44. In the event ERO or IPLD require more information or further analysis, the OPLA

2

attorney and an ILPD attorney work together to address those concerns. *Id.* Once ERO and ILPD reach a decision, the memorandum is finalized and sent by email to the shared inboxes maintained by ERO and OPLA. *Id.* ¶ 45. As a best practice, the memorandum should also be saved to OPLA's case-management system (PLAnet) along with a notation of the resulting decision and marked as attorney work product, attorney-client communication, pre-decisional, and as containing sensitive PII. *Id.* ICE officers and agents similarly are expected to make a notation of the decision and attorney recommendation in the appropriate case management system and/or databases and to update that notation or recommendation if anything changes. *Id.*

Because the agency's policy requires that each memorandum be submitted within one business day from the time ICE first becomes aware of a citizenship claim, the memorandum is never considered final even after being sent to the shared email inboxes and saved to the appropriate case management system and/or databases and is subject to updates. *Id.* ¶ 46. As a result, each memorandum may be revised and re-elevated if new information is developed, either through subsequent ICE investigation or based on information or documents received from the individual claiming citizenship. *Id.*

## B.    Role of Citizenship Claim Memoranda in Litigation

Each citizenship-claim memorandum is created in anticipation of foreseeable immigration and/or federal court proceedings. *Id.* ¶ 47. Specifically, each memorandum is prepared by an OPLA attorney and reviewed by attorneys at ICE headquarters in order to advise their clients (ERO personnel) about the best course of action based on the information available to the agency at the time, both with respect to that particular respondent's immigration proceedings and with an eye to minimizing potential future litigation by the respondent against the agency. *Id.* Citizenship-claim memoranda thus are prepared for the following three categories of individuals encountered by ICE:

(1) individuals currently in removal proceedings (either before ICE or the Department of Justice Executive Office for Immigration Review); (2) individuals arrested and taken into ICE custody pursuant to the agency's civil immigration authorities; and (3) individuals subject to ICE immigration detainers following their release from criminal custody of another law enforcement agency. *Id.* ¶ 48. In all three situations, the individuals for which memoranda are created will currently be, or are reasonably anticipated to be, respondents in removal proceedings in immigration court at the time the memoranda are prepared. *Id.* ¶ 49. Beyond immigration court proceedings, the OPLA attorneys also prepare the memoranda to help minimize future federal court litigation against the agency, including claims alleging the unlawful detention of a U.S. citizen. *Id.* ¶ 50.

Furthermore, citizenship-claim memoranda are solely created for OPLA and ERO personnel and for internal agency use. *Id.* ¶ 51. As a result, the memoranda are not filed in immigration court, nor shared with any other agency or federal, state, or local court. *Id.* While the analysis reflected in a memorandum may sometimes be discussed with other U.S. government attorneys during the course of federal immigration litigation related to a particular respondent, the memorandum itself is generally not provided to the those attorneys. *Id.* ¶ 52. The memoranda also are not accessible to officials outside of the agency after they have been saved to OPLA's case-management system. *Id.*

## C.     Stevens's FOIA Request

Stevens submitted a FOIA request to ICE in February 2017 seeking "all correspondence on the detention or removal proceedings for people claiming or providing U.S. citizenship since January 1, 2017. This request includes, but is not limited to email received by or sent to an email address established by ICE for the purpose of assessing claims of US citizenship." *Id.* ¶ 53. The

4

request further stated that Stevens was "requesting all correspondence as well as all attachments and referenced reports, notes, text messages, or any other information maintained in any medium associated with the reported cases." *Id.* The time frame of the request was January 1, 2017, to the present. *Id.* Stevens subsequently filed this lawsuit in April 2017. *Id.* ¶ 54.

**D.    ICE's Response to the FOIA Request**

Following receipt and review of Stevens's FOIA request, the ICE FOIA office determined that OPLA and ERO were the only program offices likely to have records responsive to the request and instructed those two offices to search for and provide all responsive records to the ICE FOIA office for review and processing. *Id.* ¶ 9. In response, OPLA collected correspondence and any accompanying attachments from the attorneys who drafted citizenship-claim memoranda from January 1, 2017, to about mid-May 2017, as requested in Stevens's FOIA request, as well as correspondence and accompanying attachments to and from attorneys that was sent to the OPLA shared-email inbox for U.S. citizenship claims. *Id.* ¶ 55. OPLA then provided these documents to the ICE FOIA office in May 2017. *Id.* ERO, on the other hand, concluded following a review of its shared-email inbox that it would not possess any responsive documents that differed from the responsive documents OPLA collected in response to Stevens's FOIA request, and it thus deferred to OPLA to provide the responsive documents to the ICE FOIA office. *Id.* ¶ 15.

