**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No.: 1:17-cv-2853 |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | Chief Judge Rebecca R. Pallmeyer |
| ENFORCEMENT, ) | Magistrate Judge Jeffrey T. Gilbert |
| ) | |
| *Defendant.* ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**
**AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Professor Stevens is entitled to summary judgment that Defendant U.S. Immigration and Customs Enforcement ("ICE") improperly withheld agency records by failing to conduct an adequate search and by withholding reasonably segregable, non-exempt portions of records responsive to her Freedom of Information Act ("FOIA") request. Because Defendant's newest declarations fail to carry the agency's burden of demonstrating it is entitled to summary judgment, ICE's motion should be denied.

With respect to the adequacy of ICE's search, summary judgment is warranted in Professor Stevens' favor for at least three reasons. *First*, ICE admits that the Law Enforcement Support Center ("LESC) is an agency component in possession of at least four responsive records. That component was not tasked, however, because ICE claims "any LESC information is captured by" the Immigration Law and Practice Division ("ILPD") of the ICE Office of Principal Legal Advisor ("OPLA"). Notably, ICE does not contend that the records created by LESC are identical to those produced by OPLA. Instead, the agency seeks to piggyback on OPLA's production to show no search of LESC was necessary. Because the FOIA entitles Professor Stevens not just to "information," but to any

1

"record" of that information, 5 U.S.C. § 552(f)(2)(A), ICE must task the LESC with conducting an adequate search.

*Second*, ICE claims that its Enforcement and Removal Operations ("ERO") would contain responsive records entirely duplicative of those compiled by OPLA. ICE's declarations, however, undermine that notion as well. That is because both ICE declarants specifically reference ERO officials taking decisions and creating records about U.S. Citizenship claims that are both (a) separate and unique from the records OPLA searched for and produced; and (b) responsive to Plaintiff's FOIA request.

*Third*, ICE's attempt to knock down the premises of Professor Stevens' math without disclosing the total number of U.S. Citizenship Claims Memorandum ("USC Claims Memos") OPLA created during the period at issue precludes the agency from satisfying its burden.

As for the agency's withholdings, ICE has failed to meet its burden of demonstrating that its withholdings under Exemptions 5, 6, and 7 are justified and that no reasonably segregable, non-exempt material has been improperly withheld. Consequently, the Court should order ICE remove several categories of redactions from the records ICE has already produced, and enjoin ICE from applying those withholdings on future productions to come once ICE conducts an adequate search.

## ARGUMENT

**I.    ICE'S SEARCH IS INADEQUATE.**

Professor Stevens is entitled to summary judgment that ICE violated the FOIA by failing to conduct an adequate search for records responsive to her request. The agency's own admissions in its recently filed declarations demonstrate that two ICE components that are likely to possess responsive, non-duplicative records. Those components consequently should have been tasked with searching for and producing those records. Consequently, the justifications offered by the agency for failing to task the Law Enforcement Support Center ("LESC") or retrieve documents from Enforcement and

Removal Operations ("ERO") fail to meet the agency's burden of showing it conducted an adequate search.

      A.  <u>Professor Stevens Is Entitled to Summary Judgment Because ICE Admits LESC Possesses Responsive Records, Yet Refuses to Task a Search for Them.</u>

Professor Stevens is entitled to summary as to the adequacy of ICE's search because ICE admits that responsive records exist within the LESC but neglects to adequately explain its failure to task the LESC with a search. *See* ECF No. 69 (Def.'s Br. Opp. Pl.'s Mtn. for Summ. Jmt. & Memo Supp. Cross-Mtn for Summ. Jmt., hereafter "ICE Memo") at 9-10. To prevail on summary judgment as to the adequacy of its search, ICE must offer reasonably detailed, non-conclusory affidavits "that aver that all files likely to contain responsive documents were searched." *Henson v. Dep't of Health & Human Servs.*, 892 F.3d 868, 875 (7th Cir. 2018) (citing *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 388 (7th Cir. 2015) and *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Here, ICE does the opposite by admitting there are responsive documents within the LESC and conceding ICE failed to task searches for them.

