UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, )<br>)<br>          Plaintiff, )<br>)<br>    v. )<br>)<br>U.S. DEPARTMENT OF HOMELAND )<br>SECURITY, IMMIGRATION AND )<br>CUSTOMS ENFORCEMENT, )<br>)<br>          Defendant. ) | No. 17 C 2853<br><br>Chief Judge Pallmeyer |

**DEFENDANT'S REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT AND
<u>SUR-REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

**Introduction**

Plaintiff Jacqueline Stevens submitted a Freedom of Information Act request to defendant U.S. Immigration and Customs Enforcement ("ICE") seeking communications to and from agency attorneys about the U.S. citizenship claims of individuals encountered by ICE that contain both privileged information and the personally identifiable information of third parties and ICE employees. When ICE naturally redacted much of the information in those documents in accordance with FOIA exemptions 5, 6, 7(C), and 7(E), Stevens claimed that ICE had failed to adequately search for responsive records and improperly withheld that information from her, and now makes several misstatements in her reply to try to manufacture an issue about the agency's production of responsive documents. Her last-ditch attempts to get access to the clearly protected information in these attorney communications should be rejected.

**Argument**

Stevens makes two principal arguments in her reply, neither of which has merit. First, she erroneously contends that ICE did not adequately search for responsive documents and did not

produce all responsive documents to her. Dkt. 73, Stevens Reply at 2-7. However, as previously stated, ICE identified and searched the program offices likely to have responsive records to Stevens's FOIA request and produced those responsive records to her. Dkt. 69, ICE Summ. J. Mem. at 8-11. Second, while Stevens asserts that ICE improperly withheld information in the produced records (Stevens Reply at 7-12), the information she seeks is protected from disclosure by the attorney-client privilege, the attorney-work product privilege, and the deliberative process privilege, or is personally identifiable information that ICE correctly withheld for privacy reasons. ICE Summ. J. Mem. at 19-25.

**I.     ICE Conducted an Adequate Search for Responsive Records.**

Stevens does not dispute that ICE correctly identified the two program offices likely to have records responsive to her FOIA request (the Office of the Principal Legal Advisor ("OPLA") and Enforcement Removal Operations ("ERO")); instructed those offices to search for responsive documents; and produced all unique, responsive records to her. Stevens Reply at 2-7; ICE Summ. J. Mem. at 8-11. Instead, she argues that the search was inadequate because ERO and one of its components, the Law Enforcement Support Center ("LESC"), purportedly did not produce *other* documents that were responsive to her request. Stevens Reply at 2-6. That is simply not true. ERO searched for responsive records and determined during that search that it did not possess any responsive documents that were different than the documents OPLA had collected and produced in response to Stevens's FOIA request. Dkt. 67, ICE Statement of Facts ¶ 15 (Pineiro Decl. ¶¶ 24-29). ERO thus did not have any other responsive records to produce to her. *Id.*

Moreover, Stevens's suggestion that the search was inadequate because ERO should have tasked its field offices and headquarters officials with a search of records responsive to her request is belied by the facts. Stevens Reply at 5-6. As ICE explicitly stated on summary judgment, the

2

ERO shared-email inbox is the email account that ERO uses for citizenship-claim alerts, for review and concurrence of citizenship-claim memoranda, and for documentation relating to those memoranda. ICE SOF ¶ 15 (Pineiro Decl. ¶ 27). In other words, that inbox contains the ERO communications about citizenship claims that are responsive to Stevens's FOIA request. *Id.* ERO did not need to search anywhere else for potentially responsive documents. And because the contents of the ERO shared-email inbox is identical to the contents of the OPLA shared-email inbox, ICE's collection and production of the contents of the OPLA shared-email inbox provided Stevens with the responsive documents from ERO and constituted an adequate search. *Id.* ¶¶ 9-15, 55 (Pineiro Decl. ¶¶ 20-29; Dent Decl. ¶¶ 6-11).

Stevens's argument about the LESC fails for the same reason: the LESC—like ERO—did not have any unique documents that were responsive to Stevens's FOIA request. Contrary to what Stevens says, ICE did not admit that responsive documents exist within the LESC that were not produced to Stevens. Stevens Reply at 3. Rather, ICE made clear that the LESC did not need to be separately tasked with a search for potentially responsive documents because it was unlikely to have any unique, responsive documents. ICE Summ. J. Mem. at 9. That is because any inquiry the LESC received about a citizenship claim was emailed to an ERO field office and also sent to the OPLA shared-email inbox that ICE searched in response to Stevens's FOIA request. ICE SOF ¶ 62 (Pineiro Decl. ¶ 30). As a result, the inquiries resulting from the four telephone calls the LESC received during the timeframe at issue in Stevens's FOIA request would have been sent to the shared-email inbox that ICE searched and from which it produced responsive records to Stevens. *Id.* The LESC therefore did not need to be separately tasked to search for records that were already captured during ICE's search.

