# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17 C 2853 |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | Judge Rebecca R. Pallmeyer |
| ENFORCEMENT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Stevens is a professor of political science and director of a "Deportation Research Clinic" at Northwestern University. (Compl. [1] ¶ 4.) Professor Stevens has requested certain records from defendant, U.S. Immigration and Customs Enforcement ("ICE"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; in this action, Stevens challenges the adequacy of the government's response to her FOIA request. In response to an earlier motion for summary judgment, this court directed the government to submit a supplemental *Vaughn* index—a document setting out the bases for ICE's redactions in a representative sample of documents. ICE submitted the supplemental *Vaughn* index in March 2019, and both sides now seek summary judgment on the issue of the adequacy of ICE's search and production. As explained here, the court concludes ICE has not established that its search was adequate or that it has properly withheld information under certain exemptions to the Freedom of Information Act, and therefore denies ICE's cross-motion in part. The court reserves judgment on all other issues pending the parties' compliance with various directives that could obviate the need for further rulings.

## BACKGROUND

The parties' summary judgment submissions support the following facts. ICE is a component of the U.S. Department of Homeland Security ("DHS") and an agency of the United

States within the meaning of 5 U.S.C. § 552(f)(1). (ICE Oct. 2019 L.R. 56.1 Stat. [67] ¶ 36.) DHS administers and enforces laws relating to immigration and naturalization. (*See id.* ¶ 37.) "ICE is the principal investigative arm of DHS and is tasked with preventing any activities that threaten national security and public safety by, among other things, investigating individuals who may be present in the United States illegally." (*Id.* ¶ 38.) The parties' FOIA dispute centers on what Stevens calls "USC Claims Memos." ICE attorneys, working with ICE officers and agents, prepare a USC Claims Memo whenever ICE encounters an individual who makes a claim to U.S. citizenship or has certain indicia of U.S. citizenship. (Stevens Mem. in Supp. of Mot. for Summ. J. ("Stevens Mot.") [55], 8; *see* ICE Oct. 2019 L.R. 56.1 Stat. ¶¶ 40-41.)[1] Each USC Claims Memo "contain[s] a factual examination and legal analysis of the [citizenship] claim." (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 40.) It also contains "a recommended course of action regarding removal proceedings, in particular whether the agency should initiate, continue, or move to terminate the actual or contemplated removal proceedings based on the facts available to the agency at the time." (*Id.* ¶ 42.)

The USC Claims Memos are prepared in order "to prevent ICE personnel from inadvertently detaining a U.S. citizen and/or initiating or continuing removal proceedings against a citizen." (*Id.* ¶ 41.) For example, the legal analysis in a USC Claims Memo "must indicate whether" the evidence "strongly suggests that the individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face." (ICE Directive 16001.2, Ex. 1 to Decl. of Rhonda Dent in Supp. of ICE Cross-Mot. for Summ. J. [67-1], ¶ 5.1(2)(b)(1).) If the legal analysis so indicates,

---

[1] According to ICE, the following are individuals "encountered by ICE" for whom USC Claims Memos are prepared: "(1) individuals currently in removal proceedings (either before ICE or the Department of Justice Executive Office for Immigration Review); (2) individuals arrested and taken into ICE custody pursuant to the agency's civil immigration authorities; and (3) individuals subject to ICE immigration detainers following their release from criminal custody of another law enforcement agency." (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 48.) According to Stevens, ICE must prepare USC Claims Memos after it encounters *any* "individuals bearing indicia of U.S. Citizenship, not just [individuals falling within] these three categories." (Stevens Nov. 2019 L.R. 56.1 Resp. [74-1] ¶ 48.)

ICE is required to take certain actions, such as canceling an immigration detainer if ICE has lodged one against the claimant or "immediately release[ing]" a claimant who is in custody. (*Id.* ¶ 5.2(4)(a).) As discussed in more detail below, Stevens challenges the redactions ICE made to final versions of USC Claims Memos that were responsive to her FOIA request.

**A.     ICE Directive 16001.2**

In November 2015, ICE issued a Directive that "establishes ICE policy and procedures for ensuring that the potential U.S. citizenship of individuals encountered by [ICE] officers, agents, and attorneys is immediately and carefully investigated and analyzed." (ICE Directive 16001.2 ¶ 1.) The Directive provides, in relevant part:

> ICE personnel must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship, as well as when certain indicia of potential U.S. citizenship, as identified in this Directive, are present in a case even if the individual does not affirmatively make a claim to U.S. citizenship.

ICE Directive 16001.2 ¶ 2.

