UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | )<br>) |
| *Plaintiff,* | )<br>) |
| v. | ) Civil Action No.: 1:17-cv-2853<br>) |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) Judge Rebecca R. Pallmeyer<br>) Magistrate Judge Gilbert<br>) |
| *Defendant.* | ) |

### DECLARATION OF PROFESSOR JACQUELINE STEVENS

I, Jacqueline Stevens, Ph.D., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a Professor of Political Science and Northwestern University and the Director of the Deportation Research Clinic at Northwestern's Buffet Institute for Global Affairs.

2. As part of this work, I regularly make Freedom of Information Act ("FOIA") requests to U.S. Immigration and Customs Enforcement ("ICE") seeking memoranda documenting the facts and analysis that inform ICE's enforcement activities against individuals who may be U.S. Citizens in an effort to document how the agency makes those determinations.

3. This Declaration first addresses factual questions about the nature of the United States Citizen Claims Memorandums (hereafter "USC Memos") sought in this litigation, in particular, if they are produced for litigation, discretionary, or assert exemptions from the normal exemptions and review process of the FOIA. Second, I state my ongoing interest in the release

1

of e-mail that has been unlawfully redacted. Third and finally, I offer evidence of inconsistencies between the practices and policies of ICE concerning the withholding from their release to me of responsive information from the USC Memos and I provide evidence that the reasons stated for the redactions in this litigation are contradicted by other practices and policies of ICE and the Trump administration.

4. The creation of USC Memos is not discretionary. The USC Memos at issue in this litigation were produced pursuant to an eight-page single-spaced ICE "Directive" titled "Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE" (hereafter "USC Directive) issued on November 10, 2015, effective November 10, 2015, per ICE Policy No. 16001.1: Superseding Guidance on Reporting and Investigating Claims to United States Citizenship (Nov. 19, 2009), assigned Federal Enterprise Architecture Number 306-112-002b and signed by Sarah R. Saldaña, then Director, Immigration and Customs Enforcement.[1] Exhibit A, USC Directive.

5. The USC Directive states: "This Directive establishes ICE policy and procedures for ensuring that the potential U.S. citizenship of individuals ... is immediately and carefully investigated and analyzed." *Id.*, p. 1. Point 2 of the USC Directive is captioned "Policy." It states: "It is ICE policy to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE." *Id.* The policy is not discretionary. "ICE personnel *must assess* the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim of U.S. citizenship, as well as when certain indicia of

---

[1] On January 30, 2020, the USC Directive (Exhibit A) was available on the ICE website at https://www.ice.gov/sites/default/files/documents/Document/2017/16001.2.pdf.

potential U.S. citizenship, as identified in the USC Directive, are present in a case even if the individual does not affirmatively make a claim to U.S. citizenship." *Id*, emphasis added.

6. The information I am seeking through my FOIA request and this litigation is in part for the purpose of assessing whether ICE is properly implementing the USC Directive.

7. Obtaining all responsive USC Memos in the time frame of the request will allow quantitative analysis of the scope of unlawful detentions of U.S. citizens for the purpose of assisting Congress and the courts in assessing whether the low due process standards afforded so-called "aliens" under immigration law means U.S. citizens are being unlawfully detained and deported.

8. The USC Memos I am seeking in this litigation are produced pursuant to the ICE Directive Point 5.1 "Procedures for Investigating and Assessing Potential U.S. Citizenship," which states:

> 1) **Factual Examination**. The assessment of potential U.S. citizenship under this Directive must include a factual examination and a legal analysis ....
>
> 2) **Preparing and Submitting Memorandum.** After the factual examination is completed, ERO [Enforcement and Removal Operations] or HSI [Homeland Security Investigations] (whichever conducted the factual investigation) and the relevant OCC [Office of Chief Counsel] must jointly prepare and submit a memorandum for HQ review, using as a guide the attached HQ-approved template, which assesses the claim and recommends a course of action.
>
>> a) Absent extraordinary circumstances, this memorandum must be submitted no more than one business day from the time ERO, HSI, or OPLA [Office of the Principal Legal Advisor] first becomes aware of a claim or indicia of potential U.S. citizenship if the individual is subject to an immigration detainer or is detained in ICE custody....
>>
>> d) Upon completion, the memorandum must be elevated via e-mail to the HQ OPLA Immigration Law and Practice Division ... or to the HQ HSI Domestic Operations Manager assigned responsibility for the relevant

SAC office, as appropriate. *Id.* 4-5.

