# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 C 2853 |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | Chief Judge Pallmeyer |
| SECURITY, IMMIGRATION AND ) | |
| CUSTOMS ENFORCEMENT, ) | |
| ) | |
| Defendant. ) | |

**SUPPLEMENTAL DECLARATION OF TONI FUENTES**

**I. INTRODUCTION**

I, Toni Fuentes, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since September 30, 2018 and am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I have held numerous FOIA positions over the past 20 years, including: FOIA Director for the National Protection and Programs Directorate ("NPPD") at the U.S. Department of Homeland Security ("DHS"); Government Information Specialist for Department of Justice, U.S. Marshal's Service, Office of General Counsel; Government Information Specialist for the Department of Defense, Office of the Inspector General's FOIA Office; FOIA Officer, Paralegal Specialist for Department of the Navy, NAVAIR/NAWCAD's Office of Counsel; Management and Program Analyst for Department of Homeland Security, Customs and Border Protection's

FOIA Office; and FOIA Paralegal Specialist for the National Aeronautics and Space Administration's Office of Chief Counsel.

2.  The ICE FOIA Office is responsible for processing and responding to all FOIA requests and Privacy Act requests received at ICE.

3.  My official duties and responsibilities include the general management, oversight, and supervision of both the Intake Unit and the Litigation Processing Unit of the ICE FOIA Office. I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding initial intake of FOIA and Privacy Act requests received by ICE, as well as the status, processing, and productions of ICE's federal FOIA litigations. In connection with my official duties, I am familiar with ICE's processing of the February 13, 2017 FOIA request plaintiff Jacqueline Stevens submitted to the ICE FOIA office that is the subject of this litigation.

4.  I make this supplemental declaration in my official capacity in support of ICE's summary judgment in the above-captioned action and to address the issues raised in the court's January 9, 2020 Memorandum Opinion and Order (Dkt. 80) relating to FOIA Exemption 5, 6, and 7(C) withholdings in the 115 pages of records Stevens has identified as finalized United States citizenship claims memoranda. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of its business activities, and information provided to me by other ICE employees in the course of my official duties.

5.  Additionally, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this supplemental declaration also describes the portions of records ICE withheld in those 115 pages and the bases for ICE's withholdings. Ex. 1.

2

## II. APPLICABLE FREEDOM OF INFORMATION ACT WITHHOLDINGS

### FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)

6. FOIA Exemption 6 allows the withholding of information found in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical" or "similar files" under Exemption 6. When applying this exemption to responsive records, the agency must balance the individual's personal privacy interest against the public need for the information.

7. FOIA Exemption 7(C) similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

8. When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in shedding light on ICE's performance of its statutory duties.

9. Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure personally identifiable information ("PII") found in the USC memos, which contain such information as: (a) individuals' full names; (b) PII such as date and place of birth, parents' names, A-number[1], and current place of custody; (c) immigration history such as date of arrival to the U.S., port of entry, any current or past applications filed for immigration status or benefits, date of status adjustment to a legal permanent resident, current immigration charges that are

---

[1] The Alien Registration Number, or A-number, is an eight- or nine-digit number issued by U.S. Citizenship and Immigration Services ("USCIS") to all noncitizens in the U.S. An individual's A-number is the equivalent to a citizen's Social Security Number and is treated as PII.

3

prompting removal, the basis of the USC claim, history of time spent in the U.S., any denied application to USCIS, any encounter by U.S. Customs and Border Patrol, information from previous adjudications by other federal agencies, and evidence of fraudulent documents; (d) military background, if any; (e) any criminal history of convictions and sentences in federal, state, and local courts; (f) any prison sentence information including previous time served, current sentence being served, and location and name of prisons where time was/is being served; and/or (g) other identifying information of third-party individuals referenced in the memoranda, which can include parents' or stepparents' names, dates, and places of births, dates of marriage and divorce, the parents' immigration status(es), dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock, and interviews with parents. It should be noted that the facts and legal analysis sections of citizenship claim memoranda can also discuss asylum application or U/T visas, which ICE is statutorily prohibited from addressing and thus any mention of those applications or statuses were omitted in the *Vaughn* index.

