***Stevens v. DHS-ICE***
Case No. 17 C 2853 (N.D. Ill.)

U.S. Immigration and Customs Enforcement - Supplemental *Vaughn* Index for February 6, 2020 Filing

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 4545-4549 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number][1]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody.  Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s).  Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal  history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent  legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim).  The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information ("PII"), including date and place of birth, parents' names, A-number, and current place of custody; (c) immigration history, including date of arrival to the U.S., port of entry, any applications filed for immigration status, date of status adjustment to a legal permanent resident, current | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

[1] Every USC memo states the name and A-number (which is the equivalent of a Social Security number for a non-citizen) of the individual, which is withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C).  For the purposes of this *Vaughn* index, this information will be displayed as [Name/ A-number] under the sections "Document Title."

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | immigration charges that initiate removal proceedings, and the asserted basis of the USC claim; (d) criminal history, including multiple convictions in state and local courts, prison sentence information (including previous time served for convictions and location and name of prison(s) where time was served); and (e) other identifying information of third-party individuals, including parents' or stepparents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, and whether the child was born in or out of wedlock.  The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this individual has publicly available opinions available online through published Board of Immigration Appeals ("BIA") or Circuit Court appeals that include much of the exact same contextual, factual information that is also in the USC memo.  This information thus could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit, does not shed any light on government operations and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.<br><br>First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody because the memo is subject to edits and review by other attorneys and/or ERO agents or officials.   The memo is also pre-decisional because it contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant.  In any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, or a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot.  In the absence of such clear evidence, this USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveals the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove | |

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra-agency communications. It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.<br><br>Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the Immigration and Law Practice Division ("ILPD") attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If | |

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4550-4554 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody.  Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s).  Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal  history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent  legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim.  The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody, current status of removal proceedings; (c) immigration history, including  date of arrival to the U.S., method of entry, encounters with U.S. Customs and Border Protection, any applications filed for immigration status, current immigration charges that are prompting removal, the basis of the USC claim and | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | any evidence provided by the claimant and/or family; (d) information about communications with other governments to verify any documents or narratives given by the claimant; and/or (e) other identifying information of third-party individuals including parents' or stepparents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, information about claimant's children, whether the child was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from | |

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency. | |
| | | Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court. | |
| | | Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 4555-4560 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody.  Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s).  Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal  history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent  legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim).  The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including  date of arrival to the U.S., port of entry, current immigration charges that are prompting removal, the basis of the USC claim, the length of stays in the U.S., parental custody arrangements in childhood, dates of claimant's marriage and divorce, any applications filed for immigration status, adjustment to legal permanent resident; (d) criminal history, including many convictions in state and local courts; and (e) other identifying information of third-party individuals, including parents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.<br><br>FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.<br><br>First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its | |

| Bates Stamp | Full/Partial Withheld | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.<br><br>Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |

| | | | |
|---|---|---|---|
| 4561-4567 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody.  Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s).  Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal  history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent  legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim).  The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including  date of arrival to the U.S., port of entry, original immigration status designation, any applications filed for immigration status, any adverse determinations regarding immigration status applications, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.,; (d) claimant's military history; (e) criminal history including multiple convictions in state court, including a felony (f) prison sentence information including previous time served; and (g) other identifying information of third-party individuals, including parents' dates and places of births, citizenship information, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock) .  The | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites and/or news articles. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may use prior findings that failed to establish good moral character in previous immigration actions). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not

have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

| 4568-4575 | Full | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page. This document also contains "redline edits" from other ICE attorneys (these can range from adding in information to requesting clarifications or edits to disagreeing with the legal analysis in the document).[2]

**Reason(s) for Redactions:**

FOIA Exemptions (b)(6) and (b)(7)(C): The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including date of arrival to the U.S., port of entry, any applications filed for immigration status, date of status adjustment to a legal permanent resident, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including multiple convictions in state and local courts; (e) prison sentence information including previous time served; and (f) other identifying information of third-party individuals, including parents' or stepparents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites and/or news articles. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences,

---

[2] ICE exclusively uses tracked changes in Microsoft Word to provide edits between programs and employees; throughout this *Vaughn* index , these edits will be referred to aa "redline edits" for in-line textual edits and "comment balloons" for comments added in via sidebar boxes.

economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents. This memo is subject to significant redline edits and comment balloons from other ICE attorneys altering the legal analysis and case history. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. Draft Word documents are the top method for ICE employees to workshop legal positions and gain input from other ICE divisions regarding future agency actions. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

| | | Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.   Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings.   Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.<br><br>Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE.  The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law.  This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo.  The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s).  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client.  If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4576-4580 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody.  Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s).  Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal  history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim. The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.