The ICE FOIA office reviewed the responsive documents provided by OPLA and determined that the documents contained sensitive and/or privileged information as well as personally identifiable information. *Id.* ¶ 56. As a result, the ICE FOIA office conducted a line-by-line review of each responsive document, applied redactions to the documents in accordance with FOIA exemptions 5, 6, 7(C), and 7(E), and released the documents to Stevens over multiple productions between July 2017 and April 2018. *Id.* ¶ 57. ICE also confirmed that all information

5

not exempted from disclosure by FOIA exemptions 5, 6, 7(C), and 7(E) was correctly segregated and released to Stevens.  *Id.* ¶ 58.  ICE did not withhold any non-exempt information on the grounds it was non-segregable.  *Id.*

ICE in total collected 6,042 pages of records that were responsive to Stevens's FOIA request.  *Id.* ¶ 59.  Of the 6,042 pages, ICE released 4,841 pages subject to partial FOIA withholdings, withheld 746 pages in full, released 280 pages in full, withheld 158 pages as duplicates, and referred 17 pages to other agencies for processing and release.  *Id.*  The records ICE produced to Stevens included email correspondence between ICE OPLA attorneys and/or ICE officers and agents (such as ERO officers), and any accompanying attachments.  *Id.* ¶ 60.  The email attachments included citizenship-claim memoranda drafted by OPLA attorneys and supporting materials for the claim, such as birth certificates, ancestry data from online databases, relevant legal codes, and case management print-outs.  *Id.*  All responsive records pertained to correspondence and attachments regarding citizenship claims relating to persons in ICE custody during the timeframe specified in the FOIA request.  *Id.*

For purposes of its cross motion for summary judgment, ICE has prepared a *Vaughn* index[1] describing each redaction and applicable exemption in the first 150 pages of two productions ICE made to Stevens, as agreed to by the parties, as well as the 115 pages of records Stevens previously identified as "finalized" citizenship memoranda that did not fall within the two sampled productions.  *Id.* ¶ 61.  The redactions and applicable exemptions described in the *Vaughn* index ICE has prepared are representative of those in the remaining documents ICE produced to Stevens in response to her FOIA request.  *Id.*

---

[1]  *See Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973) (requiring government agencies to provide courts with a "relatively detailed analysis" of records that are withheld pursuant to FOIA exemptions).

6

## Legal Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 3882, 2014 WL 5796429, at *4 (N.D. Ill. Nov. 4, 2014) (citing Fed. R. Civ. P. 56(a)).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).

Because the question in FOIA cases often involves whether certain undisputed actions by an agency violated statutory requirements, FOIA cases typically are resolved on summary judgment.  *See Bassiouni v. C.I.A.*, No. 02 C 4049, 2004 WL 1125919, at *2 (N.D. Ill. Mar. 31, 2004) (citing *Miscavige v. I.R.S.*, 2 F.3d 366, 369 (11th Cir. 1993)).  As a result, the court's review is limited to determining whether the agency (1) improperly (2) withheld (3) agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (judicial remedial authority dependent on agency violation of all three components).

Here, ICE's motion for summary judgment should be granted if it provides the court (and Stevens) with affidavits, declarations, or other evidence showing that it conducted an adequate search for records and that any located, responsive documents were produced or are exempt from disclosure.  *See Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits or

declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden"); *Stevens*, 2014 WL 5796429 at \*4 ("The Court may grant summary judgment in favor of the agency in a FOIA case 'only if the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'") (quoting *Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir. 1995)). Critically, agency submissions in support of a motion for summary judgment should be "accorded a presumption of good faith." *Demma v. U.S. Dep't of Justice,* No. 93 C 7296, 1996 WL 11932, at \*3 (N.D. Ill. Jan. 10, 1996) (citing *Carney*, 19 F.3d at 812).

<h3 align="center">Argument</h3>

ICE is entitled to summary judgment in this case. As evidenced in the accompanying declarations[2] and *Vaughn* index, ICE conducted an adequate search for documents responsive to Stevens's FOIA request and properly withheld information in the records pursuant to FOIA exemptions 5, 6, 7(C), and 7(E). Furthermore, ICE released all reasonably segregable information from the responsive records.

## I.     ICE Conducted an Adequate Search for Responsive Records.

ICE has satisfied its burden on summary judgment because it has demonstrated that it made a "good faith effort" to conduct a "search reasonably calculated to uncover all relevant documents." *Hart v. F.B.I.*, No. 95 C 2110, 1996 WL 403016, at \*2 (7th Cir. July 16, 1996). In response to Stevens's FOIA request, ICE identified OPLA and ERO as the only program offices

---

[2]   Stevens takes issue with the agency's prior use of a single declarant to describe the citizenship-memorandum process, as well as the steps ICE took to respond to her FOIA request. Stevens Summ. J. Mem. at 13-14. To avoid a similar objection now, ICE submits two declarations that address each of those topics separately. ICE SOF at Exs. A, B (Dent and Pineiro declarations).

likely to have records responsive to the request and instructed those two offices to search for and provide all responsive records to the ICE FOIA office for review and processing. ICE SOF ¶¶ 9-15. OPLA thereafter collected and provided to the ICE FOIA office correspondence and any accompanying attachments from the attorneys who drafted citizenship-claim memoranda from January 1, 2017, to about mid-May 2017, as requested in Stevens's FOIA request, as well as correspondence and accompanying attachments from the OPLA shared-email inbox for U.S. citizenship claims. *Id.* ¶ 55. Furthermore, because ERO would not have any responsive documents that differed from the responsive documents OPLA had collected in response to Stevens's request, it deferred to OPLA to provide the responsive documents to the ICE FOIA office. *Id.* ¶ 15. The ICE FOIA office processed these responsive documents, and all non-exempt information in the documents was released to Stevens. *Id.* ¶¶ 56-61. These efforts were more than reasonable, and ICE has thus fully complied with its FOIA obligation.