ICE admits Plaintiff's factual averments that the LESC follows a standard operating procedure and maintains records that would appear to be responsive to Professor Stevens' request. ECF No. 67, ICE L.R. 56.1 Stmt., ¶¶ 16-20. ICE contends, however, that the LESC "was not tasked with responding to Stevens' FOIA request because it was unlikely to have unique, responsive documents." ECF No. ICE L.R. 56.1 ¶ 62 (citing ECF 67-2, Pineiro Decl. ¶ 30). ICE then admits that at least four unique, responsive records do exist within the LESC that the agency has failed to produce. *Id.* (stating, without attribution, that four calls to the LESC regarding U.S. Citizenship claims did indeed occur during the period at issue in this litigation). Yet the agency fails to explain why the records created within the LESC in fielding these four calls and others would necessarily be duplicative of those searched for and produced by OPLA, or why they necessarily would match the information entered by ERO. *See* Pineiro Decl. ¶ 30. There is simply no factual material in ICE's declarations from which

3

to conclude that because the LESC passes information on to ERO, all LESC records would be duplicative.

To the contrary, the System of Records Notification ("SORN") for ICE's LESC database, ACRIMe, demonstrates that at least some records gleaned from calls to the US Citizenship Hotline will be originated and contained within the LESC's records. *See* U.S. Department of Homeland Security, Notice of Privacy Act System of Records, Immigration and Customs Enforcement (ICE)– 007 Law Enforcement Support Center (LESC) Alien Criminal Response Information Management (ACRIMe) System of Records, 73 Fed. Reg. 74739, 74741 (Dec. 9, 2008) ("Categories of Individuals Covered by the System: . . . (2) Individuals who make reports to the DHS/ICE Tip-line and individuals about whom those reports were made."). The SORN therefore suggests that LESC maintains responsive records apart from a simple email to ERO that would then, according to ICE, be forwarded to OPLA.

Whether, as ICE alleges, responsive records created and maintained by the LESC may contain information that matches or duplicates what ultimately may end up in OPLA's files is immaterial to the question of whether ICE should have tasked this component to search for those records. The agency's approach in this case – excluding from its search one potential custodian because the information in those records should purportedly resurface in the files of another – fails to comply with the Act's requirement that ICE "liberally construe" Professor Stevens' request. *See, e.g.*, *The Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). And the reasoning ICE advances in the declarations submitted to date fails to "demonstrate beyond all material doubt that its search was reasonably calculated to uncover call relevant *documents*[,]"—not just all relevant information. *Valencia v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (emphasis added). Consequently, summary judgment in Plaintiff's favor should be entered, and ICE should be ordered to task the LESC with conducting a search for responsive records.

4

B. ICE's Declarations Show ERO Should Have Been Tasked with a Search.

Plaintiff is also entitled to summary judgment on search adequacy because ICE's newest declarations show ERO is likely to possess records responsive to her request that ICE failed to search for. ICE goes to great lengths to describe the process by which OPLA completes and transmits USC Claims Memos to ERO for review and decisions-making, and to distinguish between the roles of those two agency components. *See, e.g.*, ECF No. 67-1 (Dent Decl.) ¶¶ 7-11. ICE is careful to note the purportedly separate and independent role of OPLA's "clients", i.e., ERO officials, in making decisions based on OPLA's USC Claims Memos, and in providing additional information to allow the updating of those memos. *Id.* ¶¶ 10-11.

Far less fulsome, however, is ICE's explanation for why the ERO Information Disclosure Unit ("IDU") failed to task *any* ERO Field Office or headquarters official with a search for records responsive to Professor Stevens' request. *See* ECF No. 67-2 (Pineiro Decl.) ¶¶ 24-30. Indeed, despite ICE's repeated references to decision-making, claims reporting, and fact-gathering purportedly being done by ERO – be it receiving a referral from the LESC for a potential USC Claim and forwarding to the USC Claims inbox, or deciding on whether to recognize a citizenship claim based on a finalized USC Claims Memo, or taking subsequent action to revise the agency's analysis based on new evidence – ERO officers plainly do more, in ICE's telling, than simply checking the contents of the shared OPLA-ERO inbox. Nevertheless, ERO unilaterally limited the potential source of responsive records to that shared inbox – and literally no individual ERO officer or office. *Id.* ¶¶ 28-30.

By its terms, Professor Stevens' request for ICE correspondence about USC Claims "includes but is not limited to email received by or sent to an email address established by ICE for the purposes of assessing claims of US Citizenship." ECF 67, ICE L.R. 56.1 Stmt, ¶ 53. ICE offers no explanation, much less a sufficiently detailed one, for why ERO officials in the agency's field offices were not tasked with searching for records responsive to Plaintiff's request. As significant, ICE provides no

5

explanation for failing to task searches of the very same ERO officials who are purportedly reviewing and deciding upon finalized USC Claims Memos. Thus, it is not ICE that is entitled to summary judgment as to the adequacy of ERO's search, but Professor Stevens.