Stevens's reliance on the System of Records Notification ("SORN") for the LESC is misplaced. Stevens Reply at 4. The SORN does not suggest that the LESC maintains responsive records apart from the inquiries sent to the OPLA shared-email inbox, as Stevens contends. *Id.* To the contrary, the provision of the SORN that Stevens references simply identifies the individuals about whom an LESC record may be made, including individuals who call the LESC hotline and individuals about whom such a call is made. *Id.* (citing 73 Fed. Reg. 74739-01 at 74741). ICE does not dispute that an inquiry sent to the OPLA shared-email inbox would include information about the individual who called the hotline and the individual about whom such a call was made. However, Stevens notably references nothing from the SORN showing that the LESC maintains records about those individuals outside of the inquiries that would have been emailed to the shared inbox. Stevens Reply at 4. Her speculation about the possible existence of other LESC documents, without more, is insufficient to establish the agency's search was inadequate. *Wilber v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) (The "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records.").

Stevens lastly asserts that the search was inadequate because she believes that ICE failed to produce a number of unique citizenship-claim memoranda based on data she received in response to a different FOIA request. ICE Reply at 6-7. As ICE previously showed, Stevens misinterpreted that data, which was not limited to *unique* citizenship memoranda, as Stevens believed, but rather applied to *all* citizenship memoranda—whether new or existing—reviewed by the agency during a specific time period. ICE Summ. J. Mem. at 10-11. Stevens does not deny on reply that her understanding of the data was incorrect. Stevens Reply at 6 (acknowledging that her incorrect understanding was based on the "limited information at her disposal"). Yet, she still

4

blames the agency for not providing her with the number of unique memoranda created during the time period at issue in her FOIA request, claiming that the failure to provide her that information is evidence that the search was inadequate. *Id.* at 6-7. ICE, however, is not hiding that information from Stevens, as she contends; it simply does not track the number of unique or new citizenship memoranda that are created during any given time period, nor is it under any obligation to do so. Rather, as has already been said (though apparently not clearly enough for Stevens), the data ICE has accounts for *both* new and existing citizenship memoranda; it does not draw a distinction between the two. ICE SOF ¶ 28 (Dent Decl. ¶¶ 20-21). So rather than rely on the flawed data Stevens references, this court should instead hold that ICE's search was reasonable based on its collection and production of the citizenship memoranda and other documents it received from the agency attorneys who actually prepared each citizenship memoranda during the time period at issue in Stevens's request, as well as from the shared-email inbox where the memoranda and other documents are required to be sent pursuant to ICE policy. ICE Summ. J. Mem. at 1-3, 8-9.

**II.     ICE Did Not Improperly Withhold Any Information under the FOIA.**

ICE correctly withheld privileged information in the produced documents under FOIA exemption 5, the personally identifiable information of third parties and ICE employees under FOIA exemptions 6 and 7(C), and law enforcement information under FOIA exemption 7(E). ICE Summ. J. Mem. at 11-28. Stevens does not challenge the Exemption 7(E) redactions that ICE made to the documents but claims that the remainder of the redactions were improper. She is wrong for several reasons.

First, ICE did not waive protection under the attorney-client privilege by disclosing the citizenship memoranda responsive to Stevens's FOIA request to anyone outside the government. Stevens does not dispute that the memoranda are not shared outside the federal government, but

5

she asserts that ICE still waived the privilege by storing the memoranda in databases accessible to other government personnel, including United States Citizenship and Immigration Services ("USCIS") and State Department adjudicators. Stevens Reply at 9-10. Stevens notably provides no authority in support of her proposition, which is both factually and legally incorrect. The memoranda are prepared for internal agency use and are not filed with any court or shared with anyone *outside* the agency. ICE SOF ¶¶ 51-52. Furthermore, access to the database on which the memoranda are saved is limited to internal agency use only. *Id.* One important fact Stevens conspicuously omits is that ICE and USCIS are different components of the *same* agency: the U.S. Department of Homeland Security. As a result, protection under the attorney-client privilege would not be lost had personnel from those two components discussed or shared the memoranda. Nor would it necessarily be lost if the memoranda were shared with government officials at a different agency such as the State Department (even though they are not), as courts have repeatedly held that attorney communications between government officials at different agencies remain privileged. *E.g., United States v. NGL Crude Logistics, LLC,* No. 16 C 1038, 2018 WL 9870043, at *2 (N.D. Iowa June 18, 2018) ("As long as the communication was for the purpose of giving or receiving legal advice, it matters not that the lawyer and client work for different agencies of the federal government (or different departments of the same agency)."); *Hunton & Williams LLP v. E.P.A.,* 248 F. Supp. 3d 220, 256 (D.D.C. 2017) (holding that attorney-client privilege applied to communications between counsel for the U.S. Army Corps of Engineers and counsel for the U.S. Department of the Army); *Hollar v. I.R.S.,* No. 95 C 1882, 1997 WL 732542, at *5 (D.D.C. 1997) ("Communications between one agency's attorneys and another agency's attorneys are also covered by both Exemption 5 and the attorney-client privilege as 'inter-agency' memoranda so long as those communications reflect the facts given by agency decision-makers to elicit legal

advice") (citation omitted). ICE thus properly withheld information from the memoranda based on the attorney-client privilege. *See Ocampo v. Harrington,* No. 14 C 3134, 2015 WL 4910164, at \*\*1-2 (C.D. Ill. Aug. 17, 2015) (holding that ICE citizenship-claim memorandum was protected from disclosure by the attorney-client privilege).