"Regardless of the citizenship-claim trigger (affirmative claim or indicia), ICE documents these citizenship claims via alert emails to shared inboxes maintained by two ICE program offices: the Office of the Principal Legal Advisor ("OPLA") and Enforcement Removal Operations ("ERO"). (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 39.) Sometimes, ICE receives citizenship claims through a telephone hotline operated by ERO's Law Enforcement Support Center ("LESC"), whose responsibilities include investigating such claims. (*See* Stevens Aug. 2019 L.R. 56.1 Stat. [56] ¶¶ 16-18.) ICE and the Law Enforcement Support Center created the hotline "for detained individuals to call if they believe they are U.S. citizens." (*Id.* ¶ 18.) ICE asserts that the public can also call the hotline "with concerns." (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 62.) When the Law Enforcement Support Center receives a citizenship claim through the hotline, it must "immediately . . . forward[] [the caller's information] to the ERO field office victim/witness email inbox with the specific subject heading of 'Immediate review needed: USC claim.'" (Stevens Aug. 2019 L.R. 56.1 Stat. ¶ 19.) The court presumes that review must be "immediate" because the

claimant has been detained.

Under ICE Directive 16001.2, OPLA attorneys must prepare a USC Claims Memo concerning every citizenship claim ICE receives. (*See* ICE Oct. 2019 L.R. 56.1 Stat. ¶ 40; ICE Directive 16001.2 ¶ 5.1(2).) As noted above, each memorandum contains "a legal analysis of the . . . claim based on facts available to the agency at the time." (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 42.) It also contains "a recommended course of action regarding removal proceedings." (*Id.*) "The memorandum must be clearly annotated as containing pre-decisional, privileged attorney-client communication, attorney work product, and sensitive personally identifiable information." (ICE Directive 16001.2 ¶ 5.1(2)(c).) After completing a USC Claims Memo, the attorney within the Office of Principal Legal Advisor must "submit [it] for review to [ERO headquarters ("ERO HQ")] and the Immigration Law and Practice Division . . . of OPLA, who decide either to concur with the attorney's conclusion and recommendation . . . or to decline to concur and request alternate courses of action." (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 44; *see* ICE Directive 16001.2 ¶¶ 5.1(2)(d), 5.1(3).) "In the event [ERO HQ] or [the Immigration Law and Practice Division] require more information or further analysis, the OPLA attorney and an [Immigration Law and Practice Division] attorney work together to address those concerns." (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 44.) "Once [ERO HQ] and the [Immigration Law and Practice Division] reach a decision, the memorandum is finalized . . . ." (*Id.* ¶ 45.) A USC Claims Memo can be updated after ERO HQ and the Immigration Law and Practice Division decide on a course of action, such as initiating, continuing, or moving to terminate a removal proceeding. (*See* ICE Directive 16001.2 ¶ 5.1(2)(e).)

**B.     Stevens' FOIA Request**

Stevens submitted her FOIA request to ICE on February 13, 2017. (*See* Stevens February 2017 Email, Ex. 2 to Decl. of Fernando Pineiro in Supp. of ICE Cross-Mot. for Summ. J. [67-2], 1.) She sought "all correspondence on the detention or removal proceedings for people claiming or proving U.S. citizenship since January 1, 2017. This request includes but is not limited to email

received by or sent to an email address established by ICE for the purpose of assessing claims of U.S. citizenship." (*Id.*) In addition, Stevens sought "all correspondence as well as attachments and referenced reports, notes, text messages, or any other information maintained in any medium associated with" these U.S. citizenship claims. (*Id.*)[2] Stevens filed this lawsuit after ICE reported that it could not process her request within the statutory time limit. (*See* Feb. 2019 Order [40], 1.) That delay is no longer at issue; ICE processed the request while this action was pending. (*See id.* at 2.) ICE collected 6,042 pages of responsive records. (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 59.) It released 4,841 pages with partial redactions, withheld 746 pages in full, released 280 pages in full, withheld 158 pages as duplicates, and "referred 17 pages to other agencies for processing and release." (*Id.*)[3]

ICE moved for summary judgment in April 2018, asserting that it had conducted an adequate search for responsive records and had not improperly withheld any information from Stevens. (*See* Feb. 2019 Order 2.) Pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), ICE concurrently filed an index explaining the bases for its redactions in an agreed representative sample of documents. (*See* Feb. 2019 Order 2.) The sample comprised the first 150 pages of two productions but, as the court explained in its previous order, it happened not to contain any finalized—as opposed to draft—USC Claims Memos. (*See id.* at 2-3.) Because ICE's redactions to finalized USC Claims Memos had become the main point of contention between the parties, the court directed ICE to "prepare a supplemental *Vaughn* index and affidavit that specifically address finalized USC Claims Memos." (*Id.* at 4-6.)