9. The USC Directive instructions are specific and obligatory, i.e., the actions it orders "must" be taken, as noted in points 1-3, including the production of an assessment of U.S. citizenship and a recommendation. *Id,* point 2, p. 5. No similar language is used for Headquarters (HQ) decisions. *Id.*, point 3, p. 6.

10. The stated purpose of the USC Directive is to avoid the arrest or detention of U.S. citizens under immigration laws:

> **1.** **Purpose/Background.** This Directive establishes ICE policy and procedures for ensuring that the potential U.S. citizenship of individuals encountered by U.S. Immigration and Customs Enforcement (ICE) officers, agents, and attorneys is immediately and carefully investigated and analyzed. The Immigration and Nationality Act of 1952, as amended (INA), sets forth the parameters for U.S. citizenship by virtue of birth in the United States. Additionally, the INA and various related statutes codify numerous avenues by which an individual may derive, acquire, or otherwise obtain U.S. citizenship other than through birth in the United S tates. As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U .S. citizen. *Id.* p. 1.

The ICE USC Memos demonstrably are produced to avoid the unlawful detention of U.S. citizens. At no point does the USC Directive reference "litigation," foreseeable or otherwise *See* Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, 10/18/2019, Doc. 65-1, p. 18.

11. USC Memos result in "finished" or final statements of facts, analyses, and recommendations. One email sent on March 17, 2017 from someone with the title "Associate Legal Advisor" in the ICE Office of the Principal Legal Advisor in the Immigration Law and Practice Division to someone whose name and agency are redacted in their entirety states:

> Hi [b(6); (b)[sic])],
> Here is another one of my finished USC claims. Thanks for updating PLAnet for me.
> Best,

(b)(6);(b)(7)(C)
Exhibit B, "Finished USC Memo," March 17, 2017.

12. It was never my intention to abandon any claim to legally redacted email. In preparation for motions for summary judgment, my research assistants created spreadsheets tracking the redactions for each release using Bates numbers and the number of specific redactions per page, along with notes indicating special concerns. A screenshot from one of the spreadsheets indicates this and the date of its creation (May 5, 2019). Exhibit C, Screenshot of Clinic Spreadsheet Tracking Redactions, May 5, 2019. I shared this and other spreadsheets with my attorney and it was my understanding that he intended to share these with the government's attorney. I do not know if this occurred.

13. It is not clear how I could effectively challenge the numerous redactions that were not justified with specificity in the Vaughn Declarations. Dozens or more emails have the body of the message redacted in their entirety under exemption b(5). It seems unlikely that such emails include no segregable releasable responsive factual information. For instance, an email of February 15, 2017 with a subject heading that references a decision on a USC Memo has the body of the email redacted in its entirety. Bates 2017-ICLI-0012. I am including additional, similar examples from Bates 2017-ICLI-12, 26-29, and 36-37 as Exhibit D. Exhibit D, Examples of Redacted Emails.

14. I am hopeful that I will have an opportunity to obtain all records responsive to my request, properly redacted. I do not believe ICE is harmed by the court reconsidering its ruling on the redactions of the emails in light of further briefing. I believe the main party hurt by this delay is the U.S. public, which has a strong interest in avoiding the detention and deportation of U.S. citizens under immigration laws.

5

15. I appreciate the concern of the court to handle matters before it fairly and expeditiously. However, if I do not receive properly redacted documents via my requests and litigation in this case, then either I or a colleague will need to file a new request. It is possible a court might apply *res judicata* to me, but I do not believe it could not do so if another individual with whom I work filed this request. If this court holds the opinion that *res judicata* would not prohibit me from filing a new request for the same information with redactions on which a court has not ruled, an order allowing this would be appreciated. (That said, and again, with apologies for any inconvenience to this court, the possibility that the same documents and questions might need to be re-reviewed by ICE and heard before a different court at a later time, whether from a request of someone else or me, would not appear to decrease burdens on either the government or the courts.)

15. This matter is not before the court because of my errors, but because almost three years ago ICE violated the FOIA and produced no documents responsive to my request. In light of the overall equities of this litigation – I will be using the information I have obtained to continue to bring extremely important matters about the unlawful detention and deportation of U.S. citizens to the attention of the public, policy-makers in legislatures and agencies, and will receive no commercial benefit (law reviews and journalists do not pay me) – I am hopeful that the court will reconsider the decision to allow ICE to leave unlawful redactions of email messages in place.