10. Such information, if disclosed to the public or to a third party requester without the permission of the individual, could expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual.

11. Furthermore, third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. The individuals' privacy interest in the

information contained in the record outweighs any minimal public interest in the disclosure of the information. Stevens has not articulated any, much less a sufficient, public interest or public need to justify release of this information, including any of the contextual, factual information referenced by the court in the January 9, 2020 Memorandum Opinion and Order. Rather, the disclosure of this PII serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities. Finally, the third parties mentioned in the law enforcement records did not consent to the disclosure of their PII.

12. The entire factual sections of the USC Memos were redacted as PII because taken as a whole, it could reasonably (and in fact, fairly easily) be used to determine the identity of the USC claimant. Even without specific names or PII information, there are numerous people-finder websites (such as searches on www.google.com, Westlaw, and local court websites), news articles, and/or immigration case appeals that contain enough information similar to that contained in a USC memo for a person like Stevens to identify the claimants (and thus possibly other third party individuals referenced in the memoranda as well, such as a claimant's parents). For example, the location or date of arrest, the location or date of arrival to the U.S., the dates and charges that a claimant was convicted on, their parents' heritage, and their prior immigration history could be used to identify the claimant. In fact, using only the contextual claimant information available in these USC memos (in other words, the information ICE withheld under Exemptions 6 and 7(C) that the court is considering releasing), it was possible for ICE personnel in the past two weeks to locate *all* of the claimants referenced in the 115 pages of citizenship memoranda in less than 30 minutes of online searching for each. Identification of claimants in the 115 pages was particularly easy when the contextual, factual information in the memoranda referenced highly-publicized crimes or when a claimant had a subsequent case before the Board of Immigration Appeals given

that BIA opinions are public and include much of the same contextual, factual information contained in the citizenship memoranda. For example, using just the conviction information, state of residence, and nationality from the USC claims memo with Bates numbers 4561-4567, ICE personnel were able to identify the claimant in the memo through a simple Google search. The indirect disclosure of claimants' identities by using the contextual, factual information contained in citizenship memoranda thus would violate the spirit of Exemptions 6 and 7(C).

13. It is true that ICE FOIA in the past would segregate the factual sections of USC memos for release in FOIA requests, only redacting part of the information. In 2010, Stevens received memos with such segregated redactions. However, there have been huge advances in both the technology for online searches and the wealth of knowledge about individuals available online on people-finding websites, both of which make the release of USC memo facts more likely to result in an unwarranted invasion of personal privacy. Furthermore, in retrospect, the redactions placed on the USC memos released to Stevens in 2010 were erroneous, by both 2010's and today's standards, and they should have never been produced to her in that format. Protecting third parties from unwarranted invasions of privacy is clearly set out in the FOIA and must be a priority for the federal government, especially in such a sensitive realm as immigration. Accordingly, the agency's incorrect decision to only partially redact information in the factual sections of the memos it produced to Stevens in 2010 should not be used to justify disclosure of that kind of information in the memoranda at issue in this case.

14. ICE determined that the disclosure of the information described in Paragraphs 9 and 12 would constitute a clearly unwarranted invasion of personal privacy and thus Exemption 6 was appropriately applied. In addition, ICE determined that disclosure of the information described in Paragraphs 9 and 12, which was compiled for law enforcement purposes, could

reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus Exemption 7(C) was appropriately applied.

15. Having determined that the individuals referenced in the 115 pages of memoranda Stevens identified have a cognizable privacy interest in not having their information (and thus identities) released to her or anyone else, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in shedding light on the operations and activities of ICE in the performance of its statutory duties. Exemptions 6 and 7(C) were applied to prevent disclosure of USC claimant identities and immigration status as well as the identities of ICE personnel and other third parties. In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual and all other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE.

16. Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third party information identified in law enforcement records is appropriate. Moreover, it must be stressed that the third parties identified in these records have not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a) & 5.21(d).

### FOIA Exemption (b)(5)

17. Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption (b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

7

18.     ICE applied FOIA Exemption (b)(5) to protect from disclosure information subject to the deliberative process privilege, attorney work-product privilege, and attorney-client privilege, including all of the information contained in the Legal Analysis and Conclusion/Recommendation sections of the memoranda in the 115 pages Stevens previously identified.

19.     Those two sections of the citizenship memoranda contain legal analysis and agency attorney recommendations for ICE actions (both OPLA and ERO) regarding USC claims made during the FOIA request's stated timeframe. Specifically, those two sections of the memoranda contemplate the appropriate agency action in response to U.S. citizenship claims for individuals encountered by ICE, and require vigorous research, legal analysis, and multidivisional concurrence. Thus, the contents of those two sections of the memoranda are pre-decisional in nature because they were prepared in order to assist a decisionmaker in making a final decision about a citizenship claim, and deliberative because the facts and options discussed in those two sections of the memoranda are selective in nature and highlight the portions of the record that were deemed pertinent to the ultimate recommendation and decision on the citizenship claim. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within intra-agency memoranda. ICE employees must be able to discuss proposed agency action candidly, laying out evidence and applying relevant law. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action freely. Without the ability to develop paths of agency action in a

collaborative group setting as such, responses to USC claims would be underdeveloped and underinformed, as employees would be afraid capture their analysis for fear of public disclosure.

20.   ICE also applied Exemption (b)(5) to protect from disclosure all of the information contained in the Legal Analysis and Conclusion/Recommendation sections of the memoranda because it is subject to the attorney work product privilege. This privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Its purpose is to protect the adversarial trial process by insulating the attorney's preparation from scrutiny.

21.   Given the extremely sensitive nature of the rights involved in USC claims and those afforded to U.S. citizens, the potential for litigation is heightened and ICE attorneys are constantly aware of this possibility. Thus, ICE withheld USC memos, which are prepared by agency attorneys and contain the attorneys' research, strategy, legal analysis, and ultimate recommendation for agency action in the Legal Analysis and Conclusion/Recommendation sections of the memoranda, because the information constitutes attorney insight about the citizenship status of individuals encountered by ICE, which may be and has been subject to future litigation in immigration and federal court.

22.   Finally, ICE applied Exemption (b)(5) to protect from disclosure all of the information contained in the Legal Analysis and Conclusion/Recommendation sections of the memoranda because it is attorney-client privileged.

23.   The attorney-client privilege protects confidential communications between an attorney and his or her client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his or her client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client

privilege is not limited to protecting documents created in anticipation of litigation. The attorney-client privilege applies in this instance because the memoranda are confidential communications between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of individuals encountered by ICE. The client seeks the professional advice of OPLA attorneys on USC claims, specifically from ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memoranda. The memoranda (and in particular, those two sections of the memoranda) thus provide advice to the client about recommended actions and legal decisions.

24. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and its legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

25. Lastly, per the Court's January 9, 2020, Memorandum Opinion and Order, ICE reexamined the application of Exemption 5 to the Statement of the Case or Facts and determined that the Exemptions were incorrectly applied to these sections of USC memoranda. However, the factual information in those sections is still protected from disclosure under Exemptions 6 and 7(C) for the previously stated reasons. Moreover, contrary to Stevens's assertion, there were no purely factual statements contained within the Legal Analysis and Conclusion/Recommendation

sections of the memoranda that can be released. Any facts in those sections are interwoven into agency attorney analysis of the citizenship claim based on the relevant standard for review for determining U.S. citizenship that is protected from disclosure under Exemption 5, and it is not possible to reasonably or coherently separate the two.

### III. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 6th day of February, 2020.

_____
Toni Fuentes, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

11