**Reason(s) for Redactions:**

FOIA Exemptions (b)(6) and (b)(7)(C): The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including date of arrival to the U.S., port of entry, any applications filed for immigration status, date of status adjustment to a legal permanent resident, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including convictions in state court; (e) prison sentence information including current sentence and location of the prison; and (f) other identifying information of third-party individuals, including parents' or stepparents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites and/or news articles. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and

| | | | |
|---|---|---|---|
| | | their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4581-4586 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

**Reason(s) for Redactions:**

FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including  date of arrival to the U.S., encounters with U.S. Customs and Border Protection,  current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; and (d) other identifying information of third-party individuals, including parents' or stepparents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock, information about claimant's siblings.  The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites and/or news articles.  This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit, does not shed any light on government operations,  and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials.   The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot.  In the absence of such clear evidence,

the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot).   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.   Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings.     Thus,   ICE  withheld  the  information  in  the  Legal  Analysis  and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE.  The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law.  This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo.  The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s).  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-

| | | | |
|---|---|---|---|
| | | client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4587-4592 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C): The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including approximate date of arrival to the U.S., previous removals to their home country, any previous applications filed for immigration status, dates of interior apprehension by ICE, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including a felony conviction in state court; (e) prison sentence information including previous time served and location and name of prisons where time served; | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

and (f) other identifying information of third-party individuals, including parents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock.  The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous news articles.  This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit, does not shed any light on government operations,  and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials.   The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot.  In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest working with U.S. Citizenship and Immigration Services to further investigation the claim).   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to

segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

| 4593-4598 | Full | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page. This document also contains "redline edits" from other ICE attorneys (these can range from adding in information to requesting clarifications or edits to disagreeing with the legal analysis in the document).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C): The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including date of arrival to the U.S., port of entry, any applications filed for immigration status, date of status adjustment to a legal permanent resident, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including multiple convictions in federal and state courts, restitution amounts paid; and (e) other identifying information of third-party individuals, including extensive historical information about his parents' such as dates and places of births, marriage and/or divorce dates, dates of | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents. This memo is subject to significant redline edits and comment balloons from other ICE attorneys altering the legal analysis and case history. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. Draft Word documents are the top method for ICE employees to workshop legal positions and gain input from other ICE divisions regarding future agency actions. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld

under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

| 4599-4603 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]

**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.

**Reason(s) for Redactions:**

FOIA Exemptions (b)(6) and (b)(7)(C): The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including date of arrival to the U.S., port of entry, any applications filed for immigration status, date of status adjustment to a legal permanent resident, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including multiple convictions in state and local courts; (e) prison sentence information including previous time served, current sentence being served, and location and name of prisons where time was/is being served; and (f) other identifying information of third-party individuals, including parents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. The foregoing | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |
| --- | --- | --- | --- |

information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites and/or news articles. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which

| | | | |
|---|---|---|---|
| | | may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.<br><br>Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4604-4610 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.

**Reason(s) for Redactions:**
FOIA Exemptions (b)(6) and (b)(7)(C): The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including date of arrival to the U.S., current immigration charges that are prompting removal, the basis of the USC claim.; (d) criminal history, including multiple convictions in state court; (e) prison sentence information including current sentence being served and location and name of prisons where time was/is being served; and (f) other identifying information of third-party individuals, including such as extensive background and personal information on claimant's' parents including dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure

of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials.  The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot.  In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot).   Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.   Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings.    Thus,  ICE  withheld  the  information  in  the  Legal  Analysis  and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

| | | | |
|---|---|---|---|
| | | Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4611-4614 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C |

legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.