Stevens raises two purported issues with the agency's search for responsive records, neither of which have any merit. First, Stevens claims that the search was inadequate because ICE failed to task the Law Enforcement Support Center ("LESC") with a search for records responsive to her FOIA request. Stevens Summ. J. Mem. at 7, 13. The LESC, however, did not need to be separately tasked with a search because it was unlikely to have any unique, responsive documents. ICE SOF ¶ 62. As Stevens acknowledges in her motion, the LESC runs a hotline that individuals can call, and if it receives an inquiry regarding a citizenship claim, the LESC emails that inquiry to the appropriate ERO field office, which then sends the inquiry to the shared-email inboxes maintained by ERO and OPLA. *Id.*; Stevens Summ. J. Mem. at 7. Thus, any information LESC had relating to a citizenship claim that was responsive to Stevens's FOIA request was captured by OPLA when

it collected correspondence and accompanying attachments that had been sent to the shared-email inbox for U.S. citizenship claims during the relevant time period. ICE SOF ¶ 62.

Second, Stevens incorrectly asserts that the search was inadequate because she believes ICE failed to produce a number of unique citizenship memoranda based on her review of the produced records and her reliance on other information she obtained from ILPD in response to a different FOIA request. Stevens Summ. J. Mem at 8-11, 13. Specifically, Stevens estimates that ICE produced 240 unique citizenship memoranda in response to her FOIA request but should have produced more based on ILPD data about citizenship memoranda she received in response to a different FOIA request. *Id.* Stevens's mathematical analysis is flawed and should be rejected. For instance, Stevens asserts that 148 citizenship memoranda that ICE produced in response to her FOIA request relate to only 40 unique cases. *Id.* However, those 148 memoranda actually represent 94 unique cases. ICE SOF ¶¶ 25-26. ICE therefore produced at least 294 unique citizenship memoranda in response to Stevens's FOIA request, not the 240 she claims (there were 200 additional citizenship memoranda that ICE produced in response to the FOIA request that Stevens acknowledges relate to unique cases; 200 + 94 = 294). *Id.*; Stevens Summ. J. Mem. at 8.

Stevens also erroneously states that ILPD data produced in response to a different FOIA request indicates that ICE reviewed 243 *unique* citizenship-claim cases between January 1, 2017, and March 31, 2017 (an average of 3.0375 unique cases per day), and reviewed 675 *unique* citizenship-claim cases between October 1, 2016, to June 30, 2017 (an average of 2.73 unique cases per day). Stevens Summ. J. Mem. at 9-11. Based on that data, Stevens extrapolates that ICE should have produced about 388 unique citizenship memoranda in response to her FOIA request, as opposed to the 240 memoranda that she claims ICE produced (though in actuality it was 294, as stated above). *Id.* But the data Stevens relies on was not limited to *unique* citizenship-claim

10

cases, as she believes, and nothing in the ILPD document she cites and attaches to her motion states otherwise. *Id.;* Dkt. 57-3. To the contrary, that data did not draw a distinction between a new or unique citizenship claim and a revision or update to an existing citizenship claim; instead, it included *all* citizenship memoranda reviewed by the agency during a specified time period. ICE SOF ¶¶ 28-32. Thus, every one of the 348 citizenship memoranda Stevens admits ICE produced in response to her FOIA request (Stevens Summ. J. Mem. at 8) would have been counted by the agency when aggregating citizenship memoranda data, not just the 294 unique citizenship memoranda ICE produced to Stevens. *Id.* So even if Stevens's calculations were correct (they are not), ICE's production of 348 citizenship memoranda in response to Stevens's FOIA request is relatively close to the 388 memoranda she believes should have been produced.

Furthermore, Stevens's reliance on a daily citizenship-claim "average" to challenge the agency's search is misplaced. Stevens Summ. J. Mem. at 9-11. The number of citizenship claims ICE receives and for which memoranda are prepared varies on a daily, weekly, and monthly basis. ICE SOF ¶ 1. It is not consistent throughout the year as Stevens suggests with her calculated averages such that an average of the number of claims and memoranda prepared over a given time period would correspond to a different time period. *Id.*

Despite acknowledging that mere speculation is insufficient to demonstrate the agency's search was inadequate, that is all Stevens has provided the court with her faulty math and irrelevant reference to the LESC. Stevens Summ. J. Mot. at 13 (citing *Wilber v. C.I.A.,* 355 F.3d 675, 678 (D.C. Cir. 2004)). Accordingly, her search-adequacy challenge should be denied.

## II.    No Information Was Improperly Withheld under the FOIA.

ICE has also satisfied its burden to demonstrate that it properly withheld information in the records pursuant to FOIA exemptions and released all reasonably segregable information from the

responsive records.  The FOIA requires an agency to release responsive information unless it is protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 150-51 (1989).  The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions.  5 U.S.C. § 552(a)(4)(B); *Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n,* 216 F.3d 1180, 1190 (D.C. Cir. 2000).  Here, ICE processed the responsive records in accordance with the FOIA's requirements and properly withheld information pursuant to FOIA exemptions 5, 6, 7(C), and 7(E).

### A.     ICE Properly Withheld Privileged Information Under Exemption 5.

ICE correctly asserted Exemption 5 to withhold privileged information from Stevens relating to the agency's analysis of U.S. citizenship claims.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  To qualify for this exemption, a document must fall within the ambit of the traditional privileges that the government could assert in civil litigation against a private litigant and excludes those privileged documents from the FOIA's reach.  *Enviro Tech Int'l, Inc. v. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004).  Three traditional privileges covered under Exemption 5 are the attorney-client privilege, the attorney work-product privilege, and the deliberative-process privilege.  *Barmes v. I.R.S.,* 60 F. Supp. 2d 896, 901 (S.D. Ind. 1998) (citing *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975)).  ICE properly withheld information pursuant to all three privileges.