### C. ICE's Search for USC Claims Memos Is Inadequate Because the Agency's Reliance on Secret Math Does Not Satisfy Its Burden.

In the materials attached to her motion for partial summary judgment, Professor Stevens attempted to demonstrate using the limited information at her disposal regarding ILPD's total numbers of USC Claims Memos that the number of memos released in this case falls far short of what would be expected based on ILPD's own records, obtained under separate FOIA requests. ECF No. 7-11. In response ICE cannot (or will not) say how many USC Claims Memos it created during the search period at issue in this litigation. In other words, ICE refuses to provide the denominator in the equation Professor Stevens seeks to solve, i.e., how many unique cases did ICE review during the period at issue in this FOIA request? Instead, the agency protests that Professor Stevens' math – which she and her students attempted to deduce from heavily redacted records – is incorrect. ECF No. 69, ICE Memo at 10-11.

Nestled within ICE's assault on Professor Stevens' math is an assault on mathematics itself that calls into question the candor, or perhaps, the mathematical competency, of the Declarant. Specifically, ICE contends, "First, no 'daily average' exists, **nor can one be created**." ECF No. 67-1, Dent. Decl. ¶ 20 (emphasis added). Instead, 'all statistics are reported on a monthly, quarterly, or annual basis." *Id*. By definition, any set of numbers for which a monthly total set exists could, if given the right denominator, be divided by 30 or 31 to create a daily average number of cases for each day of that month. The same could be achieved by dividing the quarterly total of claims by the number days in the quarter, or for an annual dataset by dividing the total number of claims by 365. ICE thus refuses to provide these *correct* statistical numbers while its own declarant admits they exist. ECF No. 67-1,

6

Dent Decl. ¶ 20. Perhaps that is because the agency knows Professor Stevens could divide the total number and show how fall short OPLA's search fell. ECF No. 69 at 10-11. No other explanation is provided in ICE's declarations.

In the final analysis, the closest ICE gets to affirmatively meeting its burden on this issue is contending that the total of 348 memos Plaintiff received "is relatively close" to the 388 she estimates were created during the same period based on other ILPD documents she has obtained, so her 'faulty math' keeps her challenge to the adequacy of the agency's search. Without disclosing the actual number of USC Claims Memos ICE created during the period at issue, ICE cannot possibly "demonstrate beyond all material doubt that its search was reasonably calculated to uncover call relevant documents." *Valencia*, 180 F.3d at 325. Unless ICE is willing to show its own math, it cannot simply allege that Professor Stevens' math is "faulty." Accordingly, Defendant's motion for summary judgment should be denied, and Plaintiff's motion should be granted.

## II. ICE's Withholdings are Unlawful.

Because disclosure is "the dominant objective of the FOIA," this Court should construe "FOIA exemptions narrowly in favor of disclosure." *Patterson v. I.R.S.,* 56 F.3d 832, 835 (7th Cir. 1995) (internal quotation marks omitted). Here, ICE has the burden of justifying its decision to withhold requested documents. *Id.*; *see also* 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action"). The agency fails to meet its burden of demonstrating all of its withholdings are proper and all reasonably segregable non-exempt information has been released.

### A. ICE's Vaughn Index Is Insufficiently Detailed to Satisfy the Agency's Burden.

The *Vaughn* index and declarations ICE submitted fail to meet the agency's burden under the FOIA. In support of its Cross-Motion for Summary Judgment, ICE submits a 10-page *Vaughn* index setting forth legalistic and conclusory assertions that portions of records have been withheld based on various withholdings. Taken individually or in tandem with ICE's declarations, the materials submitted

7

do not comply with *Vaughn* and do not allow the Court to make an individualized determination as to whether any of the particular records ICE lumps into each field are actually within the claimed Exemptions based on the claimed rationales provided by the agency. "While the government need not furnish repetitive descriptions of the same type of document and may describe *commonalities* among its withholdings, it must avoid resorting to explanation in *generalities*." *Am. Immigration Council v. DHS*, 950 F. Supp. 2d 221, 237 (D.D.C. 2013) (citing *Judicial Watch v. FDA*, 449 F.3d 141, (D.C. Cir. 2006)). While a document-by document description is not always necessary, *id.* at 237, ICE must provide enough information for the district court to fairly evaluate the application of a claimed exemption to distinct categories of documents supplied.