Second, ICE also correctly withheld the citizenship memoranda pursuant to the attorney-work-product privilege. While Stevens is correct that ICE policy requires the creation of a memorandum for each individual the agency encounters who makes an affirmative claim of U.S. citizenship or has certain indicia of citizenship, it is also true that ICE attorneys prepare each memorandum with the knowledge that future litigation is very likely given the sensitive nature of the rights involved in a citizenship claim and in ICE's inadvertent detention of an American citizen. ICE Summ. J. Mem. at 14-15. Nothing prevents the memorandum from having a dual purpose, and it is this latter purpose that protects the information in the memorandum as attorney-work product (in addition to the attorney-client privilege and deliberative-process privilege). Indeed, *every* individual for whom ICE creates a citizenship memorandum is currently, or will likely be, a respondent in a removal proceeding in immigration court at the time the memorandum in prepared. ICE SOF ¶ 49. The prospect of litigation therefore is not hypothetical, as Stevens suggests; it's close to a near certainty. *Id.* ¶¶ 47-50 (Dent Decl. ¶¶ 12-15). And because the work-product doctrine protects both factual and deliberative matters, ICE properly withheld the factual information in each memorandum under this privilege. ICE Summ. J. Mem. at 15 (citing *Conservation Force v. Jewell,* 66 F. Supp. 3d 46, 65 (D.D.C. 2014)).

Third, ICE properly withheld citizenship memoranda under the deliberative-process privilege as well because the memoranda are both pre-decisional and deliberative. ICE Summ. J. Mem. at 16-19. Stevens apparently misunderstands the final decision that each memorandum

precedes when she claims that the final decision is whether or not to formally confer citizenship on an individual—a decision that ICE does not have the authority to make. Stevens Reply at 11. On the contrary, the final decision ICE makes is whether it should initiate, continue, or terminate removal proceedings against an individual it has encountered. ICE SOF ¶¶ 40-46. Importantly, that final decision is not made in the memorandum; it is instead made by other ICE personnel based on the factual examination and legal analysis contained in the memorandum. *Id.* Because each memorandum is prepared to assist other ICE personnel in arriving at a decision about what to do with an individual with a citizenship claim, the memorandum is predecisional and subject to protection under the deliberative-process privilege. *See Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 482 (2d Cir. 1999) (holding that a document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at a decision).

Furthermore, the memoranda are also deliberative because the facts, legal analysis, and options discussed in them are selective in nature and highlight the portions of the record that an ICE attorney deemed pertinent to the recommendation on the citizenship claim. *See id.* (recognizing that the deliberative-process privilege focuses on documents reflecting "advisory opinions, recommendations and deliberations" by which governmental decisions are made). The memoranda do not attempt to change the federal government's policy on who is and is not a citizen, as Stevens contends (Stevens Reply at 12), but rather provide a legal opinion about whether or not an individual encountered by ICE is a citizen as well as a recommendation on how ICE should proceed based on that citizenship determination. That is exactly the type of information the deliberative-process privilege is intended to protect. *See Coastal States Gas Corp. v. U.S. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980) (documents that are protected by the deliberative-process privilege "would inaccurately reflect or prematurely disclose the views of the agency,

suggesting as agency position that which is as yet only a personal position."); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 207-08 (D.D.C. 2010) (agency properly asserted deliberative-process privilege over email messages involving recommendations and evaluations for how to respond to Congressional and media inquiries).

Finally, ICE correctly withheld the personally identifiable information of third parties and ICE employees from the produced documents, including the citizenship memoranda, in accordance with FOIA exemptions 6 and 7(C). ICE Summ. J. Mem. at 19-25. Stevens does not challenge the merits of ICE's redactions under those exemptions but instead claims that the *Vaughn* index and accompanying declarations contain conclusory, general assertions that somehow prevent her from challenging ICE's withholdings under Exemptions 6 and 7(C). Stevens Reply at 7-8. Stevens, however, tellingly does not identify the information she believes is missing from those documents. There is none. The *Vaughn* index and declarations go into sufficient detail about the type of personally identifiable information ICE withheld under Exemptions 6 and 7(C): names, signatures, contact information, biometric information, immigration status, location of arrest, date of arrest, and prior immigration history. ICE Summ. J. Mem. at 20-22. The foregoing descriptions of the withheld information are clearly not general or conclusory and allow Stevens to challenge the agency's withholding of that type of information. Her decision not to do so speaks volumes.

**Conclusion**

For the foregoing reasons and the reasons previously stated, summary judgment should be granted in favor of ICE, and Stevens's motion for summary judgment should be denied.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Prashant Kolluri
PRASHANT KOLLURI
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9085
prashant.kolluri@usdoj.gov