---

[2] The parties appear to agree that Stevens seeks responsive materials only through mid-May 2017, when ICE finished processing her FOIA request. (*See* Decl. of Fernando Pineiro in Supp. of ICE Cross-Mot. for Summ. J. ("Pineiro Decl.") [67-2] ¶ 23; *see generally* Stevens Reply in Supp. of Mot. for Summ. J. & in Opp. to ICE Cross-Mot. for Summ. J. ("Stevens Reply") [73].)

[3] The court is uncertain whether this means that ICE forwarded 17 of its own documents to other agencies, or that ICE directed Stevens to obtain 17 documents from other agencies having custody of them. Neither side here has explained whether the "other agencies" have released these 17 pages to Stevens, but Stevens does not appear to be seeking any relief concerning these pages.

5

After ICE complied with that directive, both parties moved for summary judgment. Plaintiff Stevens again challenges ICE's redactions to finalized USC Claims Memos. She also challenges, for the first time, redactions to other documents and the adequacy of ICE's search. Stevens asks the court to "order ICE to conduct an adequate search" and "enjoin [its] improper withholdings in violation of [FOIA]." (Stevens Mot. 19.) ICE, on the other hand, doubles down on its contention that it "conducted a reasonable search and did not improperly withhold any information," and asks the court to enter summary judgment in its favor. (ICE Mem. in Supp. of Cross-Mot. for Summ. J. ("ICE Cross-Mot.") [69], 1.)

## **DISCUSSION**

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When ruling on a motion for summary judgment, a court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, a court examines the record and draws "all reasonable inferences in the light most favorable to the party against whom the motion was filed." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019).

"FOIA requires a federal agency upon request to disclose records in its possession, subject to nine exemptions." *Enviro Tech Int'l, Inc. v. U.S. Envtl. Prot. Agency*, 371 F.3d 370, 374 (7th Cir. 2004) (citing 5 U.S.C. § 552(a), (b)). "Disclosure is required unless the requested record is clearly exempted from disclosure by the statute." *Enviro Tech*, 371 F.3d at 374. Because disclosure is the "dominant objective" of FOIA, courts are to construe the exemptions narrowly. *Patterson v. Internal Revenue Serv.*, 56 F.3d 832, 836 (7th Cir. 1995) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)); *see also Enviro Tech*, 371 F.3d at 374; *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998) ("While we must . . . give 'meaningful reach and application' to the Exemption . . . we must also take care to construe the Exemption narrowly

given the general policy favoring disclosure . . . ." (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). It is the government's burden to prove "by a preponderance of the evidence that a withheld document falls within one of the exemptions." *Enviro Tech*, 371 F.3d at 374. To determine whether the government has met that burden, the court conducts a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(b). The government is entitled to summary judgment "only if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" *Patterson*, 56 F.3d at 836 (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993)).

**A.     Adequacy of Search**

In opposing ICE's first motion for summary judgment, Stevens stated that she "does not challenge, and expressly stipulates to, entry of partial summary judgment on . . . the adequacy of ICE's search." (Stevens Opp. to ICE Mot. for Summ. J. [29], 2 n.1.) Stevens has changed her position, however; she now argues that the search was inadequate. Stevens contends she has not waived the argument (*see* Stevens Mot. 17-19), and ICE does not so much as mention waiver, so the court will entertain this challenge.

To prevail on summary judgment concerning this issue, ICE "must show that there is no genuine issue of material fact about the adequacy of its records search." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015). To this end, it "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Henson v. Dep't of Health & Human Servs.*, 892 F.3d 868, 875 (7th Cir. 2018). A court presumes that the agency acted in good faith. *See Henson*, 892 F.3d at 875; *Rubman*, 800 F.3d at 387.[4] That presumption can be

---

[4]     It is unclear whether the presumption applies from the outset, or whether it applies only to affidavits that an agency has submitted to support the adequacy of its search. *Henson*,

7

supported by "reasonably detailed," non-conclusory affidavits describing the agency's search. *Henson*, 892 F.3d at 875 (stating that the affidavits must, among other things, describe "the kind of search performed by the agency" and "aver that all files likely to contain responsive documents were searched").

A FOIA requester can respond to an agency's affidavit by offering "'countervailing evidence' as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387 (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003)). "The requester must show 'some reason to think that the document would have turned up if the agency had looked for it.'" *Patterson*, 56 F.3d at 841 (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). Because "neither the requester nor the court know the content of the agency's records, this is a low bar." *Rubman*, 800 F.3d at 387. Ultimately, "the question at summary judgment is not whether the agency *might* have additional, unidentified responsive documents in its possession." *Rubman*, 800 F.3d at 387. "Rather the court need only determine whether the search itself was performed reasonably and in good faith." *Id.* But "if a review of the record raises substantial doubt [about the adequacy of the search], particularly in view of well defined requests and positive indications of overlooked materials, summary judgment [in favor of the agency] is inappropriate." *Rubman*, 800 F.3d at 387 (quoting *Iturralde*, 315 F.3d at 314).