16. Several statements in the government's brief are inconsistent with policies on how the Department of Homeland Security and its components manage records for those accused of violating immigration laws. First, ICE in this and many other productions has released numerous

6

documents containing exactly the sort of information it claims it must redact when consolidated in the USC Memos. For instance, ICE has included in this release redacted Naturalization applications (N-400s). These include the individual's city, county, and state of residence, country of birth, citizenship of origin, date of legal residency, port admitted, and numerous other details, including the person's sex, height, marital status, and employer. Exhibit E, "Naturalization Application," 2017-ICLI-00012 5750-5754. In proximity to Exhibit E in this release is the "Application by Indochinese refugee for Permanent Residence" (Exhibit F, "Application for Permanent Residence, *Id.*, Bates 5774-5775), as well as a "Record of Sworn Statement in Affidavit Form" averring U.S. Citizenship (Exhibit G, "Sworn Affidavit," *Id.*, Bates 5668-5669). These and numerous other documents provide the same factual information ICE is claiming it must redact from the USC Memos.

17. In the past 12 years of my personally using government records and reporting on U.S. citizens detained and deported by ICE I am aware of no allegations much less findings that anyone whose records I or any other scholar or journalist have received has been harmed by the release to us of their redacted (or unredacted) records. I am aware of a number of articles and lawsuits based on my research and publications identifying ICE unlawfully detaining or deporting U.S. citizens that have resulted in the termination of deportation orders, monetary compensation, and attention from members of Congress and from ICE, as cited in my previous Declaration. Doc. 57, Declaration of Jacqueline Stevens, 1-5.

18. ICE's assertion in this litigation that it is withholding information from the USC Memos because of privacy concerns is belied by the agency's and President's record. Several reports from the Office of Inspector General reveals the agency has made no headway in

changing its pattern and practice of systematically trampling on the lives and liberties of those it arrests.[2] Moreover, President Donald Trump has expressly ordered agencies to *remove privacy protections* from immigrants who have been ordered removed from the United States for violating immigration laws. An Executive Order of January 25, 2017 "Enhancing Public Safety in the Interior of the United States" states:

> Sec. 14. Privacy Act. Agencies shall, to the extent consistent with applicable law, ensure that their privacy policies exclude persons who are not United States citizens or lawful permanent residents from the protections of the Privacy Act regarding personally identifiable information.[3]

The federal government may not on the one hand appropriate to itself the prerogative to reveal information about those alleged to lack citizenship or legal residence status to suit its amped up deportation priorities while at the same time insisting that this information must be withheld from a scholar seeking to shed light on its unlawful actions. It is my understanding that applying a policy that supports releasing information when it aligns with the government's political priorities and then failing to apply this same policy when the information released would prove embarrassing to the government would be in violation of not only the Administrative Procedure Act, but also my rights under the First Amendment.

---

[2] "Concern about ICE Detainee Treatment and Care at Four Detention Facilities," OIG-19-47, June 3, 2019, https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-47-Jun19.pdf; "Management Alert – DHS Needs to Address Dangerous Overcrowding and Prolonged Detention of Children and Adults in the Rio Grande Valley," July 2, 2019, OIG-19-51, https://www.oig.dhs.gov/sites/default/files/assets/2019-07/OIG-19-51-Jul19_.pdf; "DHS Needs to Improve its Oversight over Misconduct and Discipline," OIG-19-48, June 17, 2019, https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-48-Jun19.pdf; "Management Alert: DHS Needs to Address Dangerous Overcrowding among Single Adults at El Paso Del Norte Processing Center," May 30, 2019, https://www.oig.dhs.gov/sites/default/files/assets/2019-05/OIG-19-46-May19.pdf.

[3] Donald Trump, Executive Order Enhancing Public Safety in the Interior of the United States, January 25, 2017. https://www.whitehouse.gov/presidential-actions/executive-order-enhancing-public-safety-interior-united-states/

19. The records in dispute either reference the arrest or detention of U.S. citizens over whom ICE has no legal authority, or noncitizens with false or unsubstantiated claims to U.S. citizenship. Under the first scenario, the speculative possibility of an intrepid researcher tracking down a U.S. citizen who was in ICE custody, despite the agency adhering to regular protocols and redacting that person's name, date of birth, address, phone number, alien number and other identifying information is clearly outweighed by the public's interest in the detention and deportation of U.S. citizens. Under the second, government scenario – 'nothing to look at here, just a bunch of noncitizens or people who have lost their legal residency' – the President has officially ordered all agencies, including presumably ICE and the Department of Justice, to *exclude* these individuals from the protections of the Privacy Act. I believe policy priorities of the FOIA, immigration law, and the U.S. Constitution commend the release of all portions of the USC Memos, including but not limited to the factual narratives the government previously released and now is withholding.

Respectfully submitted this 31st day of January 2020 by:

_____
Jacqueline Stevens