**Reason(s) for Redactions:**

FOIA Exemptions (b)(6) and (b)(7)(C): The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including date of arrival to the U.S., port of entry, any applications filed for immigration status, date of status adjustment to a legal permanent resident, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including multiple convictions in state and local courts; (e) prison sentence information including previous time served; and (f) other identifying information of third-party individuals, including parents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this individual has publicly available opinions available online through published BIA or Circuit Court appeals that include much of the exact same contextual, factual information that is also in the USC memo. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5):
The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents. Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and

| | | | |
|---|---|---|---|
| | | Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4615-4624 | Full | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page. This document also contains "redline edits" from other ICE attorneys (these can range from adding in information to requesting clarifications or edits to disagreeing with the legal analysis in the document).<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C): The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including date of arrival to the U.S., port of entry, any applications filed for immigration status, prior removals from other countries, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including multiple convictions in federal courts and prison sentences; and (e) other identifying information of third-party individuals, including extensive historical information about his parents' such as dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is draft, pre-decisional, and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents. This memo is subject to significant redline edits and comment balloons from other ICE attorneys altering the legal analysis and case history. Such pre-

decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. Draft Word documents are the top method for ICE employees to workshop legal positions and gain input from other ICE divisions regarding future agency actions. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

| 4625-4630 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody.  Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s).  Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal  history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent  legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim).  The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including  date of arrival to the U.S., port of entry, any applications filed for immigration status, date of status adjustment to a legal permanent resident, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including multiple convictions in state courts; (e) prison sentence information including previous time served and probation information; and (e) other identifying information of third-party individuals, including parents' or stepparents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock. Interviews with parents.  The foregoing information (even excluding name and basic PII) can be | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites and/or news articles. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which

| | | | |
|---|---|---|---|
| | | may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.<br><br>Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4631-4636 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.

**Reason(s) for Redactions:**

<u>FOIA Exemptions (b)(6) and (b)(7)(C):</u> The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C). In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; personally identifiable information including but not limited to: date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including date of arrival to the U.S., port of entry, any applications filed for immigration status, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S., previous removals from the U.S.; and (d) other identifying information of third-party individuals, including parents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications, and whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites and/or news articles. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials.  The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot.  In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot).  Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.   Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings.   Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

| | | | |
|---|---|---|---|
| | | Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4637-4642 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody. Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s). Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim). The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

**Reason(s) for Redactions:**

FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including  method of entry to the U.S., removal orders, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S.; (d) criminal history, including multiple convictions in state and local courts; and (e) other identifying information of third-party individuals, including parents' or stepparents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, information about claimant's siblings.  The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites.  This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public.  The disclosure of this PII serves no public benefit, does not shed any light on government operations,  and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.  Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.  Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5):  The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials.   The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot.  In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and

thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-

| | | | |
|---|---|---|---|
| | | client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel. | |
| 4643-4649 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody.  Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s).  Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal  history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent  legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim).  The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including  date of entry to the U.S., where and how claimant arrived, dates of Notices to Appear, current immigration charges that are prompting removal, the basis of the USC claim, history of time spent in the U.S., previous applications filed with U.S. Citizenship and Immigration Services; (d) the claimant's narrative of her USC claim including their inability to obtain documents that they believe exist; and (e) other identifying information of third-party individuals, including | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

parents' dates and places of births, marriage and/or divorce dates, dates of parents' immigration applications/naturalizations/deaths, whether the claimant was born in or out of wedlock, parent's naturalization number, parent's arrival date and port of entry into the U.S. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its

close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to engage in internal deliberations.)  Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.   Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings.        Thus,  ICE  withheld  the  information  in  the  Legal  Analysis  and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE.  The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law.  This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo.  The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s).  Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor.  The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client.  If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