### 1.     Attorney-Client Privilege

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Pub. Employees for Envtl. Responsibility v. E.P.A.,* 213 F. Supp. 3d 1, 22 (D.D.C. 2016).  In the FOIA

12

context, "the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege." *Judicial Watch, Inc. v. U.S. Dep't of Treasury,* 802 F. Supp. 2d 185, 200 (D.D.C. 2011). To be privileged, the "communication must be 'for the purpose of securing *primarily* either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" *Muttitt v. Dep't of State,* 926 F. Supp. 2d 284, 308-09 (D.D.C. 2013) (quoting *In re Grand Jury,* 475 F.3d 1299, 1304 (D.C. Cir. 2007)). The attorney-client privilege applies here.

In this case, the information protected from disclosure under the attorney-client privilege consists of confidential communications between agency attorneys and their client (ICE officers and agents such as ERO personnel) about the citizenship status of individuals encountered by ICE. ICE SOF ¶¶ 57, 61 (Pineiro Decl. ¶¶ 42-43; Dent Decl. ¶¶ 8-11; *Vaughn* index at 3-10). Specifically, ERO personnel seek and are provided legal evaluations and advice from OPLA attorneys about U.S. citizenship claims based on information that is provided to these attorneys about individuals in ICE custody. *Id.* Those communications between the agency and its attorneys—which include the citizenship memoranda and emails about the memoranda and/or citizenship claims—are plainly covered by the attorney-client privilege and disclosing them would have a chilling effect on the agency's confidence in seeking candid legal advice, which is precisely what the attorney-client privilege is intended to protect. ICE SOF ¶¶ 55, 60; *Jordan v. U.S. Dep't of Labor,* 273 F. Supp. 3d 214, 231 (D.D.C. 2017) ("[C]onfidential disclosures between an attorney and her client regarding factual and legal matters are certainly protected by attorney-client privilege . . . ."); *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981) (the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.").

13

### 2. Attorney Work-Product Privilege

The attorney work-product privilege applies to materials prepared in anticipation of foreseeable litigation. *Barmes,* 60 F. Supp. 2d at 901 (citing *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1208 (D.C. Cir. 1992)). Given the sensitive nature of the rights involved in a U.S. citizenship claim and in the inadvertent detention of a U.S. citizen, ICE attorneys prepared the records that are responsive to Stevens's FOIA request with the belief that future litigation was a real possibility. ICE SOF ¶¶ 57, 61 (Pineiro Decl. ¶¶ 40-41; Dent Decl. ¶¶ 12-15; *Vaughn* index at 3-10); *Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Executive Office for U.S. Attorneys,* 844 F.3d 246, 251 (D.C. Cir. 2016) (for the attorney work-product privilege to apply, "the attorney who created the document must have 'had a subjective belief that litigation was a real possibility,' and that subjective belief must have been 'objectively reasonable.'") (quoting *In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998)). ICE consequently withheld information from Stevens in the responsive records prepared by its attorneys as well as intra-agency communications discussing the information in these records because the information constitutes attorney insight and legal analysis about the citizenship status of individuals encountered by ICE that may be and has been subject to future litigation in immigration and federal court. *Id.* This information clearly is covered by the work-product doctrine, and ICE properly withheld it from Stevens.

Stevens incorrectly suggests that the work-product doctrine should not apply to the citizenship memoranda because they are not prepared in anticipation of litigation but in the ordinary course of business. Stevens Summ. J. Mem. at 16. The memoranda, however, are not created in the ordinary course of business for every individual who ICE encounters but *only* for those individuals who make an affirmative claim of U.S. citizenship or have certain indicia of citizenship. ICE SOF ¶¶ 6, 47-50. Moreover, the individuals for whom citizenship memoranda

14

are prepared are or likely will be subject to removal proceedings in immigration court. *Id.* ICE attorneys also prepare the memoranda to help minimize future federal court litigation against the agency, such as when ICE is sued for detaining a U.S. citizen. *Id.* Thus, unlike in *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d 574 (D.C. Cir. 1987), which Stevens cites (Summ. J. Mem. at 15), there is much more than the "dimmest expectation of litigation" at the time the citizenship memoranda are created. *Id.* at 586-87. In fact, litigation is very probable if not a near certainty. ICE SOF ¶¶ 47-50; *S.E.C. v. Goldstone,* 301 F.R.D. 593, 651 (D.N.M. 2014) (focus for the applicability of the work-product doctrine is whether the document in question was created with the "motivating purpose" of aiding in litigation or possible future litigation).

Stevens also erroneously contends that the "factual matter" in the citizenship memoranda should be disclosed even though the memoranda are protected by the attorney-client privilege and work-product doctrine. Stevens Summ. J. Mem. at 15-16. ICE, however, withheld factual information in the memoranda in accordance with the work-product doctrine, which protects both *factual* and deliberative matters because the "risk is apparent that an attorney's discussion of factual matters may reveal his or her tactical [or] strategic thoughts." *Conservation Force v. Jewell,* 66 F. Supp. 3d 46, 65 (D.D.C. 2014)). And as discussed more fully below, ICE also redacted factual matter in the memoranda—names and other information of third parties and ICE employees such as signatures, contact information, biometric information, case history, immigration status, immigration history, and arrest information—pursuant to *other* FOIA exemptions (Exemptions 6 and 7(C)) because disclosure of that information would constitute an invasion of those individuals' personal privacy.