Here, ICE resorts to conclusory, general assertions without offering any description of the particular substance of each document and why the alleged withholdings fall within the claimed exemptions. Under these circumstances, ICE's claims under Exemptions 6 and 7 are impossible to assess. For instance, Professor Stevens has no way of testing ICE's claims that withholding so-called "case history" information, including immigration and criminal history details, under purported privacy concerns is proper. To be sure, Plaintiff does not seek the name, date of birth, full A-Number, or social security number of any subject or third party whose personally identifiable information is contained in the responsive records. But to meaningfully respond to ICE's claims of privacy invasion based on the expansion of public databases, an individualized, line-by-line analysis is required. Because ICE has not submitted an adequate *Vaughn* index, summary judgment should be denied, and Plaintiff should be permitted to supplement her challenges to the agency's withholdings once ICE produces a legally sufficient justification for its withholdings.

  B. ICE's Policy Forecloses ICE's Attorney-Client Privilege Claims Regarding Finalized USC Claims Memos.

Finalized USC Claims Memos are not subject to withholding under Exemption 5 based on the attorney-client privilege because they are required to be stored in databases accessible to and accessed by parties outside of the attorney-client relationship between OPLA and ERO. The attorney-client privilege protects from disclosure confidential communications from clients to their attorneys, as well as communications from attorneys to their clients containing confidential information supplied by the client. *See Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). As with the other prongs of Exemption 5, the burden rests with the Government to prove, through "detailed and specific information," that the withheld information falls within the domain of the privilege. *See Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 30 (D.C. Cir. 1998).

To sustain an Exemption 5 withholding based on the Attorney-Client privilege, the government bears the burden of demonstrating the communications between attorney and client are and remained confidential between ERO and OPLA. *See, e.g.*, *Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 71-72 (1st Cir. 2002); *Mead Data Cent. Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977); *Cuban v. SEC*, 744 F. Supp. 2d 60, 79-80 (D.D.C. 2010). Records shared with parties outside the attorney-client relationship lose their privileged character under Exemption 5.

By distributing finalized USC Claims Memos that might otherwise be protected by the attorney-client privilege outside the bounds of the attorney-client relationship, ICE destroys the privileged character of those Memos. Contrary to ICE's declarations, *see* ECF No. 67-1 ¶ 11, ICE Policy 16001.2 requires ICE personnel to save finalized USC Claims Memos in several locations aside from PLAnet. ECF No. 67-1 at 18 ("6. Recordkeeping.") Specifically, ICE personnel must store the finalized USC Claims Memo in the subject's Alien File ("A-File") within the National File Tracking System. *Id.* ("Records generated pursuant to this directive are maintained in the Alien File, Index, and National File Tracking System of Records, 76 Fed. Reg. 34223 (Jun. 13, 2011) . . . and the Immigration and Enforcement Operational Records (ENFORCE), 75 Fed. Reg. 23274 (May 3, 2010). Both the A-File

and ENFORCE systems are accessible to a wide variety of non-ERO, non-OPLA, and non-ICE actors—including, most notably, the United States Citizenship and Immigration Services ("USCIS") and State Department adjudicators who are supposed to render an independent adjudication of affirmative claims for U.S. Citizenship or passport documents lodged by subjects of the finalized USC Claims Memos. *See* ICE Policy 16001.2 § 4(f).

### C. ICE's Finalized USC Claims Memos Do Not Consist Exclusively of Attorney Work Product.

Because ICE's USC Claims Policy dictate that finalized USC Claims Memos are prepared for the purpose of "ensuring that the potential U.S. citizenship claims of individuals encountered by U.S. Immigration and Customs Enforcement (ICE) officers, agents, and attorneys is immediately and carefully investigated and analyzed," ICE's post hoc litigation rationalization that USC Claims are prepared in anticipation of litigation fails. *Compare* ECF No. 67-1 at 12, ICE Policy 16001.2 ("Purpose/Background") *with* ECF No 69, ICE Memo at 14-16. While it is conceivable that USC Claims Memos eventually find their way into the files of some future litigation, that is not their purpose. Rather, the memos allow the agency to full "ICE policy to carefully assess and expeditiously investigate and analyze the potential U.S. citizenship claims of individuals encountered by ICE." ECF No. 67-1 at 12, ICE Policy 16001.2 ("2. Policy").

ICE's categorical statement that all finalized USC Claims Memos are prepared in anticipation of litigation fails for reasons articulated in *American Immigration Council v. DHS*, 950 F. Supp. 2d 221, (D.D.C. 2013):

> While it may be true that the prospect of future litigation touches virtually any object of a [law-enforcement agency] attorney's attention, if the agency were allowed "to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated."