Stevens argues that ICE's search was inadequate, first, because the Enforcement Removal Operations unit did not conduct an independent search. Rather, after ICE's FOIA office identified both the Office of Principal Legal Advisor and ERO as reasonably likely to possess

---

892 F.3d at 875, and *Rubman*, 800 F.3d at 387, imply the former. The court in *Rubman*, however, cites *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197 (D.C. Cir. 1991), in its discussion of the presumption. There, the D.C. Circuit stated, "Agency *affidavits* are accorded a presumption of good faith." *Id.* at 1200 (emphasis added); *see also Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992) ("In the face of government affidavits made in good faith, speculation would not defeat" an agency's motion for summary judgment on the adequacy of its search). For the reasons discussed below, the distinction does not affect the outcome in this case.

responsive documents, only OPLA—specifically, its Field Legal Office and Immigration and Law Practice Division—conducted a search. (*See* Stevens Mot. 6; Stevens Aug. 2019 L.R. 56.1 Stat. ¶ 11.) Stevens believes that ERO likely has responsive documents unique from those that the Office of Principal Legal Advisor produced because ERO plays a different role in processing USC Claims Memos. ERO HQ, for example, reviews the memoranda and decides whether the agency should implement the recommendations therein. (*See, e.g.*, Stevens Reply [73], 5-6.) In addition, the Law Enforcement Support Center—which operates the citizenship claims hotline— is located within ERO, not OPLA. (*See* Stevens Mot. 13; Stevens Reply 2-5.)

To support the adequacy of ICE's search, ICE's Acting FOIA Officer, Fernando Pineiro, submitted an affidavit in which he explained that ERO uses just one email inbox "for initial USC claims alerts, for review and concurrence on USC claims memoranda, and for documentation of USC claims memoranda." (Pineiro Decl. ¶ 27.) Mr. Pineiro also explained that the inbox is "the only place where ERO stores USC claims memo[s]." (*Id.*) And he stated that ERO "reviewed" that inbox and determined that its contents would not "have unique responsive emails and accompanying attachments . . . that were different from the responsive emails from [the Office of the Principal Legal Advisor's] USC Claims inbox and/or [Immigration Law and Practice Division] attorneys." (*Id.* ¶ 28.) Regarding the ERO's Law Enforcement Support Center, Mr. Pineiro explained that "[i]f the LESC receives an inquiry regarding a USC claim, [it] emails the inquiry to the appropriate ERO field office." (Pineiro Decl. ¶ 30.) The ERO field office, in turn, emails the inquiry to two inboxes for USC claims: one maintained by ERO and the other by the Office of the Principal Legal Advisor. (*Id.*) According to Mr. Pineiro, "any LESC information" is therefore "captured by" the Office of the Principal Legal Advisor, which produced responsive documents to Stevens. (*Id.*) Mr. Pineiro also stated that "the LESC only received four calls during the timeframe in question, all of which ended up triggering USC claim memos." (*Id.*)

Although the issue is close, the court concludes that it cannot properly grant summary judgment in ICE's favor concerning the adequacy of its search. "To support an agency's assertion

that it conducted a reasonable search," an affidavit must, among other things, "aver that all files likely to contain responsive documents were searched." *Henson*, 892 F.3d at 875. ICE's affidavit does not do so. Rather, it states that the ERO and LESC *do* have responsive documents—but that ICE did not search those divisions because it determined that the searches would not yield *unique* responsive documents. Later, in a reply, ICE clarified that "ERO *searched* for responsive records and determined during that search that it did not possess any [unique] responsive documents." (ICE Reply [79], 2.) This statement, however, still falls short of an averment that ICE searched "all files likely to contain responsive documents." *Henson*, 892 F.3d at 875. It also makes the court wonder why ICE did not simply produce the duplicates it purportedly located or explain why it would be burdensome to do so—especially because it appears that ICE did include duplicates in its production of documents maintained by the Office of Principal Legal Advisor. (*See, e.g.*, Stevens Mot. 8 (discussing Stevens' efforts to de-duplicate that production).)