| 4650-4657 | Partial | **Document Title**: Claim to United States Citizenship – [name/A-number]<br><br>**Document Description and Redacted Information:** These pages contain attorney work product referred to as a U.S. citizenship claim memorandum ("USC memo" or "memo"), which is created for a U.S. citizenship claim ("USC claim") made by an individual in ICE custody.  Specifically, these pages contain a version of a legal memo created by one or more ICE attorneys that contain legal evaluations, write-ups, and commentary on an individual's USC claim(s).  Each USC claim memo follows a set template: a succinct Statement of the Case and decision (including the place of detention, the immigration charges lodged against the individual, how the USC claim was made, any relevant facts, and a short summary of the legal analysis); a full Facts section for the individual accounting for their lineage and any immigration and/or criminal  history (including date and place of birth, full information about their parents, information about their and their parents' marriages, their full immigration history, and their criminal history including charges, convictions, locations of court cases and/or crimes, prison sentences, place of imprisonment, and any other information pertaining to their citizenship status); a lengthy Legal Analysis section that lays out the attorney's complete evaluation of the facts of the individual's case to the pertinent  legal standards for USC claims; and a Conclusion and Recommendation section from the attorney based on the facts known at the time of the USC memo's drafting (which summarizes the pertinent findings, gives a recommendation on immediate agency action(s), and then lays out next steps for the individual and/or agency to take to further determine the legitimacy of the USC claim).  The memo contains the markings "SENSITIVE/PRIVILEGED* *PRE-DECISIONAL**ATTORNEY WORK PRODUCT" in the header and footer of each page.<br><br>**Reason(s) for Redactions:**<br><br>FOIA Exemptions (b)(6) and (b)(7)(C):  The personal information in the pages of this particular memo were properly withheld under FOIA Exemptions (b)(6) and (b)(7)(C).  In every section of this particular USC memo, the following information was withheld pursuant to these two exemptions: (a) individuals' names; (b) personally identifiable information, including date and place of birth, parents' names, A-number, current place of custody; (c) immigration history, including  date of arrival to the U.S., original immigration status, previous applications filed with U.S. Citizenship and Immigration Services, adverse adjudication of immigration status applications with U.S. Citizenship and Immigration Services, history of time spent in the U.S., removal proceedings history, current immigration charges that are prompting removal, the basis of the USC claim; (d) criminal history, including multiple convictions in state courts; (e) prison sentence information including current sentences being served and location and name of prisons where time was/is being served; and (f) other identifying information of third-party individuals, including parents' dates and places of births, parents' A-numbers, marriage date and location, dates of parents' immigration applications | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

naturalizations with U.S. Citizenship and Immigration Services, whether the claimant was born in or out of wedlock. The foregoing information (even excluding name and basic PII) can be used to determine the identity of the claimant referenced in this particular memo, especially in part because this information is available through numerous people finder websites. This information could reasonably be expected to constitute an unwarranted invasion of personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity; (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; (3) controlling how communications about them are communicated to others; and (4) not revealing their immigration or citizenship status to the public. The disclosure of this PII serves no public benefit, does not shed any light on government operations, and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Also, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. Finally, the third parties identified in the records have not consented to the disclosure of their PII.

FOIA Exemption (b)(5): The information in the Legal Analysis and Conclusion/Recommendation sections of this particular memo was properly withheld under FOIA exemption (b)(5) because it is pre-decisional and deliberative as well as attorney work product and attorney-client privileged.

First, this document is a deliberative document from ICE attorneys about a USC claim made by an individual in ICE custody; the memo is subject to edits by other attorneys and/or ERO agents or officials. The memo contains a recommendation for agency action based on information known to the agency at that particular moment in time about this claimant; in any situation, new information (for example, new birth records, information presented by the claimant regarding their parents, a passport) can be presented at any time to prove citizenship and render these deliberations of the agency moot. In the absence of such clear evidence, the USC memo sets forth any and all suggestions for future actions that could procure such evidence and thus reveal the highly deliberative nature of the documents (for example, it may suggest the individual apply for a passport with the Department of State to prove citizenship when ICE cannot). Such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. (It should also be noted that due to the nature of the legal analysis and its close ties to the information withheld under FOIA Exemptions (b)(6) and (b)(7)(C), it is not possible to segregate the materials without either endangering the individuals' privacy rights or the agency's ability to

engage in internal deliberations.) Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

Second, the attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, this document is protected from disclosure because it was prepared by an agency attorney(s) in anticipation of litigation regarding a USC claim, either in immigration proceedings or other proceedings. Thus, ICE withheld the information in the Legal Analysis and Conclusion/Recommendation sections of the memo because it consists of attorney research, strategy, legal analysis, and ultimate recommendation for agency action about the citizenship status of an individual encountered by ICE, which may be or has been subject to litigation in immigration and federal court.

Finally, the attorney-client privilege is also applicable to the Legal Analysis and Conclusion/Recommendation sections of this memo. The memo is a confidential communication between attorneys (OPLA attorneys) and their client (ICE officers and agents such as ERO personnel, as well as other OPLA attorneys) relating to the citizenship status of an individual encountered by ICE. The client seeks the professional advice of OPLA attorneys on the USC claim, specifically from the ILPD attorneys who specialize in this area of law. This privilege applies to facts that are divulged to the attorney and encompasses the opinions given by the attorney based upon, and thus reflecting, those facts, which is particularly the case in the Legal Analysis and Conclusion/Recommendation sections of the memo. The memo (and in particular, those two sections) thus provide advice to the client consisting of recommended action(s) and legal decision(s). Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his or her legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.