Stevens lastly contends that the citizenship memoranda should not be protected by the attorney-client privilege and work-product doctrine because ICE "frequently releases" the memoranda in litigation and the databases where the memoranda are saved are not limited to internal agency use. Stevens Summ. J. Mem. at 16. Stevens is wrong on both fronts and conspicuously fails to provide any evidence to support either assertion. *Id.* As previously stated, OPLA attorneys prepare the citizenship memoranda for internal agency use, and the memoranda are not filed with any court or shared with anyone outside the agency, much less anyone outside the federal government. ICE SOF ¶¶ 51-52. Furthermore, access to the database on which the memoranda are saved (PLAnet) is limited to internal agency use. *Id.* ICE thus correctly withheld information covered by the attorney-client privilege and/or work-product doctrine and did not waive either privilege by disclosing the citizenship memoranda responsive to Stevens's FOIA request to anyone outside the government.

### 3. Deliberative-Process Privilege

The deliberative-process privilege protects "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. U.S. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008); *see also Sears,* 421 U.S. at 150 (deliberative-process privilege is designed to protect "the decision making processes of government agencies."). To qualify for the deliberative-process privilege, the information must satisfy two prongs: (1) it must be "predecisional," meaning the material must be antecedent to the adoption of an agency policy; and (2) it must be "deliberative," meaning the material reflects the give-and-take of the consultative process. *Reilly v. U.S. Dep't of Energy*, No. 07 C 995, 2007 WL 4548300, at *4 (N.D. Ill. Dec. 18, 2007). The inclusion of this privilege within Exemption 5 reflects "the legislative judgment that the quality of administrative

16

decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible." *Tax Analysts v. I.R.S.*, 117 F.3d 607, 617 (D.C. Cir. 1997). Further, considerable deference should be given to the agency's judgment as to what constitutes the give-and-take of the deliberative process because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Chem. Manufacturers Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151).

Here, the information protected from disclosure under the deliberative-process privilege were internal discussions, deliberations, and recommendations (and drafts of such records)[3] between and amongst ICE attorneys and personnel regarding U.S. citizenship claims made during the stated timeframe in Stevens's FOIA request. ICE SOF ¶¶ 57, 61 (Pineiro Decl. ¶¶ 38-39; Dent Decl. ¶¶ 8-11; *Vaughn* index at 3-10). In particular, these communications contemplate the appropriate agency response to citizenship claims for individuals encountered by ICE and require vigorous research and multi-divisional concurrence. *Id.* The communications are pre-decisional in nature because they were prepared in order to assist agency personnel in reaching a final decision about a citizenship claim, and are also deliberative because the facts and options discussed in the communications are selective in nature and highlight the portions of the record that were deemed pertinent to the ultimate recommendation and decision on the citizenship claim. *Id.* ICE thus properly withheld this information from Stevens.

Stevens does not contest that draft citizenship memoranda are protected from disclosure by the deliberative-process privilege, but she mistakenly claims that finalized memoranda should not

---

[3] *Nat'l Sec. Counselors v. C.I.A.,* 206 F. Supp. 3d 241, 278 (D.D.C. 2016) ("Judges on this Court have repeatedly held that drafts may be withheld under Exemption 5 where the withholding agency carries its normal burden of demonstrating that withheld materials are both predecisional and deliberative.").

be withheld under that privilege because they constitute final agency positions. Stevens Summ. J. Mem. at 15. However, the memoranda are simply *not* final agency positions; they are *pre-decisional* recommendations and analysis from an agency attorney to other ICE personnel about the citizenship claims of individuals in ICE custody based on the information known to the agency at the time. ICE SOF ¶¶ 40-46. The decision is made by these other ICE personnel; it is not made in the memoranda, as Stevens contends. *Id.* The memoranda therefore cannot be considered a "final opinion" that must be disclosed under the FOIA because the memoranda are "not the agency's final, unappealable decision not to pursue a judicial remedy in an adversarial dispute." *Rockwell Int'l Corp. v. U.S. Dep't of Justice,* 235 F.3d 598, 602-03 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(2)(A) and *Common Cause v. I.R.S.*, 646 F.2d 656, 659-60 (D.C. Cir. 1981)). Indeed, ICE plays *no* part in conferring U.S. citizenship; that final decision is handled exclusively by the U.S. Citizenship and Immigration Services or U.S. Department of State. ICE SOF ¶ 63. Rather, the memoranda at issue are prepared in anticipation of foreseeable litigation to prevent ICE personnel from inadvertently detaining a U.S. citizen and/or initiating or continuing removal proceedings against that citizen and thus are subject to withholding under FOIA exemptions 5, 6, and 7(C). *Rockwell Int'l Corp*., 235 F.3d at 603 (document that set forth "the conclusions of a voluntarily undertaken internal agency investigation" was not a "final opinion" subject to mandatory disclosure under 5 U.S.C. § 552(a)(2)(A)).

Stevens's claim that the final memoranda are not pre-decisional because they do not reflect ICE's deliberations regarding "agency policy" is also wrong. Stevens Summ. J. Mem. at 15. A document is pre-decisional if it was prepared to assist an agency decision-maker arrive at a decision. *Petroleum Information Corp. v. U.S. Dep't of Interior,* 976 F.2d 1429, 1434 (D.C. Cir. 1992). That clearly is the purpose of the citizenship memoranda at issue in this case. Moreover,

the fact that a citizenship memorandum may apply only to a single individual—as opposed to a group of people—does not make it any less pre-decisional, as Stevens suggests. *E.g., Maydak v. U.S. Dep't of Justice,* 362 F. Supp. 2d 316, 326 (D.D.C. 2005), *vacated in part on other grounds by Maydak v. U.S. Dep't of Justice,* No. 00 C 562, 2008 WL 11497858 (D.D.C. Dec. 3, 2008) (information that was generated as part of a continuing process to make agency decisions about a *single* individual in custody was both pre-decisional and protected under the deliberative-process privilege). In any event, even if information in the final citizenship memoranda were not protected under the deliberative-process privilege (it is), ICE still correctly withheld information in the final memoranda under FOIA exemption 5 because that information was also protected from disclosure by the attorney-client privilege and the work-product doctrine for the previously stated reasons.