(quoting *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574 (D.C. Cir. 1987)). Here, the fact that the agency's lawyers are preparing analytical memos is a functional not of reasonably foreseeable

10

litigation, but of the legal necessity that ICE refrain from exercising its awesome power as "the second largest investigative agency in the federal government" ECF No. 67-2, Pineiro Decl. ¶ 18, to arrest, imprison, or deport U.S. Citizens. The legal necessity to perform this analysis exists independent of any foreseen litigation.

Moreover, the agency has failed to explain how each and every facts section of each and every finalized USC Claims Memorandum described in its *Vaughn* index would raise attorney work-product concerns. As such, ICE fails to meet its burden of justifying withholding based on work product assertions.

### D. The Deliberative Process Privilege Does Not Apply to Finalized USC Claims Memos.

The finalized USC Claims Memos do not fall within the Deliberative Process Privilege because they are neither pre-decisional nor related to any ICE policymaking regarding the agency's approach to determining whether a potential subject is a U.S. Citizen. *See Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2017). ICE is thus not entitled to summary judgment on its Deliberative Process Privilege withholdings to finalized USC Claims Memos.

As an initial matter, the agency engages in a rhetorical sleight of hand to suggest that because ICE cannot formally confer citizenship, the decision-making process reflected in ICE Policy 16001.2 can never result in a final decision. Through this rhetorical device, ICE would convert all USC Claims Memos, including final ones as described in ICE's policy, pre-decisional and subject to withholding under Exemption 6 pursuant to the deliberative process privilege. ICE Memo at 17-18. What ICE elides in this 'we-can't-grant-citizenship-so-nothing's-ever-final' framing is the fact that the agency *must* reach a final decision about its jurisdiction over a suspected non-citizen in order to continue detaining, prosecuting, or deporting them. ICE must make a jurisdictional decision that a person is a non-citizen before it has the power to engage in any of those enforcement activities.

Fortunately, the terms of ICE Policy 16001.2 resolve the ambiguity ICE seeks to inject into the question of whether a USC Claims Memo can ever become the final statement of the agency's position. Section 5.1, Procedures for Investigating and Assessing Potential U.S. Citizenship contains Sections 3(a) and 4, which contemplate a prompt determination by ICE Headquarters and documentation six courses of action agency personnel are required to take once that determination is made. ECF No. 67-1 at 17. While ICE's declarants refer to a never-final, never-ending process by which claims memoranda exist in perpetual limbo, *see id.* ¶¶ 10-11, ECF 67, ICE L.R. 56.1 Stmt. ¶¶ 40-46, the written policy those declarants must follow says otherwise.

In addition, ICE's analysis of citizenship statutes in the finalized USC Claims Memos does not constitute policymaking or deliberation about the agency's approach to the law. Documents explaining and applying legal precedent are not covered by Exemption 5. *See Knight First Amendment Institute at Columbia Univ. v. DHS*, No. 17-7572, 2019 WL 4601718, Slip Op. at 7 (S.D.N.Y. Sept. 23, 2019) (citing *Brennan Ctr. for Justice at NYU School of Law v. DOJ*, 697 F.3d 184, 201 (2d Cir. 2012); *Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2010); *Public Citizen v. OMB*, 598 F.3d 865 (D.C. Cir. 2010). Thus, any analysis that may be occurring under the redactions in the legal sections of ICE's USC Claims Memos is not and cannot constitute true policy deliberation, as ICE is not free to change the federal government's policy on who is and is not a U.S. Citizen. U.S. Const. Art. I. § 8 ("To establish a uniform Rule of Naturalization."). For these reasons, ICE is not entitled to summary judgment on its deliberative process privilege claims.

## CONCLUSION

For the foregoing reasons, the Court should GRANT Plaintiff's motion for partial summary judgment, ORDER ICE to conduct an adequate search, and ENJOIN ICE's improper withholdings in violation of the Freedom of Information Act. The Court should DENY ICE's Motion for Summary Judgment in its entirety.

Dated: November 11, 2019	Respectfully submitted,

/s/ R. Andrew Free
**R. ANDREW FREE**
**LAW OFFICE OF R. ANDREW FREE**
**TNBPRN 30513**
P.O. Box 90568
Nashville, TN 37209
Tel. 844-321-3221x1
Fax: 615-829-8959
Andrew@immigrantcivilrights.com

13