Stevens, for her part, explains how these three units—the Office of Principal Legal Advisor, Enforcement Removal Operations and the ERO Law Enforcement Support Center—serve different functions, and argues that those divisions might have different documents as a result. Moreover, according to a regulation Stevens cites, the Law Enforcement Support Center stores information concerning U.S. citizenship claims in a database that is separate from the LESC's email system. *See* Privacy Act of 1974; Immigration and Customs Enforcement (ICE)-007 Law Enforcement Support Center (LESC) Alien Criminal Response Information Management (ACRIMe) System of Records, 73 Fed. Reg. 74739, 74741 (Dec. 9, 2008). ICE contends that Stevens is merely speculating about the database's contents, but it does not expressly assert that the database lacks responsive, non-exempt information. (*See* ICE Reply 4.) Significantly, Stevens' FOIA request can fairly be read as requesting responsive information contained in that database. (*See* Stevens February 2017 Email (seeking "any other information maintained in any medium associated with" U.S. citizenship claims).) The court recognizes that when an agency provides a "reasonably detailed" and "nonconclusory" affidavit recounting its search efforts, a

FOIA requestor's "speculation that other documents might exist" "does not undermine the reasonableness of the agency's search." *Moore v. Fed. Bureau of Investigation*, 366 F. App'x 659, 661 (7th Cir. 2010); *see also Rubman*, 800 F.3d at 387 (the court's inquiry on summary judgment "is not whether the agency *might* have additional, unidentified responsive documents in its possession"). But Stevens has articulated specific reasons why additional documents "would have turned up if [ICE] had looked for" them. *Patterson,* 56 F.3d at 841 (quoting *Miller*, 779 F.2d at 1383)). At this point neither Stevens nor the court has solid information about what ICE's records contain. *See Rubman*, 800 F.3d at 387. For these reasons, the court concludes that Stevens has identified "positive indications of overlooked materials" that "raise[] substantial doubt" about the adequacy of ICE's search. *Id.* (quoting *Iturralde*, 315 F.3d at 314). Summary judgment in ICE's favor, therefore, is inappropriate.[5]

That said, ICE will not be required to conduct expansive searches of ERO and its Law Enforcement Support Center. Because ICE states that ERO has already "searched for responsive records," ICE can satisfy the court's concerns by producing all responsive documents located in that search, even if they are identical to documents OPLA produced. (ICE Reply 2.) The court also orders ICE to search the Law Enforcement Support Center records, including the database Stevens identified, for documents concerning the "four calls" ICE says it received "during the timeframe in question." (Pineiro Decl. ¶ 30.)

**B. Exemptions**

In addition to challenging the adequacy of ICE's search, Stevens argues that ICE improperly redacted and/or withheld information under FOIA Exemptions 5, 6, and 7(C).[6] She

---

[5] Because the court's ruling is based on the reasons just articulated, it does not address Stevens' other arguments on the issue of adequacy. These arguments include Stevens' contention, based on information she received through a separate FOIA request, that ICE created more USC Claims Memos in the relevant timeframe than it produced to Stevens.

[6] Stevens does not challenge ICE's redactions or withholdings under FOIA Exemption 7(E), so the court does not address them. (*See* ICE Cross-Mot. 25-27; Supp. *Vaughn* Index, Ex. 1 to Pineiro Decl. [67-2], 10).

11

also contends that ICE failed to segregate non-exempt material. Stevens' arguments concern three categories of documents: emails, attachments, and finalized USC Claims Memos. Regarding emails, Stevens' position is again inconsistent with the one she took in opposing ICE's first motion for summary judgment. (*See* Stevens Opp. to ICE Mot. for Summ. J. 2 n.1 ("expressly stipulat[ing] to" entry of partial summary judgment in ICE's favor on "withholdings in the body of all emails").) Moreover, Stevens' argument is undeveloped; it ends with an incomplete sentence describing the relief she seeks. (*See* Stevens Mot. 17.) Stevens does not respond to ICE's argument that the court should deny her motion concerning emails on that basis. In addition, Stevens challenges the email redactions on the ground that "ICE has apparently withheld the domain names following all email addresses . . . making it impossible to determine whether recipients of responsive documents were agency employees," and thus calling into question "ICE's assertion that USC Claims [Memos] are 'for internal use only.'" (*Id.*) But Stevens does not challenge ICE's response that "[a] review of every email produced . . . confirmed that citizenship memoranda were never shared or produced to anyone outside the agency." (ICE Oct. 2019 L.R. 56.1 Stat. ¶ 64.) Finally, Stevens does not respond to ICE's point that she "fail[ed] to identify any of the specific emails . . . that she believes were not reasonably segregated." (ICE Cross-Mot. 28.) The court, therefore, concludes that Stevens has abandoned her challenge to redactions and/or withholdings in emails. For similar reasons, the court concludes that Stevens has abandoned her challenge to redactions and/or withholdings in attachments. Stevens stated in her opening motion that she would address ICE's "specific justifications" for such redactions and/or withholdings in her reply (*see* Stevens Mot. 17), but she did not do so.