### B. ICE Properly Withheld Information under Exemption 6.

ICE properly redacted names and other personally identifying information pursuant to Exemption 6, which protects information located in personnel, medical, or similar files when its release would be a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" under the exemption includes government records containing information that applies to a particular individual. *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999). Importantly, *any* disclosure that applies to a particular individual meets the threshold requirement for protection under Exemption 6. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) ("When disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy.").

In order to determine whether the release of information constitutes a "clearly unwarranted invasion of personal privacy," the court should balance the interests of protecting an individual's

private affairs from unnecessary public scrutiny with the public's right to governmental information. *Lepelletier*, 164 F.3d at 46. However, the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light "on the agency's performance of its statutory duties" or otherwise let citizens know what their government is up to. *Id.* (citing *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495-97 (1994)).

The portions of the records ICE withheld under Exemption 6 contain names or other identifying information of third parties and ICE employees. ICE SOF ¶¶ 57, 61 (Pinerio Decl. ¶¶ 47-56; *Vaughn* index at 2-3, 6). For instance, ICE withheld identifying information such as signatures, contact information, biometric information, case history, and immigration status. *Id.* It is well-settled that the redaction of such information is proper under Exemption 6. Individuals have a "significant" privacy interest in the nondisclosure of personal information that would subject them to embarrassment, harassment, or retaliation. *Banks v. U.S. Dep't of Justice*, 813 F. Supp. 2d 132, 142 (D.D.C. 2011); *Associated Press v. U.S. Dep't of Justice,* 549 F.3d 62, 65 (2d Cir. 2008) (holding that personal information such as name and address has been found to implicate a privacy interest cognizable under the FOIA exemptions). ICE also withheld certain other facts surrounding personally identifiable information in the records that could be used to determine the identity of U.S. citizenship claimants in ICE custody, such as the location of arrest, date of arrest, and prior immigration history, since indirect disclosure of these claimants' identities would similarly violate the spirit of Exemptions 6 and 7(C), as discussed below. ICE SOF ¶¶ 57, 61 (Pinerio Decl. ¶¶ 47-56; *Vaughn* index at 2-3, 6).

### C.    ICE Also Properly Withheld Personally Identifiable Information under Exemption 7(C).

ICE also properly withheld personally identifiable information under Exemption 7(C), which like Exemption 6, also guards against invasions of privacy by protecting from disclosure records or information compiled for law enforcement purposes when the information's release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C)—the law enforcement counterpart to Exemption 6—thus similarly necessitates a balancing of the relevant individuals' right to privacy against the public's right to access to information in government files. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 762 (1989). Importantly, while the balancing test is applied to both Exemption 6 and 7(C), Exemption 7(C) is *more* protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material based upon the traditional recognition of the strong privacy interests inherent in law enforcement records. *100Reporters LLC v. U.S. Dep't of Justice,* 248 F. Supp. 3d 115, 158-59 (D.D.C. 2017) (citing *Prison Legal News v. Samuels,* 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015)); *Nat'l Archives and Records Admin. v. Favish,* 541 U.S. 157, 165-66 (2004) (explain that the omission of the word "clearly" from the language of Exemption 7(C) establishes a lower burden of proof to justify withholding and stems from the recognition that law enforcement records are inherently more invasive of privacy than the types of records protected under Exemption 6).

In this case, ICE invoked Exemption 7(C) to protect the names and other identifying information of third parties and ICE employees. ICE SOF ¶¶ 57, 61 (Pinerio Decl. ¶¶ 44-56; *Vaughn* index at 2-3, 6).[4] Exemption 7(C) protects such information for *all* individuals mentioned

---

[4] "To fall within Exemption 7, documents must first meet a threshold requirement: that the records were 'compiled for law enforcement purposes.'" *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico,* 740 F.3d 195, 202-03 (D.C. Cir.

in law enforcement records, including investigators and suspects. *Hodge v. F.B.I.*, 703 F.3d 575, 580-81 (D.C. Cir. 2013). The exemption withholds this information because it "recognizes the stigma potentially associated with law enforcement investigations" and consequently affords broader privacy rights to individuals mentioned in investigatory records. *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 148 (D.D.C. 2013). Notably, the third parties mentioned in these law enforcement records (*e.g.*, the citizenship memoranda) produced to Stevens did not consent to the disclosure of their personally identifiable information. ICE SOF ¶¶ 57, 61 (Pineiro Decl. ¶¶ 52, 56).