What remains is the parties' central dispute: whether ICE acted properly in redacting finalized USC Claims Memos nearly in their entirety. Notably, Stevens has produced copies of what the court understands to be finalized USC Claims Memos that ICE produced to her in response to a separate FOIA request in 2010. (*See* 2010 USC Claims Memos, Ex. A to June 2018 Decl. of Jacqueline Stevens [30].) As Stevens emphasizes, ICE redacted far less

information from the memoranda it produced in 2010 than from the memoranda it produced in response to the FOIA request at issue here. (*See* Stevens Mot. 5.) Each memorandum produced in 2010 contains the following sections: (1) "statement of the case," which includes information concerning the "initial claim" of U.S. citizenship; (2) "facts," which includes information concerning ICE's factual investigation and the individual's criminal history, if any; (3) "legal analysis"; and (4) "conclusion and recommendation." (*See id.* at 4-6; *see also, e.g., id.* at 8-9, 11-12, 14-17.) As reflected in its supplemental *Vaughn* index, the USC Claims Memos that ICE produced in this case follow the same, or a very similar, format. (*See* Supp. *Vaughn* Index 7 (stating that the USC Claims Memo "template . . . sets forth the facts of the individual case, the relevant legal standards for USC claims, the attorney's evaluation of evidence and data against the relevant USC law, a suggested conclusion on the matter of law, and a recommendation for agency action").) In contrast to the full redactions in its production in this case, back in 2010, ICE redacted all portions of the "legal analysis" and "conclusion and recommendation" sections, but made just partial redactions to the "statement of the case" and "facts" sections. (*See generally* 2010 USC Claims Memos.)

Significantly, Stevens has not argued here that she is entitled to disclosure of the "legal analysis" and "conclusion and recommendation" sections that were redacted in the current production as well as the production in 2010. She does contend that ICE should be required to release the same type of information in this litigation that it released in 2010. (*See, e.g.*, Stevens Mot. 5 (arguing that ICE's 2010 production—which "left significant portions of the Facts Sections unredacted, and the legal analysis reasonably segregated"—"fed into [Stevens'] scholarly and popular writings" concerning ICE's handling of citizenship claims); *id.* (stating that Stevens submitted the present FOIA request "[t]o assess how ICE was responding to U.S. citizenship claims received after January 2017, and to compare that assessment with records from the previous administration").) The court assumes, therefore, that Stevens is seeking disclosure only of the "statement of the case" and "facts" sections. For the following reasons, the court concludes

13

that ICE has not met its burden to prove that these sections are exempt from production in their entirety.

First, a "withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant *and correlating those claims with the particular part of a withheld document to which they apply.*'" *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)(emphasis supplied; citations omitted). ICE's supplemental *Vaughn* index does not satisfy this standard because the court cannot determine from the index which exemptions ICE has applied to various sections of finalized USC Claims Memos, including the "statement of the case" and "facts" sections. (*See* Supp. *Vaughn* Index 6-8 (asserting that Exemptions 5, 6, and 7(C) apply to approximately 90 pages without specifying the portions of the memoranda to which they apply or whether there is overlap in the exemptions' application).) Second, as discussed below, assuming ICE had specified that each of the exemptions independently applies to the "statement of the case" and "facts" sections, it has not proven by a preponderance of the evidence that these sections fall within the exemptions. *See Enviro Tech*, 371 F.3d at 374.

### 1. Exemptions 6 and 7(C)

Exemption 6 "excuses the disclosure of 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'" *Henson*, 892 F.3d at 878 (quoting 5 U.S.C. § 552(b)(6).) Exemption 7(C) applies to "records or information compiled for law enforcement purposes" and permits their withholding if release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Exemption 7(C) is more protective of privacy than Exemption 6: The former provision applies to any disclosure that 'could reasonably be expected to constitute' an invasion of privacy that is 'unwarranted,' while the latter bars any disclosure that 'would constitute' an invasion of privacy that is 'clearly unwarranted." *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) (quoting § 552(b)(6), (7)(C)). Stevens does not dispute that

14

ICE compiled the relevant documents and information for law enforcement purposes (*see generally* Stevens Reply), meaning that ICE need "satisfy only the lower withholding standard contained in Exemption 7(C)." *Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at *6 (N.D. Ill. Nov. 4, 2014) (citing *Patterson*, 56 F.3d at 838-39). To determine whether disclosing the redacted information "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), a court must weigh the third parties' private interest in the nondisclosure of the information at issue against "the only relevant public interest in the FOIA balancing analysis—the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Fed. Labor Relations Auth.*, 510 U.S. at 497 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).