**D.      The Public Interest Does Not Warrant Disclosure of the Personally Identifiable Information Withheld under Exemptions 6 and 7(C).**

Furthermore, Stevens's assertion that the public interest in releasing the personally identifiable information ICE withheld from the citizenship memoranda outweighs the recognized privacy interest in nondisclosure should be rejected for several reasons. Stevens Summ. J. Mem. at 16. First, Stevens has not shown how releasing the names and other identifying information in the citizenship memoranda would contribute in any way to the public's interest in understanding the agency's performance of its statutory duties, particularly when courts have repeatedly held that such information rarely if ever contributes to the public interest. *E.g., Fed. Labor Relations Auth.*, 510 U.S. at 494-99 (releasing personal information of third parties and agency employees does not "contribut[e] significantly to public understanding of the operations or activities of the

---

2014) (citing 5 U.S.C. § 552(b)(7)). Agencies classified as law enforcement agencies "receive deference to their assertion that documents were compiled for a law enforcement purpose." *100Reporters LLC,* 248 F. Supp. 3d at 159 (citing *Pratt v. Webster,* 673 F.2d 408, 418 (D.C. Cir. 1982)). Courts repeatedly have held that ICE is a law enforcement agency entitled to such deference. *E.g., Am. Immigration Counsel v. U.S. Dep't of Homeland Security,* 950 F. Supp. 2d 221, 245 (D.D.C. 2013) ("As Defendants correctly note, ICE is an agency specializing in law enforcement," and therefore its decision to invoke Exemption 7 is entitled to a measure of deference); ICE SOF ¶¶ 57, 61 (Pineiro Decl. ¶¶ 44-46).

government."); *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 768 (D.C. Cir. 1990) (holding that names and other identifying information of individuals rarely contribute to the public interest for there "is no reasonably conceivable way in which the release" of one individual's name would allow citizens "to know what their government is up to."); s*ee also Favish,* 541 U.S. at 172 (burden is on the requester to demonstrate a sufficient public interest for disclosure). Moreover, where the documents include a compilation of information about private individuals, rather than a record of government actions, "there is little legitimate public interest that would outweigh the invasion of privacy because the information reveals little or nothing about an agency's own conduct." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Justice,* 503 F. Supp. 2d 373, 382 (D.D.C. 2007); *Hopkins v. U.S. Dep't of Hous. and Urban Dev.,* 929 F.2d 81, 88 (2d Cir. 1991) (where disclosure of personal information reveals nothing "*directly* about the character of a government agency or official" but rather bears only an attenuated relationship to governmental activity, such an attenuated public interest in disclosure does not outweigh individuals' privacy interest in their personal information) (emphasis in original). That is certainly the case here given that the citizenship memoranda are *not* records of government actions but rather are attorney recommendations to other ICE personnel about the citizenship claims of individuals in ICE custody. The decision (or record of government action) is made by these other ICE personnel; it is not made in the memoranda.

Second, while Stevens regales us with a history of the government's deportation of American citizens from 1929 to 1937 and in the 1950s, she conspicuously fails to provide a scintilla of evidence that any of the citizenship memoranda ICE produced in response to her FOIA request would reveal government impropriety that warrants disclosure of the personally identifiable information ICE withheld under Exemptions 6 and 7(C). Stevens Summ. J. Mem. at

1-5, 16; *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense,* 355 F. Supp. 2d 98, 102 (D.D.C. 2004) (the fact that the requester "has provided evidence that there is some media interest in data mining as an umbrella issue does not satisfy the requirement that [it] demonstrate interest in the specific subject" of its FOIA request); *ACLU of N. Cal. v. U.S. Dep't of Justice,* No. 04 C 4447, 2005 WL 588354, at **13-14 (N.D. Cal. Mar. 11, 2005) (ruling that "it was not sufficient for the plaintiff to show [public] interest in only the general subject area of the request" ).  Instead, Stevens asserts without any support that ICE "consistently" gets the analysis in citizenship memoranda wrong and has an "apparently high error rate" in its enforcement activities against potential citizens.  Stevens Summ. J. Mem. at 16.  Such bare allegations without more are insufficient to obtain the disclosure of the withheld personally identifiable information.  *Favish*, 541 U.S. at 174-75 (because allegations of government misconduct are easy to allege and hard to disprove, a FOIA requester must provide a "meaningful evidentiary showing" before disclosure of personally identifiable information should be considered).  And to the extent Stevens would like this court take into account her prior detention and deportation research (Stevens Summ. J. Mem. at 4-5), that information—even if true—is wholly irrelevant to whether the personally identifiable information ICE properly withheld under Exemptions 6 and 7(C) should be disclosed.  *Bibles v. Natural Or. Desert Ass'n,* 519 U.S. 355, 356 (1997) (finding irrelevant requester's claimed purpose for seeking personally identifiable information in government records).

Third, that ICE did not redact some factual information in citizenship memoranda it produced to Stevens more than *nine* years ago in May 2010 in response to a prior FOIA request should not be dispositive here and does not preclude ICE from withholding exempt information from the citizenship memoranda at issue in *this* case.  Stevens Summ. J. Mem. at 5.  With the increase in information available online about criminal histories, ancestral databases, and

24

individuals' backgrounds, ICE now limits the factual information it releases in citizenship memoranda when responding to FOIA requests because this information can be used to identify U.S. citizenship claimants in ICE custody, which would violate their right to personal privacy. ICE SOF ¶¶ 57, 61 (Pineiro Decl. ¶¶ 53-56; *Alvirez v. N.L.R.B.,* 676 F.2d 423, 428 (10th Cir. 1982) (recognizing that in some situations, the deletion of only personal identifying information may not be adequate to provide the necessary privacy protection because requester could still possibly identify the individuals); *Campaign for Family Farms v. Veneman,* No. 99 C 1165, 2001 WL 1631459, at *3 (D. Minn. July 19, 2001) (finding that the disclosure of zip codes and dates of signatures was precluded because that information could be used to identify signers of petition).