In its supplemental *Vaughn* index, ICE reports that it redacted personally identifiable information under Exemptions 6 and 7(C), including "the names, biometric information, contact information, immigration history, and/or other identifying information, of third-party individuals." (Supp. *Vaughn* Index 6.) ICE also states that it redacted "contextual information around the [personally identifiable information] that could be used to identify a third party . . . as that information could be used in conjunction with information found online, news stories, and other forms of media and internet information to breach personal privacy." (*Id.*; *see also* ICE Cross-Mot. 20 (stating that it redacted, among other things, "case history," under Exemption 6).) Stevens has made clear, however, that she "does not seek the name, date of birth, full A-Number,[7] or social security number of any subject or third party whose personally identifiable information is contained in the responsive records." (Stevens Reply 8.) Presumably, Stevens does not seek

---

[7] An A-number, or alien number, "is a unique registration number assigned by USCIS to a noncitizen of the United States." *Yith v. Nielsen*, No. 1:14-cv-01875-LJO-SKO, 2019 WL 2567290, at *5 n.6 (E.D. Cal. June 21, 2019).

biometric information or contact information, either. What Stevens *does* want is the factual context, such as "case history," that ICE has redacted. (*See id.*) According to Stevens, "case history" includes, among other things, "immigration and criminal history details." (*Id.*) Stevens contends that she cannot adequately challenge ICE's wholesale redaction of this information without a more detailed *Vaughn* index. (*See id.*) The court agrees.

In response to Stevens' separate FOIA request in 2010, ICE appears to have released the very information it is now withholding. ICE attempts to justify its new approach by arguing that today, it is easier to find individuals' identities using contextual information. (*See* Supp. Vaughn Index 6; Pineiro Decl. ¶ 53 ("With the increase in information available online about criminal histories, ancestral/genealogy databases, and other sensitive details of USC claimants' backgrounds, ICE now limits the information that is disseminated in response to FOIA requests because the detailed histories drafted . . . in USC memoranda can be used to determine the identity of U.S. citizenship claimants in ICE custody . . . ."); *see also* ICE Cross-Mot 22 (noting that the third parties identified in the records did not consent to the release of their personal information).) To support the broad assertion that information available online today is so different than it was in 2010 that complete redaction of contextual information is required, ICE offers little: two cases that state general propositions regarding privacy (both of which predate 2010, *see* ICE Cross-Mot. 25) and the opinion of its acting FOIA officer. What this means is that ICE has not yet persuaded the court that releasing the contextual information Stevens seeks would jeopardize third-party privacy interests at all.

On the other side of the scale, Stevens argues that when ICE in 2010 released contextual, factual information from finalized USC Claims Memos, that information "shed[] light on" how ICE responds to citizenship claims of individuals it encounters. (Stevens Mot. 5; *Fed. Labor Relations Auth.*, 510 U.S. at 497.) ICE's release of similar information in response to the present FOIA request would serve the same function, she suggests. (*See* Stevens Mot. 5.) ICE responds that releasing "names" and "identifying information" does not serve "the public's interest in

understanding" how ICE performs its duties (ICE Cross-Mot. 22), but as noted, Stevens does not seek release of such information. ICE's contention that third-party privacy interests outweigh any public interest in disclosure (*see id.* at 22-23) fails because ICE has not established that the disclosure Stevens seeks poses a threat to privacy interests.

For these reasons, the court denies ICE's cross-motion for summary judgment that its redactions under Exemptions 6 and 7(C) to the "statement of the case" and "facts" sections of finalized USC Claims Memos are appropriate. The court orders ICE to reexamine the finalized USC Claims Memos and either (1) produce contextual information in the "statement of the case" and "facts" sections consistent with the principles articulated in this opinion, or (2) provide a supplemental *Vaughn* index that describes in more detail the kind of contextual information it is withholding; states the section of the memoranda in which the information is located; and provides more specific factual support for the proposition that the risk of disclosing individuals' identities through the release of contextual information is significantly greater today than it was in 2010.

### 2. Exemption 5

"Exemption 5 allows an agency to withhold 'inter-agency or intraagency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency.'" *Henson*, 892 F.3d at 877 (quoting 5 U.S.C. § 552(b)(5)). It incorporates the attorney-client privilege, the work-product privilege, and the deliberative process privilege. *See id; see also Enviro Tech*, 371 F.3d at 374. The parties address at length whether Exemption 5 applies to finalized USC Claims Memos, but much of that discussion appears to concern the "legal analysis" and "conclusion and recommendation" sections. Because the court does not understand Stevens to be seeking disclosure of those sections, the court will not address those arguments. If Stevens is seeking disclosure of those sections, she is directed to notify the court within 21 days and show cause why she needs them, considering her representations that the memoranda ICE released in 2010 were sufficient for her research purposes, and her statement that she seeks to "compare" ICE's then-and-now responses to citizenship claims.