Because no real public interest would be served by release of the personally identifying information in the citizenship memoranda, and because there exists significant privacy interests for all of the individuals identified in these records, ICE correctly withheld this information under Exemptions 6 and 7(C).

    **E.**    **ICE Properly Relied on Exemption 7(E) to Withhold Law Enforcement Information.**

ICE also correctly invoked Exemption 7(E) to withhold information in responsive records relating to law enforcement techniques and procedures. Exemption 7(E) protects from disclosure law enforcement records to the extent that the production of such records or information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Importantly, Exemption 7(E) sets a "low bar" for agencies to justify withholding: rather than "requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk

of circumvention of the law." *Hammouda v. U.S. Dep't of Justice*, 920 F. Supp. 2d 16, 25-26 (D.D.C. 2013) (citing *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

Here, ICE applied Exemption 7(E) in a limited number of instances to protect from disclosure internal resource-location addresses ("URLs") for the OPLA case-management system and other state and federal databases, as well as limited instances of internal identification numbers and codes. ICE SOF ¶¶ 57, 61 (Pineiro Decl. ¶¶ 57-58). This information, which points to the systems that states and the federal government use to store, index, and communicate information on legal cases and to the internal coding systems used by ICE could be used by persons seeking improper access to ICE legal and law enforcement sensitive data to navigate the case management system and compromise the integrity of the data either by deleting or altering the information. *Id.* Not surprisingly, information about these URLs is not readily known by the public, and its revelation may allow persons seeking to circumvent the law to take proactive steps to counter operational and investigative actions. *Id.* Courts that have considered the applicability of Exemption 7(E) to this or similar type of information in other cases have consistently held that the information was compiled for law enforcement purposes and should not be disclosed under the FOIA. *E.g., Roseberry-Andrews v. U.S. Dep't of Homeland Sec.*, No. 16 C 63, 2018 WL 1307635, at **16-17 (D.D.C. Mar. 13, 2018) (agency properly withheld information under Exemption 7(E) about ICE databases, such as internal resource-location addresses and case numbers); *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 28-29 (D.D.C. 2012) (permitting agency to withhold TECS numbers relating to procedures concerning use of law enforcement resources and databases as well as TECS case program and access codes because disclosing them "would expose a law enforcement technique, promote circumvention of the law by allowing criminals to conceal their

activity, or allow fraudulent access to DEA's databases."). ICE's use of Exemption 7(E) to withhold law enforcement information relating to URLs should thus be upheld.

## III. ICE Reasonably Segregated All Exempted Information.

Finally, ICE fulfilled its obligation under the FOIA to release all reasonably segregable, non-exempt information to Stevens in response to her FOIA request. FOIA provides that "[a]ny reasonably segregated portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). At the same time, however, "[i]f the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected because, although not exempt, it is not reasonably segregable[.]" *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 86 (2d Cir. 1979). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable materials. *Stevens,* 2014 WL 5796429 at *9. The court, however, must nonetheless make an express finding on the issue of segregability. *Patterson,* 56 F.3d at 840 (remanding when district court made no finding as to segregability).

Here, each responsive page was carefully examined "line-by-line" by ICE to determine the non-exempt information that could be reasonably segregated and released. ICE SOF ¶¶ 57-58. ICE did not withhold any non-exempt information on the grounds it was non-segregable; the only information ICE withheld from Stevens is that which is entitled to protection from disclosure. *Id.* In light of this evidence, the presumption in favor of ICE, and the lack of evidence to rebut this presumption, ICE has met its burden of demonstrating that no segregable, non-exempt portions of the records were withheld and is entitled to such a finding. *See Matter of Wade*, 969 F.2d 241,

27

246 (7th Cir. 1992) (stating that the veracity of the government's submissions regarding reasons for withholding documents should not be questioned without evidence of bad faith).

Stevens's assertion that ICE withheld reasonably segregable, non-exempt portions of emails and attachments is without merit.  Stevens Summ. J. Mem. at 17. Stevens notably fails to identify any of the specific emails or attachments that she believes were not reasonably segregated, nor does she articulate the relief she seeks from the court stating only that she "seeks an order requiring" but never finishing that sentence.  *Id.*  Furthermore, her claim that the agency's withholding of email domain names (*e.g.*, @ice.dhs.gov) may be evidence that ICE shares citizenship memoranda with individuals outside the agency is incorrect.  *Id.*; ICE SOF ¶ 64.  A review of every email produced to Stevens in response to her FOIA request confirmed that citizenship memoranda were never shared or produced to anyone outside the agency.  ICE SOF ¶ 64.  In fact, the review revealed that only seven email chains existed with people outside the agency.  *Id.* ¶ 65.  In six of those chains, the emails from people outside the agency included a signature block that identified their organizations, which were the U.S. Department of Justice, a public defender, a legal aid society, and two media outlets.  *Id.*  The seventh chain was a short exchange between an agency attorney and a Justice Department attorney about a civil citizenship-claim case, but that exchange did not include the sharing of a citizenship memorandum.  *Id.*

28

**Conclusion**

For the foregoing reasons, summary judgment should be granted in favor of ICE, and Stevens's motion for summary judgment should be denied.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Prashant Kolluri
   PRASHANT KOLLURI
   Assistant United States Attorney
   219 South Dearborn Street
   Chicago, Illinois 60604
   (312) 886-9085
   prashant.kolluri@usdoj.gov