Separately, ICE's supplemental *Vaughn* index and briefing invoke Exemption 5 in support of redactions of the "statement of the case" and "facts" sections. (*See* Supp. *Vaughn* Index 6-8 (citing Exemption 5 for redactions to 90 pages of finalized USC Claims Memos); ICE Cross-Mot. 15, 17 (stating that ICE "withheld factual information in the memoranda in accordance with the work-product doctrine" and the deliberative process privilege).)[8] The court is not satisfied that ICE has provided information sufficient to determine whether the redactions properly fall within that exemption. Namely, in asserting that the redacted pages contain work product and deliberative material, ICE simultaneously indicates that they contain purely factual passages— that is, passages that lack any "legal evaluation[]" or "commentary" by attorneys. (*See* Supp. *Vaughn* Index 7 (stating that the memoranda "follow[] a set template that sets forth" both "the facts of the individual case" and "*the attorney's evaluation of* evidence and data against the relevant USC law" (emphasis added)).) Even assuming for the sake of argument that the work product and deliberative process privileges cover attorney recommendations and agency decision-making reflected in finalized USC Claims Memos,[9] ICE has not adequately explained why it cannot segregate and produce statements that are purely factual. *See Enviro Tech.*, 371 F.3d at 374-75 (deliberative process privilege "typically does not justify the withholding of purely factual material . . . but it does apply to . . . factual matters inextricably intertwined with [predecisional policy discussions]"); *Mervin v. Fed. Trade Comm'n*, 591 F.2d 821, 826 (D.C. Cir. 1978) (recognizing that "an attorney's appraisal of factual evidence is attorney work-product exempted from disclosure by exemption 5," but stating that "the government cannot exempt pure statements of fact from disclosure by calling them attorney work-product"). In addition, the 2010

---

[8] ICE does not state that it withheld factual information under the attorney-client privilege. (*See id.* at 12-13.)

[9] The court doubts that these privileges apply at all, but as it stated previously, it does not reach this issue because Stevens does not appear to be seeking disclosure of this information.

documents that Stevens provided to the court cast doubt on any argument that the factual content in finalized USC Claims Memos is "inextricably intertwined with" deliberative information or would, if produced, reveal attorneys' "tactical and strategic thoughts." *Enviro Tech.*, 371 F.3d at 375; *Mervin*, 591 F.2d at 826. Indeed, in the subset of 2010 USC Claims Memos that the court reviewed, ICE did not redact any information in the "statement of the case" or "facts" sections under Exemption 5. (*See* 2010 USC Claims Memos 4-6, 8-9, 11-12, 14-17, 19-21, 23-25, 27-28, 30-32.) ICE has provided no explanation in its supplemental *Vaughn* index, affidavits, or briefing why its approach should be any different here.

For these reasons, the court denies ICE's cross-motion for summary judgment on the adequacy of redactions under Exemption 5 to "statement of the case" and "facts" sections of finalized USC Claims Memos. The court directs ICE to reexamine the documents and make disclosures consistent with the principles discussed herein, or provide a supplemental *Vaughn* index and affidavit that more adequately explain why ICE cannot or will not make such disclosures.

## **CONCLUSION**

For the foregoing reasons, the court denies ICE's cross-motion for summary judgment on the adequacy of its search and denies in part ICE's cross-motion for summary judgment that it has properly withheld information under FOIA Exemptions 5, 6, and 7(C) [64]. The court orders ICE to produce the responsive documents it located in its search of ERO and conduct a limited search of the Law Enforcement Support Center records. Concerning redactions to "statement of the case" and "facts" sections of finalized USC Claims memos under Exemptions 5, 6, and 7(C), the court directs ICE to reexamine the documents and, within 21 days, either produce additional material consistent with the principles articulated in this opinion or provide a supplemental *Vaughn* index and affidavit that address in detail the concerns the court has raised. The court reserves judgment on all other issues. If the court is incorrect that Stevens does not seek the "legal analysis" and "conclusion and recommendation" sections of finalized USC Claims memos, she

must notify the court within 21 days and show cause why she needs these sections for her research. Plaintiff's motion for summary judgment [54] is denied without prejudice.

ENTER:

Dated: January 9, 2020

_____
REBECCA R. PALLMEYER
United States District Judge